# Exhibit 5

**403(b) PLAN**
**BASIC PLAN DOCUMENT #08**

**(for use with Adoption Agreement #001)**

# TABLE OF CONTENTS

## SECTION 1
## PLAN DEFINITIONS

| | | |
|---|---|---|
| 1.01 | Account | 1 |
| 1.02 | Account Balance | 1 |
| 1.03 | Accumulated Benefit | 1 |
| 1.04 | Actual Contribution Percentage Test (ACP Test) | 1 |
| 1.05 | Adoption Agreement (AA) | 1 |
| 1.06 | After-Tax Contributions | 1 |
| 1.07 | Age 50 Catch-Up Contributions | 1 |
| 1.08 | Age 50 Catch-Up Contribution Limit | 1 |
| 1.09 | Alternate Payee | 1 |
| 1.10 | Anniversary Years | 2 |
| 1.11 | Annual Additions | 2 |
| 1.12 | Annuity Contract | 2 |
| 1.13 | Annuity Starting Date | 2 |
| 1.14 | ASC Institute | 2 |
| 1.15 | Automatic Contribution Arrangement | 2 |
| 1.16 | Automatic Rollover | 2 |
| 1.17 | Average Contribution Percentage (ACP) | 2 |
| 1.18 | Beneficiary | 2 |
| 1.19 | Benefiting Participant | 2 |
| 1.20 | Break in Service | 2 |
| 1.21 | Cash-Out Distribution | 2 |
| 1.22 | Church | 2 |
| 1.23 | Church Plan | 2 |
| 1.24 | Church-Related Organization | 2 |
| 1.25 | Code | 2 |
| 1.26 | Code §415 Limitation | 2 |
| 1.27 | Code §501(c)(3) Organization | 3 |
| 1.28 | Collectively Bargained Employee | 3 |
| 1.29 | Compensation Limit | 3 |
| 1.30 | Computation Period | 3 |
| | (a) Eligibility Computation Period | 3 |
| | (b) Vesting Computation Period | 3 |
| 1.31 | Current Year Testing Method | 3 |
| 1.32 | Custodial Account | 3 |
| 1.33 | Custodian | 4 |
| 1.34 | Denominational Service | 4 |
| 1.35 | Determination Year | 4 |
| 1.36 | Direct Rollover | 4 |
| 1.37 | Disabled | 4 |
| 1.38 | Dual Status Code §501(c)(3)/Governmental Organization | 4 |
| 1.39 | Early Retirement Age | 4 |
| 1.40 | Effective Date | 4 |
| 1.41 | Elapsed Time | 4 |
| 1.42 | Elective Deferral Dollar Limit | 4 |
| 1.43 | Electing Church | 4 |
| 1.44 | Elective Deferrals | 4 |
| 1.45 | Eligible Automatic Contribution Arrangement (EACA) | 4 |
| 1.46 | Eligible Employee | 4 |
| 1.47 | Eligible Employer | 4 |
| 1.48 | Eligible Retirement Plan | 5 |
| 1.49 | Eligible Rollover Distribution | 5 |
| 1.50 | Employee | 5 |
| 1.51 | Employer | 5 |
| 1.52 | Employer Contributions | 5 |
| 1.53 | Employer Pick-up Contributions | 5 |
| 1.54 | Employment Commencement Date | 5 |
| 1.55 | Entry Date | 5 |
| 1.56 | Equivalency Method | 5 |
| 1.57 | ERISA | 5 |
| 1.58 | Excess Aggregate Contributions | 5 |

| | | |
|---|---|---|
| 1.59 | Excess Amount | 5 |
| 1.60 | Excess Deferrals | 5 |
| 1.61 | Fail-Safe Coverage Provision | 5 |
| 1.62 | Favorable IRS Letter | 6 |
| 1.63 | [Reserved] | 6 |
| 1.64 | Governmental Plan | 6 |
| 1.65 | Hardship | 6 |
| 1.66 | Highly Compensated | 6 |
| | (a) Determination Year | 6 |
| | (b) Lookback Year | 6 |
| | (c) Total Compensation | 6 |
| | (d) Top Paid Group | 6 |
| 1.67 | Highly Compensated Group | 6 |
| 1.68 | Hour of Service | 6 |
| | (a) Performance of duties | 6 |
| | (b) Nonperformance of duties | 6 |
| | (c) Back pay award | 6 |
| | (d) Related Employers | 6 |
| | (e) Maternity/paternity leave | 7 |
| 1.69 | In-Plan Roth Conversion Account | 7 |
| 1.70 | Indian Tribal Government | 7 |
| 1.71 | Insurance Company. | 7 |
| 1.72 | Integration Level | 7 |
| 1.73 | Investment Arrangement | 7 |
| 1.74 | Limitation Year | 7 |
| 1.75 | Lookback Year | 7 |
| 1.76 | Mandatory Contribution | 7 |
| 1.77 | Matching Contributions | 7 |
| 1.78 | Maximum Disparity Rate | 7 |
| 1.79 | Minimum Gateway Contribution | 7 |
| 1.80 | Minister. | 8 |
| 1.81 | Multiple Employer Plan | 8 |
| 1.82 | Mutual Fund | 8 |
| 1.83 | Nonhighly Compensated | 8 |
| 1.84 | Nonhighly Compensated Group | 8 |
| 1.85 | Non-Qualified Church-Controlled Organization (NQCCO) | 8 |
| 1.86 | Nonvested Participant Break in Service | 8 |
| 1.87 | Normal Retirement Age | 8 |
| 1.88 | Part-Time Employee | 8 |
| 1.89 | Participant | 8 |
| 1.90 | Participating Employer | 8 |
| 1.91 | Period of Severance | 8 |
| 1.92 | Plan. | 8 |
| 1.93 | Plan Administrator | 9 |
| 1.94 | Plan Compensation | 9 |
| | (a) Application to safe harbor formulas | 9 |
| | (b) Determination period | 9 |
| | (c) Partial period of participation | 10 |
| 1.95 | Plan Year | 10 |
| 1.96 | Predecessor Employer | 10 |
| 1.97 | Pre-Tax Deferrals | 10 |
| 1.98 | Prior Year Testing Method | 10 |
| 1.99 | Public School. | 10 |
| 1.100 | QACA Safe Harbor Contribution | 10 |
| 1.101 | QACA Safe Harbor Employer Contribution | 10 |
| 1.102 | QACA Safe Harbor Matching Contribution | 10 |
| 1.103 | Qualified Automatic Contribution Arrangement (QACA) | 10 |
| 1.104 | Qualified Church-Controlled Organization (QCCO) | 10 |
| 1.105 | Qualified Domestic Relations Order (QDRO) | 10 |
| 1.106 | Qualified Election | 10 |
| 1.107 | Qualified Joint and Survivor Annuity (QJSA) | 10 |
| 1.108 | Qualified Nonelective Contribution (QNEC) | 10 |
| 1.109 | Qualified Organization. | 10 |

1.110 Qualified Preretirement Survivor Annuity (QPSA) ........................................................................ 11
1.111 Qualified Longevity Annuity contract (QLAC) ........................................................................... 11
1.112 Reemployment Commencement Date ........................................................................................... 11
1.113 Related Employer ........................................................................................................................... 11
1.114 Retirement Income Account ......................................................................................................... 11
1.115 Rollover Contribution ................................................................................................................... 11
1.116 Roth Deferrals ............................................................................................................................... 11
1.117 Safe Harbor Plan ........................................................................................................................... 11
1.118 Safe Harbor Contribution ............................................................................................................. 11
1.119 Safe Harbor Employer Contributions .......................................................................................... 11
1.120 Safe Harbor Matching Contributions ........................................................................................... 11
1.121 Salary Deferrals ............................................................................................................................. 11
1.122 Salary Reduction Agreement ........................................................................................................ 11
1.123 Seasonal Employee ........................................................................................................................ 11
1.124 Section 403(b) Contract ................................................................................................................ 11
1.125 Severance from Employment ........................................................................................................ 11
1.126 Short Plan Year .............................................................................................................................. 12
1.127 Special Catch-Up Contributions .................................................................................................. 12
1.128 Spouse ............................................................................................................................................ 12
1.129 State ................................................................................................................................................ 12
1.130 Student Employee .......................................................................................................................... 12
1.131 Targeted QNECs ............................................................................................................................ 12
1.132 Taxable Wage Base ....................................................................................................................... 12
1.133 Taxable Year .................................................................................................................................. 12
1.134 Temporary Employee ..................................................................................................................... 12
1.135 Testing Compensation ................................................................................................................... 12
1.136 Top Paid Group .............................................................................................................................. 13
1.137 Total Compensation ....................................................................................................................... 13
    (a) Total Compensation definitions ............................................................................................. 13
    (b) Post-severance compensation ................................................................................................ 13
    (c) Continuation payments for disabled Participants .................................................................. 14
    (d) Deemed §125 compensation ................................................................................................. 14
    (e) Differential Pay ..................................................................................................................... 14
1.138 Valuation Date ............................................................................................................................... 15
1.139 Vendor ............................................................................................................................................ 15
1.140 Volume Submitter Sponsor ........................................................................................................... 15
1.141 Volume Submitter Plan ................................................................................................................. 15
1.142 Year of Service .............................................................................................................................. 15

### SECTION 2
### ELIGIBILITY AND PARTICIPATION

2.01 Eligibility ........................................................................................................................................ 16
    (a) Salary Deferrals ..................................................................................................................... 16
    (b) Employer Contributions and Matching Contributions .......................................................... 16
    (c) After-Tax Contributions and Safe Harbor Contributions ..................................................... 16
2.02 Eligible Employees ......................................................................................................................... 16
    (a) Only Employees may participate in the Plan ........................................................................ 16
    (b) Excluded Employees .............................................................................................................. 16
    (c) Employees of Related Employers .......................................................................................... 18
    (d) Employees of an Employer acquired as part of a Code §410(b)(6)(C) transaction ............... 18
    (e) Ineligible Employee becomes Eligible Employee ................................................................. 18
    (f) Eligible Employee becomes ineligible Employee .................................................................. 18
    (g) Improper exclusion of eligible Participant ............................................................................ 18
2.03 Minimum Age and Service Conditions ......................................................................................... 18
    (a) Application of age and service conditions ............................................................................. 18
    (b) Entry Dates for Employer Contributions and Matching Contributions ................................ 20
2.04 Participation on Effective Date of Plan ........................................................................................ 21
2.05 Rehired Employees ......................................................................................................................... 21
2.06 Service with Predecessor Employers ............................................................................................ 21
2.07 Break in Service Rules ................................................................................................................... 21
    (a) Break in Service ..................................................................................................................... 21
    (b) Nonvested Participant Break in Service rule ......................................................................... 21
    (c) Special Break in Service rule for Plans using two Years of Service for eligibility ............... 22
    (d) One-Year Break in Service rule ............................................................................................. 22

2.08    Waiver of Participation ........................................................................................................ 22

## SECTION 3
## PLAN CONTRIBUTIONS

3.01    Types and Timing of Contributions ...................................................................................... 23
    (a)   Types of Contributions ................................................................................................ 23
    (b)   Timing of Contributions .............................................................................................. 23
    (c)   Contributions for former Employees ............................................................................ 23
    (d)   Contributions of Accrued Unpaid Sick and/or Vacation Leave ...................................... 23
3.02    Employer Contribution Formulas .......................................................................................... 23
    (a)   Employer Contribution formulas .................................................................................. 23
    (b)   Mandatory Contributions ............................................................................................. 29
    (c)   Period for determining Employer Contributions ............................................................ 23
    (d)   Offset of Employer Contributions ................................................................................ 23
3.03    Salary Deferrals .................................................................................................................. 29
    (a)   Salary Reduction Agreement ....................................................................................... 29
    (b)   Change in deferral election .......................................................................................... 29
    (c)   Automatic Contribution Arrangement .......................................................................... 30
    (d)   Age 50 Catch-Up Contributions .................................................................................. 33
    (e)   Special Catch-Up Contributions for certain Employees of Qualified Organizations ......... 34
    (f)   Coordination of Age 50 Catch-Up Contributions and Special Catch-Up Contributions ..... 34
    (g)   Roth Deferrals ........................................................................................................... 34
    (h)   In-Plan Roth Conversions ........................................................................................... 35
    (i)   Non-ERISA Salary Reduction Only Plan ..................................................................... 36
3.04    Matching Contributions ....................................................................................................... 37
    (a)   Contributions eligible for Matching Contributions ........................................................ 38
    (b)   Period for determining Matching Contributions ............................................................ 38
    (c)   True-up contributions .................................................................................................. 38
3.05    Safe Harbor/QACA Safe Harbor Contributions ..................................................................... 38
3.06    After-Tax Employee Contributions ....................................................................................... 38
3.07    Allocation Conditions .......................................................................................................... 38
    (a)   Application to designated period .................................................................................. 39
    (b)   Special rule for year of termination .............................................................................. 40
3.08    Service with Predecessor Employers ..................................................................................... 40

## SECTION 4
## ROLLOVER CONTRIBUTIONS AND TRANSFERS

4.01    Rollover Contributions ........................................................................................................ 41
4.02    Contract Exchanges and Transfers ........................................................................................ 42

## SECTION 5
## LIMITS ON CONTRIBUTIONS

5.01    Limits on Employer Contributions ........................................................................................ 43
    (a)   Limitation on Salary Deferrals .................................................................................... 43
    (b)   Limitation on total Employer Contributions ................................................................. 43
5.02    Elective Deferral Dollar Limit .............................................................................................. 43
    (a)   Excess Deferrals ........................................................................................................ 43
    (b)   Correction of Excess Deferrals .................................................................................... 43
5.03    Code §415 Limitation on Annual Additions ........................................................................... 44
    (a)   General Limitation on Annual Additions ...................................................................... 44
    (b)   Aggregation of §403(b) Plans of the Employer.. ........................................................... 44
    (c)   Aggregation Where Participant is in Control of Any Employer. ...................................... 44
    (d)   Annual Notice to Participants ...................................................................................... 44
    (e)   Coordination of Limitation on Annual Additions Where Employer Has Another §403(b) Pre-approved Plan or
         Participant is in Control of Employer ........................................................................... 44
    (f)   Excess Annual Additions ............................................................................................. 44
    (g)   Coordination of Limitation on Annual Additions Where Employer Has Another §403(b) Plan that is Not a Pre-approved Plan ............................................................................................................. 45
    (h)   Correction of Excess Annual Additions ....................................................................... 45
    (i)   Definitions ................................................................................................................. 45
    (j)   Special Rules ............................................................................................................. 45

## SECTION 6
## SPECIAL RULES AFFECTING 403(b) PLANS

6.01    Universal Availability for Salary Deferrals ............................................................................ 48

| | (a) | Eligible Participants | 48 |
| | (b) | Implementation of Participant's election to make Salary Deferrals | 48 |
| | (c) | Effective opportunity | 48 |
| | (d) | Special Rules | 45 |
| 6.02 | | Nondiscrimination Testing of Matching Contributions and After-Tax Contributions – ACP Test | 48 |
| | (a) | ACP Test | 48 |
| | (b) | Correction of Excess Aggregate Contributions | 50 |
| | (c) | Adjustment of contribution rate for Highly Compensated Employees | 51 |
| | (d) | Special testing rules | 51 |
| 6.03 | | Disaggregation of Plans | 51 |
| | (a) | Plans covering Collectively Bargained Employees and non-Collectively Bargained Employees. | 51 |
| | (b) | Otherwise excludable Employees | 51 |
| 6.04 | | Safe Harbor 403(b) Plan Provisions | 51 |
| | (a) | Safe Harbor 403(b) Plan requirements | 52 |
| | (b) | Qualified Automatic Contribution Arrangement (QACA) requirements | 53 |
| | (c) | Eligibility for Safe Harbor/QACA Safe Harbor Contributions | 55 |
| | (d) | Different eligibility conditions | 56 |
| | (e) | Provision of Safe Harbor Contribution in separate plan | 56 |
| | (f) | Mid-Year Changes to Safe Harbor 403(b) Plan | 56 |
| | (g) | Reduction or suspension of Safe Harbor/QACA Safe Harbor Contributions | 56 |
| | (h) | Deemed compliance with ACP Test | 56 |
| | (i) | Rules for applying the ACP Test | 57 |
| | (j) | Plan Year | 57 |

**SECTION 7**
**PARTICIPANT VESTING AND FORFEITURES**

| 7.01 | | Vesting of Contributions | 59 |
| 7.02 | | Vesting Schedules | 59 |
| | (a) | Vesting schedule | 59 |
| | (b) | Special vesting rules | 59 |
| 7.03 | | Year of Service | 60 |
| | (a) | Hours of Service | 60 |
| | (b) | Elapsed Time method | 61 |
| | (c) | Change in service crediting method | 61 |
| 7.04 | | Vesting Computation Period | 62 |
| 7.05 | | Excluded service | 62 |
| | (a) | Service before the Effective Date of the Plan | 62 |
| | (b) | Service before a specified age | 62 |
| 7.06 | | Service with Predecessor Employers | 62 |
| 7.07 | | Break in Service Rules | 62 |
| | (a) | Break in Service | 62 |
| | (b) | One-Year Break in Service rule | 62 |
| | (c) | Nonvested Participant Break in Service rule | 63 |
| | (d) | Five-Year Forfeiture Break in Service | 63 |
| 7.08 | | Amendment of Vesting Schedule | 63 |
| 7.09 | | Special Vesting Rule -In-Service Distribution When Account Balance is Less than 100% Vested | 63 |
| 7.10 | | Forfeiture of Benefits | 64 |
| | (a) | Cash-Out Distribution | 64 |
| | (b) | Five-Year Forfeiture Break in Service | 65 |
| | (c) | Missing Participant or Beneficiary | 65 |
| | (d) | Excess Deferrals and Excess Aggregate Contributions | 66 |
| 7.11 | | Allocation of Forfeitures | 66 |
| | (a) | Reallocation as additional contributions | 66 |
| | (b) | Reduction of contributions | 67 |
| | (c) | Payment of Plan expenses | 67 |
| | (d) | Forfeiture rules for other contribution types | 67 |

**SECTION 8**
**PLAN DISTRIBUTIONS**

| 8.01 | | Deferred distributions | 68 |
| 8.02 | | Available Forms of Distribution | 68 |
| 8.03 | | Amount Eligible for Distribution | 68 |
| | (a) | Individual or Participant-Directed Accounts | 68 |
| | (b) | Permissible distribution events | 68 |

**8.04 Participant Consent** ............................................................................................................................ **69**
   (a) Involuntary Cash-Out threshold ......................................................................................................... 69
   (b) Rollovers disregarded in determining value of Account Balance for Involuntary Cash-Outs .............. 69
   (c) Participant notice ................................................................................................................................ 69
   (d) Special rules ....................................................................................................................................... 70
**8.05 Direct Rollovers** ...................................................................................................................................... **70**
   (a) Definitions ......................................................................................................................................... 70
   (b) Direct Rollover notice ........................................................................................................................ 71
   (c) Direct Rollover by non-Spouse beneficiary. ....................................................................................... 71
   (d) Direct Rollover of non-taxable amounts. ............................................................................................ 71
   (e) Rollovers to Roth IRA ........................................................................................................................ 71
**8.06 Automatic Rollover** ................................................................................................................................. **72**
   (a) Automatic Rollover requirements ....................................................................................................... 72
   (b) Involuntary Cash-Out Distribution .................................................................................................... 72
   (c) Treatment of Rollover Contributions .................................................................................................. 72
**8.07 Distribution Upon Termination of Employment** ................................................................................... **72**
   (a) Account Balance not exceeding $5,000 ............................................................................................... 72
   (b) Account Balance exceeding $5,000 ..................................................................................................... 72
**8.08 Distribution Upon Death** ......................................................................................................................... **72**
   (a) Death after commencement of benefits ............................................................................................... 72
   (b) Death before commencement of benefits ............................................................................................ 72
   (c) Determining a Participant's Beneficiary ............................................................................................. 73
**8.09 In-Service Distributions** .......................................................................................................................... **74**
   (a) After-Tax Contributions and Rollover Contributions ......................................................................... 74
   (b) Employer Contributions ..................................................................................................................... 74
   (c) Salary Deferrals, QNECs, and Safe Harbor Contributions .................................................................. 75
   (d) Penalty-free withdrawals for individuals called to active duty ............................................................ 75
   (e) Hardship distribution .......................................................................................................................... 75
   (f) Qualified Distributions for Retired Public Safety Officers .................................................................. 77
**8.10 Sources of Distribution** ............................................................................................................................ **77**
   (a) Exception for Hardship withdrawals ................................................................................................... 77
   (b) Roth Deferrals .................................................................................................................................... 77
   (c) In-kind distributions ........................................................................................................................... 78
**8.11 Required Minimum Distributions** ........................................................................................................... **78**
**8.12 Correction of Plan Defects** ...................................................................................................................... **78**

**SECTION 9**
**JOINT AND SURVIVOR ANNUITY REQUIREMENTS**

**9.01 Application of Joint and Survivor Annuity Rules** ................................................................................ **79**
   (a) Election to apply Joint and Survivor Annuity Requirements ............................................................... 79
   (b) Exception to the Joint and Survivor Annuity Requirements ................................................................ 79
   (c) Administrative procedures .................................................................................................................. 79
**9.02 Pre-Death Distribution Requirements** ................................................................................................... **79**
   (a) Qualified Joint and Survivor Annuity (QJSA) .................................................................................... 79
   (b) Qualified Optional Survivor Annuity .................................................................................................. 79
   (c) Notice requirements ............................................................................................................................ 79
   (d) Annuity Starting Date ......................................................................................................................... 80
**9.03 Distributions After Death** ........................................................................................................................ **80**
   (a) Qualified Preretirement Survivor Annuity (QPSA) ............................................................................. 80
   (b) Notice requirements ............................................................................................................................ 80
**9.04 Qualified Election** ..................................................................................................................................... **81**
   (a) QJSA .................................................................................................................................................. 81
   (b) QPSA .................................................................................................................................................. 81
   (c) Identification of surviving Spouse ...................................................................................................... 81

**SECTION 10**
**INVESTMENT ARRANGEMENTS AND PARTICIPANT ACCOUNTS**

**10.01 Permissible Investment Arrangements** ................................................................................................. **82**
**10.02 Annuity Contract Requirements** ........................................................................................................... **82**
**10.03 Custodial Account Requirements** ........................................................................................................... **82**
**10.04 Participant Accounts** .............................................................................................................................. **82**
**10.05 Value of Participant Accounts** ............................................................................................................... **82**
   (a) Periodic valuation .............................................................................................................................. 82
   (b) Daily valuation .................................................................................................................................. 83

    (c)  Interim valuation ............................................................................................................... 83
10.06  Adjustments to Participant Accounts ........................................................................................... 83
    (a)  Distributions and forfeitures from a Participant's Account ................................................. 83
    (b)  Contributions and forfeitures allocated to a Participant's Account .................................... 83
    (c)  Net income or loss ........................................................................................................... 83
10.07  Procedures for Determining Net Income or Loss ......................................................................... 83
10.08  Investments under the Plan. ......................................................................................................... 83
    (a)  Investment options. ......................................................................................................... 83
    (b)  Individual/Pooled Accounts. ........................................................................................... 83
10.09  Information Sharing. .................................................................................................................... 83
10.10  Participant-directed investments ................................................................................................. 83
    (a)  Limits on participant investment direction ...................................................................... 83
    (b)  Failure to direct investment. ............................................................................................ 83
    (c)  Disclosure requirements. ................................................................................................. 83
    (d)  ERISA §404(c) protection ............................................................................................... 84
10.11  Life Insurance .............................................................................................................................. 83

## SECTION 11
## PLAN ADMINISTRATION AND OPERATION

11.01  Plan Administrator. ...................................................................................................................... 85
11.02  Allocation of Administrative Functions. ....................................................................................... 85
11.03  Administrative and Vendor Addendums ....................................................................................... 83
11.04  Information Provided by a Participant .......................................................................................... 83
11.05  Information Sharing. .................................................................................................................... 83
11.06  Named Fiduciary .......................................................................................................................... 85
11.07  Duties, Powers and Responsibilities of the Plan Administrator ..................................................... 85
    (a)  Delegation of duties, powers and responsibilities ............................................................ 85
    (b)  Specific Plan Administrator responsibilities. ................................................................... 85
11.08  Plan Administration Expenses ..................................................................................................... 86
    (a)  Reasonable Plan administration expenses ....................................................................... 86
    (b)  Plan expense allocation. ................................................................................................... 86
    (c)  Expenses related to administration of former Employee or surviving Spouse .................... 86
11.09  Qualified Domestic Relations Orders (QDROs) ........................................................................... 86
    (a)  In general ........................................................................................................................ 86
    (b)  Definitions related to Qualified Domestic Relations Orders (QDROs) .............................. 86
    (c)  Recognition as a QDRO .................................................................................................. 87
    (d)  Contents of QDRO .......................................................................................................... 87
    (e)  Impermissible QDRO provisions ..................................................................................... 87
    (f)  Immediate distribution to Alternate Payee ....................................................................... 87
    (g)  Fee for QDRO determination ........................................................................................... 87
    (h)  Default QDRO procedure ................................................................................................ 87
11.10  Claims Procedure. ....................................................................................................................... 89
    (a)  Filing a claim. ................................................................................................................. 89
    (b)  Plan Administrator's decision .......................................................................................... 89
    (c)  Review procedure ............................................................................................................ 89
    (d)  Decision on review .......................................................................................................... 89
    (e)  Final review .................................................................................................................... 89
11.11  Operational Rules for Short Plan Years ........................................................................................ 89

## SECTION 12
## CUSTODIAL AGREEMENTS/ANNUITY CONTRACTS

12.01  Creation of Custodial Agreement. ................................................................................................ 91
12.02  Annuity Contracts ....................................................................................................................... 91

## SECTION 13
## PARTICIPANT LOANS

13.01  Availability of Participant Loans ................................................................................................. 92
13.02  Must be Available in Reasonably Equivalent Manner ................................................................... 92
13.03  Loan Limitations ......................................................................................................................... 92
13.04  Limit on Amount and Number of Loans. ...................................................................................... 92
    (a)  Loan renegotiation. .......................................................................................................... 92
    (b)  Participant must be creditworthy. ..................................................................................... 92
13.05  Reasonable Rate of Interest ......................................................................................................... 92
13.06  Adequate Security ....................................................................................................................... 93
13.07  Periodic Repayment .................................................................................................................... 93

     (a)  Unpaid leave of absence ................................................................................................ 93
     (b)  Military leave ............................................................................................................ 93
13.08  Spousal Consent ................................................................................................................ 93
13.09  Designation of Accounts .................................................................................................... 93
13.10  Procedures for Loan Default ............................................................................................. 94
13.11  Termination of Employment ............................................................................................. 94
     (a)  Offset of outstanding loan ........................................................................................ 94
     (b)  Direct Rollover .......................................................................................................... 94
     (c)  Modified loan policy .................................................................................................. 94
13.12  Mergers, Transfers or Direct Rollovers from another Plan/Change in Loan Record Keeper ........... 94
13.13  Amendment of Plan to Eliminate Participant Loans ........................................................... 95

### SECTION 14
### PLAN AMENDMENTS, TERMINATION, MERGERS, EXCHANGES, AND TRANSFERS

14.01  Plan Amendments .............................................................................................................. 96
     (a)  Amendment by the Volume Submitter Sponsor ........................................................ 96
     (b)  Amendment by the Employer ..................................................................................... 96
     (c)  Method of amendment ............................................................................................... 96
     (d)  Reduction of accrued benefit .................................................................................... 96
     (e)  Amendment of vesting schedule ................................................................................ 97
14.02  Amendment to Correct Coverage or Nondiscrimination Violation ...................................... 96
     (a)  Amendment within correction period under Treas. Reg. §1.401(a)(4)-(11)g ............. 97
     (b)  Fail-Safe Coverage Provision .................................................................................... 97
14.03  Plan Termination ............................................................................................................... 98
     (a)  Full and immediate vesting ....................................................................................... 98
     (b)  Distribution upon Plan termination ........................................................................... 98
     (c)  Termination upon merger, liquidation or dissolution of the Employer ....................... 98
     (d)  Missing Participants ................................................................................................... 98
14.04  Merger or Consolidation .................................................................................................... 99
14.05  Contract exchanges within the Plan ................................................................................... 99
14.06  Plan-To-Plan Transfers ..................................................................................................... 99
14.07  Transfers to purchase permissive service credits ............................................................... 99

### SECTION 15
### MISCELLANEOUS

15.01  Exclusive Benefit ............................................................................................................. 101
15.02  Return of Contributions ................................................................................................... 101
15.03  General Compliance with Code §403(b) .......................................................................... 101
15.04  Alienation or Assignment ................................................................................................ 101
15.05  Participants' Rights .......................................................................................................... 101
15.06  Military Service ............................................................................................................... 102
15.07  Annuity Contracts ........................................................................................................... 102
15.08  IRS Levy ......................................................................................................................... 102
15.09  Use of IRS compliance programs ..................................................................................... 102
15.10  Governing Law ................................................................................................................ 102
15.11  Waiver of Notice ............................................................................................................. 102
15.12  Use of Electronic Media .................................................................................................. 102
15.13  Severability of Provisions ................................................................................................ 102
15.14  Binding Effect ................................................................................................................. 102

### SECTION 16
### PARTICIPATING EMPLOYERS

16.01  Participation by Participating Employers .......................................................................... 103
16.02  Participating Employer Adoption Page ............................................................................. 103
     (a)  Application of Plan provisions ................................................................................. 103
     (b)  Plan amendments ..................................................................................................... 103
     (c)  Investment Arrangements ........................................................................................ 103
16.03  Compensation of Related Employers ................................................................................ 103
16.04  Allocation of Contributions and Forfeitures ..................................................................... 103
16.05  Discontinuance of Participation by a Participating Employer ............................................ 103
16.06  Operational Rules for Related Employer Groups .............................................................. 103
16.07  Special rules for Multiple Employer Plans ....................................................................... 104
     (a)  Eligibility requirements ........................................................................................... 104
     (b)  Vesting rules ............................................................................................................ 104
     (c)  Code §415 Limit ...................................................................................................... 104

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 10 of 177   Document 23-6
MTD Page 9

    **(d)**   **Minimum coverage and nondiscrimination testing** ........................................................................................................ **104**
    **(e)**   **Other rules applicable to Multiple Employer Plans** ........................................................................................ **104**

**APPENDIX A**
**ACTUARIAL FACTORS**
**Actuarial Factor Table** ........................................................................................................................................................ **105**

**APPENDIX B–INTERIM AMENDMENT #1**
**ARTICLE 1**
**PURPOSE OF APPENDIX B**
**B-1.01 Adoption by Pre-Approved Plan Sponsor** ................................................................................................................ **106**
**B-1.02 Application** .............................................................................................................................................................. **106**

**ARTICLE II**
**AMENDMENTS APPLICABLE TO SAFE HARBOR 403(B) PLANS**
**B-2.01 Change in Definition for QNEC** ............................................................................................................................... **106**
**B-2.02 Forfeiture Rules for Other Contributions** ............................................................................................................... **106**
**B-2.03 Mid-year Changes to Safe Harbor 403(b) Plans** ...................................................................................................... **106**

**ARTICLE III**
**AMENDMENTS RELATING TO REQUIRED MINIMUM DISTRIBUTIONS REQUIREMENTS**
**B-3.01 Application of the Minimum Distribution Requirements of Code §401(a)(9)** ........................................................... **106**
**B-3.02 General Rules Regarding Minimum Distribution Requirements** ............................................................................... **108**
**B-3.03 Required Minimun Distributions** ............................................................................................................................. **107**
**B-3.04 Death On or After Required Beginning Date or Date Required Annuity Payments Begin** ......................................... **107**
**B-3.05 Death Before Required Beginning Date or Date Required Annuity Payments Begin** ................................................ **108**

**ARTICLE IV**
**AMENDMENTS RELATING TO CLAIMS FOR DISABILITY BENEFITS**
**B-4.01 Claims for Disability Benefits** .................................................................................................................................. **108**
**B-4.02 Revision to Disability Claims Regulations** ................................................................................................................ **108**

**ARTICLE V**
**AMENDMENTS RELATING TO DISASTER RELIEF**
**B-5.01 Relief for Victims of Certain Qualified Natural Disasters** ........................................................................................ **109**
**B-5.02 Qualified Natural Disasters** ..................................................................................................................................... **109**
**B-5.03 General Rules** ........................................................................................................................................................... **109**

© Copyright 2017
Volume Submitter 403(b) Basic Plan Document #08-001

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 11 of 177    Document 23-6

MTD Page 10

# SECTION 1
# PLAN DEFINITIONS

This Section contains definitions for common terms that are used throughout the Plan. All capitalized terms under the Plan are defined in this Section or in the relevant section of the Plan document where such term is used.

**1.01**    **Account.** The separate Account that the Plan Administrator, Custodian or Insurance Company maintains for each Participant, Beneficiary or Alternate Payee under the Plan. A Participant may have any (or all) of the following separate Accounts under the Plan:

- Pre-Tax Deferral Account
- Roth Deferral Account
- Employer Contribution Account
- Matching Contribution Account
- Qualified Nonelective Contribution (QNEC) Account
- Safe Harbor Employer Contribution Account
- Safe Harbor Matching Contribution Account
- QACA Employer Contribution Account
- QACA Matching Contribution Account
- After-Tax Contribution Account
- Mandatory Contribution Account
- Rollover Contribution Account
- Roth Rollover Account
- In-Plan Roth Conversion Account
- Transfer Account

The Plan Administrator will maintain separate Accounts for the vested and non-vested portions of any Employer Contribution Account and Matching Contribution Account and the excess amounts under Code §415.

The Plan Administrator may establish other Accounts, as it deems necessary, for the proper administration of the Plan.

**1.02**    **Account Balance.** Account Balance shall mean a Participant's balances in all of the Accounts that the Plan Administrator, Custodian or Insurance Company maintains for the Participant under any Investment Arrangement under the Plan. The Account Balance includes any part of the Participant's Account that is treated under the Plan as a separate contract to which Code §403(c) (or another applicable Code provision) applies.

**1.03**    **Accumulated Benefit.** The total benefit to which a Participant or Beneficiary is entitled under all Investment Arrangements under the Plan, including all contributions made to the Plan and all associated earnings.

**1.04**    **Actual Contribution Percentage Test (ACP Test).** The special nondiscrimination test that applies to Matching Contributions and/or After-Tax Contributions under the 403(b) Plan.

**1.05**    **Adoption Agreement (AA).** The Adoption Agreement contains the elective provisions that an Employer may complete to supplement or modify the provisions under the Plan. Each adopting Employer must complete and execute the Adoption Agreement. Employers adopting the Plan (other than the Employer that executes the Signature Page of the Adoption Agreement) must execute a Participating Employer Signature Page under the Adoption Agreement. (See Section 16 for rules applicable to adoption by multiple Employers.) An Employer may adopt more than one Adoption Agreement associated with this Plan document. Each executed Adoption Agreement is treated as a separate Plan. All elections the Employer makes under the Adoption Agreement are subject to the terms of the governing Investment Arrangement(s).

**1.06**    **After-Tax Contributions.** Employee Contributions that may be made to the 403(b) Plan by a Participant that are included in the Participant's gross income in the year such amounts are contributed to the Plan and are maintained under a separate After-Tax Contribution Account to which earnings and losses are allocated. (For this purpose, Roth Deferrals are not considered as After-Tax Contributions.)

**1.07**    **Age 50 Catch-Up Contributions.** Salary Deferrals made to the Plan that are in excess of an otherwise applicable Plan or IRS limit and that are made by Participants who are age 50 or over by the end of their taxable years.

**1.08**    **Age 50 Catch-Up Contribution Limit.** The annual limit applicable to Age 50 Catch-Up Contributions.

**1.09**    **Alternate Payee.** A person designated to receive all or a portion of the Participant's benefit pursuant to a QDRO.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 12 of 177   Document 23-6

MTD Page 11

1.10     **Anniversary Years.** An alternative period for measuring Eligibility Computation Periods (under Section 2.03(a)(3)) and Vesting Computation Periods (under Section 7.04). An Anniversary Year is any 12-month period which commences with the Employee's Employment Commencement Date or which commences with the anniversary of the Employee's Employment Commencement Date.

1.11     **Annual Additions.** The amounts taken into account under a defined contribution plan for purposes of applying the limitation on allocations under Code §415. (See Section 5.)

1.12     **Annuity Contract.** A nontransferable group or individual contract as defined in Code §§403(b)(1) and 401(g), established for each Participant by the Employer, or by each Participant individually, that is issued by an insurance company qualified to issue annuities in a State and that includes payment in the form of an annuity.

1.13     **Annuity Starting Date.** The date a Participant (or Beneficiary) commences distribution from the Plan. If a Participant (or Beneficiary) commences distribution with respect to a portion of his/her Account Balance, a separate Annuity Starting Date applies to any subsequent distribution. If distribution is made in the form of an annuity, the Annuity Starting Date may be treated as the first day of the first period for which annuity payments are made.

1.14     **ASC Institute.** The mass submitter of this Volume Submitter Plan as defined in Revenue Procedure 2013-22.

1.15     **Automatic Contribution Arrangement.** An Automatic Contribution Arrangement is a Plan that provides for automatic deferrals for eligible Participants who do not make an affirmative election to defer (or not to defer) under the Plan. The Employer may elect under AA §6A-8 to designate the Plan as an Automatic Contribution Arrangement. If the Employer designates the Plan as an Automatic Contribution Arrangement, the Employer will automatically withhold the amount designated under AA §6A-8 from a Participant's Plan Compensation, unless the Participant completes a Salary Reduction Agreement electing a different deferral amount (including a zero deferral amount).

1.16     **Automatic Rollover.** For Involuntary Cash-Out Distributions (as defined in Section 8.06(b)), the Plan Administrator will make a Direct Rollover to an individual retirement plan (IRA) designated by the Plan Administrator. (See Section 8.06.)

1.17     **Average Contribution Percentage (ACP).** The average of the contribution percentages for the Highly Compensated Group and the Nonhighly Compensated Group, which are tested for nondiscrimination under the ACP Test. (See Section 6.02(a)(1).)

1.18     **Beneficiary.** A person or entity designated by the Participant (or by the terms of the Plan) to receive a benefit under the Plan upon the death of the Participant, as identified under the terms of the Plan or the applicable Investment Arrangement. (See Section 8.08(c) for the applicable rules for determining a Participant's Beneficiaries under the Plan.)

1.19     **Benefiting Participant.** A Participant who receives an allocation of Employer Contributions or forfeitures under the new comparability allocation formula.

1.20     **Break in Service.** The Computation Period (as defined in Section 2 for purposes of eligibility and Section 7 for purposes of vesting) during which an Employee does not complete more than five hundred (500) Hours of Service with the Employer. However, if the Employer elects under the AA to require less than 1,000 Hours of Service to earn a Year of Service for eligibility or vesting purposes, a Break in Service will occur for any Computation Period during which the Employee does not complete more than one-half (1/2) of the Hours of Service required to earn a Year of Service for eligibility or vesting purposes, as applicable. However, if the Elapsed Time method applies under AA §4-3(c) (for purposes of eligibility) or AA §8-5(c) (for purposes of vesting), an Employee will incur a Break in Service if the Employee incurs at least a one year Period of Severance.

1.21     **Cash-Out Distribution.** A total distribution made to a terminated Participant in accordance with Section 8.

1.22     **Church.** An organization described in Code §3121(w)(3)(A) and the Treasury Regulations thereunder, and generally refers to a church, a convention or association of churches, or an elementary, secondary school or seminary that is controlled, operated, or principally supported by a church or a convention or association of churches.

1.23     **Church Plan.** A Plan described in Code §414(e) and ERISA §3(33).

1.24     **Church-Related Organization.** A Church or convention or association of Churches, including an organization described under Code §414(e)(3)(A).

1.25     **Code.** The Internal Revenue Code of 1986, as amended.

1.26     **Code §415 Limitation.** The limit on the amount of Annual Additions a Participant may receive under the Plan during a Limitation Year. (See Section 5.03.)

**1.27** **Code §501(c)(3) Organization.** An organization that is described under Code §501(c)(3) and exempt from tax under Code §501(a).

**1.28** **Collectively Bargained Employee.** An Employee who is included in a unit of Employees covered by a collective bargaining agreement between the Employer and Employee representatives and whose retirement benefits are subject to good faith bargaining. Such Employees may be excluded from the Plan if designated under AA §3-1(b). (See Section 2.02(b)(1) for additional requirements related to the exclusion of Collectively Bargained Employees.)

**1.29** **Compensation Limit.** The Compensation Limit is $265,000, as adjusted for cost-of-living increased in accordance with Code §401(a)(17)(B). In determining the Compensation Limit for any applicable period (the "determination period"), the cost-of-living adjustment in effect for a calendar year applies to any determination period that begins with or within such calendar year.

If a determination period consists of fewer than 12 months, the Compensation Limit for such period is an amount equal to the otherwise applicable Compensation Limit multiplied by a fraction, the numerator of which is the number of months in the short determination period, and the denominator of which is 12. A determination period will not be considered to be less than 12 months merely because compensation is taken into account only for the period the Employee is a Participant. If Salary Deferrals, Matching Contributions, or After-Tax Contributions are separately determined on the basis of specified periods within the determination period (e.g., on the basis of payroll periods), no proration of the Compensation Limit is required with respect to such contributions.

If compensation for any prior determination period is taken into account in determining a Participant's allocations for the current Plan Year, the compensation for such prior determination period is subject to the applicable Compensation Limit in effect for that prior period.

In determining the amount of a Participant's Salary Deferrals, a Participant may defer on Plan Compensation that exceeds the Compensation Limit, provided the total deferrals made by the Participant satisfy the Elective Deferral Dollar Limit and any other limitations under the Plan.

The Compensation Limit applies to Governmental Plans and to Employers that are Non-Qualified Church-Controlled Organizations. The Compensation Limit does not apply to Employers that are Churches or Qualified Church-Controlled Organizations.

For a Governmental Plan, this Section 1.29 will not apply to an eligible Participant to the extent it would reduce the Participant's Plan Compensation taken into account to an amount less than the amount allowed under the Plan as in effect on July 1, 1993, as provided under Treas. Reg. §1.401(a)(17)-1(d)(4)(ii). An "eligible Participant" is a Participant who first became a Participant during a Plan Year beginning before January 1, 1996 (or, if earlier, the first Plan Year in which the Employer amended the Plan to reflect the limitation of Code §401(a)(17)).

**1.30** **Computation Period.** The 12-consecutive month period used for measuring whether an Employee completes a Year of Service for eligibility or vesting purposes.

    **(a)** **Eligibility Computation Period.** The 12-consecutive month period used for measuring Years of Service for eligibility purposes. (See Section 2.03(a)(3).)

    **(b)** **Vesting Computation Period.** The 12-consecutive month period used for measuring Years of Service for vesting purposes. (See Section 7.04.)

**1.31** **Current Year Testing Method.** A method for applying the ACP Test wherein the Matching Contributions and/or After-Tax Contributions taken into account under the ACP Test are based on contributions in the current Plan Year.

**1.32** **Custodial Account.** A separate account established for each Participant by the Employer or by each Participant individually in which Plan contributions or rollovers are held by a bank or a person who satisfies the conditions of Code §401(f)(2), if:

    **(a)** All amounts held in the account are invested in stock of a regulated investment company (as defined in Code §851(a) relating to mutual funds;

    **(b)** The restrictions on distributions under Treas. Reg. §1.403(b)-6(c) are satisfied with respect to the amounts held in the account; and

    **(c)** The assets held in the account cannot be used for, or diverted to, purposes other than for the exclusive benefit of Plan Participants and Beneficiaries.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 14 of 177   Document 23-6

MTD Page 13

**1.33** **Custodian.** The company(ies) that hold Custodial Accounts held under the Plan.

**1.34** **Denominational Service.** A person's completed years and months in the paid employment of a Church or convention or association of churches with which the Employer is associated, and/or in the paid employment of an agency or organization that is exempt from tax under Code §501 and that is controlled by or associated with the church or convention or association of churches with which the Employer is associated. Denominational Service also includes all years of service by a duly ordained, commissioned, or licensed Minister of a Church.

**1.35** **Determination Year.** The Plan Year for which an Employee's status as a Highly Compensated Employee is being determined.

**1.36** **Direct Rollover.** A rollover, at the Participant's direction, of all or a portion of the Participant's vested Account Balance directly to an Eligible Retirement Plan. (See Section 8.05.)

**1.37** **Disabled.** Unless provided otherwise under AA §9-4(b) or under the terms governing the applicable Investment Arrangement, an individual is considered Disabled for purposes of applying the provisions of this Plan if the individual is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. The permanence and degree of such impairment shall be supported by medical evidence. The Plan Administrator may establish reasonable procedures for determining whether a Participant is Disabled.

**1.38** **Dual Status Code §501(c)(3)/Governmental Organization.** A governmental organization that also is recognized as a tax-exempt under Code §501(c)(3). A Plan that is established by a Dual Status Code §501(c)(3)/Governmental Organization is considered a Governmental Plan.

**1.39** **Early Retirement Age.** The age and/or Years of Service set forth in AA §7-2. Early Retirement Age may be used to determine distribution rights and/or vesting rights. Unless otherwise described under the Adoption Agreement, if a Participant separates from service before satisfying the age requirement for early retirement, but has satisfied the service requirement, the Participant will be entitled to elect an early retirement benefit upon satisfaction of such age requirement. The Plan is not required to have an Early Retirement Age.

**1.40** **Effective Date.** The date this Plan, including any restatement or amendment of this Plan, is effective. (See the Employer Signature Page of the Adoption Agreement.)

**1.41** **Elapsed Time.** A special method for crediting service for eligibility or vesting. (See Section 2.03(a)(6) for more information on the Elapsed Time method of crediting service for eligibility purposes and Section 7.03(b) for more information on the Elapsed Time method of crediting service for vesting purposes.)

**1.42** **Elective Deferral Dollar Limit.** The maximum amount of Elective Deferrals a Participant may make for any calendar year. (See Section 5.02.)

**1.43** **Electing Church.** A Church, a QCCO or a NQCCO or any other eligible organization that has elected under Treasury Regulation §1.410(d)-1(c) to be covered by certain provisions of the Code and ERISA as if the Plan were not a Church Plan. Once a Church makes the election under Treasury Regulation §1.410(d)-1(c), the election generally is irrevocable.

**1.44** **Elective Deferrals.** A Participant's Elective Deferrals is the sum of all Salary Deferrals and other contributions made pursuant to a Salary Reduction Agreement under a plan described under Code §401(k), a SARSEP described in Code §408(k)(6), a SIMPLE IRA plan described in Code §408(p), a plan described under Code §501(c)(18) (i.e., certain trusts created before June 25, 1959 funded by employee contributions), and a custodial account or other arrangement described in Code §403(b). A contribution that is made pursuant to an Employee's one-time irrevocable election made on or before the Employee's first becoming eligible to participate under the Plan and a contribution made as a condition of employment that reduces an Employee's compensation is not an Elective Deferral and is treated as an Employer Contribution to the Plan.

**1.45** **Eligible Automatic Contribution Arrangement (EACA).** An Automatic Contribution Arrangement that satisfies the requirements for an EACA under Section 3.03(c)(1).

**1.46** **Eligible Employee.** An Employee who is not excluded from participation under Section 2.02 of the Plan or AA §3-1.

**1.47** **Eligible Employer.** An Eligible Employer is an organization that is qualified to maintain a plan under Code §403(b) as provided under Treas. Reg. §1.403(b)-2(b)(8), including:

**(a)** A State, but only with respect to an Employee performing services for a public school; or

**(b)** A Code §501(c)(3) Organization with respect to any Employee of the Code §501(c)(3) Organization; or

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 15 of 177   Document 23-6

MTD Page 14

**(c)**     A Dual Status Code §501(c)(3)/Governmental Organization; or

**(d)**     Any employer of a Minister described in Code §414(e)(5)(A), but only with respect to the minister.

**1.48**     **Eligible Retirement Plan.** A retirement plan or IRA that may receive a rollover contribution, including: a qualified plan described in Code §401(a); an individual retirement account described in Code §408(a); an individual retirement annuity described in Code §408(b); an annuity plan described in Code §403(a); an annuity contract described in Code §403(b); a simple retirement account to the extent rollovers are allowed under Code §408(p)(1)(B); or an eligible plan under Code §457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan.

**1.49**     **Eligible Rollover Distribution.** An amount distributed from the Plan that is eligible for rollover to an Eligible Retirement Plan.

**1.50**     **Employee.** An Employee is any individual employed by the Employer (including any Related Employers) as a common law employee. An independent contractor is not an Employee. An Employee is not eligible to participate under the Plan if the individual is not an Eligible Employee under Section 2.02.

For a Public School, Employee means each individual who is a common law employee of a State performing services for a Public School of the State, including an individual who is appointed or elected. This definition is not applicable unless the Employee's compensation for performing services for a Public School is paid by the State. Further, a person occupying an elective or appointive public office is not an Employee performing services for a Public School unless such office is one to which an individual is elected or appointed only if the individual has received training, or is experienced, in the field of education. A public office includes any elective or appointive office of a State.

For a Church or Church-Related Organization, Employee shall also include a minister described under Code §414(e)(3)(B), a self-employed minister described in Code §414(e)(5)(A)(i)(I) of the Code or a minister described in Code §414(e)(5)(A)(i)(II).

**1.51**     **Employer.** Except as otherwise provided, Employer means the Employer that adopts this Plan and any Related Employer.

Solely for purposes of eligibility to make contributions to the Plan, the term Employer also includes any entity that is an Eligible Employer within the meaning of §1.403(b)-2(b)(8) of the Treasury Regulations through which Participants are eligible to accrue Denominational Service and which makes contributions to the Plan for the benefit of Participants.

**1.52**     **Employer Contributions.** Contributions the Employer makes pursuant to AA §6, including any QNECs the Employer makes and any Safe Harbor Employer Contributions the Employer makes pursuant to AA §6C. Employer Contributions also include a contribution that is made pursuant to an Employee's onetime irrevocable election made on or before the Employee's first becoming eligible to participate under the Plan and a contribution made as a condition of employment that reduces an Employee's compensation.

**1.53**     **Employer Pick-up Contributions.** Contributions to a qualified plan under Code §401(a) made by the Employee and picked up by the Employer in accordance with Code §414(h)(2). Employer Pick-Up Contributions are not allowed under a Code §403(b) plan.

**1.54**     **Employment Commencement Date.** The date the Employee first performs an Hour of Service for the Employer.

**1.55**     **Entry Date.** The date on which an Employee becomes a Participant upon satisfying the Plan's minimum age and service conditions.

**1.56**     **Equivalency Method.** An alternative method for crediting Hours of Service for purposes of eligibility and vesting.

**1.57**     **ERISA.** The Employee Retirement Income Security Act of 1974, as amended.

**1.58**     **Excess Aggregate Contributions.** Amounts which are distributed to correct the ACP Test.

**1.59**     **Excess Amount.** Amounts which exceed the Code §415 Limitation.

**1.60**     **Excess Deferrals.** Elective Deferrals that exceed the Elective Deferral Dollar Limit (as defined in Section 5.02).

**1.61**     **Fail-Safe Coverage Provision.** A correction provision that permits the Plan to automatically correct a coverage violation resulting from the application of a last day of employment or Hours of Service allocation condition.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 16 of 177   Document 23-6

MTD Page 15

**1.62**     **Favorable IRS Letter.** An advisory letter issued by the IRS to a Volume Submitter Sponsor as to the qualified status of a Volume Submitter Plan.

**1.63**     **[Reserved]**

**1.64**     **Governmental Plan.** A Governmental Plan is a Plan established and maintained ranked for its Employees by the U.S. government, any State or political subdivision of a State, or any Federal or State agency or instrumentality, as defined under Code §414(d). A Governmental Plan is exempt from certain Code requirements and generally is exempt from the Title I requirements of ERISA.

**1.65**     **Hardship.** A heavy and immediate financial need which meets the requirements of Section 8.09(e).

**1.66**     **Highly Compensated.** An Employee or Participant is Highly Compensated for a Plan Year if he/she has Total Compensation above the compensation limit. For purposes of this determination, an individual is Highly Compensated if, at any time during the Lookback Year, such individual has Total Compensation from the Employer in excess of $120,000 (for 2016 and as adjusted for future years) and, if elected under AA §11-2, is in the Top Paid Group, as defined in subsection (d) below. The $120,000 amount is adjusted at the same time and in the same manner as under Code §415(d), except that the base period is the calendar quarter ending September 30, 1996. The definition of Highly Compensated only applies if the Plan is subject to the nondiscrimination rules under Code §401(a)(4).

In determining whether an Employee or Participant is Highly Compensated, the following definitions apply:

    **(a)**     **Determination Year.** The Determination Year is the Plan Year for which the Highly Compensated determination is being made.

    **(b)**     **Lookback Year.** The Lookback Year is the 12-month period immediately preceding the Determination Year. If the Plan Year is not the calendar year, the Employer may elect in AA §11-2(b) to use the calendar year that begins in the Lookback Year. This election to use the calendar year as the Lookback Year only applies for purposes of applying the compensation limit under this subsection 1.66.

    **(c)**     **Total Compensation.** Total Compensation as defined under Section 1.137.

    **(d)**     **Top Paid Group.** The Top Paid Group is the top 20% of Employees ranked by Total Compensation. In determining the Top Paid Group, the Employer may use any reasonable method of rounding or tie-breaking. In determining the number of Employees in the Top Paid Group, the Employer may exclude Employees described in Code §414(q)(5) or applicable regulations.

**1.67**     **Highly Compensated Group.** The group of Highly Compensated Employees who are included in the ACP Test.

**1.68**     **Hour of Service.** Each Employee of the Employer will receive credit for each Hour of Service he/she works for purposes of applying the eligibility, vesting and allocation rules under the Plan. An Employee will not receive credit for the same Hour of Service under more than one category listed below.

    **(a)**     **Performance of duties.** Hours of Service include each hour for which an Employee is paid, or entitled to payment, for the performance of duties for the Employer. These hours will be credited to the Employee for the computation period in which the duties are performed.

    **(b)**     **Nonperformance of duties.** Hours of Service include each hour for which an Employee is paid, or entitled to payment, by the Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence. No more than 501 hours of service will be credited under this paragraph for any single continuous period (whether or not such period occurs in a single Computation Period). Hours under this paragraph will be calculated and credited pursuant to §2530.200b-2 of the Department of Labor Regulations which is incorporated herein by this reference.

    **(c)**     **Back pay award.** Hours of Service include each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer. The same Hours of Service will not be credited both under subsection (a) or subsection (b), as the case may be, and under this subsection (c). These hours will be credited to the Employee for the Computation Period(s) to which the award or agreement pertains rather than the Computation Period in which the award, agreement or payment is made.

    **(d)**     **Related Employers.** Hours of Service will be credited for employment with any Related Employer.

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 17 of 177    Document 23-6

MTD Page 16

(e)    **Maternity/paternity leave.** Solely for purposes of determining whether a Break in Service has occurred in a Computation Period, an individual who is absent from work for maternity or paternity reasons will receive credit for the Hours of Service which would otherwise have been credited to such individual but for such absence, or in any case in which such hours cannot be determined, 8 Hours of Service per day of such absence. For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence (1) by reason of the pregnancy of the individual, (2) by reason of a birth of a child of the individual, (3) by reason of the placement of a child with the individual in connection with the adoption of such child by such individual, or (4) for purposes of caring for such child for a period beginning immediately following such birth or placement. The Hours of Service credited under this paragraph will be credited (1) in the Computation Period in which the absence begins if the crediting is necessary to prevent a Break in Service in that period, or (2) in all other cases, in the following Computation Period.

1.69    **In-Plan Roth Conversion Account.** An Account to hold amounts that are converted to Roth Deferrals as part of an In-Plan Roth Conversion.

1.70    **Indian Tribal Government.** The governing body of any tribe, band, community, village, or group of Indians, or (if applicable) Alaska Natives, which is determined by the Secretary of Treasury, after consultation with the Secretary of Interior, to exercise governmental functions, as defined under Code §7701(a)(40) and regulations thereunder.

1.71    **Insurance Company.** A life insurance company that issues an Annuity Contract on behalf of a Participant under the Plan.

1.72    **Integration Level.** The amount used for purposes of applying the permitted disparity allocation formula. The Integration Level is the Taxable Wage Base, unless the Employer designates a different amount under the Adoption Agreement.

1.73    **Investment Arrangement.** An Annuity Contract or Custodial Account that satisfies the requirements of §1.403(b)-3 of the Treasury Regulations and that is issued or established for funding amounts held under the Plan. A list of Vendors of Investment Arrangements approved for use under the Plan, including sufficient information to identify the approved Investment Arrangements, shall be maintained in an appendix to the Plan. The terms governing each Investment Arrangement under the Plan, excluding those terms that are inconsistent with the Plan or Code §403(b), are hereby incorporated by reference in the Plan. In the event of any conflict between the terms of the Plan and the terms of any associated Investment Arrangement, the terms of the Plan shall govern.

1.74    **Limitation Year.** The measuring period for determining whether the Plan satisfies the Code §415 Limitation under Section 5 of the Plan.

1.75    **Lookback Year.** The 12-month period immediately preceding the current Plan Year during which an Employee's status as Highly Compensated Employee is determined.

1.76    **Mandatory Contribution.** A contribution made as a condition of employment that reduces an Employee's compensation, pursuant to an employment contract or otherwise, in order for the Employee to participate in the 403(b) Plan. Mandatory Contributions are not Salary Deferrals and are treated as Employer Contributions to the Plan. These contributions will be maintained under a separate Mandatory Contribution Account to which earnings and losses are allocated.

1.77    **Matching Contributions.** Matching Contributions are contributions made by the Employer on behalf of a Participant on account of Salary Deferrals or After-Tax Contributions made by such Participant, as designated under AA §6B or AA §6D (if applicable). Matching Contributions also include any Safe Harbor/QACA Safe Harbor Matching Contributions the Employer makes pursuant to AA §6C (if applicable).

A contribution will not be considered a Matching Contribution if such contribution is contributed before the underlying Salary Deferral or After-Tax Contribution election is made or before an Employee performs the services with respect to which the underlying Salary Deferrals or After-Tax Contributions are made (or when the cash that is subject to such election would be currently available, if earlier). A Matching Contribution will not be treated as failing to satisfy the requirements of this paragraph merely because contributions are occasionally made before the Employee performs the services with respect to which the underlying Salary Deferral or After-Tax Contribution election is made (or when the cash that is subject to such elections would be currently available, if earlier) in order to accommodate bona fide administrative considerations (and such amounts are not paid early for the principal purpose of accelerating deductions).

1.78    **Maximum Disparity Rate.** The maximum amount that may be allocated with respect to Excess Compensation under the permitted disparity allocation formula.

1.79    **Minimum Gateway Contribution.** The minimum allocation described under the new comparability allocation method that must be provided to each Benefiting Participant in order to use cross-testing to demonstrate compliance with the nondiscrimination requirements under Treas. Reg. §1.401(a)(4)-8.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 18 of 177   Document 23-6

MTD Page 17

1.80    **Minister.** A minister as described in Code §414(e)(5)(A), which includes a duly ordained, commissioned or licensed minister of a Church, if, in connection with the exercise of their ministry; a self-employed minister within the meaning of Code §401(c)(1)(B); or a minister employed by an organization other than an organization described in Code §501(c)(3) and with respect to which the minister shares common religious beliefs. If applicable, a Minister may use the special rules of Code §107 and related IRS guidance relating to housing allowances, including the ability of retired Ministers to exclude from income amounts distributed from the Plan used as a housing allowance.

1.81    **Multiple Employer Plan.** A Plan that covers Employees of an Employer that does not qualify as a Related Employer. To be a Multiple Employer Plan, an unrelated Employer must execute a Participating Employer Adoption Page. (See Section 16 for special rules that apply to Multiple Employer Plans.)

1.82    **Mutual Fund.** A "regulated investment company" within the meaning of Code §851(a).

1.83    **Nonhighly Compensated.** An Employee or Participant who is not a Highly Compensated Employee.

1.84    **Nonhighly Compensated Group.** The group of Nonhighly Compensated Employees included in the ACP Test.

1.85    **Non-Qualified Church-Controlled Organization (NQCCO).** A church-controlled, tax-exempt organization described in Code §501(c)(3) that does not meet the definition of a Qualified Church-Controlled Organization (QCCO).

1.86    **Nonvested Participant Break in Service.** Break in Service rule that applies for eligibility and vesting under Sections 2.07(b) and 7.01(c).

1.87    **Normal Retirement Age.** The age selected under AA §7-1. If a Participant's Normal Retirement Age is determined wholly or partly with reference to an anniversary of the date the Participant commenced participation in the Plan and/or the Participant's Years of Service, Normal Retirement Age is the Participant's age when such requirements are satisfied. If the Employer enforces a mandatory retirement age, the Normal Retirement Age is the lesser of that mandatory age or the age specified in the Adoption Agreement.

1.88    **Part-Time Employee.** Unless designated otherwise under AA §3-1, a Part-Time Employee is an Employee who is normally scheduled to work 20 or fewer hours per week. Notwithstanding the foregoing, if the Employer is a post-secondary educational institution, an Employee who is a teacher shall not be considered a Part-Time Employee if he/she normally has classroom hours of one-half or more of the number of classroom hours designated by the Employer as constituting full-time employment, provided that such designation is reasonable under all of the facts and circumstances.

1.89    **Participant.** Except as provided under AA §3-1, a Participant is an Employee (or former Employee) who has satisfied the conditions for participating under the Plan, as described in Section 2.03 and AA §4-1. A Participant also includes any Employee (or former Employee) who has an Account Balance under the Plan, including an Account Balance derived from a rollover or transfer from another plan or IRA. A Participant is entitled to share in an allocation of contributions or forfeitures under the Plan for a given year only if the Participant is an Eligible Employee as defined in Section 2.02, and satisfies the applicable allocation conditions.

       An Employee is treated as a Participant with respect to Salary Deferrals and After-Tax Contributions once the Employee has satisfied the eligibility conditions under AA §4-1 for making such contributions, even if the Employee chooses not to actually make such contributions to the Plan. An Employee is treated as a Participant with respect to Matching Contributions once the Employee has satisfied the eligibility conditions under AA §4-1 for receiving such contributions, even if the Employee does not receive a Matching Contribution because of the Employee's failure to make contributions eligible for the Matching Contribution.

1.90    **Participating Employer.** An Employer that adopts this Plan by executing the Participating Employer Adoption Page under the Adoption Agreement. (See Section 16 for the rules applicable to contributions made by a Participating Employer.)

1.91    **Period of Severance.** A continuous period of time during which the Employee is not employed by the Employer and which is used to determine an Employee's Participation under the Elapsed Time method.

1.92    **Plan.** The Plan is the retirement plan established or continued by the Employer for the benefit of its Employees under this Plan document. The Employer must be an Eligible Employer to establish the Plan and the Plan must satisfy the requirements of Treas. Reg. §1.403(b)-3. The Plan consists of the basic plan document and the elections made under the Adoption Agreement. The basic plan document is the portion of the Plan that contains the non-elective provisions. The Employer may supplement or modify the basic plan document through its elections in the Adoption Agreement or by separate governing documents that are expressly authorized by the Plan. If the Employer adopts more than one Adoption Agreement under this Plan, then each executed Adoption Agreement represents a separate Plan. This Plan is a Volume Submitter Plan under Revenue Procedure 2013-22.

**1.93**     <u>**Plan Administrator.**</u> The Plan Administrator is the person designated to be responsible for the administration and operation of the Plan. Unless otherwise designated by the Employer, the Plan Administrator is the Employer. If another Employer has executed a Participating Employer Adoption Page, the Employer referred to in this Section is the Employer that executes the Employer Signature Page of the Adoption Agreement. Functions of the Plan Administrator, including those described in the Plan, may be performed by Vendors, designated agents of the Plan Administrator, or others (including Employees a substantial portion of whose duties is administration of the Plan) pursuant to the terms of Investment Arrangements, written service agreements or other documents under the Plan. For this purpose, an Employee is treated as having a substantial portion of his or her duties devoted to administration of the Plan if the Employee's duties with respect to administration of the Plan are a regular part of the Employee's duties and the Employee's duties relate to Participants and Beneficiaries generally (and the Employee only performs those duties for himself or herself as a consequence of being a Participant or Beneficiary).

**1.94**     <u>**Plan Compensation.**</u> Plan Compensation is Total Compensation, as modified under AA §5-3, which is actually paid to an Employee during the determination period. In determining Plan Compensation, the Employer may elect under AA §5-3(b) to exclude all Elective Deferrals (as defined in Section 1.44), pre-tax contributions to a Code §125 cafeteria plan or a Code §457 plan, and qualified transportation fringes under Code§132(f)(4). In addition, the Employer may elect under AA §5-3 to exclude other designated elements of compensation.

Plan Compensation generally includes amounts an Employee earns with a Participating Employer and amounts earned with a Related Employer (even if the Related Employer has not executed a Participating Employer Adoption Page under the Adoption Agreement). However, the Employer may elect under AA §5-3 to exclude all amounts earned with a Related Employer that has not executed a Participating Employer Adoption Page.

Generally, the Plan may use any definition of Plan Compensation for allocation purposes, even if such definition does not meet the requirements of Code §414(s). However, if Plan Compensation is also used as Testing Compensation for purposes of demonstrating compliance with the nondiscrimination requirements under Code §401(a)(4) or the ACP Tests, or if the contribution formulas under the Plan is designed to satisfy a nondiscrimination safe harbor, and compensation elements are excluded from the definition of Plan Compensation that do not meet the safe harbor exclusions set forth in Treas. Reg. §1.414(s)-1, additional nondiscrimination testing may be required.

In no case may Plan Compensation for any Participant exceed the Compensation Limit.

    **(a)**     <u>**Application to safe harbor formulas.**</u> If the Plan provides for Employer Contributions using the permitted disparity allocation method or if the Plan is a Safe Harbor Plan, the compensation used for Plan Compensation must meet a definition of compensation as set forth in Treas. Reg. §1.414(s)-1. Failure to use a definition of Plan Compensation that satisfies the nondiscrimination requirements under Treas. Reg. §1.414(s)-1 will cause the Plan to fail to qualify for any contribution safe harbors, such as the permitted disparity allocation or Safe Harbor Plan safe harbors. To ensure the definition of Plan Compensation satisfies a nondiscriminatory definition under Code §414(s), the Employer may elect to exclude only compensation elements that meet the safe harbor exclusions set forth in Treas. Reg. §1.414(s)-1. Alternatively, the Employer may elect under AA§5-3(l) or under AA §6C-4, as applicable, to restrict the application of any compensation adjustments only to Highly Compensated Employees.

If the Employer elects to apply a definition of Plan Compensation under a Safe Harbor Plan that does not satisfy a nondiscriminatory definition under Code §414(s) for a given Plan Year, the Employer will be deemed to have elected to use Total Compensation for purposes of determining the Safe Harbor Contribution under the Plan for such Plan Year. In addition, any election to exclude compensation above a specific dollar amount under AA §5-3(d) or under AA §6C-4(a)(6) will not apply for purposes of determining Safe Harbor Contributions for Nonhighly Compensated Employees. The Employer may elect to restrict any of the exclusions under AA §5-3 or AA §6C-4 solely to Highly Compensated Employees by designating such restriction in AA §5-3(l) or AA §6C-4(b), if applicable.

The Employer may elect to exclude specific types of compensation for purposes of determining the amount that may be made as Salary Deferrals under a Safe Harbor Plan, provided that each eligible Nonhighly Compensated Employee is permitted to make Salary Deferrals under a definition of Plan Compensation that would be a reasonable definition of compensation within the meaning of Treas. Reg. §1.414(s)-1(d)(2). Thus, the definition of Plan Compensation from which Salary Deferrals may be made is not required to satisfy the nondiscrimination requirement of §1.414(s)-1(d)(3).

    **(b)**     <u>**Determination period.**</u> Unless designated otherwise under AA §5-4, Plan Compensation is determined based on the Plan Year. Alternatively, the Employer may elect under AA §5-4 to determine Plan Compensation on the basis of the calendar year ending in the Plan Year or any other 12-month period ending in the Plan Year. If the determination period is the calendar year or other 12-month period ending in the Plan Year, for any Employee whose date of hire is less than 12 months before the end of the designated 12-month period, Plan Compensation will be determined over the Plan Year.

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 20 of 177    Document 23-6

MTD Page 19

**(c)** **Partial period of participation.** If an Employee is a Participant for only part of a Plan Year, Plan Compensation may be determined over the entire Plan Year or over the period during which such Employee is a Participant. In determining whether an Employee is a Participant for purposes of applying this subsection, the Employee's status will be determined solely with respect to the contribution type for which the definition of Plan Compensation is being determined. To the extent this subsection applies to Salary Deferrals, any limitations on the amount of Salary Deferrals permitted under AA §6A-2 will be determined using the definition of Plan Compensation as determined under AA §5-4. However, this subsection does not affect the amount of Salary Deferrals elected under the Salary Reduction Agreement which is generally determined for each separate payroll period. Plan Compensation does not include any amounts earned for any period while an individual is not an Eligible Employee.

**1.95** **Plan Year.** The 12-consecutive month period designated under AA §2 on which the records of the Plan are maintained. If the Plan Year is amended to create a Short Plan Year or if a new Plan has an initial Short Plan Year, the Employer may document such Short Plan Year under AA §2-4(c).

**1.96** **Predecessor Employer.** An employer that previously employed the Employees of the Employer.

**1.97** **Pre-Tax Deferrals.** Pre-tax Deferrals are a Participant's Salary Deferrals that are not includible in the Participant's gross income at the time deferred.

**1.98** **Prior Year Testing Method.** A method for applying the ACP Test.

**1.99** **Public School.** A State-sponsored educational organization described under Code §170(b)(1)(A)(ii). Public Schools include educational organizations sponsored by Indian Tribal Governments.

**1.100** **QACA Safe Harbor Contribution.** A contribution authorized under AA §6C-2 that allows the Plan to qualify as a Qualified Automatic Contribution Arrangement (QACA). A QACA Safe Harbor Contribution may be a QACA Safe Harbor Matching Contribution or a QACA Safe Harbor Employer Contribution.

**1.101** **QACA Safe Harbor Employer Contribution.** An Employer Contribution that satisfies the requirements of a QACA Safe Harbor Contribution.

**1.102** **QACA Safe Harbor Matching Contribution.** A Matching Contribution that satisfies the requirements of a QACA Safe Harbor Contribution.

**1.103** **Qualified Automatic Contribution Arrangement (QACA).** A 403(b) plan that satisfies the conditions under Section 6.04(b).

**1.104** **Qualified Church-Controlled Organization (QCCO).** An organization described in Code §3121(w)(3)(B) and the Treasury Regulations thereunder, and generally refers to any church controlled, tax-exempt organization described in Code§501(c)(3) of the Internal Revenue Code, other than an organization which:

**(a)** Offers goods, services, or facilities for sale, other than on an incidental basis, to the general public, other than goods, services, or facilities which are sold at a nominal charge which is substantially less than the cost of providing such goods, services, or facilities; and

**(b)** Normally receives more than 25% of its support from either: (1) governmental sources, or (2) receipts from admissions, sales of merchandise, performance of services, or furnishing of facilities, in activities which are not unrelated trades or businesses, or both.

**1.105** **Qualified Domestic Relations Order (QDRO).** A domestic relations order that provides for the payment of all or a portion of the Participant's benefits to an Alternate Payee and satisfies the requirements under Code §414(p).

**1.106** **Qualified Election.** An election to waive the QJSA or QPSA under the Plan.

**1.107** **Qualified Joint and Survivor Annuity (QJSA).** A QJSA is an immediate annuity payable over the life of the Participant with a survivor annuity payable over the life of the Spouse. If the Participant is not married as of the Annuity Starting Date, the QJSA is an immediate annuity payable over the life of the Participant.

**1.108** **Qualified Nonelective Contribution (QNEC).** An Employer Contribution made by the Employer that satisfies the requirements under Section 3.02(a)(6).

**1.109** **Qualified Organization.** An Eligible Employer that is an educational organization described under Code §170(b)(1)(A)(ii); a hospital, a health and welfare service agency (including a home health service agency) described under Treas. Reg. §1.403(b)-4(c)(3)(ii)(C); a Church-Related Organization; or any organization described under Code §414(e)(3)(B)(ii).

**1.110** **Qualified Preretirement Survivor Annuity (QPSA).** A QPSA is an annuity payable over the life of the surviving Spouse that is purchased using 50% of the Participant's vested Account Balance as of the date of death. The Employer may modify the 50% QPSA level under the AA.

**1.111** **Qualifying Longevity Annuity Contract (QLAC).** An annuity contract that is purchased from an insurance company for an Employee and that satisfies the requirements under Treas. Reg. §1.401(a)(9)-6, Q&A-17.

**1.112** **Reemployment Commencement Date.** The first date upon which an Employee is credited with an Hour of Service following a Break in Service (or Period of Severance, if the Plan is using the Elapsed Time method of crediting service).

**1.113** **Related Employer.** A Related Employer means any entity which is under common control with the Employer under Code §§414(b), (c), (m) or (o). This determination is made consistent with the principles set forth under Treas. Reg.§1.414(c)-5 and any other guidance issued by the IRS relating to control groups of tax-exempt organizations or Electing Churches. If the Employer is a Public School, a Church, or a QCCO, the Employer shall determine which entities are Related Employers based on a reasonable, good faith standard and taking into account the special rules applicable under IRS Notice 89-23, 1989-1 C.B. 654. For purposes of applying the provisions under this Plan, the Employer and any Related Employers are treated as a single Employer, unless specifically stated otherwise. (See Section 16.06 for operating rules that apply when the Employer is a member of a Related Employer group. Also, see Section 16 for rules regarding participation of Employees of Related Employers.)

**1.114** **Retirement Income Account.** A defined contribution program established and maintained by a Church-Related Organization to provide benefits under Code §403(b) for its Employees and beneficiaries as described under Treas. Reg. §1.403(b)-9.

**1.115** **Rollover Contribution.** A contribution made by an Employee to the Plan attributable to an Eligible Rollover Distribution (as defined in Section 8.05(a)(1)) from another retirement plan or IRA.

**1.116** **Roth Deferrals.** Roth Deferrals are Salary Deferrals that are includible in the Participant's gross income at the time deferred and have been irrevocably designated as Roth Deferrals in the Participant's Salary Reduction Agreement. A Participant's Roth Deferrals will be maintained in a separate Account containing only the Participant's Roth Deferrals and gains and losses attributable to those Roth Deferrals.

**1.117** **Safe Harbor Plan.** A 403(b) plan that satisfies the conditions for a Safe Harbor 403(b) Plan, including a QACA, under Section 6.04.

**1.118** **Safe Harbor Contribution.** A contribution authorized under AA §6C that allows the Plan to qualify as a Safe Harbor Plan. A Safe Harbor Contribution may be a Safe Harbor Matching Contribution, a Safe Harbor Employer Contribution, a QACA Safe Harbor Matching Contribution or a QACA Safe Harbor Employer Contribution.

**1.119** **Safe Harbor Employer Contributions.** An Employer Contribution that satisfies the requirements under Section 6.04(a).

**1.120** **Safe Harbor Matching Contributions.** A Matching Contribution that satisfies the requirements under Section 6.04(a).

**1.121** **Salary Deferrals.** Amounts contributed to the Plan at the election of the Participant, in lieu of cash compensation, which are made pursuant to a Salary Reduction Agreement or other deferral mechanism. Salary Deferrals include Roth Deferrals and Pre-Tax Deferrals. Salary Deferrals shall not include any amounts properly distributed as an Excess Annual Addition under Code §415. An Employee's Salary Deferrals are treated as employer contributions for all purposes under this Plan, except as otherwise provided under the Code or Treasury regulations. A contribution that is made pursuant to an Employee's one-time irrevocable election made on or before the Employee's first becoming eligible to participate under the Plan or a Mandatory Contribution is not a Salary Deferral and is treated as an Employer Contribution to the Plan.

**1.122** **Salary Reduction Agreement.** A written agreement between a Participant and the Employer, whereby the Participant elects to have a specific percentage or dollar amount withheld from his/her Plan Compensation and the Employer agrees to contribute such amount into the §403(b) Plan. The Salary Reduction Agreement shall take effect as soon as administratively practicable following the date indicated under the Employee's election.

**1.123** **Seasonal Employee.** An Employee who normally works on a full-time basis less than five months during any year.

**1.124** **Section 403(b) Contract.** A contract that satisfies the requirements of Treas. Reg. §1.403(b)-3.

**1.125** **Severance from Employment.** Severance from Employment occurs when the Employee ceases to be employed by the Employer maintaining the Plan or a Related Employer that is eligible to maintain a §403(b) plan under §1.403(b)-2(b)(8) of the Treasury Regulations (an "Eligible Employer"), even if the Employee remains employed with another entity that is a Related

MTD Page 21

Employer where either (a) such Related Employer is not an eligible employer or (b) the Employee is employed or in a capacity that is not employment with an Eligible Employer.

**1.126** **Short Plan Year.** Any Plan Year that is less than 12 months long, either because of the amendment of the Plan Year, or because the Effective Date of a new Plan is less than 12 months prior to the end of the first Plan Year. (See Section 11.11 for the operational rules that apply if the Plan has a Short Plan Year.)

**1.127** **Special Catch-Up Contributions.** A special catch-up contribution allowed for certain Employees of Qualified Organizations as permitted under Treas. Reg. §1.403(b)-4(c)(3).

**1.128** **Spouse.** Subject to any additional guidance by the IRS or other agency or court, a Spouse is any individual who is lawfully married to the Participant under a state or foreign jurisdiction. However, a former Spouse of the Participant will be treated as the Spouse or surviving Spouse and any current Spouse will not be treated as the Spouse or surviving Spouse to the extent provided under a valid QDRO.

**1.129** **State.** A State, a political subdivision of a State, or any agency or instrumentality of a State.

**1.130** **Student Employee.** A student enrolled and regularly attending classes at the school, college or university, and performing services for such school, college or university as described in Code §3121(b)(10).

**1.131** **Targeted QNECs.** QNECs that are allocated under the Targeted QNEC allocation method under Section 3.02(a)(6)(ii)(B) (if applicable).

**1.132** **Taxable Wage Base.** The maximum amount of wages taken into account for Social Security purposes. The Taxable Wage Base is used to determine the Integration Level for purposes of applying the permitted disparity allocation formula.

**1.133** **Taxable Year.** The annual accounting period for keeping records and reporting income and expenses. A Taxable Year may be a calendar year - 12 consecutive months beginning January 1 and ending December 31 or a fiscal year - 12 consecutive months ending on the last day of any month except December.

**1.134** **Temporary Employee.** Any Employee performing services under a contractual arrangement with the Employer of two years or less duration. Possible contract extensions may be considered in determining the duration of a contractual arrangement, but only if, under the facts and circumstances, there is a significant likelihood that the Employee's contract will be extended. Future contract extensions are considered significantly likely to occur for purposes of this rule if:

**(a)** on average 80 percent of similarly situated Employees have had bona fide offers to renew their contracts in the immediately preceding two academic or calendar years; or

**(b)** the Employee with respect to whom the determination is being made has a history of contract extensions with respect to his or her current position.

An Employee is not considered a Temporary Employee solely because he or she is included in a unit of Employees covered by a collective bargaining agreement of two years or less duration.

**1.135** **Testing Compensation.** The compensation used for purposes of the nondiscrimination tests under Code §401(a)(4) and the ACP Tests. In determining the Testing Compensation used for purposes of applying the nondiscrimination and ACP Tests, the Plan Administrator is not bound by any elections made under AA §5 with respect to Total Compensation or Plan Compensation under the Plan. Thus, the Plan Administrator may use Total Compensation or any other nondiscriminatory definition of compensation under Code §414(s) and the regulations thereunder. The Plan Administrator may determine on an annual basis (and within its discretion) the components of Testing Compensation, provided such definition is applied consistently to all Participants.

In determining whether a definition of Plan Compensation or Testing Compensation satisfies a nondiscriminatory definition of compensation under Code §414(s), the Plan may use any allowable exclusion under Treas. Reg. §1.414(s)-1. For this purpose, an exclusion of any of the following compensation items is deemed to qualify as a safe harbor nondiscriminatory definition of compensation under Code §414(s):

**(a)** All Elective Deferrals, pre-tax contributions to a Code §125 cafeteria plan or a Code §457 plan, and qualified transportation fringes under Code §132(f)(4);

**(b)** All fringe benefits (cash and noncash), reimbursements or other expense allowances, moving expenses, deferred compensation, and welfare benefits;

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 23 of 177   Document 23-6

MTD Page 22

**(c)** Differential Pay as defined in Section 1.137(e);

**(d)** Compensation above a specific dollar amount; and

**(e)** Any other amounts to the extent such exclusions are limited to only Highly Compensated Employees.

In addition, a definition of Plan Compensation or Testing Compensation will satisfy a nondiscriminatory definition of compensation under Code §414(s) if the definition of compensation qualifies as a reasonable definition of compensation as set forth in Treas. Reg. §1.414(s)-1(d), including the additional nondiscrimination testing required under Treas. Reg. §1.414(s)-1(d)(3).

Testing Compensation may be determined over the Plan Year for which the applicable test is being performed or the calendar year ending within such Plan Year. In determining Testing Compensation, the Plan Administrator may take into consideration only the compensation received while the Employee is a Participant under the component of the Plan being tested. In no event may Testing Compensation for any Participant exceed the Compensation Limit defined in Section 1.29.

**1.136** **Top Paid Group.** The top 20% of Employees ranked by Total Compensation for purposes of determining status as a Highly Compensated Employee.

**1.137** **Total Compensation.** A Participant's compensation for services with the Employer. Total Compensation may be defined in AA §5-1 to be either W-2 Wages, Wages under Code §3401(a), or Code §415 Compensation. Each definition of Total Compensation includes Elective Deferrals, elective contributions to a cafeteria plan under Code §125 or to an eligible deferred compensation plan under Code §457, and elective contributions that are not includible in the Employee's gross income as a qualified transportation fringe under Code §132(f)(4). Total Compensation does not include nontaxable amounts paid to Ministers as a housing allowance under Code §107.

**(a)** **Total Compensation definitions.** The Employer may elect under AA §5-1 to define Total Compensation as any of the following definitions:

**(1)** **W-2 Wages.** Wages within the meaning of Code §3401(a) and all other payments of compensation to an Employee by the Employer (in the course of the Employer's trade or business) for which the Employer is required to furnish the Employee a written statement under Code §6041(d), 6051(a)(3), and 6052, determined without regard to any rules under Code §3401(a) that limit the remuneration included in wages based on the nature or location of the employment or the services performed.

**(2)** **Wages under Code §3401(a).** Wages within the meaning of Code §3401(a) for the purposes of income tax withholding at the source but determined without regard to any rules that limit the remuneration included in wages based on the nature or location of the employment or the services performed.

**(3)** **Code §415 Compensation.** Wages, salaries, fees for professional services and other amounts received for personal services actually rendered in the course of employment with the Employer (without regard to whether or not such amounts are paid in cash) to the extent that the amounts are includible in gross income, including amounts that are includible in the gross income of an Employee under the rules of Code §409A or §457(f)(1)(A) or because the amounts are constructively received by the Employee. Such amounts include, but are not limited to, commissions, compensation for services on the basis of a percentage of profits, tips, bonuses, fringe benefits, and reimbursements or other expense allowances under a nonaccountable plan (as described in Treas. Reg. §1.62-2(c)), and excluding the following:

**(i)** Employer contributions (other than elective contributions described in Code §402(e)(3), §408(k)(6), §408(p)(2)(A)(i), or §457(b)) to a plan of deferred compensation (including a SEP described in Code §408(k) or a SIMPLE IRA described in Code §408(p), and whether or not qualified) to the extent such contributions are not includible in the Employee's gross income for the taxable year in which contributed, and any distributions (whether or not includible in gross income when distributed) from a plan of deferred compensation (whether or not qualified); and

**(ii)** Other amounts which received special tax benefits, or contributions made by the Employer (other than Elective Deferrals) towards the purchase of an annuity contract described in Code §403(b) (whether or not the contributions are actually excludable from the gross income of the Employee).

**(b)** **Post-severance compensation.** Total Compensation includes compensation that is paid after an Employee severs employment with the Employer, provided the compensation is paid by the later of 2½ months after Severance from Employment with the Employer maintaining the Plan or the end of the Limitation Year that includes such date of Severance from Employment. For this purpose, compensation paid after Severance of Employment may be

included in Total Compensation to the extent such amounts would have been included as compensation if they were paid prior to the Employee's Severance from Employment.

For purposes of applying this subsection (b), unless designated otherwise under AA §5-2, the following amounts that are paid after a Participant's severance of employment are included in Total Compensation:

(1) **Regular pay.** Compensation for services during the Employee's regular working hours, or compensation for services outside the Employee's regular working hours (such as overtime or shift differential), commissions, bonuses, or other similar payments;

(2) **Unused leave payments.** Payment for unused accrued bona fide sick, vacation, or other leave, but only if the Employee would have been able to use the leave if employment had continued; and

(3) **Deferred compensation.** Payments received by an Employee pursuant to a nonqualified unfunded deferred compensation plan, but only if the payment would have been paid to the Employee at the same time if the Employee had continued in employment and only to the extent that the payment is includible in the Employee's gross income.

Other post-severance payments (such as severance pay, parachute payments within the meaning of Code §280G(b)(2), or post-severance payments under a nonqualified unfunded deferred compensation plan that would not have been paid if the Employee had continued in employment) are not included as Total Compensation, even if such amounts are paid within the time period described in this subsection (b).

In determining the amount of a Participant's Employer Contributions, Matching Contributions, Salary Deferrals or After-Tax Contributions, Plan Compensation may not include any amounts that do not satisfy the requirements of this subsection (b) or subsection (c). If Total Compensation is defined to include post-severance compensation, the Employer may elect to exclude all such compensation paid after termination of employment from the definition of Plan Compensation under AA §5-3(j) or may elect to exclude any of the specific types of post-severance compensation defined in subsections (1), (2) and/or (3) above, by designating such compensation types under AA §5-3(l). The exclusion of post-severance compensation from the definition of Plan Compensation that is otherwise includible in Total Compensation may cause the Plan to fail the nondiscriminatory compensation rules under Treas. Reg. §1.414(s)-1.

(c) **Continuation payments for disabled Participants.** Unless designated otherwise under AA §5-2(b), Total Compensation does not include compensation paid to a Participant who is permanently and totally disabled (as defined in Code §22(e)(3)). If elected under AA §5-2(b), the Plan may take into account compensation the Participant would have received for the year if the Participant was paid at the rate of compensation paid immediately before becoming permanently and totally disabled (if such compensation is greater than the Participant's compensation determined without regard to this subsection (c)), provided contributions made with respect to amounts treated as compensation under this subsection (c) are nonforfeitable when made.

If so elected under AA §5-2(b), payment to disabled Participants will be included as Total Compensation, notwithstanding the rules under subsection (b). The Employer may elect under AA §5-2(b) to apply this rule only to Nonhighly Compensated Employees or to all Participants.

(d) **Deemed §125 compensation.** A reference to elective contributions under a Code §125 cafeteria plan includes any amounts that are not available to a participant in cash in lieu of group health coverage because the Participant is unable to certify that he or she has other health coverage. Such deemed §125 compensation will be treated as an amount under Code §125 only if the Employer does not request or collect information regarding the Participant's other health coverage as part of the enrollment process for the health plan. If the Employer elects under AA §5-3(i) to exclude deemed §125 compensation from the definition of Plan Compensation, such exclusion also will apply for purposes of determining Total Compensation under this Section and Includible Compensation.

(e) **Differential Pay.** In the case of an individual who receives Differential Pay from the Employer:

(1) such individual will be treated as an Employee of the Employer making the payment, and

(2) the Differential Pay shall be treated as wages and will be included in calculating an Employee's Total Compensation under the Plan.

If all Employees performing service in the Uniformed Services are entitled to receive Differential Pay on reasonably equivalent terms and are eligible to make contributions based on the payments on reasonably equivalent terms, the Plan shall not be treated as failing to meet the requirements of any provision described in Code §414(u)(1)(C) by reason of

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 25 of 177   Document 23-6

MTD Page 24

any contribution or benefit based on Differential Pay. However, for purposes of applying this subparagraph, the provisions of Code §§410(b)(3), (4), and (5) shall apply. The Employer may elect to exclude Differential Pay from the definition of Plan Compensation.

For purposes of this subsection (e), Differential Pay means any payment which is made by an Employer to an individual while the individual is performing service in the Uniformed Services while on active duty for a period of more than 30 days, and represents all or a portion of the wages the individual would have received from the Employer if the individual were performing services for the Employer. In applying the provisions of this subsection (e), Uniformed Services are services as described in Code §3401(h)(2)(A).

**1.138**  **Valuation Date.** The date or dates upon which Plan assets are valued. Plan assets will be valued as of the last day of each Plan Year. In addition, the Employer may elect under AA §11-1 to establish additional Valuation Dates. Notwithstanding any election under AA §11-1, the Custodian and the Employer and/or the Plan Administrator may agree to more frequent valuation dates.

**1.139**  **Vendor.** The provider of an Annuity Contract or Custodial Account under the Plan.

**1.140**  **Volume Submitter Sponsor.** A person meeting the eligibility requirements of Section 11.02 or Section 11.03 of Revenue Procedure 2013-22 (or subsequent IRS guidance) that submits an application for an advisory letter for a Code §403(b) Volume Submitter Plan.

**1.141**  **Volume Submitter Plan.** This Basic Plan Document #08 and the applicable Adoption Agreement that qualifies for an advisory letter under Revenue Procedure 2013-22.

**1.142**  **Year of Service.** For purposes of determining Includible Compensation or Special Catch-Up Contributions, "Year of Service" means each full year during which an individual is a full-time Employee of the Employer, plus fractional credit for each part of a year during which the individual is either a full-time Employee of the Employer for a part of a year or a part-time Employee of the Employer. The Employee must be credited with a full Year of Service for each year during which the Employee is a full-time Employee and a fraction of a year for each part of a work period during which the Employee is a full-time or part-time Employee of the Employer. An Employee's number of Years of Service equals the aggregate of the annual work periods during which the Employee is employed by the Employer. The work period is the Employer's annual work period.

For purposes of applying the eligibility, vesting and allocation rules, a "Year of Service" is a 12-consecutive month period ("Computation Period") during which an Employee completes 1,000 Hours of Service. For purposes of applying the eligibility rules under Section 2.03 of the Plan, an Employee will earn a Year of Service if he/she completes 1,000 Hours of Service with the Employer during an Eligibility Computation Period (as defined in Section 2.03(a)(3)). For purposes of applying the vesting rules under Section 7.03, an Employee will earn a Year of Service if he/she completes 1,000 Hours of Service with the Employer during a Vesting Computation Period (as defined in Section 7.04). The Employer may elect under AA §4-3(a) (for eligibility purposes) and AA §8-5(a) (for vesting purposes) to require the completion of any lesser number of Hours of Service to earn a Year of Service. Alternatively, the Employer may elect to apply the Elapsed Time method (for eligibility and/or vesting purposes) in calculating an Employee's Years of Service under the Plan.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 26 of 177   Document 23-6

MTD Page 25

# SECTION 2
# ELIGIBILITY AND PARTICIPATION

**2.01**  **Eligibility.** In order to participate in the Plan, an Employee must be an Eligible Employee (as defined in Section 2.02) and must satisfy the Plan's minimum age and service conditions (as defined in Section 2.03). Once an Employee satisfies the Plan's minimum age and service conditions, such Employee shall become a Participant on the appropriate Entry Date (as selected in AA §4-2). An Employee who meets the minimum age and service requirements set forth herein, but who is not an Eligible Employee, will be eligible to participate in the Plan only upon becoming an Eligible Employee.

    **(a)**  **Salary Deferrals.** Each Employee (other than an Employee excluded from participation under Section 2.02(b)) is an Eligible Participant, without regard to any age or service conditions applicable to other types of contributions to the Plan. An Eligible Participant shall be eligible to make Salary Deferrals as of his/her Employment Commencement Date. The Employer will contribute a Participant's Salary Deferrals to the Plan on behalf of the Participant. To be eligible to make Salary Deferrals, an Eligible Participant must complete a Salary Reduction Agreement. The Employer has a reasonable period of time to begin withholding Salary Deferrals with respect to an Eligible Participant.

    **(b)**  **Employer Contributions and Matching Contributions.** An Employee who is not excluded from participation under Section 2.02(b) will become an Eligible Participant under the Plan for purposes of receiving Employer Contributions and Employer Matching Contributions (as applicable) as of the Entry Date elected in the Adoption Agreement following the satisfaction of the age and service conditions specified in AA §4-1. If the Employer is an educational organization described in Code §170(b)(1)(A)(ii) exempt from tax under Code §501(a), the maximum age cannot exceed age 26, provided the Plan does not require more than one Year of Service to participate and all Participants are immediately vested in their Accounts.

    **(c)**  **After-Tax Contributions and Safe Harbor Contributions.** If the Plan provides for Safe Harbor Contributions or After-Tax Contributions, the same eligibility conditions that apply with respect to Salary Deferrals will also apply to the Safe Harbor Contributions and/or After-Tax Contributions. The Employer may elect to provide different eligibility conditions for Safe Harbor Contributions under AA §6C-3 and for After-Tax Contributions under the AA §6D-2.

**2.02**  **Eligible Employees.** Unless specifically excluded under AA §3-1 or this Section 2.02, all Employees of the Employer are Eligible Employees. AA §3-1 lists various classes of Employees that may be excluded from Plan participation. If an Employee is not an Eligible Employee (e.g., such Employee is a member of a class of Employees excluded under AA §3-1), that individual may not participate under the Plan, unless he/she subsequently becomes an Eligible Employee.

    **(a)**  **Only Employees may participate in the Plan.** To participate in the Plan, an individual must be an Employee. If an individual is not an Employee (e.g., the individual performs services with the Employer as an independent contractor) such individual may not participate under the Plan. If an individual's status as a non-Employee is challenged by the IRS, the reclassification of such individual as an Employee will not create retroactive rights to participate in the Plan. Thus, for example, if the IRS should find that an independent contractor is really an Employee, such individual will be eligible to participate in the Plan as of the date the IRS issues a final determination declaring such individual to be an Employee (provided the individual has satisfied all conditions for participating in the Plan as described in Section 2.01). For periods prior to the date of such final determination, the reclassified Employee will not have any rights to accrued benefits under the Plan, except as agreed to by the Employer and the IRS, or as set forth in an amendment adopted by the Employer.

    **(b)**  **Excluded Employees.** The Employer may elect under AA §3-1 to exclude designated classes of Employees. The Employer may elect to exclude different classes of Employees for different contribution sources under the Plan.

        **(1)**  **Collectively Bargained Employees.** Unless the applicable collective bargaining agreement provides otherwise, the Employer may elect under AA §3-1(b) to exclude Collectively Bargained Employees with respect to Employer Contributions and Matching Contributions. For this purpose, a Collectively Bargained Employee is an Employee who is included in a unit of Employees covered by a collective bargaining agreement between the Employer and Employee representatives and whose retirement benefits are subject to good faith bargaining. For this purpose, an Employee will not be considered a Collectively Bargained Employee for a Plan Year if more than two percent of the Employees who are covered pursuant to the collective bargaining agreement are professionals as defined in Treas. Reg. §1.410(b)-9. For this purpose, the term "Employee representatives" does not include any organization more than half of whose members are Employees who are owners, officers, or executives of the Employer.

        **(2)**  **Nonresident aliens.** The Employer may elect under AA §3-1(c) to exclude Employees who are nonresident aliens with respect to Salary Deferrals, Employer Contributions and Matching Contributions. For this purpose, a nonresident alien is neither a citizen of the United States nor a resident of the United States for U.S. tax purposes (as defined in Code §7701(b)), and who does not have any earned income (as defined in Code §911) for the

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 27 of 177   Document 23-6

MTD Page 26

Employer that constitutes U.S. source income (within the meaning of Code §861). If a nonresident alien Employee has U.S. source income, he/she is treated as satisfying this definition if all of his/her U.S. source income from the Employer is exempt from U.S. income tax under an applicable income tax treaty.

**(3)**     <u>Student Employees.</u> The Employer may elect under AA §3-1(d) (subject to the conditions in Code §410(b)(4)) to exclude Employees who are Student Employees with respect to Salary Deferrals, Employer Contributions and Matching Contributions. A Student Employee is an Employee of the Employer who is a student enrolled and regularly attending classes at the school, college or university, and performs services for the school, college or university as described in Code §3121(b)(10).

**(4)**     <u>Employees who normally work fewer than 20 hours per week.</u> The Employer may elect under AA §3-1(e) (subject to the conditions in Code §410(b)(4)) to exclude Employees who normally work fewer than 20 hours per week (or such lower number of hours per week as elected in the Adoption Agreement) with respect to Salary Deferrals, Employer Contributions and Matching Contributions. An Employee normally works fewer than 20 hours per week if and only if (1) for the 12-month period beginning on the date of the Employee's Employment Commencement date, the Employer reasonably expects the Employee to work fewer than 1,000 Hours of Service and (2) for each Plan Year after the close of the 12-month period beginning on the date of the Employee's Employment Commencement date, the Employee worked fewer than 1,000 Hours of Service in the preceding 12-month period.

If a Plan is covered by Title I of ERISA, the Plan must satisfy the minimum age and service requirements of ERISA §202(a) and an Employee otherwise excluded under AA §3-1 must enter the Plan no later than the first day of the Plan Year or 6 months (whichever is earlier) following the attainment of age 21 and completion of a Year of Service. For this purpose, an Employee is credited with a Year of Service if such Employee is credited with 1,000 Hours of Service in the 12-month period starting with the Employee's Employment Commencement Date or in any Plan Year commencing after the Employment Commencement Date. Once eligible due to satisfaction of this service condition, the Employee will continue to be eligible under the Plan.

**(5)**     <u>Additional exclusions for Salary Deferral contributions.</u> With respect to Employees eligible to make Salary Deferrals, the Employer may elect to exclude from the Plan any person:

     **(i)**     who participates in an eligible governmental deferred compensation plan within the meaning of Code §457(b) sponsored by the Employer;

     **(ii)**     who is eligible to participate in a 401(k) plan or another 403(b) plan sponsored by the Employer which provides for contributions pursuant to a Salary Reduction Agreement; or

     **(iii)**     whose contribution to the Plan under its maximum deferral percentage would be $200 or less.

**(6)**     <u>Inclusion of excludable Employee.</u> If the Employer does not exclude an individual excludable from participation under categories in Sections 2.02(b)(3) and 2.02(b)(4), then all Employees within the same category must be eligible to participate in the Plan.

**(7)**     <u>Leased Employees.</u> Leased employees as defined in Code §414(n) are not common law employees of the Employer and not eligible to participate in the Plan.

**(8)**     <u>Special restrictions that apply to "short-service" Employees.</u> The Employer may designate additional excluded classes of Employees under AA §3-1(j) or AA §6C-3(d). If the Employer elects under AA §3-1(j) or AA §6C-3(d) to exclude an additional class of Employees, such Employee class must be defined in such a way that it precludes Employer discretion and may not be based on time or service (e.g., part-time Employees). The Employer may not use AA §3-1(j) or AA §6C-3(d) to cover only Nonhighly Compensated Employees with the lowest amount of compensation and/or the shortest periods of service in order to satisfy the minimum coverage rules.

**(9)**     <u>Disguised service conditions.</u> An exclusion of employees by job category may not indirectly impose an impermissible service condition (i.e., a service condition that fails to satisfy the requirements of Code §410(a)). The exclusion of part-time Employees, seasonal Employees, temporary Employees or other job categories may be considered a disguised service condition where such categories are based solely on the amount of service performed by those Employees. A disguised service condition will not violate the minimum service conditions if such Employees are eligible to participate upon completion of a Year of Service. If the Employer excludes Employees under AA §3-1 or under AA §6C-3 using a disguised service condition, such as part-time or seasonal Employee status, and any such Employee completes a Year of Service, such Employee will no longer be treated as an Excluded Employee.

© Copyright 2017

Volume Submitter 403(b) Basic Plan Document #08-001

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 28 of 177    Document 23-6

MTD Page 27

(c) **Employees of Related Employers.** If the Employer is a member of a Related Employer group, Employees of each member of the Related Employer group may participate under this Plan, provided the Related Employer executes a Participating Employer Adoption Page under the Adoption Agreement. If a Related Employer does not execute a Participating Employer Adoption Page, any Employees of such Related Employer are not eligible to participate in the Plan. (See Section 16.06 for operating rules that apply when the Employer is a member of a Related Employer group. Also see Section 16 for rules regarding participation of Employees of Related Employers.)

(d) **Employees of an Employer acquired as part of a Code §410(b)(6)(C) transaction.** The Employer may designate under AA §3-2 to include/exclude Employees acquired as part of a Code §410(b)(6)(C) transaction. If no election is made under AA §3-2, an individual who becomes an Employee of the Employer as part of a Code §410(b)(6)(C) transaction will be an Eligible Employee as of the date of the transaction (unless the Employee is otherwise excluded under AA §3-1). The Employer may elect under AA §3-2(a) that an Employee acquired as part of a Code §410(b)(6)(C) transaction will not become an Eligible Employee until after the expiration of the transition period described in Code §410(b)(6)(C)(ii) (i.e., the period beginning on the date of the transaction and ending on the last day of the first Plan Year beginning after the date of the transaction). For this purpose, a Code §410(b)(6)(C) transaction includes an asset sale, stock sale or other disposition or acquisition that results in the movement of Employees from one Employer to another Employer or causes a change in status as a Related Employer group. (See AA §4-5 for rules regarding the crediting of service with a Predecessor Employer to determine if an Employee has satisfied the Plan's minimum age and service conditions).

Regardless of any selection under AA §3-2, an Employee of a Related Employer will be eligible to participate under the Plan only if the Related Employer executes a Participating Employer Adoption Agreement.

(e) **Ineligible Employee becomes Eligible Employee.** If an Employee changes status from an ineligible Employee to an Eligible Employee, such Employee will become a Participant immediately on the date he/she changes status to an Eligible Employee, provided the Employee has satisfied the Plan's minimum age and service conditions (with respect to Employer Contributions and Employer Matching Contributions) and has passed the Entry Date (as defined in AA §4-2) that would otherwise have applied had the Employee been an Eligible Employee. If the Employee's original Entry Date (determined as if the Employee was always an Eligible Employee) has not passed as of the date the Employee becomes an Eligible Employee, the Employee will not become a Participant until such Entry Date. This requirement is deemed satisfied with respect to Salary Deferrals under the Plan if the Employee is permitted to commence making deferrals under the Plan within a reasonable period of time after the Employee becomes an Eligible Employee. If an ineligible Employee has not satisfied the Plan's minimum age and service conditions applicable to Employer Contributions and Employer Matching Contributions at the time such Employee becomes an Eligible Employee, such Employee will become a Participant on the appropriate Entry Date following satisfaction of the Plan's minimum age and service requirements.

(f) **Eligible Employee becomes ineligible Employee.** If an Employee ceases to qualify as an Eligible Employee (i.e., the Employee changes status from an eligible class to an ineligible class of Employees), such Employee will immediately cease to participate in the Plan. If such Employee should subsequently become an Eligible Employee, he/she will be able to participate in the Plan in accordance with subsection (e) above.

(g) **Improper exclusion of eligible Participant.** If the Plan improperly excludes a Participant who has satisfied the requirements under this Section 2 for participating under the Plan, the Employer may take reasonable action to correct such violation, provided such corrective action is consistent with the requirements of the Employee Plans Compliance Resolution System (EPCRS) program. For example, the violation may be corrected by making an additional contribution to the Plan on behalf of the omitted Participant or by allocating any available forfeitures under the Plan to such Participant to restore any missed contributions under the Plan. (See Rev. Proc. 2013-12 or subsequent IRS guidance for a description of the EPCRS program.)

2.03 **Minimum Age and Service Conditions.** AA §4-1 contains specific elections as to the minimum age and service conditions which an Employee must satisfy prior to becoming eligible to participate under the Plan. **The Employer may not impose age or service conditions on an Employee's ability to make Salary Deferrals.**

(a) **Application of age and service conditions.** The Employer may elect under AA §4-1 to impose minimum age and service conditions that an Employee must satisfy in order to participate under the Plan. The Plan may not require an Employee to attain an age older than age 21 (or 26 for a qualified educational institution as provided under Code §410(a)(1)(B)(ii)) or to complete more than one Year of Service. However, the Plan may require an Employee to complete two Years of Service prior to participating in the Plan if the Employer elects full and immediate vesting under AA §8.

(1) **Year of Service.** In applying the minimum service requirements under AA §4-1, an Employee will earn a Year of Service if the Employee completes at least 1,000 Hours of Service with the Employer during an Eligibility

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 29 of 177   Document 23-6

MTD Page 28

Computation Period (as defined in subsection (3) below). The Employer may modify the definition of Year of Service under AA §4-3(a) to require a lesser number of Hours of Service to earn a Year of Service. An Employee will receive credit for a Year of Service, as of the end of the Eligibility Computation Period during which the Employee completes the required Hours of Service needed to earn a Year of Service. An Employee need not be employed for the entire Eligibility Computation Period to receive credit for a Year of Service, provided the Employee completes the required Hours of Service during such period.

**(2)** **Months of service.** The Employer may elect under AA§4-1(a) to require a specific number of Hours of Service during a designated number of months of employment. If an Employee is required under AA §4-1(a) to complete a certain number of Hours of Service during a designated period, an Employee generally will satisfy the eligibility conditions as of the end of the designated period, regardless of whether the Employee is employed during the entire period. Alternatively, the Employer may elect under AA §4-1(a)(3)(ii) to require an Employee to be employed continuously throughout the designated period, provided the Employee is eligible to participate in the Plan upon completing a Year of Service.

If an Employee does not complete the required Hours of Service during the designated period or does not work continuously during the designated period, if required under AA §4-1(a)(3)(ii), the Employee will satisfy eligibility upon completion of a Year of Service. For purposes of applying the Year of Service requirement, an Employee need not be employed during the entire measuring period as long as the Employee completes the required Hours of Service. For example, an Employee who is not employed throughout the designated period, if required under AA §4-1(a)(3)(ii), would still satisfy the eligibility conditions as of the end of the Eligibility Computation Period if the Employee completes a Year of Service, regardless of whether the Employee is employed during the entire period.

**(3)** **Eligibility Computation Periods.** In determining whether an Employee has earned a Year of Service for eligibility purposes, an Employee's initial Eligibility Computation Period is the 12-month period beginning on the Employee's Employment Commencement Date. Subsequent Eligibility Computation Periods will either be based on Plan Years or Anniversary Years (as set forth in AA §4-3(b)).

    **(i)** **Plan Years.** If the Employer bases subsequent Eligibility Computation Periods on Plan Years, the Plan will begin measuring Years of Service on the basis of Plan Years beginning with the first Plan Year commencing after the Employee's Employment Commencement Date. Thus, for the first Plan Year following the Employee's Employment Commencement Date, the initial Eligibility Computation Period and the first Plan Year Eligibility Computation Period may overlap.

    **(ii)** **Anniversary Years.** If the Employer elects under AA §4-3(b) to base subsequent Eligibility Computation Periods on Anniversary Years, the Plan will measure Years of Service after the initial Eligibility Computation Period on the basis of 12-month periods commencing with the anniversaries of the Employee's Employment Commencement Date.

    **(iii)** **Two Years of Service requirement.** If a two Years of Service eligibility condition applies under AA §4-1(a)(6), subsequent Eligibility Computation Periods will be based on Anniversary Years as defined in subsection (ii) above. However, if an Employee fails to earn a Year of Service during the first or second Eligibility Computation Period, subsequent Eligibility Computation Periods will be determined on the basis of the Plan Year commencing within the first or second Eligibility Computation Period, as applicable, and subsequent Plan Years. The Employer may elect under AA §4-3(b) to determine subsequent Eligibility Computation Periods on the basis of Anniversary Years, rather than Plan Years.

    **(iv)** **Rehired Employee.** If an Employee is rehired following a Break in Service, the Employee's initial Eligibility Computation Period following the Employee's return to employment will be measured from the Employee's Reemployment Commencement Date. Subsequent Eligibility Computation Periods will be measured based on the Plan Year or anniversaries of the Reemployment Commencement Date, as designated under subsection (i) or (ii) above. For this purpose, an Employee's Reemployment Commencement Date is the first day the Employee is entitled to be credited with an Hour of Service after the first Eligibility Computation Period in which the Employee incurs a Break in Service.

**(4)** **Hours of Service.** In calculating an Employee's Hours of Service for purposes of applying the eligibility rules under this Section 2.03, the Employer will count the actual Hours of Service an Employee works during the year. The Employer may elect under AA §4-3(c) or (d) to use the Elapsed Time Method or Equivalency Method (instead of counting the actual Hours of Service an Employee works). (See subsections (5) and (6) below for a description of the Equivalency Method and Elapsed Time method of crediting service.)

**(5)**    **Equivalency Method.** Instead of counting actual Hours of Service in applying the minimum service conditions under this Section 2.03, the Employer may elect under AA §4-3(d) to determine Hours of Service based on the Equivalency Method. Under the Equivalency Method, an Employee receives credit for a specified number of Hours of Service based on the period worked with the Employer.

     **(i)**    **Monthly.** Under the monthly Equivalency Method, an Employee is credited with 190 Hours of Service for each calendar month during which the Employee completes at least one Hour of Service with the Employer.

     **(ii)**    **Daily.** Under the daily Equivalency Method, an Employee is credited with 10 Hours of Service for each day during which the Employee completes at least one Hour of Service with the Employer.

     **(iii)**    **Weekly.** Under the weekly Equivalency Method, an Employee is credited with 45 Hours of Service for each week during which the Employee completes at least one Hour of Service with the Employer.

     **(iv)**    **Semi-monthly.** Under the semi-monthly Equivalency Method, an Employee is credited with 95 Hours of Service for each semi-monthly period during which the Employee completes at least one Hour of Service with the Employer.

**(6)**    **Elapsed Time method.** Instead of counting actual Hours of Service in applying the minimum service requirements under this Section 2.03, the Employer may elect under AA §4-3(c) to apply the Elapsed Time method for calculating an Employee's service with the Employer. Under the Elapsed Time method, an Employee receives credit for the aggregate period of time worked for the Employer commencing with the Employee's first day of employment (or reemployment, if applicable) and ending on the date the Employee begins a Period of Severance which lasts at least 12 consecutive months. In calculating an Employee's aggregate period of service, an Employee receives credit for any Period of Severance that lasts less than 12 consecutive months. If an Employee's aggregate period of service includes fractional years, such fractional years are expressed in terms of days.

     **(i)**    **Period of Severance.** For purposes of applying the Elapsed Time method, a Period of Severance is any continuous period of time during which the Employee is not employed by the Employer. A Period of Severance begins on the date the Employee retires, quits or is discharged, or if earlier, the 12-month anniversary of the date on which the Employee is first absent from service for a reason other than retirement, quit or discharge.

         In the case of an Employee who is absent from work for maternity or paternity reasons, the 12-consecutive month period beginning on the first anniversary of the first date of such absence shall not constitute a Period of Severance. For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence (i) by reason of the pregnancy of the Employee, (ii) by reason of the birth of a child of the Employee, (iii) by reason of the placement of a child with the Employee in connection with the adoption of such child by the Employee, or (iv) for purposes of caring for a child of the Employee for a period beginning immediately following the birth or placement of such child.

     **(ii)**    **Related Employers.** For purposes of applying the Elapsed Time method, service will be credited for employment with any Related Employer.

**(7)**    **Amendment of age and service requirements.** If the Plan's minimum age and service conditions are amended, an Employee who is a Participant immediately prior to the effective date of the amendment is deemed to satisfy the amended requirements. This provision may be modified under the special Effective Date provisions under Appendix A of the Adoption Agreement.

**(b)**    **Entry Dates for Employer Contributions and Matching Contributions.** Once an Eligible Employee satisfies the minimum age and service conditions (as set forth in AA §4-1), the Employee will be eligible to participate under the Plan as of his/her Entry Date (as set forth in AA §4-2). The Employer may elect different Entry Dates with respect to Matching Contributions and Employer Contributions.

     **(1)**    **Entry Date requirements.** In no event may a Participant's Entry Date be later than: (i) the first day of the Plan Year beginning after the date on which the Participant satisfies the minimum age and service conditions described in subsection (a) above, or (ii) six months after the date the Participant satisfies such age and service conditions. An Eligible Employee must be employed by the Employer on his/her Entry Date to begin participating in the Plan on such date.

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 31 of 177    Document 23-6

MTD Page 30

(2)     **Single annual Entry Date.** If the Employer elects a single annual Entry Date under AA §4-2(f), the maximum permissible age and service conditions described in subsection (a) above are reduced by one-half (1/2) year, unless: (1) the Employer elects under AA §4-2(i) to use the Entry Date *nearest* the date the Employee satisfies the Plan's minimum age and service conditions *and* the Entry Date is the first day of the Plan Year or (2) the Employer elects under AA §4-2(j) to use the Entry Date *preceding* the date the Employee satisfies the Plan's minimum age and service conditions.

**2.04     Participation on Effective Date of Plan.** An Employee who has satisfied the minimum age and service conditions and reached his/her Entry Date as of the Effective Date of the Plan will be eligible to participate in the Plan as of such Effective Date. If an Employee has satisfied the minimum age and service conditions as of the Effective Date of the Plan but has not yet reached his/her Entry Date, the Employee will be eligible to participate on the appropriate Entry Date. The Employer may modify this rule under AA §4-2 by electing to treat all Employees employed on the Effective Date of the Plan as Participants (regardless of whether they have satisfied the Plan's minimum age and service conditions) or by designating a specific date as of which all Eligible Employees will be deemed to be a Participant, (regardless of whether the Employee has otherwise satisfied the minimum age and service conditions).

**2.05     Rehired Employees.** Subject to the Break in Service rules under Section 2.07, if a terminated Employee is subsequently rehired, such Employee will be eligible to participate in the Plan on his/her reemployment date, if the Employee is an Eligible Employee and the Employee had satisfied the Plan's minimum age and service conditions and reached his/her Entry Date prior to termination of employment. If the Employee had satisfied the Plan's minimum age and service conditions but terminated prior to reaching his/her Entry Date, the Employee will be eligible to participate on his/her reemployment date or the original Entry Date, if later. If a rehired Employee had not satisfied the Plan's minimum age and service conditions prior to termination of employment, such Employee is eligible to participate in the Plan on the appropriate Entry Date following satisfaction of the eligibility requirements under this Section 2. For purposes of Salary Deferrals, the requirement to participate on the reemployment date is deemed satisfied if a rehired Employee is permitted to commence making Salary Deferrals within a reasonable period following reemployment.

**2.06     Service with Predecessor Employers.** If the Employer maintains the plan of a Predecessor Employer, any service with such Predecessor Employer is treated as service with the Employer for purposes of applying the provisions of this Plan. If the Employer does not maintain the plan of a Predecessor Employer, service with such Predecessor Employer does not count for eligibility purposes under this Section 2, unless the Employer specifically designates under AA §4-5 to credit service with such Predecessor Employer for eligibility. Unless designated otherwise under AA §4-5, if the Employer takes into account service with a Predecessor Employer, such service will count for purposes of eligibility under this Section 2, vesting under Section 7 (see Section 7.06) and for purposes of the minimum allocation conditions under Section 3.08.

The Employer may designate under AA §4-5(a)(1) to count service with all Employers acquired as part of a Code §410(b)(6)(C) transaction, as defined under Section 2.02(d) or may elect specific Employers for whom service will not be credited. Alternatively, the Employer may designate under AA §4-5(a)(2) specific Predecessor Employers for which service will be credited. The Employer may designate to credit predecessor service only for purposes of eligibility, vesting and/or any minimum allocation conditions under the Plan.

Governmental and Church Plans are not subject to coverage and nondiscrimination rules applicable to the crediting of service with Predecessor Employers under Title I of ERISA.

**2.07     Break in Service Rules.** Generally, an Employee will be credited with all service earned for the Employer, including service earned prior to the effective date of the Plan and service earned while the Employee is an ineligible Employee. However, the Employer may elect under AA §4-3 to disregard an Employee's service with the Employer under the Break in Service rules set forth in this Section 2.07. Governmental and Church Plans are not subject to the break in service rules applicable under Title I of ERISA.

(a)     **Break in Service.** An Employee incurs a Break in Service for any Eligibility Computation Period (as defined in Section 2.03(a)(3)) during which the Employee does not complete more than five hundred (500) Hours of Service with the Employer. However, if the Employer elects under AA §4-3(a) to require less than 1,000 Hours of Service to earn a Year of Service for eligibility purposes, a Break in Service will occur for any Eligibility Computation Period during which the Employee does not complete more than one-half (1/2) of the Hours of Service required to earn an eligibility Year of Service.

(b)     **Nonvested Participant Break in Service rule.** Under the Nonvested Participant Break in Service rule, if a Participant is totally nonvested (i.e., 0% vested) in his/her Account Balance, and such Participant incurs five (5) or more consecutive one-year Breaks in Service (or, if greater, a consecutive period of Breaks in Service at least equal to the Participant's aggregate number of Years of Service with the Employer), the Plan will disregard all service earned prior to such consecutive Breaks in Service for purposes of determining eligibility to participate in the Plan. If the Employee returns to employment with the Employer, such Employee will be treated as a new Employee for purposes of

Case 2:20-cv-00893-PP     Filed 10/26/20     Page 32 of 177     Document 23-6

MTD Page 31

determining eligibility under the Plan. For this purpose, a Participant who has made Salary Deferrals under the Plan will be treated as having a vested interest in the Plan. Thus, the Nonvested Participant Break in Service rule may not be used with respect to any contributions under the Plan (even if such Employee is totally nonvested in such contributions) for a Participant who has made Salary Deferrals under the Plan. The Employer must elect to apply the Nonvested Participant Break in Service rule under AA §4-3(e).

(c) **Special Break in Service rule for Plans using two Years of Service for eligibility.** If the Employer has elected under AA §4-1(a)(6) to require Employees to complete two Years of Service to become eligible to participate in the Plan, any Employee who incurs a one-year Break in Service before satisfying the two Years of Service eligibility condition will not be credited with service earned before such one-year Break in Service.

(d) **One-Year Break in Service rule.** Under the One-Year Break in Service rule, if an Employee incurs a one-year Break in Service, such Employee will not be credited with any service earned prior to such one-year Break in Service for purposes of determining eligibility to participate under the Plan until the Employee has completed a Year of Service after the Employee's return to employment. The Employer must elect to apply the One-Year Break in Service rule under AA §4-3(f).

   (1) **Temporary disregard of service.** If a Participant has service disregarded under the One-Year Break in Service rule, such Participant will have his/her service reinstated upon returning to employment as of the first day of the Eligibility Computation during which the Participant completes a Year of Service. For this purpose, the Eligibility Computation Period is the 12-month period commencing on the date the Employee first performs an Hour of Service following the Break in Service. If a Participant does not complete a Year of Service during the first Eligibility Computation Period following his/her return to employment, subsequent Eligibility Computation Periods will be determined based on Plan Years beginning with the first Plan Year following the Employee's return to employment (unless the Employer selects Anniversary Years as the Eligibility Computation Period under AA §4-3(b).

   (2) **Application to Salary Deferrals.** The One-Year Break in Service rule will not apply to Salary Deferrals under the Plan.

**2.08** **Waiver of Participation.** An Employee may not waive participation under the Plan unless specifically permitted under AA §11. For this purpose, the mere failure to make Salary Deferrals or After-Tax Employee Contributions under the Plan is not a waiver of participation. The Employer may elect under AA §11 to permit Employees to make a one-time irrevocable election to not participate under the Plan. Such election must be made upon inception of the Plan or at any time prior to the time the Employee first becomes eligible to participate under any plan maintained by the Employer. An Employee, in accordance with the regulations under Code §403(b), who makes a one-time irrevocable election not to participate may not subsequently elect to participate under the Plan. Waiver of participation by an Employee who makes a one-time irrevocable election does not violate the universal availability rule. If the Plan permits Employees to waive participation, any Employee who elects not to participate will be treated as a non-benefiting Participant for purposes of the minimum coverage requirements under Code §410(b).

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 33 of 177   Document 23-6

MTD Page 32

## SECTION 3
## PLAN CONTRIBUTIONS

This Section 3 describes the type of contributions that may be made to the Plan. The type of contributions that may be made to the Plan and the method for allocating such contributions may vary depending on the type of Plan involved. (See Section 5 for a discussion of the limits that apply to any contributions made under the Plan.)

**3.01 Types and Timing of Contributions.**

    **(a)**     **Types of Contributions.** An Employer may designate under AA §6 the amount and type of contributions that may be made under this Plan. To share in a contribution under the Plan, an Employee must satisfy all of the conditions for being a Participant (as described in Section 2) and must satisfy any allocation conditions applicable to the particular type of contribution. A contribution that is made pursuant to an Employee's one-time irrevocable election made on or before the Employee's first becoming eligible to participate under the Plan and a Mandatory Contribution made as a condition of employment that reduces an Employee's compensation are treated as Employer Contributions to the Plan. All types of contributions are subject to the terms of the governing Investment Arrangement(s).

    **(b)**     **Timing of Contributions.** The Employer must make contributions to the Plan within a reasonable period of time for the proper administration of the Plan. With regard to Salary Deferrals, a reasonable period of time is no longer than 15 business days following the month in which the Employer otherwise would have paid the Salary Deferrals to the Employee. An Employer with a Plan subject to ERISA must contribute Salary Deferrals and After-Tax Contributions within a reasonable period of time after the Employee otherwise would have been paid the Salary Deferrals or Employee Contributions, but in no case, can this time be longer than 15 business days following the month in which the Employer otherwise would have paid the Salary Deferrals or After-Tax Contributions to the Employee.

    **(c)**     **Contributions for former Employees.** If so provided under AA §6-5(a), the Employer may continue to make Employer Contributions on behalf of a former Employee. For purposes of determining Employer Contributions for a former Employee, the former Employee is deemed to have monthly Total Compensation for the period through the end of the Taxable Year of the Employee in which he or she ceases to be an Employee and through the end of each of the next five Taxable Years. The amount of monthly Total Compensation is equal to 1/12 of the former Employee's Total Compensation during the former Employee's most recent year of service, as defined in Treas. Reg. §1.403(b)-4(e).

    **(d)**     **Contributions of Accrued Unpaid Sick and/or Vacation Leave.** If so provided under AA §6-5(b), the Employer may make Employer Contributions of amounts of accrued unpaid sick and/or vacation leave to the Plan. The Employer must describe the manner in which such Employer Contributions will be made to the Plan under AA §6-5(b).

**3.02 Employer Contribution Formulas.** If permitted under AA §6 and subject to the terms of the applicable Investment Arrangement(s), the Employer may make an Employer Contribution to the Plan, in accordance with the contribution formula selected under AA §6-2. Any Employer Contribution authorized under the Plan must be allocated in accordance with a definite allocation formula as set forth in AA §6-3. To receive an allocation of Employer Contributions, a Participant must satisfy any allocations conditions designated under the Plan, as described below.

    **(a)**     **Employer Contribution formulas.** The Employer may elect under AA §6-2 to make any of the following Employer Contributions. If the Employer elects more than one Employer Contribution formula, each formula is applied separately. The Employer's aggregate Employer Contribution for a Plan Year will be the sum of the Employer Contributions under all such formulas.

        **(1)**     **Discretionary Employer Contribution.** If a discretionary contribution is selected under AA §6-2(a), the Employer may decide on an annual basis how much (if any) it wishes to contribute to the Plan as an Employer Contribution. If the Employer elects to make a discretionary contribution, such amount may be allocated under the pro rata, permitted disparity, Employee group, age-based or uniform points allocation method (as selected in AA §6-3).

            **(i)**     **Pro rata allocation formula.** Under the pro rata allocation formula, a pro rata share of the Employer Contribution is allocated to each Participant's Employer Contribution Account. A Participant's pro rata share may be determined based on the ratio such Participant's Plan Compensation bears to the total Plan Compensation of all Participants or as a uniform dollar amount, as designated in AA §6-3(a). This allocation formula will satisfy a design-based safe harbor under Treas. Reg. §1.401(a)(4)-2(b) provided if the allocation is based on Plan Compensation, the Plan uses a definition of Plan Compensation that satisfies the nondiscrimination requirements under Treas. Reg. §1.414(s)-1.

            **(ii)**     **Permitted disparity allocation formula.** Under the permitted disparity allocation formula, the Employer Contribution is allocated to Participants' Employer Contribution Accounts using a two-step

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 34 of 177    Document 23-6

MTD Page 33

method. This allocation formula is designed to satisfy a design-based safe harbor under Treas. Reg. §1.401(a)(4)-2(b).

Notwithstanding any other provision under this subsection, for any Plan Year this Plan benefits any Participant who benefits under another Code §403(b) plan maintained by the Employer that provides for permitted disparity (or imputes disparity), Employer Contributions and forfeitures will be allocated to the account of each Participant who either completes more than 500 Hours of Service during the Plan Year or who is employed on the last day of the Plan Year in the ratio that such Participant's Total Compensation bears to the Total Compensation of all Participants.

(A) **Two-step method.** Under the two-step method, the discretionary Employer Contribution is allocated under the following method:

    (I) **Step one.** The Employer Contribution is allocated to each Participant's Employer Contribution Account in the ratio that the sum of each Participant's Plan Compensation plus Excess Compensation (as defined in subsection (B) below) bears to the sum of the total Plan Compensation plus Excess Compensation of all Participants, but not in excess of the Maximum Disparity Rate (as defined in subsection (D) below).

    (II) **Step two.** Any Employer Contribution remaining after the allocation in subsection (I) above one will be allocated in the ratio that each Participant's Plan Compensation bears to the total Plan Compensation of all Participants.

(B) **Excess Compensation.** The amount of Plan Compensation that exceeds the Integration Level.

(C) **Integration Level.** The Taxable Wage Base, unless specified otherwise under AA §6-3(c)(1).

(D) **Maximum Disparity Rate.** The Maximum Disparity Rate is the maximum amount that may be allocated with respect to Excess Compensation. The amount allocated as a percentage of Plan Compensation and Excess Compensation may not exceed the following percentage:

| Integration Level (as a percentage of the Taxable Wage Base) | Maximum Disparity Rate |
|---|---|
| 100% | 5.7% |
| More than 80% but less than 100% | 5.4% |
| More than 20% and not more than 80% | 4.3% |
| 20% or less | 5.7% |

(E) **Taxable Wage Base.** The maximum amount of wages that are considered for Social Security purposes as in effect at the beginning of the Plan Year.

(iii) **Uniform points allocation.** Under the uniform points allocation, the Employer will allocate the discretionary Employer Contribution on the basis of each Participant's total points for the Plan Year, as determined under AA §6-3(d). A Participant's allocation of the Employer Contribution is determined by multiplying the Employer Contribution by a fraction, the numerator of which is the Participant's total points for the Plan Year and the denominator of which is the sum of the points for all Participants for the Plan Year.

A Participant will receive points for each year(s) of age and/or each Year(s) of Service designated under AA §6-3(d). In addition, a Participant also may receive points based on his/her Plan Compensation. Each Participant will receive the same number of points for each designated year of age and/or service and the same number of points for each designated level of Plan Compensation. If the Employer provides points based on Plan Compensation, the Employer may not designate a level of Plan Compensation that exceeds $200.

To satisfy the nondiscrimination safe harbor under Treas. Reg. §1.401(a)(4)-2(b), the average of the allocation rates for Highly Compensated Employees in the Plan must not exceed the average of the

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 35 of 177   Document 23-6

MTD Page 34

allocation rates for the Nonhighly Compensated Employees in the Plan. For this purpose, the average allocation rates are determined in accordance with Treas. Reg. §1.401(a)(4)-2-b(3)(B).

**(iv)**    **Employee group allocation.** Under the Employee group allocation method, the Employer may make a different discretionary contribution to each Participant's Employer Contribution Account based on the Employee allocation groups designated under AA §6-3(e). The Employer Contribution made for an allocation group will be allocated as a uniform percentage of Plan Compensation or as a uniform dollar amount. If the Employer Contribution is allocated as a percentage of Plan Compensation, the amount that will be allocated to each Participant within an allocation group is determined by multiplying the Employer Contribution made for that allocation group by the following fraction:

Participant's Plan Compensation

Plan Compensation of all Participants in the allocation group

Alternatively, the Employer may set forth in the description of the Employee groups under AA §6-3(e)(2) a fixed contribution amount for a designated Employee group. If a fixed contribution is provided for a specific Employee group, the amount designated as the fixed contribution will be allocated to each Participant within the designated Employee group.

The Plan must satisfy the general nondiscrimination rate group test under Treas. Reg. §1.401(a)(4)-2(c) with respect to the separate allocation rates under the Plan. The Plan may be tested on the basis of allocation rates or equivalent benefit rates. If the Plan is tested on the basis of equivalent benefit rates, the Plan will use standard interest rate and mortality table assumptions in accordance with Treas. Reg. §1.401(a)(4)-12 when testing the allocation formula for nondiscrimination.

**(A)**    **Must designate contribution in writing.** The Employer must designate in writing how much of the Employer Contribution is made for each of the Employee allocation groups and whether such amounts are allocated on the basis of Plan Compensation or as a uniform dollar amount. The portion of the Employer Contribution designated for a specific allocation group will be allocated only to Participants within that allocation group. If a Participant is in more than one allocation group during the Plan Year, the Participant will receive an Employer Contribution based on the Participant's status on the last day of the Plan Year. In the event a Participant is in two or more allocation groups on the last day of the Plan Year, the Participant will receive an Employer Contribution based on the first allocation group listed under AA §6-3(e) in which the Participant is a part. The Employer can provide for a different treatment of Employees in multiple groups under AA §6-3(e)(3)(ii).

**(B)**    **Special rules.**

**(I)**    **Benefiting Participants.** The Employer may designate in AA §6-3(e)(3)(i) to establish a separate allocation group for any Nonhighly Compensated Benefiting Participant who does not receive the Minimum Gateway Contribution described below. For this purpose, a Participant is treated as a Benefiting Participant if such Participant receives an allocation of Employer Contributions (other than Salary Deferrals or Matching Contributions (including Safe Harbor/QACA Safe Harbor Matching Contributions)) or receives an allocation of forfeitures for the Plan Year (other than forfeitures that are subject to Code §401(m) because they are allocated as a Matching Contribution).

**(II)**    **Special gateway contribution.** If a separate allocation group is not established for Benefiting Participants under AA §6-3(e)(3)(ii), the Employer may make an additional discretionary Employer Contribution ("special gateway contribution") for all Nonhighly Compensated Benefiting Participants in an amount necessary to provide the Minimum Gateway Contribution described below. The special gateway contribution will be allocated to all Nonhighly Compensated Benefiting Participants who have not otherwise received the Minimum Gateway Contribution without regard to any allocation conditions otherwise applicable to Employer Contributions under the Plan. However, Participants who the Plan Administrator disaggregates pursuant to Treas. Reg. §1.410(b)-7(c)(4) because they have not satisfied the greatest minimum age and service conditions permissible under Code §410(a) shall not be eligible to receive an allocation of any special gateway contribution made pursuant to this subsection.

© Copyright 2017

Volume Submitter 403(b) Basic Plan Document #08-001

(a) **Minimum Gateway Contribution.** A Benefiting Participant is treated as receiving the Minimum Gateway Contribution if the Participant has an allocation rate that is equal to the lesser of: (1) one-third of the allocation rate of the Highly Compensated Employee with the highest allocation rate for the Plan Year or (2) 5% of Compensation (as defined below).

In determining whether a Benefiting Participant has received an allocation that satisfies the Minimum Gateway Contribution, all Employer Contributions allocated to the Participant for the Plan Year are taken into account. For this purpose, Employer Contributions do not include any Matching Contributions or Salary Deferrals.

(b) **Compensation for 5% gateway allocation.** For purposes of the 5% gateway contribution under subsection (a) above, Compensation means Total Compensation for the Plan Year. However, for this purpose, Total Compensation may exclude amounts paid while an Employee is not a Participant in the Plan.

(c) **Compensation under one-third gateway allocation.** To determine whether a Benefiting Participant has received an allocation that satisfies the one-third gateway allocation requirement under subsection (a) above, a Participant's allocation rate is determined by dividing the total Employer Contribution made on behalf of such Participant by the Participant's Plan Compensation (as defined in AA §5-3) or by any other definition of compensation that satisfies the requirements of Treas. Reg. §1.414(s). Any definition of compensation used under this subsection (c) must be applied uniformly in determining the allocation rates of Benefiting Participants.

(III) **Special gateway contribution for combination plans.** If this Plan is aggregated with a Defined Benefit Plan for purposes of nondiscrimination testing, the Employer may make an additional discretionary Employer Contribution for Nonhighly Compensated Benefiting Participants in an amount necessary to satisfy the minimum gateway requirements applicable to such combination plans. However, Participants who the Plan Administrator disaggregates pursuant to Treas. Reg. §1.410(b)-7(c)(4) because they have not satisfied the greatest minimum age and service conditions permissible under Code §410(a) shall not be eligible to receive an allocation of any special gateway contribution made pursuant to this subsection (III).

(a) **Combination plans gateway contribution.** For this purpose, the minimum gateway requirement for DB/DC plans is equal to the lesser of: (1) one-third (1/3) of the Aggregate Normal Allocation Rate of the Highly Compensated Participant with the highest Aggregate Normal Allocation Rate, or (2) the lesser of: (i) 5% of Code §414(s) Compensation (increased by one percentage point for each 5 percentage point increment (or portion thereof) by which the Aggregate Normal Allocation Rate of the Highly Compensated Participant exceeds 25%) or (ii) 7½% of Code §414(s) Compensation.

(b) **Aggregate Normal Allocation Rate.** The Aggregate Normal Allocation Rate shall be determined in accordance with Treas. Reg. §1.401(a)(4)-9(b)(2)(ii).

(c) **Benefiting Participants.** A Participant is treated as a Benefiting Participant if such Participant receives an allocation of Employer Contributions (other than Salary Deferrals or Matching Contributions (including Safe Harbor/QACA Safe Harbor Matching Contributions)) or receives an allocation of forfeitures for the Plan Year (other than forfeitures that are subject to Code §401(m) because they are allocated as a Matching Contribution) or accrues a benefit under the Defined Benefit Plan which is aggregated with this Plan for nondiscrimination testing.

(d) **Code §414(s) Compensation.** For purposes of this subsection (III), Code §414(s) Compensation is any definition of compensation that satisfies the requirements under Treas. Reg. §1.414(s)-1. Thus, the Plan may use full-year compensation or compensation earned while a Participant, provided such definition satisfies the requirements of Treas. Reg. §1.414(s)-1.

© Copyright 2017

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 37 of 177   Document 23-6

MTD Page 36

        **(IV)**    **Special restrictions that apply to "short-service" Employees.** A designated Employee allocation group which is limited to Nonhighly Compensated Employees with the lowest amount of compensation and/or the shortest periods of service may be deemed to violate the nondiscrimination requirements under Code §401(a)(4).

    **(v)**    **Age-based allocation formula.** Under the age-based allocation formula, the Employer will allocate the discretionary Employer Contribution on the basis of each Participant's adjusted Plan Compensation. Amounts allocated under an age-based allocation must satisfy the general nondiscrimination rate group test under Treas. Reg. §1.401(a)(4)-2(c).

        **(A)**    **Adjusted Plan Compensation.** For this purpose, a Participant's adjusted Plan Compensation is determined by multiplying the Participant's Plan Compensation by an Actuarial Factor (as described in subsection (B) below).

        **(B)**    **Actuarial Factor.** A Participant's Actuarial Factor is determined based on standard actuarial assumptions that satisfy Treas. Reg. §1.401(a)(4)-12 using a testing age that is the later of Normal Retirement Age or the Employee's current age. Unless designated otherwise under AA §6-3(f), a Participant's Actuarial Factor is determined based on an 8.5% interest rate and the UP-1984 mortality table. (See Appendix A of the Plan for the Actuarial Factors associated with an 8.5% interest rate and the UP-1984 mortality table and a testing age of 65. If an interest rate other than 8.5% or a mortality table other than the UP-1984 mortality table is selected under AA §6-3(f), or if a testing age other than age 65 is used, the Plan must determine the appropriate Actuarial Factors based on the designated interest rate, mortality table and testing age.)

**(2)**    **Fixed Employer Contribution.** The Employer may elect under AA §6-2 to make a fixed contribution to the Plan. The Employer may elect under AA §6-2 to make a fixed contribution as a designated percentage of Plan Compensation or as a uniform dollar amount. In addition, the contribution may be allocated in accordance with a Collective Bargaining Agreement. If a fixed contribution is selected under AA §6-2, the Employer Contribution will be allocated under the fixed contribution formula under AA §6-3 in accordance with the selections made in AA §6-2. The allocation of the fixed Employer Contribution will satisfy a design-based safe harbor under Treas. Reg. §1.401(a)(4)-2(b) provided, if the allocation is based on Plan Compensation, the Plan uses a definition of Plan Compensation that satisfies the nondiscrimination requirements under Treas. Reg. §1.414(s)-1.

**(3)**    **Outside Agreements, Contracts or Arrangements.** The Employer may elect under AA §6-2(c) to determine contributions in accordance with any Collective Bargaining Agreement(s) addressing retirement benefits of Collectively Bargained Employees under the Plan, or in accordance with any applicable employment contract or other arrangement the Employer has with the Participant(s). Any contribution based on the provisions of a Collective Bargaining Agreement or employment contract will be allocated in accordance with the provisions of the Collective Bargaining Agreement(s) or employment contract.

**(4)**    **Service-based Employer Contribution.** If elected in AA §6-2(d), the Employer may make a contribution based on an Employee's service with the Employer during the Plan Year (or other period designated under AA §6-4). The Employer may elect to make the service-based contribution as a discretionary contribution or as a fixed contribution. Any such contribution will be allocated on the basis of Participants' Hours of Service, weeks of employment or other measuring period selected under AA §6-2(d). The Employer Contribution will be allocated under the service-based allocation formula under AA §6-3(g). Amounts allocated on the basis of service must satisfy the general nondiscrimination rate group test under Treas. Reg. §1.401(a)(4)-2(c).

**(5)**    **Year of Service Employer Contribution.** The Employer may elect under AA §6-2(e) to provide an Employer Contribution based on an Employee's Years of Service with the Employer. Unless designated otherwise under AA §6-2(e), an Employee earns a Year of Service for each Plan Year during which the Employee completes at least 1,000 Hours of Service. The Employer may designate an alternative definition of Year of Service under AA §6-2(e). The Employer Contribution will be allocated under the Year of Service allocation formula under AA §6-3(h). Amounts allocated on the basis of Years of Service must satisfy the general nondiscrimination rate group test under Treas. Reg. §1.401(a)(4)-2(c).

**(6)**    **Qualified Nonelective Contributions (QNECs).** Notwithstanding any contrary selections in the Adoption Agreement, for any Plan Year, the Employer may make a discretionary QNEC on behalf of Nonhighly Compensated Participants under the Plan. Such QNEC may be allocated as a uniform percentage of Plan Compensation or a uniform dollar amount to all Nonhighly Compensated Participants or as a Targeted QNEC (as defined in subsection (ii)(B) below), without regard to any allocation conditions selected in AA §6-7, unless designated otherwise under AA §6D-3.

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 38 of 177    Document 23-6

MTD Page 37

A QNEC must satisfy the requirements for a QNEC described in subsection (i) below at the time the contribution is made to the Plan, regardless of any inconsistent elections under the Plan Adoption Agreement. If the Employer elects to disaggregate the Plan for otherwise excludable Employees, the Employer may allocate the QNEC only to Participants in a particular disaggregated portion of the Plan.

If the Employer makes both a discretionary Employer Contribution under AA §6-2(a) and a discretionary QNEC, the Employer must designate the amount of the Employer Contribution which is designated as a regular Employer Contribution and the amount designated as a QNEC.

The Employer may make a QNEC to correct the ACP Test only if the Employer is using the Current Year Testing Method.

**(i)** **Requirements for a QNEC.** In order to qualify as a QNEC, an Employer Contribution must satisfy the following requirements:

**(A)** **100% vesting.** A QNEC must be 100% vested when contributed to the Plan.

**(B)** **Distribution restrictions.** A QNEC must be subject to the same distribution restrictions applicable to Salary Deferrals under Section 8.09(c), except that no portion of a Participant's QNEC Account may be distributed on account of Hardship. (See Section 8.09(e).)

**(C)** **Allocation conditions.** A QNEC will not be subject to the allocation provisions applicable to Employer Contributions, as designated under AA §6-3, unless provided otherwise under AA §6D-3.

**(ii)** **Allocation method for QNECs.**

**(A)** **Participants.** The Employer may allocate the QNEC as a uniform percentage of Plan Compensation or as a uniform dollar amount to all Nonhighly Compensated Participants Alternatively, the Employer may elect under AA §6D-3(a) to allocate any QNEC under the Plan to all Participants (rather than to just Nonhighly Compensated Participants).

**(B)** **Targeted QNEC.** The Employer may allocate the QNEC as a Targeted QNEC. If the Employer makes a Targeted QNEC, the QNEC will be allocated to Nonhighly Compensated Participants in the QNEC Allocation Group, starting with Nonhighly Compensated Participants with the lowest Plan Compensation for the Plan Year. For this purpose, the QNEC Allocation Group is made up of the Nonhighly Compensated Participants (equal to one-half of total Nonhighly Compensated Participants under the Plan), with the lowest level of Plan Compensation for the Plan Year.

**(I)** **5% of Plan Compensation limit.** The QNEC will be allocated to the Nonhighly Compensated Employees in the QNEC Allocation Group up to a maximum of 5% of Plan Compensation. The QNEC will be allocated first to the Nonhighly Compensated Participant(s) with the lowest Plan Compensation (up to the 5% of Plan Compensation maximum allocation) and continuing with Nonhighly Compensated Employees in the QNEC Allocation Group with the next higher level of Plan Compensation, until all of the QNEC has been allocated (or until all Nonhighly Compensated Employees in the QNEC Allocation Group have received the maximum 5% of Plan Compensation QNEC allocation).

**(II)** **Reallocation to lowest one-half of Nonhighly Compensated Participants.** If a QNEC remains unallocated after the allocation under subsection (I), the remaining QNEC will continue to be allocated in accordance with subsection (I), in increments equal to twice the level of QNEC allocated to the rest of the QNEC Allocation Group. Thus, for example, if a QNEC remains unallocated after allocating the full 5% of Plan Compensation to the QNEC Allocation Group, the QNEC will continue to be allocated up to 10% of Plan Compensation (twice the QNEC already allocated to the QNEC Allocation Group) beginning with the Nonhighly Compensated Employee in the QNEC Allocation Group with the lowest Plan Compensation.

**(III)** **Additional members in QNEC Allocation Group.** If at any time, a Nonhighly Compensated Participant is not able to receive a full QNEC allocation under subsection (I) or (II) (e.g., due to the application of the Code §415 Limitation), the Nonhighly

MTD Page 38

Compensated Participant with the next higher level of Plan Compensation (that is not in the QNEC Allocation Group) will be added to the QNEC Allocation Group.

(7) **Frozen Plan.** The Employer may designate under AA §2 that the Plan is a frozen Plan. As a frozen Plan, the Employer will not make any Employer Contributions with respect to Plan Compensation earned after the date identified in AA §2. In addition, if the Plan allows Salary Deferrals, no Participant will be permitted to make Elective Deferrals or After-Tax Employee Contributions to the Plan for any period following the effective date of the freeze as identified in AA §2. All amounts credited to an affected Participant's Account become 100% vested, regardless of the Participant's vested percentage. If the Plan holds any unallocated forfeitures at the time of the freeze, such forfeitures may be allocated to all eligible Participants in the year of the freeze, regardless of any contrary selections under AA §8-6.

**(b)** **Mandatory Contributions.** The Employer may elect under AA §6 to have Mandatory Contributions under the Plan. Mandatory Contributions are treated as Employer Contributions under the Plan.

**(c)** **Period for determining Employer Contributions.** In determining the amount of Employer Contributions to be allocated to Participants under the Plan, the Plan will take into account Plan Compensation for the Plan Year. The Employer may designate under the AA alternative periods for determining the allocation of Employer Contributions. If alternative periods are designated, a Participant's allocation of Employer Contributions will be determined separately for each designated period based on Plan Compensation earned during such period. If an alternative period is designated, the Employer need not actually make the Employer Contribution during the designated period, provided the total Employer Contribution for the Plan Year is allocated based on the proper Plan Compensation. (If the permitted disparity allocation method applies and the Employer is subject to the nondiscrimination requirements under Code §401(a)(4), the allocation will be based on the Plan Year.)

**(d)** **Offset of Employer Contributions.**

(1) **Offset of Employer Contributions by Safe Harbor Employer Contributions.** If the Plan provides for Safe Harbor Employer Contributions and such Safe Harbor Employer Contributions are not available to all eligible Participants, the Employer may elect under the AA to offset any additional Employer Contributions a Participant would otherwise receive by the amount of Safe Harbor Employer Contributions the Participant receives under the Plan. Thus, when allocating any additional Employer Contributions under the Plan, if so elected under the AA, no amounts will be allocated to Participants who receive a Safe Harbor Employer Contribution until the amount of additional Employer Contributions exceeds the amount of Safe Harbor Employer Contributions received under the Plan. For this purpose, if the permitted disparity allocation method applies, this offset applies only to the second step of the permitted disparity formula.

(2) **Offset for contributions under another qualified plan maintained by the Employer.** If the Employer maintains any other qualified plan(s) which cover any Participants under this Plan, the Employer may elect under the AA to reduce such Participants' allocation under this Plan to take into account the benefits provided under the Employer's other qualified plan(s). If applicable, for purposes of satisfying the coverage requirements under Code §410(b) and the nondiscrimination requirements under Code §401(a)(4), this Plan may need to be aggregated with such other qualified plan(s) in accordance with Treas. Reg. §1.410(b)-7. The Employer may attach an addendum to the Adoption Agreement describing how the offset will be applied.

**3.03** **Salary Deferrals.** Subject to the terms of the applicable Investment Arrangement(s), the Employer may elect under AA §6A to authorize Participants to make Salary Deferrals under the Plan. A Participant's total Salary Deferrals under this Plan may not exceed the Elective Deferral Dollar Limit described under Section 5.02 or the amount permitted under the Code §415 Limitation described under Section 5.03. Subject to the universal availability requirements, the Employer may elect under AA §6A-2 to apply a different limit on Salary Deferrals.

**(a)** **Salary Reduction Agreement.** In order to make Salary Deferrals under the Plan, a Participant must enter into a Salary Reduction Agreement which authorizes the Employer to withhold a specific dollar amount or a specific percentage from the Participant's Plan Compensation. The Salary Reduction Agreement may permit a Participant to specify a different percentage or dollar amount be withheld from specified components of Plan Compensation, such as base pay, bonuses, commissions, etc. The Employer may apply special limits on the amount of Salary Deferrals that may be deferred from bonus payments or may apply special deferral limits applicable to bonus payments under the Salary Reduction Agreement, without regard to any limitations selected under the Adoption Agreement. The Employer will deposit any amounts withheld from a Participant's Plan Compensation as Salary Deferrals into the Participant's Salary Deferral Account under the Plan. A Salary Reduction Agreement may only relate to Plan Compensation that is not currently available at the time the Salary Reduction Agreement is completed. The Salary Reduction Agreement may provide that the Employee's deferral election will increase by a designated amount unless the Employee affirmatively elects otherwise. In determining the amount to be withheld from a Participant's Plan Compensation, the Plan Administrator

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 40 of 177    Document 23-6

MTD Page 39

may round any Salary Reduction Agreement election to the next highest or lowest whole dollar amount and may require that any Salary Reduction Agreement election must designate a whole percentage of Plan Compensation for a Salary Deferral. The Employer may designate under AA §6A-9 to apply a special effective date as of which Participants may begin making Salary Deferrals under the Plan. Regardless of any special effective date designated under AA §6A-9, a Salary Reduction Agreement may not be effective prior to the later of:

(1)  the date the Employee becomes a Participant;

(2)  the date the Participant executes the Salary Reduction Agreement; or

(3)  the date the Plan is first adopted or effective.

For this purpose, Salary Deferrals may be taken into account for a Plan Year only if the Salary Deferrals are allocated to the Employee's Account as of a date within that Plan Year. For this purpose, Salary Deferrals are considered allocated as of a date within a Plan Year only if the allocation is not contingent on the Employee's participation in the Plan or performance of services on any subsequent date and the Salary Deferrals are actually paid to the Plan no later than the end of the 12-month period immediately following the year to which the contribution relates. In addition, the Salary Deferrals must relate to Plan Compensation that either would have been received by the Employee in the Plan Year but for the Employee's election to defer or are attributable to services performed by the Employee in the Plan Year and, but for the Employee's election to defer, would have been received by the Employee within 2½ months after the close of the Plan Year.

In addition, Salary Deferrals made pursuant to a Salary Reduction Agreement may not be made earlier than the date the Participant performs the services to which such Salary Deferrals relate or the date the compensation subject to such Salary Reduction Agreement would be currently available to the Participant absent the deferral election (if earlier). Regardless of when a Participant elects to commence making Salary Deferrals, the Employer may delay commencement for a reasonable period of time in order to implement the Salary Reduction Agreement.

A Salary Reduction Agreement is valid even though it is executed by an Employee before he/she actually has qualified as a Participant, so long as the Salary Reduction Agreement is not effective before the date the Employee is a Participant.

Unless a Salary Reduction Agreement is otherwise revised, if an Employee is absent from work by leave of absence, Salary Deferrals under the Plan shall continue to the extent that Plan Compensation continues.

(b)  **Change in deferral election.** An Employee must be permitted to enter into a new Salary Reduction Agreement or to modify or terminate an existing Salary Reduction Agreement at least once a year. The Employer may designate additional dates on the Salary Reduction Agreement form (or other written procedures) as to when a Participant may modify or terminate a Salary Reduction Agreement. Any election to modify or terminate a Salary Reduction Agreement will take effect within a reasonable period following such election and will apply only on a prospective basis. The Employer may allow an Employee to increase his/her deferral election up to the Elective Deferral Dollar Limit at any time during the last two months of the Plan Year. The rules for modifying a Salary Reduction Agreement are subject to the terms governing the applicable Investment Arrangement.

(c)  **Automatic Contribution Arrangement.** The Employer may elect under AA §6A-8 to provide for an automatic deferral election under the Plan. If the Employer elects to apply an automatic deferral election, the Employer will automatically withhold the amount designated under AA §6A-8 from Participants' Plan Compensation, unless the Participant completes a Salary Reduction Agreement electing a different deferral amount (including a zero deferral amount). Unless provided otherwise under AA §6A-8, an Employee who is automatically enrolled under a prior plan document will continue to be automatically enrolled under the current Plan document.

(1)  **Eligible Automatic Contribution Arrangement (EACA).** To the extent an Automatic Contribution Arrangement satisfies the requirements of an EACA for a Plan Year, as set forth below, such Automatic Contribution Arrangement will automatically qualify as an EACA for purposes of applying the special rules applicable to EACAs described in subsection (2) below. If an Automatic Contribution Arrangement does not satisfy the requirement for an EACA for an entire Plan Year, the Automatic Contribution Arrangement will not be eligible for the special EACA provisions under subsection (3) for such Plan Year. However, the Automatic Contribution Arrangement continues to apply for such Plan Year and the failure to qualify as an EACA has no impact on the qualified status of the Plan or on the Employer's ability to rely on the Favorable IRS Letter issued with respect to the Plan. Thus, the provisions under subsection (2) will continue to apply as selected in AA 6A-8 for the Plan Year, even if the Automatic Contributions Arrangement does not qualify as an EACA for the entire Plan Year. For this purpose, an Automatic Contribution Arrangement that satisfies the requirements for a QACA under Section 6.04(b) also may qualify as an EACA under this subsection (c).

MTD Page 40

**(2)** **Definition of Eligible Automatic Contribution Arrangement (EACA).** The Plan will qualify as an EACA if the Plan provides for an automatic deferral election (as described in subsection (i)) and provides an annual written notice as described in subsection (iv) below. Any Salary Deferrals withheld pursuant to an automatic deferral election will be deposited into the Participant's Salary Deferral Account.

**(i)** **Automatic deferral election.** To qualify as an EACA, each Employee eligible to participate in the Plan must have a reasonable opportunity after receipt of the notice described in subsection (iv) to make an affirmative election to defer (or an election not to defer) under the Plan before any automatic deferral election goes into effect. If an automatic deferral election applies under the Plan, such election will not apply to Participants who have entered into a Salary Reduction Agreement for an amount equal to or greater than the automatic deferral amount designated under AA §6A-8. The Employer also may elect to apply the automatic deferral election only to Participants who become eligible to participate after a specified date. If the Plan otherwise qualifies as an EACA but the automatic contribution arrangement does not apply to all eligible Employees (who have not entered into an affirmative deferral election), the Plan will not qualify for the extended 6-month correction period described in subsection (3)(ii) below.

An automatic deferral election ceases to apply with respect to any Employee who makes an affirmative election (that remains in effect) to make Salary Deferrals or to not have any Salary Deferrals made on his/her behalf. Salary Deferrals made pursuant to an automatic deferral election will cease as soon as administratively feasible after an Eligible Employee makes an affirmative deferral election. In addition, automatic deferrals will be reduced or stopped to meet the limitations under Code §§402(g), and 415 and to satisfy any suspension period required after a distribution.

Unless elected otherwise under AA §6A-8(a)(6)(i), a Participant's affirmative election to defer (or to not defer) will cease upon termination of employment. If a terminated Participant's affirmative election to defer (or to not defer) ceases upon termination of employment, the Participant will be subject to the automatic deferral provisions of this subsection (i) upon rehire, including the default election provisions and the notice requirements under subsection (iv) below.

**(ii)** **Uniformity requirement.** If an Eligible Employee does not make an affirmative deferral election, such Employee will be treated as having elected to make Salary Deferrals in an amount equal to a uniform percentage of Plan Compensation as set forth in AA §6A-8. For this purpose, an automatic deferral election will not fail to be a uniform percentage of Plan Compensation merely because:

**(A)** The deferral percentage varies based on the number of years an eligible Employee has participated in the Plan (e.g., due to the application of an automatic increase provisions);

**(B)** The automatic deferral election does not reduce a Salary Deferral election in effect immediately prior to the effective date of the automatic deferral election;

**(C)** The rate of Salary Deferrals is limited so as not to exceed the limits of Code §402(g) (determined with or without Catch-Up Contributions) and 415; or

**(D)** The automatic deferral election is not applied during the period an employee is not permitted to make Salary Deferrals.

**(iii)** **Automatic increase.** The Plan may provide under AA §6A-8 that the automatic deferral amount will automatically increase by a designated percentage each Plan Year. Unless designated otherwise under AA §6A-8(a)(5), in applying any automatic deferral increase under AA §6A-8, the initial deferral amount will apply for the period that begins when the employee first participates in the automatic contribution arrangement and ends on the last day of the following Plan Year. The automatic increase will apply for each Plan Year beginning with the Plan Year immediately following the initial deferral period and for each subsequent Plan Year. For example, if an Employee makes his/her first automatic deferral for the period beginning July 1, 2017, and no special election is made under AA §6A-8(a)(5), the first automatic increase would take effect on January 1, 2019 (assuming the Plan is using a calendar Plan Year) which is the first day of the Plan Year beginning after the first Plan Year following the period for which the Employee makes his/her first automatic deferral under the Plan.

**(iv)** **Annual notice requirement.** Each eligible Employee must receive a written notice describing the Participant's rights and obligations under the Plan which is sufficiently accurate and comprehensive to apprise the Employee of such rights and obligations, and is written in a manner calculated to be understood by the average Plan Participant. The annual notice only needs to be provided to those

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 42 of 177   Document 23-6

MTD Page 41

Employees who are covered under the Automatic Contribution Arrangement. If it is impractical to provide the annual notice to a newly eligible Participant before the date such individual becomes eligible to participate under the Plan, the notice will be treated as timely if it is provided as soon as practicable after such date and the Employee is permitted to defer from Plan Compensation earned beginning on the date of participation.

**(A)** **Contents of annual notice.** To qualify as an EACA, the annual notice must contain the same information as applies for purposes of the safe harbor notice described under Section 6.04. However, to qualify as an EACA, the annual notice must also include a description of:

**(I)** the level of Salary Deferrals which will be made on the Employee's behalf if the Employee does not make an affirmative election;

**(II)** the Employee's right under the EACA to elect not to have Salary Deferrals made on the Employee's behalf (or to elect to have such Salary Deferrals made in a different amount or percentage of Plan Compensation);

**(III)** how contributions under the EACA will be invested and, if the Plan provides for Participant direction of investment, how Salary Deferrals made pursuant to an automatic deferral election will be invested in the absence of an investment election by the Employee; and

**(IV)** the Employee's right to make a permissible withdrawal (as described under subsection (3)(i) below), if applicable, and the procedures to elect such a withdrawal.

**(B)** **Timing of annual notice.** The annual notice described under this subsection (iv) must be provided at the same time and in the same manner as the annual safe harbor notice described in Section 6.04. The annual notice must be provided within a reasonable period before the beginning of each Plan Year (or, in the year an Employee becomes an eligible Employee, within a reasonable period before the Employee becomes an eligible Employee). In addition, a notice satisfies the timing requirements only if it is provided sufficiently early so that the Employee has a reasonable period of time after receipt of the notice and before the first Salary Deferral made under the arrangement to make an alternative deferral election.

The annual notice will be deemed timely if it is provided to each eligible Employee at least 30 days (and no more than 90 days) before the beginning of each Plan Year. In the case of an Employee who does not receive the notice within such period because the Employee becomes an eligible Employee after the 90th day before the beginning of the Plan Year, the timing requirement is deemed to be satisfied if the notice is provided no more than 90 days before the Employee becomes an eligible Employee (and no later than the date the Employee becomes an eligible Employee).

**(v)** **Timing of automatic deferral.** Generally, the automatic deferral will commence as of the date the Employee is otherwise eligible to make Salary Deferrals under the Plan, if the Employee had completed a Salary Reduction Agreement. However, the automatic deferral will be treated as timely if the automatic deferral commences no later than the earlier of the pay date for the second payroll period or the pay date that occurs at least 30 days following the later of:

**(A)** the date on which the Employee first becomes an Eligible Employee (or becomes an Eligible Employee following a rehire); or

**(B)** the date on which such Employee is provided notice of the automatic deferral.

**(3)** **Special Rules for Eligible Automatic Contribution Arrangement (EACA).** If the Plan provides for an automatic deferral election provision under AA §6A-8 and such automatic deferral election qualifies as an EACA, the Employer may elect to offer special permissible withdrawals (as set forth in subsection (i) below) and will qualify for the special delayed testing date for purposes of making refunds of Excess Aggregate Contributions (as described in subsection (ii) below). To qualify as an EACA, the Plan must satisfy the provisions of subsection (2) for the entire Plan Year. Generally, a Plan that satisfies the QACA requirements will also satisfy the requirements for an EACA.

**(i)** **Permissible Withdrawals under EACA.** If so elected under AA §6A-8(b), any Employee who has Salary Deferrals contributed to the Plan pursuant to an automatic deferral election under an EACA may

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 43 of 177   Document 23-6

MTD Page 42

elect to withdraw such contributions (and earnings attributable thereto) in accordance with the requirements of this subsection (i). A permissible withdrawal under this subsection (i) may be made without regard to any elections under AA §10 and will not cause the Plan to fail the prohibition on in-service distribution applicable to Salary Deferrals under Section 8.09(c). In addition, such withdrawal may be made without regard to any notice or consent otherwise required under Code §401(a)(11) or §417. Any Salary Deferrals that are distributed under this subsection (i) are not taken into account under the ACP Test for the Plan Year for which the Salary Deferrals were made or for any other Plan Year.

(A) **Amount of distribution.** A distribution satisfies the requirement of this subsection (i) if the distribution is equal to the amount of Salary Deferrals made pursuant to the automatic deferral election through the effective date of the withdrawal election (as described in subsection (C)) adjusted for allocable gains and losses as of the date of the distribution.

The distribution amount determined under this subsection (A) may be reduced by any generally applicable fees. However, the Plan may not charge a greater fee for a permissible distribution under this subsection (i) than applies with respect to other Plan distributions.

(B) **Timing of permissive withdrawal election.** An election to withdraw Salary Deferrals under this subsection (i) must be made no later than 90 days after the date of the first default Salary Deferral under the EACA. The date of the first default Salary Deferral is the date that the Plan Compensation from which such Salary Deferrals are withheld would otherwise have been included in gross income. The Employer may designate an alternative period for making permissive withdrawals under AA §6A-8(b)(3).

(C) **Effective date of permissible withdrawal.** The effective date of a permissible withdrawal election cannot be later than the pay date for the second payroll period that begins after the election is made or, if earlier, the first pay date that occurs at least 30 days after the election is made. If an Employee does not make automatic deferrals to the Plan for an entire Plan Year (e.g., due to termination of employment), the Plan may allow such Employee to take a permissive withdrawal, but only with respect to default contributions made after the Employee's return to employment.

(D) **Consequences of permissible withdrawal.** Any amount distributed under this subsection (i) is includible in the Employee's gross income for the Taxable Year in which the distribution is made. However, the portion of any distribution consisting of Roth Deferrals is not included in an Employee's gross income a second time. In addition, a permissible withdrawal under this subsection (i) is not subject to any penalty tax under Code §72(t). Unless the Employee affirmatively elects otherwise, any withdrawal request will be treated as an affirmative election to stop having Salary Deferrals made on the Employee's behalf as of the date specified in subsection (C) above.

(E) **Forfeiture of Matching Contributions.** In the case of any withdrawal made under this subsection (i), any Matching Contributions made with respect to such withdrawn Salary Deferrals must be forfeited. Any forfeiture of Matching Contributions under this subsection (E) will be made in accordance with the requirements of Section 7.11.

(ii) **Expansion of corrective distribution period for EACAs.** If the Plan qualifies as an EACA (as defined in subsection (2) above), the corrective distribution provisions applicable to Excess Aggregate Contributions under Section 6.02(b)(2) are modified to allow a corrective distribution no later than 6 months (instead of 2½ months) after the last day of the Plan Year in which such excess amounts arose to avoid the 10% excise tax with respect to such corrective distributions.

(iii) **Preemption of state law.** In applying the provisions of this subsection (c), if the Plan satisfies the requirements for an EACA (as defined under subsection (2)), any law of a State which would directly or indirectly prohibit or restrict the inclusion of an automatic contribution arrangement shall be superseded.

(d) **Age 50 Catch-Up Contributions.** If permitted under AA §6A-4 and subject to the terms of the applicable Investment Arrangement(s), a Participant who is aged 50 or over by the end of his/her Taxable Year beginning in the calendar year may make Age 50 Catch-Up Contributions under the Plan, provided such Age 50 Catch-Up Contributions are in excess of an otherwise applicable limit under the Plan. For this purpose, an otherwise applicable Plan limit is a limit in the Plan that applies to Salary Deferrals without regard to Age 50 Catch-up Contributions, such as the Code §415 Limitation (described in Section 5.03) and the Elective Deferral Dollar Limit (described in Section 5.02).

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 44 of 177   Document 23-6

MTD Page 43

**(1)** **Age 50 Catch-Up Contribution Limit.** Age 50 Catch-up Contributions for a Participant for a Taxable Year may not exceed the Age 50 Catch-Up Contribution Limit. The Age 50 Catch-Up Contribution Limit for Taxable Years beginning in 2015 is $6,000. For Taxable Years beginning after 2015, the Age 50 Catch-Up Contribution Limit will be adjusted for cost-of-living increases under Code §414(v)(2)(C).

**(2)** **Special treatment of Catch-Up Contributions.** Age 50 Catch-up Contributions are not subject to the Elective Deferral Dollar Limit or the Code §415 Limitation.

**(e)** **Special Catch-Up Contributions for certain Employees of Qualified Organizations.** If permitted under AA §6A-4 and subject to the terms of the applicable Investment Arrangement(s), solely for a Participant who is an Employee with 15 years of service (as defined in Treas. Reg. §1.403(b)-4(c)(3)) with an Employer that is a Qualified Organization (a "Qualified Employee"), the limit under Code §402(g) for a Participant's Taxable Year is increased to the least of the following:

**(1)** $3,000;

**(2)** The excess of:

    **(i)** $15,000, reduced by

    **(ii)** The total Special §403(b) Catch-up Contributions made for the Qualified Employee by the Qualified Organization for prior years; or

**(3)** The excess of:

    **(i)** $5,000 multiplied by the number of Years of Service of the Employee with the Qualified Organization, reduced by

    **(ii)** The total Salary Deferrals made for the Employee by the Qualified Organization for prior years.

**(f)** **Coordination of Age 50 Catch-Up Contributions and Special Catch-Up Contributions.** The Plan will treat any catch-up amount that is contributed by an Employee who is eligible for both the Age 50 Catch-Up Contribution and Special Catch-Up Contribution first as a Special Catch-Up Contribution to the extent permitted and then as an Age 50 Catch-Up Contribution. However, in no event may the amount of Salary Deferrals for a year exceed the Participant's Plan Compensation for the year.

**(g)** **Roth Deferrals.** If permitted under AA §6A-5 and subject to the terms of the applicable Investment Arrangement(s), a Participant may designate all or a portion of his/her Salary Deferrals as Roth Deferrals. For this purpose, a Roth Deferral is a Salary Deferral that satisfies the following conditions.

**(1)** **Irrevocable election.** The Participant makes an irrevocable election (at the time the Participant enters into his/her Salary Reduction Agreement) designating all or a portion of his/her Salary Deferrals as Roth Deferrals. The irrevocable election applies with respect to Salary Deferrals that are made pursuant to such election. A Participant may modify or change a Salary Reduction Agreement to increase or decrease the amount of Salary Deferrals designated as Roth Deferrals, provided such change or modification applies only with respect to Salary Deferrals made after such change or modification. (See subsection (b) above for rules regarding the timing of permissible changes or modifications to a Participant's Salary Reduction Agreement.)

**(2)** **Subject to immediate taxation.** To the extent a Participant designates all or a portion of his/her Salary Deferrals as Roth Deferrals, such amounts will be includible in the Participant's income at the time the Participant would have received the contribution amounts in cash if the Employee had not made the Salary Deferral election.

**(3)** **Separate account.** Any amounts designated as Roth Deferrals will be maintained by the Plan in a separate Roth Deferral Account. The Plan will credit and debit all contributions and withdrawals of Roth Deferrals to such separate Account. The Plan will separately allocate gains, losses, and other credits and charges to the Roth Deferral Account on a reasonable basis that is consistent with such allocations for other Accounts under the Plan. However, in no event may the Plan allocate forfeitures under the Plan to the Roth Deferral Account. The Plan will separately track Participants' accumulated Roth Deferrals and the earnings on such amounts.

**(4)** **Satisfaction of Salary Deferral requirements.** Roth Deferrals are subject to the same requirements as apply to Salary Deferrals. Thus, Roth Deferrals are subject to the following requirements:

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 45 of 177   Document 23-6

MTD Page 44

    **(i)**    Roth Deferrals are always 100% vested;

    **(ii)**    Roth Deferrals are subject to the Elective Deferral Dollar Limit. For this purpose, all Salary Deferrals (both Pre-Tax Deferrals and Roth Deferrals) are aggregated in applying the Elective Deferral Dollar Limit;

    **(iii)**    Roth Deferrals are subject to the same distribution restrictions as apply to Salary Deferrals under Section 8.09(c); and

    **(iv)**    Roth Deferrals are subject to the required minimum distribution requirements under Code §401(a)(9).

**(5)**    <u>Rollover of Roth Deferrals.</u>

    **(i)**    <u>Rollovers from this Plan.</u> For purposes of the rollover rules under Section 8.05, a Direct Rollover of a distribution from a Participant's Roth Deferral Account will only be made to another Roth Deferral Account under a qualified plan described in Code §401(a) or an annuity contract or custodial account described in Code §403(b) or to a Roth IRA described in §408A, and only to the extent the rollover is permitted under the rules of Code §402(c).

    **(ii)**    <u>Rollovers to this Plan.</u> Subject to the provisions under Article 4, a Participant may make a Rollover Contribution to his/her Roth Deferral Account only if the rollover is a Direct Rollover from another Roth Deferral Account under a qualified retirement plan (as described in Article 4) and only to the extent the rollover is permitted under the rules of Code §402(c). A rollover of Roth Deferrals may not be made to this Plan from a Roth IRA. Any rollover of Roth Deferrals to this Plan will be held in a separate Roth Rollover Account.

    **(iii)**    <u>Minimum rollover amount.</u> The Plan will not provide for a Direct Rollover (including an Automatic Rollover) for distributions from a Participant's Roth Deferral Account if it is reasonably expected (at the time of the distribution) that the total amount the Participant will receive as a distribution during the calendar year will total less than $200. In addition, any distribution from a Participant's Roth Deferral Account is not taken into account in determining whether distributions from a Participant's other Accounts are reasonably expected to total less than $200 during a year. However, Eligible Rollover Distributions from a Participant's Roth Deferral Account are taken into account in determining whether the total amount of the Participant's Account Balances under the Plan exceeds $1,000 for purposes of applying the Automatic Rollover provisions under Section 8.06.

    **(iv)**    <u>Separate treatment of Roth Deferrals.</u> The provisions under Section 8.05 that allow a Participant to elect a Direct Rollover of only a portion of an Eligible Rollover Distribution but only if the amount rolled over is at least $500 is applied by treating any amount distributed from the Participant's Roth Deferral Account as a separate distribution from any amount distributed from the Participant's other Accounts in the Plan, even if the amounts are distributed at the same time.

**(h)**    **In-Plan Roth Conversions.** The Employer may elect under the Adoption Agreement to permit In-Plan Roth Conversions under the Plan. For this purpose, an In-Plan Roth Conversion is a conversion of amounts held in a Participant's Plan Account, other than a Roth Deferral Account or Roth Rollover Account, into the Participant's In-Plan Roth Conversion Account under the Plan, pursuant to Code §402A(c)(4). Any election to make an In-Plan Roth Conversion during a Taxable Year may not be changed after the In-Plan Roth Conversion is completed. (For In-Plan Roth Conversions completed prior to January 1, 2013, a Participant had to be eligible to receive a distribution of the converted amounts at the time of the In-Plan Roth Conversion.)

An In-Plan Roth Conversion may be elected by a Participant, a Spousal beneficiary, or an Alternate Payee who is a Spouse or former Spouse. To the extent the term "Participant" is used for purposes of determining eligibility to make an In-Plan Roth Conversion, such term will also include a Spousal beneficiary and an Alternate Payee who is a Spouse or former Spouse.

To permit In-Plan Roth Conversions, the Plan must provide for Roth Deferrals under AA §6A-5(a) as of the date the In-Plan Roth Conversion is permitted under the Plan. If In-Plan Roth Conversions are not specifically authorized under AA §6A-5(c), Participants may not make an In-Plan Roth Conversion.

**(1)**    <u>Amounts Eligible for In-Plan Roth Conversion.</u> If permitted under the Adoption Agreement, a Participant may convert any portion of his/her vested Account Balance (other than amounts attributable to Roth Deferrals or Roth Deferral rollovers) to an In-Plan Roth Conversion Account. Unless elected otherwise under the Adoption

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 46 of 177   Document 23-6

MTD Page 45

Agreement, a Participant need not be eligible to receive a distribution from the Plan at the time of the In-Plan Roth Conversion.

In addition, an In-Plan Roth Conversion will not be treated as a distribution for the following purposes:

(i) **Participant loans.** A Participant loan directly transferred in an In-Plan Roth Conversion without changing the repayment schedule is not treated as a new loan. The Employer may elect in the Adoption Agreement to not permit Participant loans to be distributed as part of an In-Plan Roth Conversion.

(ii) **Spousal consent.** An In-Plan Roth Conversion is not treated as a distribution for purposes of applying the spousal consent requirements under the Plan. Thus, a married Plan Participant is not required to obtain spousal consent in connection with an election to make an In-Plan Roth Conversion, even if the Plan is otherwise subject to spousal consent requirements.

(iii) **Participant consent.** An In-Plan Roth Conversion is not treated as a distribution for purposes of applying the participant consent requirements under Code §411(a)(11). Thus, amounts that are converted as part of an In-Plan Roth Conversion continue to be taken into account in determining whether the Participant's vested Account Balance exceeds $5,000 for purposes of applying the Involuntary Cash-Out provisions and will not trigger the requirement for a notice of the Participant's right to defer receipt of the distribution.

(2) **Mandatory withholding.** An In-Plan Roth Conversion is not subject to 20% mandatory withholding under Code §3405(c).

(3) **Distribution restrictions.** Generally, a distribution will be permitted from the In-Plan Roth Conversion Account to the extent permitted for regular Roth Deferrals under AA §10-1. The distribution restrictions normally applicable to Roth Deferrals, as described in Section 8.09(c), do not apply to the extent the conversion is from a contribution source that is not otherwise subject to the distribution restrictions applicable to Roth Deferrals. In addition, distribution restrictions that otherwise apply with respect to a specific contribution source will continue to apply if such contribution source is converted to Roth Deferrals. For example, if Safe Harbor Contributions are converted to Roth Deferrals, such amounts may not be distributed on account of hardship or other event not otherwise permitted under Section 8.09(c), unless permitted otherwise under IRS guidance.

(4) **Effect of In-Plan Roth Conversion.** A Participant must include in gross income the taxable amount of an In-Plan Roth Conversion. For this purpose, the taxable amount of an In-Plan Roth Conversion is the fair market value of the distribution reduced by any basis in the converted amounts. If an outstanding loan is rolled over as part of an In-Plan Roth Conversion, the amount includible in gross income includes the balance of the loan.

Generally, the taxable amount of an In-Plan Roth Conversion is includible in gross income in the Taxable Year in which the conversion occurs.

(5) **Application of Early Distribution Penalty under Code §72(t).** An In-Plan Roth Conversion is not subject to the early distribution penalty under Code §72(t) at the time of the conversion. However, if an amount allocable to the taxable amount of an In-Plan Roth Conversion is subsequently distributed within the 5-taxable-year period beginning with the first day of the Participant's Taxable Year in which the conversion was made, the amount distributed is treated as includible in gross income for purposes of applying the Code §72(t) early distribution penalty. For this purpose, the 5-taxable-year period ends on the last day of the Participant's fifth Taxable Year in the period. This subsection (5) will not apply to the extent the distribution is rolled over to a Roth account in another qualified plan or is rolled over to a Roth IRA. However, the rule under this subsection (5) will apply to any subsequent distributions made from such other Roth account or Roth IRA within the 5-taxable-year period.

(6) **Contribution Sources.** Unless elected otherwise under the Adoption Agreement, an In-Plan Roth Conversion may be made from any contribution source under the Plan, other than a Roth Deferral Account or Roth Rollover Account. The Employer may elect to limit the contribution sources that are eligible for In-Plan Roth Conversion. In addition, the Employer may elect to limit In-Plan Roth Conversions to contribution accounts that are 100% vested.

(i) **Non-ERISA Salary Reduction Only Plan.** If the Plan is funded solely through Salary Reduction Agreements with Employees, the Plan is not subject to the requirements under Title I of ERISA if it satisfies the safe harbor conditions of Department of Labor regulation §2510.3-2(f). The Plan must also satisfy the requirements under Department of Labor Field Assistance Bulletins 2007-02 and 2010-01.

(1) **Safe harbor conditions.** The safe harbor conditions are:

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 47 of 177   Document 23-6

MTD Page 46

    **(i)**    The participation of Employees is completely voluntary;

    **(ii)**    All rights under the applicable Annuity Contract or Custodial Account are enforceable solely by the Employee or beneficiary of such Employee, or by an authorized representative of such Employee or beneficiary;

    **(iii)**    The involvement of the Employer is limited to certain optional specified activities, including:

        **(A)**    The Employer may permit annuity contractors—including agents or brokers who offer Annuity Contracts or make available Custodial Accounts—to publicize their products.

        **(B)**    The Employer may request information concerning proposed funding media, products, or annuity contractors, and may compile such information to facilitate review and analysis by the Employees.

        **(C)**    The Employer may enter into Salary Reduction Agreements and collect Annuity Contract or Custodial Account considerations required by the agreements, remit them to annuity contractors, and maintain records of such collections.

        **(D)**    The Employer may hold one or more group Annuity Contracts in the Employer's name covering its Employees and exercise rights as representative of its Employees under the contract, at least with respect to amendments of the contract.

        **(E)**    The Employer may limit funding media or products available to Employees, or annuity contractors who may approach the Employees, to a number and selection designed to afford Employees a reasonable choice in light of all relevant circumstances.

        **(F)**    The Employer may comply with the requirements of the IRS regulations under Code §403(b), including having a written plan document.

    **(iv)**    The Employer receives no direct or indirect consideration or compensation in cash or otherwise other than reasonable reimbursement to cover expenses properly and actually incurred in performing the employer's duties pursuant to the salary reduction agreements;

    **(v)**    The Employer must generally offer a choice of more than one Vendor and more than one investment product; and

    **(vi)**    The Employer may not have discretionary authority to exchange or move Employee funds.

  **(2)**    <u>**Satisfaction of the safe harbor conditions of Department of Labor regulation §2510.3-2(f).**</u> If the Plan satisfies the safe harbor conditions of Department of Labor regulation §2510.3-2(f), the Plan is not subject to the requirements of Title I of ERISA that are enumerated under the terms of this Plan.

  **(3)**    <u>**Failure to satisfy the safe harbor conditions of Department of Labor regulation §2510.3-2(f).**</u> If the Plan fails to satisfy the safe harbor conditions of Department of Labor regulation §2510.3-2(f) at the inception of the Plan or at any later time, the Plan is subject to the requirements of Title I of ERISA that are enumerated under the terms of this Plan.

**3.04**    <u>**Matching Contributions.**</u> The Employer may elect under AA §6B to authorize Matching Contributions under the Plan. If the Employer elects more than one Matching Contribution formula under AA §6B-2, each formula is applied separately. A Participant's aggregate Matching Contributions will be the sum of the Matching Contributions under all such formulas. Any Matching Contribution made under the Plan will be allocated to Participants' Matching Contribution Account. To receive an allocation of Matching Contributions, a Participant must satisfy any allocations conditions designated under the Plan.

A contribution will not be considered a Matching Contribution if such contribution is contributed before the underlying Salary Deferral or After-Tax Employee Contribution election is made or before an Employee performs the services with respect to which the underlying Salary Deferrals or After-Tax Employee Contributions are made (or when the cash that is subject to such election would be currently available, if earlier). A Matching Contribution will not be treated as failing to satisfy the requirements of this paragraph merely because contributions are occasionally made before the Employee performs the services with respect to which the underlying Salary Deferral or After-Tax Employee Contribution election is made (or when the cash that is subject to such elections would be currently available, if earlier) in order to accommodate bona fide administrative considerations (and such amounts are not paid early for the principal purpose of accelerating deductions).

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 48 of 177   Document 23-6

MTD Page 47

(a) **Contributions eligible for Matching Contributions.** The Matching Contribution formula(s) apply to Salary Deferrals made under the Plan, to the extent authorized under the Adoption Agreement. The Employer may elect under AA §6D-2(c) to include After-Tax Employee Contributions in the Matching Contribution formula(s). If the Matching Contribution formula(s) applies to both Salary Deferrals and After-Tax Employee Contributions, such contributions are aggregated to determine the Matching Contributions under the Plan. Any reference to Salary Deferrals under the Matching Contribution formula(s) includes After-Tax Employee Contributions to the extent such amounts are eligible for Matching Contributions under the Plan.

In addition, the Employer may elect under AA §6B-3(b) to match Elective Deferrals under another 403(b) plan, a qualified plan under Code §401(a) or 457 plan maintained by the Employer. If the Employer elects to make a Matching Contribution based on the Employee's Elective Deferrals or Roth Deferrals under another 403(b) plan, a qualified plan under Code §401(a) or §457 plan, the Employer shall make a Matching Contribution on behalf of any eligible Participant who makes Elective Deferrals or Roth Deferrals to the plan designated under AA §6B-3(b). Any such Matching Contribution made to the Plan will be allocated in accordance with any special provisions added under AA §6B-3(b). Any such Matching Contributions will be in addition to any Matching Contributions made with respect to Salary Deferrals or After-Tax Employee Contributions under this Plan.

(b) **Period for determining Matching Contributions.** AA §6B-5 sets forth the period for which the Matching Contribution formula(s) applies. For this purpose, the period designated in AA §6B-5 applies for purposes of determining the amount of Salary Deferrals (and After-Tax Employee Contributions, if applicable) taken into account in applying the Matching Contribution formula(s) and in applying any limits on the amount of Salary Deferrals that may be taken into account under the Matching Contribution formula(s).

If the Employer elects a discretionary Matching Contribution under AA §6B-2, the Employer may elect to make a different Matching Contribution for each period designated in AA §6B-5. Thus, for example, if the discretionary Matching Contribution is based on the Plan Year quarter under AA §6B-5, the Employer may elect to make a different level of Matching Contribution for each Plan Year quarter. The Matching Contribution for the full Plan Year must be taken into account in applying the ACP Test with respect to such Plan Year.

(c) **True-up contributions.** If the Employer makes Matching Contributions more frequently than annually, the Employer may have to make true-up contributions for Participants. True-up contributions will be required if the Employer actually contributes Matching Contributions to the Plan on a more frequent basis than the period that is used to determine the amount of the Matching Contributions under AA §6B-5 or AA §6C-2(a)(3) with respect to Safe Harbor Contributions. For example, if Matching Contributions apply with respect to Salary Deferrals made for the Plan Year, but the Employer contributes the Matching Contributions on a quarterly basis, the Employer may have to make a true-up contribution to any Participant based on Salary Deferrals for the Plan Year. If a true-up contribution is required under this subsection, the Employer may make such additional contribution as required to satisfy the contribution requirements under the Plan. Similar true-up contribution requirements will apply with respect to Safe Harbor/QACA Safe Harbor Matching Contributions under Section 6.04. If true-up contributions will not be made for any Participant under the Plan, payroll period should be selected under AA §6B-5(a) or AA §6C-2(a)(3)(i), as applicable.

If a period other than the Plan Year is selected under AA §6B-5, the Employer may make an additional discretionary Matching Contribution equal to the true-up contribution that would otherwise be required if Plan Year was selected under AA §6B-5. If an additional discretionary Matching Contribution is made under this subsection (c), such contribution must be provided to all eligible Participants who would otherwise be entitled to a true-up contribution based on Plan Compensation for the Plan Year.

**3.05 Safe Harbor/QACA Safe Harbor Contributions.** The Employer may elect under AA §6C to treat the Plan as a Safe Harbor 403(b) Plan. To qualify as a Safe Harbor 403(b) Plan, the Employer must make a Safe Harbor/QACA Safe Harbor Employer Contribution or a Safe Harbor/QACA Safe Harbor Matching Contribution. Such contributions are subject to special vesting and distribution restrictions and will be allocated to a Participant's Safe Harbor/QACA Safe Harbor Employer Contribution Account or Safe Harbor/QACA Safe Harbor Matching Contribution Account, as applicable. (See Section 6.04 for the requirements that must be met to qualify as a Safe Harbor 403(b) Plan.)

**3.06 After-Tax Employee Contributions.** The Employer may elect under AA §6D-2 to allow Participants to make After-Tax Employee Contributions under the Plan. If permitted under AA §6D-2, as applicable, a Participant's compensation will be reduced by the amount the Participant elects to contribute as an After-Tax Employee Contribution. Any After-Tax Employee Contributions made under this Plan are subject to the ACP Test outlined in Section 6.02(a). Any After-Tax Employee Contributions made under the Plan will be held in Participants' After-Tax Employee Contribution Account, which are always 100% vested. The Employer has a reasonable period of time to begin withholding After-Tax Employee Contributions with respect to an Eligible Participant.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 49 of 177   Document 23-6

MTD Page 48

A Participant may increase, decrease, discontinue or resume his/her After-Tax Employee Contributions as set forth in AA §6D-2(d), as applicable. An Employee must be permitted to modify or terminate an existing After-Tax Employee Contribution election at least once a year. The Employer may designate additional dates on the After-Tax Employee Contribution election form (or other written procedures) as to when a Participant may commence, modify or terminate After-Tax Employee Contributions. Alternatively, the Employer may designate under the Adoption Agreement, specific dates as of which a Participant may commence, modify or terminate After-Tax Employee Contributions. Any election to modify or terminate an After-Tax Employee Contribution election will take effect within a reasonable period following such election and will apply only on a prospective basis.

A Participant may withdraw amounts from his/her After-Tax Employee Contribution Account at any time, in accordance with the distribution rules under Section 8.09(a), except as otherwise provided under AA §10. No forfeitures will occur solely as a result of an Employee's withdrawal of After-Tax Employee Contributions. The Employer may collect Participants' After-Tax Employee Contributions using payroll reduction or other collection procedures. The Employer may designate in the Adoption Agreement or in separate administrative procedures any special rules regarding the acceptance of After-Tax Employee Contributions. Any separate procedures will apply uniformly to all Participants under the Plan.

**3.07** **Allocation Conditions.** In order to receive an allocation of Employer Contributions (other than Salary Deferrals and Safe Harbor Contributions) or an allocation of Matching Contributions, a Participant must satisfy any allocation conditions designated under AA §6-7 or AA §6B-7, as applicable. If the Employer elects under AA §6-7(d) or AA §6B-7(d) to apply a minimum service requirement, the Employer may elect to base such minimum service requirement on the basis of Hours of Service or on the basis of consecutive days of employment under the Elapsed Time method. The imposition of an allocation condition may cause the Plan to fail the minimum coverage requirements under Code §410(b), unless the only allocation condition under the Plan is a safe harbor allocation condition. Under the safe harbor allocation condition, a Participant who completes the minimum service required under AA §6-7(b) or AA §6B-7(b), as applicable, will satisfy the safe harbor allocation condition for receiving an Employer Contribution or Matching Contribution, even if the Participant's employment terminates during the Plan Year.

**(a)** **Application to designated period.** Instead of applying the allocation conditions on the basis of the Plan Year, the Employer may elect in AA §6-7(e) or AA §6B-7(e) to apply the allocation conditions on the basis of designated periods. If the Employer elects to apply a last day of employment condition on the basis of designated periods, a Participant will not be entitled to an allocation of Employer Contributions or Matching Contributions for any period designated under AA §6-7(e)(1) or AA §6B-7(e)(1), as applicable, unless the Participant is employed by the Employer at the end of such designated period. If the Employer elects to apply an Hours of Service allocation condition on the basis of designated periods, a Participant will not be entitled to an allocation of Employer Contributions or Matching Contributions for any period designated under AA §6-7(e)(1) or AA §6B-7(e)(1), as applicable, unless the Participant satisfies the required service condition before the end of such designated period.

If the Employer elects to apply the allocation conditions on the basis of designated periods, the Employer may elect to apply any Hours of Service condition using the cumulative method (as described in subsection (1) below) or the period-by-period method (as described in subsection (2) below). The Employer may elect operationally to use either method in applying the Hours of Service condition, provided the Employer uses the same method for all affected Employees during any given period. (If the Employer elects to apply a minimum service requirement on the basis of days of employment under AA §6-7(d)(2) or AA §6B-7(d)(2), as applicable, the Employer may not apply such minimum service condition on the basis of designated periods. Likewise, the Employer may not apply any Hours of Service requirement under a safe harbor allocation condition on the basis of designated periods. In either case, however, the Employer may apply a last day of employment condition, if applicable, on the basis of designated periods.)

**(1)** **Cumulative method.** Under the cumulative method, the Hours of Service condition is applied with respect to each designated period on a cumulative basis for the Plan Year. The required service condition for any period is determined by multiplying the required Hours of Service (or days of employment, if applicable) by a fraction, the numerator of which is the total number of periods completed during the Plan Year (including the current period) and the denominator of which is the total number of periods during the Plan Year. For example, if a Participant must complete 1,000 Hours of Service to receive an Employer Contribution or Matching Contribution under the Plan, and the Employer elects to apply such condition on the basis of Plan Year quarters under AA §6-7(e)(1)(i) or AA §6B-7(e)(1)(i), as applicable, a Participant would have to complete 250 Hours of Service by the end of the first Plan Year quarter [1/4 x 1,000], 500 Hours of Service by the end of the second Plan Year quarter [2/4 x 1,000], 750 Hours of Service by the end of the third Plan Year quarter [3/4 x 1,000] and 1,000 Hours of Service by the end of the Plan Year [4/4 x 1,000] to receive an allocation of the Employer Contribution or Matching Contribution for such period. If a Participant does not satisfy the required service condition for any designated period during the Plan Year, no Employer Contribution or Matching Contribution will be allocated to that Participant for such period.

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 50 of 177    Document 23-6

MTD Page 49

**(2)** **Period-by-period method.** Under the period-by-period method, the minimum service allocation condition is applied separately for each designated period. The required service condition for any period is determined by multiplying the required Hours of Service (or days of employment, if applicable) by a fraction, the numerator of which is one (1) and the denominator of which is the total number of periods during the Plan Year. For example, if a Participant must complete 1,000 Hours of Service to receive an Employer Contribution or Matching Contribution under the Plan, and the Employer elects to apply such condition on the basis of Plan Year quarters under AA §6-7(e)(1)(i) or AA §6B-7(e)(1)(i), as applicable, a Participant would have to complete 250 Hours of Service in each Plan Year quarter [1/4 x 1,000] to receive an allocation of the Employer Contribution or Matching Contribution for such period. If a Participant does not satisfy the required service condition for any designated period during the Plan Year, no Employer Contribution or Matching Contribution will be allocated to that Participant for such period.

**(b)** **Special rule for year of termination.** A last day employment condition automatically applies for any Plan Year in which the Plan is terminated, regardless of whether the Employer has elected to apply a last day employment condition under AA §6-7(c) or AA §6B-7(c), as applicable. Thus, the Employer will not be obligated to make an Employer Contribution or Matching Contribution for the Plan Year in which the Plan terminates, unless the Employer provides for an Employer Contribution and/or Matching Contribution in its termination amendment. If there are unallocated forfeitures at the time of Plan termination, such forfeitures will be allocated to Participants under the Plan's procedures for allocating forfeitures.

**3.08** **Service with Predecessor Employers.** If the Employer maintains the plan of a Predecessor Employer, any service with such Predecessor Employer is treated as service with the Employer for purposes of applying the allocation conditions under this Section. If the Employer does not maintain the plan of a Predecessor Employer, service with such Predecessor Employer does not count for purposes of applying the allocation conditions under this Section, unless the Employer specifically designates under AA §4-5 to credit service with such Predecessor Employer. Unless designated otherwise under AA §4-5, if the Employer takes into account service with a Predecessor Employer, such service will count for purposes of eligibility under Section 2 (see Section 2.06), vesting under Section 7 (see Section 7.06) and for purposes of the minimum allocation conditions under this Section.

# SECTION 4
# ROLLOVER CONTRIBUTIONS AND TRANSFERS

This Section provides the rules regarding Rollover Contributions and transfers that may be made under this Plan. The Plan Administrator has the authority under Section 11 to accept Rollover Contributions under this Plan and to enter into transfer agreements concerning the transfer of assets from another plan to this Plan.

**4.01**   **Rollover Contributions.** Subject to the terms governing the applicable Investment Arrangement, an Employee (or former Employee) may make a Rollover Contribution to this Plan from a qualified retirement plan or from an IRA, if the acceptance of rollovers is permitted under AA §C-2 or if the Plan Administrator adopts administrative procedures regarding the acceptance of Rollover Contributions. Any Rollover Contribution an Employee (or former Employee) makes to this Plan will be held in the Employee's Rollover Contribution Account (or Roth Rollover Account), which is always 100% vested. Subject to the terms governing the applicable Investment Arrangement a Participant may withdraw amounts from his/her Rollover Contribution Account at any time, in accordance with the distribution rules under Section 8, except as prohibited under AA §10. Any amounts received as a Rollover Contribution under this Section will not be treated as an Annual Addition for purposes of applying the Code §415 Limitation.

For purposes of this Section, a qualified retirement plan is a tax-qualified retirement plan described in Code §401(a) or Code §403(a), an annuity contract described in §403(b) of the Code, or an eligible plan under §457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state. To qualify as a Rollover Contribution under this Section, the Rollover Contribution must be transferred directly from the qualified retirement plan or IRA in a Direct Rollover or must be transferred to the Plan by the Employee within sixty (60) days following receipt of the amounts from the qualified plan or IRA. The Plan will not accept rollovers of non-deductible IRA contributions.

If Rollover Contributions are permitted, an Employee (or former Employee) may make a Rollover Contribution to the Plan even if the Employee is not a Participant with respect to any or all other contributions under the Plan, unless otherwise prohibited under AA §C-2 or separate administrative procedures adopted by the Plan Administrator. An Employee who makes a Rollover Contribution to this Plan prior to becoming a Participant shall be treated as a Participant only with respect to such Rollover Contribution Account, but shall not be treated as a Participant with respect to other contribution sources under the Plan until he/she either satisfies the eligibility conditions under the Plan. To the extent Participant loans are authorized under the Plan, a "limited Participant" under this paragraph may request a Participant loan from the Rollover Contribution Account, unless provided otherwise under AA §B-3 or separate administrative procedures adopted by the Plan Administrator.

The Plan Administrator may refuse to accept a Rollover Contribution if the Plan Administrator reasonably believes the Rollover Contribution:

**(a)**   is not being made from a proper plan or IRA;

**(b)**   is not being made within sixty (60) days from receipt of the amounts from a qualified retirement plan or IRA;

**(c)**   could jeopardize the tax-exempt status of the Plan; or

**(d)**   could create adverse tax consequences for the Plan or the Employer.

Prior to accepting a Rollover Contribution, the Plan Administrator may require the Employee to provide satisfactory evidence establishing that the Rollover Contribution meets the requirements of this Section.

Under Treas. Reg. §1.401(a)(31)-1, Q&A-14, if the Plan accepts an invalid Rollover Contribution, the contribution will be treated, for purposes of applying the qualification requirements of Code §401(a) to the Plan, as if it were a valid Rollover Contribution if two conditions are satisfied:

**(a)**   When accepting the amount from the Employee as a Rollover Contribution, the Plan Administrator must reasonably conclude that the contribution is a valid Rollover Contribution; and

**(b)**   If the Plan Administrator later determines that the contribution was an invalid Rollover Contribution, the Plan Administrator must distribute the amount of the invalid Rollover Contribution, plus any earnings attributable thereto, to the Employee within a reasonable time after such determination.

The Plan Administrator may use reasonable criteria in determining whether a Rollover Contribution is valid. Thus, the Plan Administrator may access the EFAST2 database maintained by the Department of Labor to assist in determining whether a potential Rollover Contribution was distributed by a plan intended to be a qualified plan. If the Plan Administrator later

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 52 of 177   Document 23-6

MTD Page 51

determines that the Rollover Contribution was not valid, the Plan Administrator must have the amount rolled over plus any attributable earnings distributed within a reasonable period of time after such determination.

The Plan Administrator may apply different conditions for accepting Rollover Contributions from qualified retirement plans and IRAs. For example, the Plan Administrator may decide in its discretion whether to accept a Direct Rollover of a loan note from another retirement plan. Any conditions on Rollover Contributions must be applied uniformly to all Employees under the Plan.

**4.02**     <u>**Contract Exchanges and Transfers.**</u> Provided that the Plan allows contract exchanges or plan-to-plan transfers and subject to the terms governing the applicable Investment Arrangement, the Plan Administrator may accept such exchange or transfer from one Code §403(b) investment to another investment, provided the requirements under Sections 14.05 and 14.06 are satisfied. The Employer may set forth restrictions on contract exchanges and transfers in Addendum B.

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 53 of 177    Document 23-6

MTD Page 52

## SECTION 5
## LIMITS ON CONTRIBUTIONS

**5.01**    **Limits on Employer Contributions.** Any contributions the Employer makes under the Plan are subject to the limitations set forth in this Section 5.

    **(a)**    **Limitation on Salary Deferrals.** Any Salary Deferrals made under the Plan are subject to the Elective Deferral Dollar Limit, as described in Section 5.02 below.

    **(b)**    **Limitation on total Employer Contributions.** All Employer Contributions the Employer makes under the Plan are subject to the Code §415 Limitation, as described in Section 5.03 below. For purposes of applying the Code §415 Limitation, Employer Contributions include any Employer Contributions, Salary Deferrals, Matching Contributions, QNECs, or Safe Harbor Contributions made under the Plan.

**5.02**    **Elective Deferral Dollar Limit.** No Participant may contribute as Elective Deferrals to this Plan (and any other plan, contract or arrangement maintained by the Employer) during any calendar year, an amount that exceeds the Elective Deferral Dollar Limit in effect for the Participant's Taxable Year beginning in such calendar year. Additional restrictions apply if a Participant participates in a plan maintained by an unrelated employer.

The Elective Deferral Dollar Limit is $18,000 for Taxable Years beginning in 2015. For Taxable Years beginning after 2015, the Elective Deferral Dollar Limit will be adjusted for cost-of-living increases under Code §402(g)(4). Any such adjustments will be in multiples of $500.

If elected under the Adoption Agreement, the Elective Deferral Dollar Limit is increased by the Age 50 Catch-Up Contribution Limit and the Special Catch-Up Contribution Limit for eligible Participants. If the Plan does not provide for Age 50 Catch-up Contributions or the Special Catch-Up Contributions, the Elective Deferral Dollar Limit is not increased.

    **(a)**    **Excess Deferrals.** Excess Deferrals are Elective Deferrals made during the Participant's Taxable Year that exceed the Elective Deferral Dollar Limit (as described above) for such year; counting only Elective Deferrals made under this Plan and any other plan, contract or arrangement maintained by the Employer. (See subsection (b)(6) below for provisions that apply when a Participant makes Elective Deferrals to a plan of an unrelated Employer.)

    **(b)**    **Correction of Excess Deferrals.** If a Participant makes Excess Deferrals (i.e., Elective Deferrals in excess of the Elective Deferral Dollar Limit) under this Plan and any other plan maintained by the Employer, such Excess Deferrals (plus allocable income or loss) shall be distributed to the Participant no later than April 15 of the following calendar year.

        **(1)**    **Amount of corrective distribution.** The amount to be distributed from this Plan as a correction of Excess Deferrals equals the amount of Elective Deferrals the Participant contributes during the Taxable Year to this Plan and any other plan maintained by the Employer in excess of the Elective Deferral Dollar Limit, reduced by any corrective distribution of Excess Deferrals the Participant receives during the calendar year from this Plan or other plan(s) maintained by the Employer.

        **(2)**    **Allocable gain or loss.** A corrective distribution of Excess Deferrals must include any allocable gain or loss for the Taxable Year in which the Excess Deferrals are contributed to the Plan. The gain or loss allocable to Excess Deferrals may be determined in any reasonable manner, provided the manner used to determine allocable gain or loss is applied consistently for all Participants and in a manner that is reasonably reflective of the method used by the Plan for allocating income to Participants' Accounts.

        **(3)**    **Taxation of corrective distribution.** If a corrective distribution of Excess Deferrals is made by April 15 of the following calendar year, amounts attributable to the Excess Deferrals will be includible in the Participant's gross income in the Taxable Year in which such amounts are deferred under the Plan and amounts attributable to income or loss on the Excess Deferrals will be includible in gross income in the year of distribution. If a corrective distribution of Excess Deferrals is made after April 15, the amount of the corrective distribution attributable to Excess Deferrals will be includible in the Participant's gross income in both the Taxable Year in which such amounts are deferred under the Plan and the Taxable Year in which such amounts are distributed.

        **(4)**    **Coordination with other provisions.** A corrective distribution of Excess Deferrals made by April 15 of the following calendar year may be made without consent of the Participant or the Participant's Spouse, and without regard to any distribution restrictions applicable under Section 8. A corrective distribution of Excess Deferrals made by the appropriate April 15 also is not treated as a distribution for purposes of applying the required minimum distribution rules.

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 54 of 177    Document 23-6

MTD Page 53

(5) **Suspension of Salary Deferrals.** If a Participant's Salary Deferrals under this Plan, in combination with any Elective Deferrals the Participant makes during the calendar year under any other plan maintained by the Employer, equal or exceed the Elective Deferral Dollar Limit, the Employer may suspend the Participant's Salary Deferrals under this Plan for the remainder of the calendar year without the Participant's consent.

(6) **Correction of Excess Deferrals under plans not maintained by the Employer.** The correction provisions under this subsection (b) apply only if a Participant makes Excess Deferrals under this Plan (or under this Plan and other plans maintained by the Employer). However, if a Participant has Excess Deferrals for a calendar year on account of making Elective Deferrals to a plan of an unrelated employer, the Participant may assign to this Plan any portion of his/her Excess Deferrals made under all plans during the calendar year to the extent such Elective Deferrals exceed the Elective Deferral Dollar Limit. The Participant must notify the Plan Administrator in writing on or before March 1 of the following calendar year of the amount of the Excess Deferrals to be assigned to this Plan. Upon receipt of a timely notification, the Excess Deferrals assigned to this Plan will be distributed (along with any allocable income or loss) to the Participant in accordance with the corrective distribution provisions under this subsection (b). A Participant is deemed to notify the Plan Administrator of Excess Deferrals to the extent such Excess Deferrals arise only under this Plan and any other plan maintained by the Employer.

**5.03** **Code §415 Limitation on Annual Additions.**

(a) **General Limitation on Annual Additions.** A Participant's Annual Additions under the Plan for a Limitation Year may not exceed the Maximum Annual Addition as set forth below.

(b) **Aggregation of §403(b) Plans of the Employer.** If Annual Additions are credited to a Participant under any §403(b) plans of the Employer in addition to this Plan for a Limitation Year, the sum of the Participant's Annual Additions for the Limitation Year under this Plan and such other §403(b) plans may not exceed the Maximum Annual Addition as set forth below.

(c) **Aggregation Where Participant is in Control of Any Employer.** If a Participant is in control of any employer for a Limitation Year, the sum of the Participant's Annual Additions for the Limitation Year under this Plan, any other §403(b) plans of the Employer, any defined contribution plans maintained by controlled employers, and any §403(b) plans of any other employers may not exceed the Maximum Annual Addition as set forth below. For purposes of this paragraph, a Participant is in control of an employer based upon the rules of Code §§414(b), 414(c), and 415(h); and a defined contribution plan means a defined contribution plan that is qualified under Code §401(a) or §403(a), a §403(b) plan, or a simplified employee pension within the meaning of Code §408(k).

(d) **Annual Notice to Participants.** The Plan Administrator will provide written or electronic notice to Participants that explains the limitation in Section 5.03(c) in a manner calculated to be understood by the average Participant and informs Participants of their responsibility to provide information to the Plan Administrator that is necessary to satisfy Section 5.03(c). The notice will advise Participants that the application of the limitations in Section 5.03(c) will take into account information supplied by the Participant and that failure to provide necessary and correct information to the Plan Administrator could result in adverse tax consequences to the Participant, including the inability to exclude contributions to the Plan under Code §403(b). The notice will be provided annually, beginning no later than the year in which the Employee becomes a Participant.

(e) **Coordination of Limitation on Annual Additions Where Employer Has Another §403(b) Pre-Approved Plan or Participant is in Control of Employer.** The Annual Additions which may be credited to a Participant under this Plan for any Limitation Year will not exceed the Maximum Annual Addition, reduced by the Annual Additions credited to the Participant under any other §403(b) Pre-Approved Plans of the Employer in addition to this Plan and, if the Participant is in control of an employer, any defined contribution plans maintained by controlled employers and §403(b) plans of any other employers. Contributions to the Participant's Accounts under this Plan will be reduced to the extent necessary to prevent this limitation from being exceeded.

(f) **Excess Annual Additions.**

(1) If, notwithstanding Sections 5.03(a)-(e), a Participant's Annual Additions under this Plan, or under this Plan and plans aggregated with this Plan under Sections 5.03(b) and (c), result in an Excess Annual Addition for a Limitation Year, the Excess Annual Addition will be deemed to consist of the Annual Additions last credited, except Annual Additions to a defined contribution plan qualified under §401(a) of the Internal Revenue Code or a simplified employee pension maintained by an employer controlled by the Participant will be deemed to have been credited first.

**(2)** If an Excess Annual Addition is credited to a Participant under this Plan and another Section 403(b) pre-approved plan of the Employer on the same date, the Excess Annual Addition attributable to this Plan will be the product of:

    **(i)** the total Excess Annual Addition credited as of such date, times

    **(ii)** the ratio of (i) the Annual Additions credited to the Participant for the Limitation Year as of such date under this Plan to (ii) the total Annual Additions credited to the Participant for the Limitation Year as of such date under this Plan and all other §403(b) Pre-Approved Plans of the Employer.

**(3)** Any Excess Annual Addition attributable to this Plan will be corrected in the manner described in Section 5.03(h).

**(g)** **Coordination of Limitation on Annual Additions Where Employer Has Another §403(b) Plan that is Not a Pre-Approved Plan.** If Annual Additions are credited to the Participant for the Limitation Year under another §403(b) plan of the Employer which is not a §403(b) Pre-Approved Plan, the Annual Additions which may be credited to the Participant under this Plan for the Limitation Year will be limited in accordance with Sections 5.03(e) and (f) as though the other plan were a §403(b) Pre-Approved Plan unless the Employer provides other limitations in the Adoption Agreement.

**(h)** **Correction of Excess Annual Additions.** A Participant's Excess Annual Additions for a Taxable Year are includible in the Participant's gross income for that Taxable Year. A Participant's Excess Annual Additions attributable to this Plan will be credited in the year of the excess to a separate account under the Plan for such Excess Annual Additions which will be maintained by the Vendor until the Excess Annual Additions are distributed. This separate account will be treated as a separate contract to which Code §403(c) (or another applicable provision of the Code) applies. Amounts in the separate account may be distributed at any time, notwithstanding any other provisions of the Plan.

**(i)** **Definitions.**

    **(1)** **Annual Additions.** The sum of the following amounts credited to a Participant's Account for the Limitation Year:

        **(i)** Employer Contributions, including Matching Contributions, Salary Deferrals, Special Catch-Up Contributions, Mandatory Contributions, QNECs, and Safe Harbor Contributions (but not including Age 50 Catch-Up Contributions and contributions that have been distributed to the Participant as Excess Elective Deferrals);

        **(ii)** After-Tax Contributions;

        **(iii)** Forfeitures;

        **(iv)** Amounts allocated to an individual medical account, as defined in Code §415(l)(2), which is part of a pension or annuity plan, and amounts derived from contributions paid or accrued which are attributable to post-retirement medical benefits, allocated to the separate account of a key employee, as defined in Code §419A(d)(3), under a welfare benefit fund, as defined in Code §419(e); and

        **(v)** Allocations under a simplified employee pension.

    Amounts described in (i), (ii), (iii), and (v) are annual additions for purposes of both the dollar limitation under Section 5.03(i)(6)(i) and the percentage of compensation limitation under Section 5.03(i)(6)(ii). Amounts described in (iv) are annual additions solely for purposes of the dollar limitation under Section 5.03(i)(6)(i).

    For this purpose, any Excess Amount applied in the Limitation Year to reduce Employer Contributions will be considered Annual Additions for such Limitation Year.

    An Annual Addition is credited to a Participant's Account for a particular Limitation Year if such amount is allocated to the Participant's Account as of any date within that Limitation Year. An Annual Addition will not be deemed credited to a Participant's Account for a particular Limitation Year unless such amount is actually contributed to the Plan no later than 30 days after the time prescribed by law for filing the Employer's income tax return (including extensions) for the Taxable Year with or within which the Limitation Year ends. In the case of After-Tax Contributions, such amount shall not be deemed credited to a Participant's Account for a particular Limitation Year unless the contributions are actually contributed to the Plan no later than 30 days after the close of that Limitation Year.

MTD Page 55

Restorative payments are not considered Annual Additions for any Limitation Year. For this purpose, restorative payments are payments made to restore losses to the Plan resulting from actions (or a failure to act) by a fiduciary for which there is a reasonable risk of liability under Title I of ERISA or under other applicable federal or state law, where Participants who are similarly situated are treated differently with respect to the payments. Examples of restorative payments include payments made pursuant to a Department of Labor order, the Department of Labor's Voluntary Fiduciary Correction Program, or a court-approved settlement, to restore losses to the Plan on account of the breach of fiduciary duty (other than a breach of fiduciary duty arising from failure to remit contributions to the Plan). Payments made to the Plan to make up for losses due merely to market fluctuations and other payments that are not made on account of a reasonable risk of liability for breach of a fiduciary duty under Title I of ERISA are not restorative payments and generally constitute contributions that give rise to Annual Additions.

(2) **Employer.** For purposes of this Section 5.03, Employer shall mean the Employer that adopts this Plan, and all members of a controlled group of corporations (as defined in §414(b) of the Code as modified by §415(h)), all commonly controlled trades or businesses (as defined in §414(c) of the Code as modified by §415(h)) or affiliated service groups (as defined in §414(m)) of which the adopting Employer is a part, and any other entity required to be aggregated with the Employer pursuant to regulations under §414(o) of the Code.

(3) **Excess Annual Addition.** The excess of the Annual Additions credited to the Participant for the Limitation Year under the Plan and plans aggregated with the Plan under Sections 5.03(b) and (c) over the Maximum Annual Addition for the Limitation Year under Section 5.03(i)(6).

(4) **Includible Compensation.** An Employee's compensation received from the Employer that is includible in the Participant's gross income for Federal income tax purposes (computed without regard to §911 of the Internal Revenue Code, relating to United States citizens or residents living abroad), including differential wage payments under §3401(h) of the Internal Revenue Code for the most recent period that is a Year of Service. Includible Compensation for a Minister who is self-employed means the Minister's earned income as defined in Code §401(c)(2) (computed without regard to Code §911). Includible Compensation also includes any Elective Deferral or other amount contributed or deferred by the Employer at the election of the Employee that would be includible in gross income but for the rules of Code §§125, 132(f)(4), 402(e)(3), 402(h)(1)(B), 402(k), or 457(b). Includible Compensation does not include any compensation received during a period when the Employer was not an eligible employer within the meaning of §1.403(b)-2(b)(8) of the Treasury Regulations. The amount of Includible Compensation is determined without regard to any community property laws. Except as provided in §1.401(a)(17)-1(d)(4)(ii) of the Treasury Regulations with respect to eligible participants in Governmental Plans, the amount of Includible Compensation of each Participant taken into account in determining contributions shall not exceed $265,000, as adjusted for cost-of- living increases in accordance with Code §401(a)(17)(B) for periods after 2015. Includible Compensation does not include Employer Pick-Up Contributions to a qualified plan under Code §401(a).

For purposes of applying the limitations on Annual Additions to nonelective Employer Contributions pursuant to Code §415, Includible Compensation for a Participant who is permanently and totally disabled (as defined in Code §22(e)(3)) is the compensation such Participant would have received for the Limitation Year if the Participant had been paid at the rate of compensation paid immediately before becoming permanently and totally disabled.

(5) **Limitation Year.** The Plan Year, unless the Employer elects another 12-consecutive month period under AA §11. All retirement plans under Code §403(b) maintained by the Employer must use the same Limitation Year. If there is a change of Limitation Year, a "short" Limitation Year exists for the period beginning with the first day of the Limitation Year and ending on the day before the change in Limitation Year is effective. For this purpose, if the Plan is terminated effective as of a date other than the last day of the Limitation Year, the Plan is treated as if it were amended to change its Limitation Year.

If the Plan has an initial Plan Year that is less than 12 months, the Limitation Year for such first Plan Year is the 12-month period ending on the last day of that Plan Year, unless otherwise specified in AA §11-3(a).

If the Participant is in control of an Employer pursuant to Section (c) above, the Limitation Year shall be the Limitation Year in the defined contribution plan controlled by the Participant.

(6) **Maximum Annual Addition.** The Annual Addition that may be contributed or allocated to a Participant's account under the Plan for any Limitation Year shall not exceed the lesser of:

(i) $53,000, as adjusted for increases in the cost-of-living under Code §415(d) for periods after 2015, or

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 57 of 177   Document 23-6

MTD Page 56

(ii)     100 percent of the Participant's Includible Compensation for the Limitation Year.

The Includible Compensation limit referred to in (ii) shall not apply to any contribution for medical benefits after separation from service (within the meaning of Code §§401(h) or 419A(f)(2)) which is otherwise treated as an Annual Addition.

**(7)**     **§403(b) Pre-Approved Plan.** A §403(b) plan the form of which is the subject of a favorable advisory or opinion letter from the Internal Revenue Service.

**(8)**     **Year of service.** For purposes of determining Includible Compensation under this Section 5.03, the year of service used to determine Includible Compensation is based on the most recent period during which the Employee is credited with a year of service under the following rules. For this purpose, such period may not end after the close of the Employee's Taxable Year and may not precede the Taxable Year by more than five years. The period used to calculate a year of service under this subsection may not exceed 12 months.

(i)     An Employee is credited with a year of service for each full year during which the individual is a full-time Employee of the Employer. For this purpose, a full year of service for a particular position is based on the usual annual work period of individuals employed full-time in that general type of employment at the place of employment.

(ii)     An Employee is credited with a fractional year of service for each full year during which the individual is a part-time Employee of the Employer and for each part of a year during which the individual is a full-time or part-time Employee of the Employer. (See Treas. Reg. §1.403(b)-4(e) for additional rules for determining years of service.)

(iii)     If at the close of a Taxable Year, an Employee has a period of service less than one year, such Employee will be considered as having one year of service for purposes of determining Includible Compensation.

**(j)**     **Special Rules.**

**(1)**     **Few weeks rule.** If elected under the Adoption Agreement, Includible Compensation for a Limitation Year may include amounts earned during that Limitation Year but not paid during that Limitation Year solely because of the timing of pay periods and pay dates if:

(i)     These amounts are paid during the first few weeks of the next Limitation Year;

(ii)     The amounts are included on a uniform and consistent basis with respect to all similarly situated Employees; and

(iii)     No compensation is included in more than one Limitation Year.

**(2)**     **Disabled Participants.** Includible Compensation does not include any imputed compensation for the period a Participant is Disabled. However, the Employer may elect under the AA to include under the definition of Includible Compensation, the amount a terminated Participant who is permanently and totally Disabled would have received for the Limitation Year if the Participant had been paid at the rate of Includible Compensation paid immediately before becoming permanently and totally Disabled. If the Employer elects under AA §11-3(b) to include imputed compensation for a Disabled Participant, a Disabled Participant will receive an allocation of any Employer Contribution the Employer makes to the Plan based on the Employee's imputed compensation for the Plan Year. Any Employer Contributions made to a Disabled Participant under this subsection are fully vested when made and will be made only to Non-Highly Compensated Employees.

# SECTION 6
# SPECIAL RULES AFFECTING 403(b) PLANS

**6.01** **Universal Availability for Salary Deferrals.** No special nondiscrimination rules apply to Salary Deferrals, other than the universal availability requirements set forth under Treas. Reg. §1.403(b)-5(b)(2), to make such Salary Deferrals as provided under Section 2.01(a) and this Section 6.01. The Employer will timely provide Eligible Participants with any applicable notice relating to the universal availability requirement.

    **(a)** **Eligible Participants.** Each Employee (other than an Employee excluded from participation under Section 2.02(b)) is an Eligible Participant, without regard to any age or service conditions applicable to other types of contributions to the Plan. An Eligible Participant shall be eligible to make Salary Deferrals as of his/her Employment Commencement Date.

    **(b)** **Implementation of Participant's election to make Salary Deferrals.** The Plan Administrator may establish reasonable administrative procedures to implement a Participant's election to make Salary Deferrals. Such reasonable procedures will not cause the plan to violate the universal availability rule under Treas. Reg. §1.403(b)-5(b)(2). If the Plan provides notice of the right to defer no later than 30 days after his/her Employment Commencement Date, allows the Participant to make an election up to 30 days after notice is provided, and provides that the Participant's election will be effective as soon as administratively practicable, then the Plan will be treated as having reasonable administrative procedures that do not cause the plan to fail to satisfy Treas. Reg. §1.403(b)-5(b)(2).

    **(c)** **Effective opportunity.** For purposes of the universal availability requirement, an Eligible Participant is not treated as being permitted to make Salary Deferrals to the Plan unless the Eligible Participant is provided an effective opportunity to make Salary Deferrals to the Plan. Whether an Eligible Participant has an effective opportunity is determined based on all the relevant facts and circumstances, including notice of the availability of the election, the period of time during which an election may be made, and any other conditions on elections. An effective opportunity is not considered to exist if there are any other rights or benefits (other than rights or benefits listed in Treasury Regulation §1.401(k)-1(e)(6)(i)(A), (B), or (D)) that are conditioned (directly or indirectly) upon an Eligible Participant making or failing to make a cash or deferred election with respect to a contribution to the Plan.

    **(d)** **Special Rules.**

        **(1)** **Code §501(c)(3) Organizations.** In the case of a Plan that covers the employees of more than one Code §501(c)(3) Organization, the universal availability requirement of this paragraph (d) applies separately to each common law entity (that is, applies separately to each Code §501(c)(3) Organization).

        **(2)** **State entities.** In the case of a Plan that covers the employees of more than one State entity, the universal availability requirement applies separately to each entity that is not part of a common payroll.

        **(3)** **Historical Treatment.** For purposes of the universal availability requirement, an Employer that historically has treated one or more of its various geographically distinct units as separate for Employee benefit purposes may treat each unit as a separate organization if the unit is operated independently on a day-to-day basis. Units are not geographically distinct if such units are located within the same Standard Metropolitan Statistical Area (SMSA).

        **(4)** **Application of Universal Availability Requirement to Churches and Church-Controlled Organizations.** The universal availability requirements of Code §403(b) do not apply to Employers that are Churches or Qualified Church-Controlled Organizations. The universal availability requirements do apply to Non-Qualified Church-Controlled Organizations.

**6.02** **Nondiscrimination Testing of Matching Contributions and After-Tax Contributions – ACP Test.** Except as provided under Section 6.04 for Safe Harbor Plans, if the Plan provides for Matching Contributions and/or After-Tax Contributions, the Plan must satisfy the Actual Contribution Percentage Test ("ACP Test") each Plan Year. The Plan Administrator shall maintain records sufficient to demonstrate satisfaction of the ACP Test, including the amount of any Salary Deferrals or QNECs included in such test, pursuant to subsection (a)(4) below. If the Plan fails the ACP Test for any Plan Year, the corrective provisions under subsection (b) below will apply.

    **(a)** **ACP Test.** The ACP Test compares the Average Contribution Percentage (ACP) of the Highly Compensated Group with the ACP of the Nonhighly Compensated Group. The Highly Compensated Group is the group of Participants who are Highly Compensated for the current Plan Year. The Nonhighly Compensated Group is the group of Participants who are Nonhighly Compensated for the applicable Plan Year. If the Prior Year Testing Method is selected under the AA, the Nonhighly Compensated Group is the group of Participants in the prior Plan Year who were Nonhighly Compensated for that year. If the Current Year Testing Method is selected under the AA, the Nonhighly Compensated Group is the group of Participants who are Nonhighly Compensated for the current Plan Year.

(1) **Average Contribution Percentage – ACP.** The ACP for a specified group is the average of the contribution percentages calculated separately for each Participant in the group. A Participant's contribution percentage is the ratio of the contributions made on behalf of the Participant that are included under the ACP Test, expressed as a percentage of the Participant's Testing Compensation for the Plan Year. For this purpose, the contributions included under the ACP Test are the sum of the After-Tax Contributions and Matching Contributions made under the Plan on behalf of the Participant for the Plan Year. The ACP may also include other contributions as provided in subsection (4) below, if applicable but excluding Matching Contributions that are forfeited either to correct Excess Aggregate Contributions or because the contributions to which they relate are Excess Deferrals or Excess Aggregate Contributions.

For purposes of computing Actual Contribution Percentages, a Participant who is eligible for After-Tax Contributions or Matching Contributions (including forfeitures) but does not make or receive any such contributions shall be included in the ACP Test as a Participant on whose behalf no such contributions are made.

(2) **ACP Test testing methods.** In applying the ACP Test for any Plan Year, the Plan may use the Prior Year Testing Method or the Current Year Testing Method, as selected under the AA. If no testing method is selected under AA, the Plan will use the Current Year Testing Method. Unless specifically precluded under statute, regulations or other IRS guidance, the Employer may amend the testing method designated under the AA for a particular Plan Year (subject to the requirements under subsection (ii) below) at any time through the end of the 12-month period following the Plan Year for which the amendment is effective.

   (i) **Prior Year Testing Method.** Under the Prior Year Testing Method, ACP of the Highly Compensated Group (as defined in subsection (a) above) for the current Plan Year and the ACP of the Nonhighly Compensated Group (as defined in subsection (a) above) for the prior Plan Year must satisfy one of the following tests for each Plan Year:

      (A) The ACP of the Highly Compensated Group for the current Plan Year shall not exceed 1.25 times the ACP of the Nonhighly Compensated Group for the prior Plan Year.

      (B) The ACP of the Highly Compensated Group for the current Plan Year shall not exceed the percentage (whichever is less) determined by (A) adding 2 percentage points to the ACP of the Nonhighly Compensated Group for the prior Plan Year or (B) multiplying the ACP of the Nonhighly Compensated Group for the prior Plan Year by 2.

   (ii) **Current Year Testing Method.** Under the Current Year Testing Method, the Average Contribution Percentage ("ACP") of the Highly Compensated Group (as defined in subsection (a) above) for the current Plan Year and the ACP of the Nonhighly Compensated Group (as defined in subsection (a) above) for the current Plan Year must satisfy the ACP Test, as described in subsection (i) above, for each Plan Year. If the Current Year Testing Method is used for a Plan Year, the Plan may switch to the Prior Year Testing Method for a Plan Year only if the Plan has used Current Year Testing for each of the preceding five Plan Years (or if lesser, the number of Plan Years the Plan has been in existence) or if, as a result of a merger or acquisition described in Code §410(b)(6)(C)(i), the Employer maintains both a plan using Prior Year Testing and a plan using Current Year Testing and the change is made within the transition period described in Code §410(b)(6)(C)(ii).

(3) **Special rule for first Plan Year.** For the first Plan Year that the Plan provides for either Matching Contributions or After-Tax Contributions, the Employer may elect under the AA to apply the ACP Test using the Prior Year Testing Method, by assuming the ACP for the Nonhighly Compensated Group is 3%. Alternatively, the Employer may elect in the AA to use the Current Year Testing Method using the actual data for the Nonhighly Compensated Group in the first Plan Year. This first Plan Year rule does not apply if this Plan is a successor to a plan (as described in IRS Notice 98-1 or subsequent guidance) that was subject to the ACP Test or if the Plan is aggregated for purposes of applying the ACP Test with another plan that was subject to the ACP test in the prior Plan Year. For subsequent Plan Years, the testing method selected under the AA will apply.

(4) **Use of QNECs under the ACP Test.** The Plan Administrator may take into account QNECs for purposes of applying the ACP Test. QNECs made to another plan maintained by the Employer may also be taken into account, so long as the other plan has the same Plan Year as this Plan. To include QNECs under the ACP Test, all Employer Nonelective Contributions, including the QNECs, must satisfy Code §401(a)(4). In addition, the Employer Contributions, excluding any QNECs used in the ACP Test, must also satisfy Code §401(a)(4). The Employer may make a QNEC to correct the ACP Test only if the Employer is using the Current Year Testing Method.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 60 of 177   Document 23-6

MTD Page 59

        **(i)**    **Timing of contributions.** In order to be used in the ACP Test for a given Plan Year, QNECs must be made before the end of the 12-month period immediately following the Plan Year for which they are allocated.

        **(ii)**    **Testing flexibility.** The Plan Administrator is expressly granted the full flexibility permitted by applicable Treasury regulations to determine the amount of QNECs used in the ACP Test. QNECs taken into account under the ACP Test do not have to be uniformly determined for each Participant and may represent all or any portion of the QNECs allocated to each Participant, provided the conditions described above are satisfied.

**(b)**    **Correction of Excess Aggregate Contributions.** If the Plan fails the ACP Test for a Plan Year, the Plan Administrator may use any combination of the correction methods under this Section to correct the Excess Aggregate Contributions under the Plan.

    **(1)**    **Excess Aggregate Contributions.** Excess Aggregate Contributions are the amount of Matching Contributions and/or After-Tax Contributions taken into account in computing the ACP of the Highly Compensated Group that exceed the maximum amount permitted under the ACP Test for the Plan Year. The amount of Excess Aggregate Contributions for a Plan Year are the amounts determined by hypothetically reducing the ACP contributions of the Highly Compensated Employees, beginning with the Highly Compensated Employee(s) with the highest ACP for the Plan Year, and reducing the ACP of such Highly Compensated Employees until the reduced percentage reaches the ACP of the Highly Compensated Employee(s) with the next higher ACP or until the adjusted ACP percentage satisfies the ACP Test. The reduction continues for each level of Highly Compensated Employees until the Plan satisfies the ACP Test. The total dollar amount so determined is then divided among the Highly Compensated Group in the manner described in subsection (2) to determine the actual corrective distributions to be made.

    **(2)**    **Corrective distribution of Excess Aggregate Contributions.** If the Plan fails the ACP Test for a Plan Year, the Plan Administrator may, in its discretion, distribute Excess Aggregate Contributions (including any allocable income or loss) no later than 12 months following the end of the Plan Year to correct the ACP Test violation. Excess Aggregate Contributions will be distributed only to the extent they are vested under Section 7.02, determined as of the last day of the Plan Year for which the contributions are made to the Plan. To the extent Excess Aggregate Contributions are not vested, the Excess Aggregate Contributions, plus any income and minus any loss allocable thereto, shall be forfeited in the Plan Year in which the corrective distribution is made from the Plan. If the Excess Aggregate Contributions are distributed more than 2½ months after the last day of the Plan Year in which such excess amounts arose, a 10-percent excise tax will be imposed on the Employer with respect to such amounts. If the Plan qualifies as an EACA, a corrective distribution of Excess Aggregate Contributions that are made no later than 6 months (instead of 2½ months) after the last day of the Plan Year in which such excess amounts arose will not be subject to the 10% excise tax with respect to such corrective distributions. This subsection (2) is effective for corrective distributions made for Plan Years beginning on or after January 1, 2008.

        **(i)**    **Amount to be distributed.** In determining the amount of Excess Aggregate Contributions to be distributed to a Highly Compensated Employee under this Section, Excess Aggregate Contributions are first allocated equally to the Highly Compensated Employee(s) with the largest dollar amount of ACP contributions for the Plan Year in which the excess occurs until all of the Excess Aggregate Contributions are allocated or until the dollar amount of ACP contributions for such Highly Compensated Employee(s) is reduced to the next highest dollar amount of such contributions for any other Highly Compensated Employee(s).

        **(ii)**    **Allocable gain or loss.** A corrective distribution of Excess Aggregate Contributions must include any allocable gain or loss for the Plan Year in which the excess occurs. For this purpose, allocable gain or loss on Excess Aggregate Contributions may be determined in any reasonable manner, provided the manner used is applied uniformly and in a manner that is reasonably reflective of the method used by the Plan for allocating income to Participants' Accounts.

        **(iii)**    **Coordination with other provisions.** A corrective distribution of Excess Aggregate Contributions made by the end of the Plan Year following the Plan Year in which the excess occurs may be made without consent of the Participant or the Participant's Spouse, and without regard to any distribution restrictions applicable under Section 8.09. Excess Aggregate Contributions are treated as Annual Additions for purposes of Code §415 even if distributed from the Plan. A corrective distribution of Excess Aggregate Contributions is not treated as a distribution for purposes of applying the required minimum distribution rules under Section 8.11.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 61 of 177   Document 23-6

MTD Page 60

(iv) **Accounting for Excess Aggregate Contributions.** Excess Aggregate Contributions are distributed from the following sources and in the following priority:

(A) After-Tax Contributions that are not matched;

(B) proportionately from After-Tax Contributions not distributed under (A) and related Matching Contributions that are included in the ACP Test;

(C) Matching Contributions included in the ACP Test that are not distributed under (B); and

(D) QNECs included in the ACP Test.

(3) **Making QNECs.** Regardless of any elections under the AA, the Employer may make additional QNECs to the Plan on behalf of the Nonhighly Compensated Employees and use such amount to correct an ACP Test violation. Any QNECs contributed under this subsection (3) which are not specifically authorized under the AA will be allocated to all Participants who are Nonhighly Compensated Employees in the ratio that each such Participant's Plan Compensation bears to the Plan Compensation of all Participants for the Plan Year.

(c) **Adjustment of contribution rate for Highly Compensated Employees.** The Employer may suspend (or automatically reduce the rate of) After-Tax Contributions for the Highly Compensated Group, to the extent necessary to satisfy the ACP Test or to reduce the margin of failure. A suspension or reduction shall not affect After-Tax Contributions already contributed by the Highly Compensated Employees for the Plan Year. As of the first day of the subsequent Plan Year, After-Tax Contributions shall resume at the levels elected by the Highly Compensated Employees.

(d) **Special testing rules.**

(1) **Special rule for determining ACP of Highly Compensated Group.** When calculating the ACP of the Highly Compensated Group for any Plan Year, a Highly Compensated Employee's After-Tax Contributions and/or Matching Contributions under all plans maintained by the Employer are taken into account as if such contributions were made to a single plan. For this purpose, any QNECs taken into account under the ACP Test also are treated as made under a single plan. In addition, if a Highly Compensated Employee participates in two or more plans of the Employer that have different Plan Years, all ACP contributions made during the Plan Year under all such plans shall be aggregated. For Plan Years beginning before 2006, all ACP contributions made in Plan Years that end with or within the same calendar year are treated as made under a single plan. This aggregation rule does not apply to plans that are mandatorily disaggregated under regulations under Code §401(m).

(2) **Aggregation of plans.** When calculating the ACP Test, if this Plan satisfies the requirements of Code §401(m), §401(a)(4), or §410(b) only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such Code sections only if aggregated with this Plan, all such plans are treated as a single plan. Plans may be aggregated in order to satisfy Code §401(m) only if they have the same Plan Year and use the same ACP testing method.

**6.03** **Disaggregation of Plans.** Subject to the provisions of this Section 6.03, certain plans shall be treated as constituting separate plans to the extent required under the mandatory disaggregation rules under Code §401(m).

(a) **Plans covering Collectively Bargained Employees and non-Collectively Bargained Employees.** If the Plan covers Collectively Bargained Employees and non-Collectively Bargained Employees, the Plan is mandatorily disaggregated for purposes of applying the ACP Test into two separate plans, one covering the Collectively Bargained Employees and one covering the non-Collectively Bargained Employees. A separate ACP Test must be applied to the disaggregated portion of the Plan that covers the non-Collectively Bargained Employees. The disaggregated portion of the Plan that includes the Collectively Bargained Employees is deemed to pass the ACP Test.

(b) **Otherwise excludable Employees.** If the minimum coverage test under Code §410(b) is performed by disaggregating "otherwise excludable Employees" (i.e., Employees who have not satisfied the maximum age 21 and one Year of Service eligibility conditions permitted under Code §410(a)), then the Plan is treated as two separate plans, one benefiting the otherwise excludable Employees and the other benefiting Employees who have satisfied the maximum age and service eligibility conditions.

**6.04** **Safe Harbor 403(b) Plan Provisions.** The Employer may elect in AA §6C to apply the Safe Harbor 403(b) Plan provisions under this Section 6.04. For this purpose, the Plan satisfies the requirements of this Section 6.04 if the Plan is a Safe Harbor 403(b) Plan, as described in subsection (a) or a Qualified Automatic Contribution Arrangement (QACA), as described in

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 62 of 177   Document 23-6

MTD Page 61

subsection (b). In addition, if Matching Contributions are made for such Plan Year, the ACP Test is deemed satisfied with respect to such contributions if the conditions of subsections (a) or (b) below are satisfied. To qualify as a Safe Harbor 403(b) Plan, the requirements under this Section 6.04 must be satisfied for the entire Plan Year. In accordance with Treas. Reg. §1.401(m)-1(c)(2), it is impermissible to use the ACP Test for a Plan Year in which the Plan is intended to be a Safe Harbor 403(b) Plan and the requirements of this Section 6.04 are not satisfied for the entire Plan Year.

(a) **Safe Harbor 403(b) Plan requirements.** To qualify as a Safe Harbor 403(b) Plan, the Plan must provide a Safe Harbor Contribution, as described under subsection (1), and must satisfy the requirements under subsections (2), (3) and (4) below.

(1) **Safe Harbor Contribution.** To qualify as a Safe Harbor 403(b) Plan, the Employer must provide a Safe Harbor Employer Contribution or a Safe Harbor Matching Contribution to Nonhighly Compensated Participants under the Plan. (See subsection (c) below for a discussion of the Participants eligible for a Safe Harbor Contribution.) The Safe Harbor Contribution must be made to the Plan no later than 12 months following the close of the Plan Year for which it is being used to qualify the Plan as a Safe Harbor 403(b) Plan.

(i) **Safe Harbor Employer Contribution.** The Employer may elect under AA §6C-2(b) to make a Safe Harbor Employer Contribution of at least 3% of Plan Compensation. The Employer has the discretion to increase the amount of the Safe Harbor Employer Contribution in excess of the percentage designated under AA §6C-2(b). (See subsection (4)(iii) below for the ability to condition the Safe Harbor Employer Contribution on the provision of a supplemental notice.)

(ii) **Safe Harbor Matching Contribution.** The Employer may elect under AA §6C-2(a)(1) to satisfy the Safe Harbor Contribution requirement by making a Safe Harbor Matching Contribution with respect to each Participant's Salary Deferrals under the Plan. If After-Tax Employee Contributions are authorized under AA §6D, the Employer may elect in AA §6D-2(c) to provide the Safe Harbor Matching Contribution with respect to such After-Tax Employee Contributions. The Employer may elect under AA §6C-2(a)(1) to provide a basic Safe Harbor Matching Contribution, an enhanced Safe Harbor Matching Contribution, or a tiered Safe Harbor Matching Contribution.

(A) **Basic Safe Harbor Matching Contribution.** Under the basic Safe Harbor Matching Contribution formula, each eligible Participant (as defined in AA §6C-3) will receive a Safe Harbor Matching Contribution equal to:

(I) 100% of the amount of a Participant's Salary Deferrals that do not exceed 3% of the Participant's Plan Compensation, plus

(II) 50% of the amount of a Participant's Salary Deferrals that exceed 3% of the Participant's Plan Compensation but that do not exceed 5% of the Participant's Plan Compensation.

(B) **Enhanced Safe Harbor Matching Contribution.** Under the enhanced Safe Harbor Matching Contribution formula, the Safe Harbor Matching Contribution must not be less, at each level of Salary Deferrals, than the amount required under the basic Safe Harbor Matching Contribution formula under subsection (A) above. Under the enhanced Safe Harbor Matching Contribution formula, the rate of Matching Contributions may not increase as an Employee's rate of Salary Deferrals increase.

(C) **Contributions for Highly Compensated Employees.** The Plan will not fail to be a Safe Harbor 403(b) Plan merely because Highly Compensated Employees also receive a Safe Harbor Matching Contribution under the Plan. However, a Safe Harbor Matching Contribution will not satisfy this section if any Highly Compensated Employee is eligible for a higher rate of Safe Harbor Matching Contribution than is provided for any Nonhighly Compensated Employee who has the same rate of Salary Deferrals.

(D) **Period for making Safe Harbor Matching Contribution.** In determining a Participant's Safe Harbor Matching Contributions, the Employer may elect under the Adoption Agreement to determine the Safe Harbor Matching Contribution on the basis of Salary Deferrals the Participant makes during the Plan Year. Alternatively, the Employer may elect to determine the Safe Harbor Matching Contribution on a payroll, monthly, or quarterly basis. If the Employer elects to use a period other than the Plan Year, the Safe Harbor Matching Contribution must be deposited into the Plan by the last day of the Plan Year quarter following the Plan Year quarter for which the Salary Deferrals are made. (See Section 3.04(c) for rules applicable to true-up contributions

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 63 of 177   Document 23-6

MTD Page 62

where the Employer contributes Matching Contributions to the Plan on a different period than selected under AA §6C-2(a)(3).)

**(2)** **Full and immediate vesting.** The Safe Harbor Contribution under subsection (1) above must be 100% vested, regardless of the Employee's length of service, at the time the contribution is made to the Plan. Any additional amounts contributed under the Plan may be subject to a vesting schedule.

**(3)** **Distribution restrictions.** Distributions of the Safe Harbor Contribution under subsection (1) must be restricted in the same manner as Salary Deferrals under Section 8.09(c), except that such contributions may not be distributed upon Hardship. (See Section 8.09(e).)

**(4)** **Annual notice.** Each eligible Participant must receive a written notice describing the Participant's rights and obligations under the Plan.

    **(i)** **Contents of notice.** The annual notice must include a description of:

        **(A)** the Safe Harbor Contribution formula being used under the Plan;

        **(B)** any other contributions under the Plan;

        **(C)** the plan to which the Safe Harbor Contributions will be made (if different from this Plan);

        **(D)** the type and amount of Plan Compensation that may be deferred under the Plan;

        **(E)** the administrative requirements for making and changing Salary Deferral elections; and

        **(F)** the withdrawal and vesting provisions under the Plan.

    In addition to any other election periods provided under the Plan, each eligible Participant may make or modify his/her Salary Deferral election during the 30-day period immediately following receipt of the annual notice.

    **(ii)** **Timing of notice.** Each Participant must receive the annual notice within a reasonable period before the beginning of the Plan Year (or within a reasonable period before an Employee becomes a Participant, if later). For this purpose, an Employee will be deemed to have received the notice in a timely manner if the Employee receives such notice at least 30 days, but not more than 90 days, before the beginning of the Plan Year. For an Employee who becomes a Participant after the 90th day before the beginning of the Plan Year, the notice will be deemed timely if it is provided before the date the Employee becomes eligible to participate under the Plan (but no more than 90 days before the Employee becomes eligible).

    **(iii)** **Supplemental notice.** If the Employer elects to provide the Safe Harbor Employer Contribution described in subsection (1) above, the Employer may elect under AA §6C-2(b)(1) to make such contribution only as authorized under a supplemental notice described in this subsection (iii). If the Employer elects to make the Safe Harbor Employer Contribution pursuant to a supplemental notice, the Employer will notify each Participant in the annual notice described in this subsection (4) that the Employer *may* provide the Safe Harbor Employer Contribution and that a supplemental notice will be provided if the Employer decides to make the Safe Harbor Employer Contribution. The supplemental notice indicating the Employer's intention to make the Safe Harbor Employer Contribution must be provided no later than 30 days prior to the last day of the Plan Year for the Plan to qualify as a Safe Harbor 403(b) Plan. If the Employer does not provide the supplemental notice in accordance with this paragraph, the Employer is not obligated to make the Safe Harbor Employer Contribution and the Plan does not qualify as a Safe Harbor 403(b) Plan. The Plan will qualify as a Safe Harbor 403(b) Plan for subsequent Plan Years if the appropriate notices are provided for such years. No amendment is required to make the Safe Harbor Employer Contribution in subsequent Plan Years.

**(b)** **Qualified Automatic Contribution Arrangement (QACA) requirements.** The Employer may elect in the Adoption Agreement to apply the Qualified Automatic Contribution Arrangement (QACA) provisions under this subsection (b). To qualify as a QACA, the Plan must satisfy the requirements for an EACA as set forth in Section 3.03(c)(1), must provide for an automatic deferral as described in subsection (1), and must provide for a QACA Safe Harbor Contribution as described under subsection (2). The Plan also must satisfy the requirements under subsections (3) - (6).

    **(1)** **Automatic deferral.** To qualify as a QACA, the Plan must provide for an automatic deferral election equal to a qualified percentage of Plan Compensation.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 64 of 177   Document 23-6

MTD Page 63

**(i)**     **Automatic deferral percentage.** For this purpose, a qualified percentage is, with respect to any Employee, a uniform percentage of Plan Compensation that does not exceed 10%, and which is at least:

     **(A)**     3% during the period that begins when the Employee first begins making automatic deferrals under the QACA and ending on the last day of the following Plan Year,

     **(B)**     4% during the first Plan Year following the initial period described in subsection (A),

     **(C)**     5% during the second Plan Year following the initial period described in subsection (A), and

     **(D)**     6% during any subsequent Plan Year.

The Employer may elect under AA §6A to apply the automatic increase described under this subsection (i) as of a date other than the beginning of the Plan Year. If a date other than the first day of the Plan Year is selected under AA §6A, the Plan still must satisfy the minimum deferral percentage requirements under this subsection (i) as of the beginning of the periods designated above. Thus, if an automatic increase becomes effective as of a date within a Plan Year, the Plan must provide for an automatic deferral percentage at least equal to the minimum percentage as of the designated date in the Plan Year commencing before the Plan Years described under (B) – (D) above. (See Rev. Rul. 2009-30.)

**(ii)**     **Eligible Employees.** In applying the QACA provisions under this subsection (b), the automatic deferral election described under subsection (1) must apply to all eligible Employees without taking into account any Employee who:

     **(A)**     was eligible to participate in the Plan (or a predecessor Plan) immediately prior to the effective date of the QACA, and

     **(B)**     had an affirmative election in effect on such effective date (which remains in effect) either to:

         **(I)**     make Salary Deferrals in a specified amount or percentage of Plan Compensation, or

         **(II)**     not have any Salary Deferrals made on his/her behalf.

**(iii)**     **Treatment of rehires.** The minimum deferral percentages described in subsection (1) are determined based on the date the Participant first begins making automatic deferrals under the Plan, without regard to whether the Employee continues to be eligible to make contributions after such date. Thus, the minimum percentage is generally determined based on the number of years since an Employee first has automatic deferrals made under the QACA.

However, if an Employee is precluded from making automatic deferrals to the Plan for an entire Plan Year (e.g., due to termination of employment), the Plan may treat such Employee as having a new initial period for determining the minimum required default percentage under subsection (1) (if such Employee recommences making default contributions under the QACA), regardless of what minimum percentage would otherwise apply to that Employee. The provisions of this subsection (iii) will automatically apply, unless designated otherwise under AA §6A.

Unless elected otherwise under AA §6A, a Participant's affirmative election to defer (or to not defer) will cease upon termination of employment. If a terminated Participant's affirmative election to defer (or to not defer) ceases upon termination of employment, the Participant will be subject to the automatic deferral provisions of this subsection (1) upon rehire, including the default election provisions and the notice requirements under subsection (5) below.

**(2)**     **QACA Safe Harbor Contribution.** To qualify as a QACA, the Employer must provide a QACA Safe Harbor Employer Contribution or a QACA Safe Harbor Matching Contribution to Nonhighly Compensated Employees under the Plan.

     **(i)**     **QACA Safe Harbor Employer Contribution.** The Employer may elect under AA §6C to make a QACA Safe Harbor Employer Contribution of at least 3% of Plan Compensation.

     **(ii)**     **QACA Safe Harbor Matching Contribution.** The Employer may elect under AA §6C to make a QACA Safe Harbor Matching Contribution with respect to each Participant's Salary Deferrals under the Plan. The Employer may elect to provide a basic QACA Safe Harbor Matching Contribution, an

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 65 of 177    Document 23-6

MTD Page 64

enhanced QACA Safe Harbor Matching Contribution, or a tiered QACA Safe Harbor Matching Contribution.

**(A)** **Basic QACA Safe Harbor Matching Contribution.** Under the basic QACA Safe Harbor Matching Contribution formula, each eligible Participant (as defined in AA §6C-3) will receive a QACA Safe Harbor Matching Contribution equal to:

**(I)** 100% of the Participant's Salary Deferrals that do not exceed 1% of the Participant's Plan Compensation plus

**(II)** 50% of the Participant's Salary Deferrals that exceed 1% of the Participant's Plan Compensation but that do not exceed 6% of the Participant's Plan Compensation.

**(B)** **Enhanced QACA Safe Harbor Matching Contribution.** Under the enhanced QACA Safe Harbor Matching Contribution formula, the QACA Safe Harbor Matching Contribution must not be less, at each level of Salary Deferrals, than the amount required under the basic QACA Safe Harbor Matching Contribution formula under subsection (A) above. Under the enhanced QACA Safe Harbor Matching Contribution formula, the rate of Matching Contributions may not increase as an Employee's rate of Salary Deferrals increase.

**(C)** **Contributions for Highly Compensated Employees.** The Plan will not fail to be a QACA merely because Highly Compensated Employees also receive a QACA Safe Harbor Matching Contribution under the Plan. However, a QACA Safe Harbor Matching Contribution will not satisfy this section if any Highly Compensated Employee is eligible for a higher rate of QACA Safe Harbor Matching Contribution than is provided for any Nonhighly Compensated Employee who has the same rate of Salary Deferrals.

**(D)** **Period for making QACA Safe Harbor Matching Contribution.** In determining a Participant's QACA Safe Harbor Matching Contributions, the Employer may elect under AA §6C-2(a)(3) to determine the QACA Safe Harbor Matching Contribution on the basis of Salary Deferrals the Participant makes during the Plan Year. Alternatively, the Employer may elect to determine the QACA Safe Harbor Matching Contribution on a payroll, monthly, or quarterly basis.

**(3)** **2-year cliff vesting.** A Participant must be 100% vested in any QACA Safe Harbor Contributions under subsection (2) above upon the completion of two (2) Years of Service. Any additional amounts contributed under the Plan may be subject to any vesting schedule described under Section 7.02. For this purpose, a QACA Safe Harbor Contribution is treated as a separate contribution source for purposes of applying the rules under Section 7.08 relating to the amendment of a vesting schedule.

**(4)** **Distribution restrictions.** Distributions of the QACA Safe Harbor Contribution must be restricted in the same manner as Salary Deferrals under Section 8.09(c), except that such contributions may not be distributed upon Hardship.

**(5)** **Annual notice.** Each eligible Employee must receive a written notice as described in subsection (a)(4) above.

**(6)** **Definition of Plan Compensation.** For Plan Years beginning on or after January 1, 2010, the definition of Plan Compensation used for purposes of determining default Salary Deferral contributions under the QACA must satisfy the safe harbor requirements under Treas. Reg. §1.401(k)-3(b)(2). For this purpose, if the Plan defines Plan Compensation in a manner that does not satisfy the safe harbor requirements under Treas. Reg. §1.401(k)-3(b)(2), effective for the first Plan Year beginning on or after January 1, 2010, the definition of Plan Compensation used for determining default Salary Deferral contributions will automatically be modified so that any exclusions that cause the definition of Plan Compensation to fail the safe harbor requirements will apply only to Highly Compensated Employees.

**(c)** **Eligibility for Safe Harbor/QACA Safe Harbor Contributions.** The Employer may elect under AA §6C-3(a) to provide the Safe Harbor/QACA Safe Harbor Contribution to all Participants or only to Participants who are Nonhighly Compensated Employees.

The Employer also may elect under AA §6C-3(b) to exclude certain designated Employees from the Safe Harbor/QACA Safe Harbor Contribution. If any Non-Highly Compensated Employee who is eligible to make Salary Deferrals under the Plan is excluded from the Safe Harbor/QACA Safe Harbor Contribution under AA §6C-3(b), the Plan must be disaggregated into separate plans for minimum coverage purposes pursuant to Code §410(b)(4). If each of

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 66 of 177   Document 23-6

MTD Page 65

the disaggregated plans can separately satisfy the minimum coverage requirements under Code §401(a)(4), the separate component plans may be tested separately for nondiscrimination under Code §401(a)(4), including the safe harbor rules under this Section 6.04. If the Plan is disaggregated into separate plans for nondiscrimination purposes, the portion of the disaggregated plan that covers Employees who are not eligible for the Safe Harbor/QACA Safe Harbor Contribution must satisfy the ACP Test, if applicable.

**(d)** **Different eligibility conditions.** In determining who is a Participant for purposes of the Safe Harbor/QACA Safe Harbor Contribution, the eligibility conditions applicable to Salary Deferrals under AA §4-1 apply. However, the Employer may elect under AA §6C-3(c) to apply different eligibility conditions for the Safe Harbor/QACA Safe Harbor Contribution than apply to Salary Deferrals. If the Employer elects under AA §6C-3(c)(1)(iv) to require a Year of Service for determining eligibility for Safe Harbor/QACA Safe Harbor Contributions, a Year of Service for this purpose is the completion of 1,000 Hours of Service during an Eligibility Computation Period.

An Eligibility Computation Period is as defined under Section 2.03(a)(3) using Plan Years for subsequent Eligibility Computation Periods. If different eligibility conditions are selected for Safe Harbor/QACA Safe Harbor Contributions that are more restrictive than the eligibility conditions applicable for Salary Deferrals, the Plan must be disaggregated into separate plans for coverage purposes pursuant to Code §410(b)(4). If the Plan uses different eligibility conditions for Safe Harbor/QACA Safe Harbor Contributions, the portion of the disaggregated plan that covers Employees who are not eligible for the Safe Harbor/QACA Safe Harbor Contribution must satisfy the ACP Test, if applicable.

**(e)** **Provision of Safe Harbor Contribution in separate plan.** The Employer may elect under AA §6C to provide the Safe Harbor Contribution under another defined contribution plan maintained by the Employer. The Safe Harbor Contribution under such other plan must satisfy the conditions under this Section 6.04 for this Plan to qualify as a Safe Harbor 403(b) Plan. To make the Safe Harbor Contribution under another defined contribution plan, each Employee eligible to participate under this Plan must also be eligible to participate under the other defined contribution plan and the other defined contribution plan must have the same Plan Year as this Plan.

**(f)** **Mid-Year Changes to Safe Harbor 403(b) Plan.** A Plan will not fail to satisfy the requirements relating to Safe Harbor 403(b) plans because of the adoption of a mid-year amendment, unless such amendment is prohibited by IRS regulation or other guidance.

**(g)** **Reduction or suspension of Safe Harbor/QACA Safe Harbor Contributions.** The Employer may amend the Plan during the Plan Year to reduce or suspend the Safe Harbor/QACA Safe Harbor Contributions (on a prospective basis) provided the following conditions are satisfied:

**(1)** The Employer must provide a supplemental notice to all Participants explaining the consequences and effective date of the amendment.

**(2)** Participants must be given a reasonable opportunity (including a reasonable period after receipt of the supplemental notice) to change their Salary Deferral and/or After-Tax Employee Contribution elections, as applicable.

**(3)** The amendment reducing or eliminating the Safe Harbor/QACA Safe Harbor Contribution must be effective no earlier than the later of:

**(i)** 30 days after Participants are given the supplemental notice or

**(ii)** the date the amendment is adopted.

**(4)** The Plan is subject to the ACP Test for the entire Plan Year in which the reduction or suspension occurs using the Current Year Testing Method.

**(5)** If the Plan is amended to reduce or eliminate a Safe Harbor/QACA Safe Harbor Employer Contribution, the Employer must operate at an economic loss as described in Code §412(c)(2)(A) for the Plan Year or the notice provided under subsection (4) must include a statement that the Plan may be amended during the Plan Year to reduce or suspend the Safe Harbor/QACA Safe Harbor Employer Contribution and that the reduction or suspension will not apply until at least 30 days after all Eligible Employees are provided notice of the reduction or suspension.

**(h)** **Deemed compliance with ACP Test.** If the Plan satisfies all the conditions to qualify as a Safe Harbor 403(b) Plan, the Plan is deemed to satisfy the ACP Test for the Plan Year with respect to Matching Contributions (including Matching Contributions that are not used to qualify as a Safe Harbor 403(b) Plan), provided the following conditions are satisfied.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 67 of 177   Document 23-6

MTD Page 66

If the Plan does not satisfy the requirements to qualify as a Safe Harbor 403(b) Plan for a Plan Year, the Plan must satisfy the ACP Test for such Plan Year.

(1) **Only Safe Harbor/QACA Safe Harbor Matching Contributions.** If the only Matching Contributions provided under the Plan are Safe Harbor/QACA Safe Harbor Matching Contributions under AA §6C, the Plan is deemed to satisfy the ACP Test, without regard to the conditions under subsections (2)-(5) below.

(2) **Additional Matching Contributions.** If Matching Contributions are provided in addition to Safe Harbor/QACA Safe Harbor Matching Contributions under AA §6C, the total Matching Contributions provided under the Plan (including any Safe Harbor/QACA Safe Harbor Matching Contributions) may not apply to any Salary Deferrals or After-Tax Employee Contributions that exceed 6% of Plan Compensation. If a Matching Contribution formula applies to both Salary Deferrals and After-Tax Employee Contributions, then the Matching Contributions may not apply to the sum of such contributions that exceed 6% of Plan Compensation. If Matching Contributions under the Plan apply to Salary Deferrals in excess of 6% of Plan Compensation, the Plan will be subject to ACP Testing to the extent provided under subsection (i) below.

(3) **Discretionary Matching Contributions.** If the Employer elects to provide discretionary Matching Contributions under a Safe Harbor 403(b) Plan, such discretionary Matching Contributions will not be subject to the ACP Test only if the total amount of the discretionary Matching Contributions are limited to no more than 4% of the Employee's Plan Compensation.

(4) **Rate of Matching Contribution may not increase.** The Matching Contribution formula may not provide a higher rate of match at higher levels of Salary Deferrals or After-Tax Employee Contributions.

(5) **Limit on Matching Contributions for Highly Compensated Employees.** The Matching Contributions made for any Highly Compensated Employee at any rate of Salary Deferrals and/or After-Tax Employee Contributions cannot be greater than the Matching Contributions provided for any Nonhighly Compensated Employee at the same rate of Salary Deferrals and/or After-Tax Employee Contributions.

(6) **After-Tax Employee Contributions.** If the Plan permits After-Tax Employee Contributions, such contributions must satisfy the ACP Test, regardless of whether the Matching Contributions under Plan are deemed to satisfy the ACP Test under this subsection (h). The ACP Test must be performed in accordance with subsection (i) below.

(7) **Additional Matching Contributions may be subject to vesting and distribution restrictions.** Additional Matching Contributions may satisfy the ACP Test Safe Harbor described in this subsection (h) even if such Matching Contributions are subject to the normal vesting schedule and distribution rules applicable to Matching Contributions. However, if such Matching Contributions are subject to allocation conditions under AA §6B-7, such Matching Contributions may fail to satisfy the ACP Test Safe Harbor described in this subsection (h).

(i) **Rules for applying the ACP Test.** If the ACP Test must be performed under a Safe Harbor 403(b) Plan, either because there are After-Tax Employee Contributions, or because the Matching Contributions do not satisfy the conditions described in subsection (h) above, the Current Year Testing Method must be used to perform such test, even if the Adoption Agreement specifies that the Prior Year Testing Method applies. In addition, the testing rules provided in IRS Notice 98-52 (or any successor guidance) are applicable in applying the ACP Test.

(j) **Plan Year.** Except as provided in subsections (1)-(3) below, to qualify as a Safe Harbor 403(b) Plan, the safe harbor requirements under this Section 6.04 must be satisfied for an entire 12-month Plan Year.

(1) **First year of plan.** A newly established plan (other than a successor plan within the meaning of Treas. Reg. §1.401(m)-2(c)(2)(iii)) will not fail to satisfy the requirements of this subsection (j) merely because the Plan Year is less than 12 months, provided that the Plan Year is at least 3 months long. If an Employer is newly established and adopts the Plan as soon as administratively feasible after the Employer comes into existence, the initial Plan Year may be shorter than 3 months.

If the Plan has an initial Plan Year that is less than 12 months, for purposes of applying the Code §415 Limitation under Section 5.03, the Limitation Year will be the 12-month period ending on the last day of the short Plan Year. Thus, no proration of the Defined Contribution Dollar Limitation will be required. In addition, the Employer's Plan Compensation will be determined for the 12-month period ending on the last day of the short Plan Year. Thus, no proration of the Compensation Limit will be required. (See Section 1.29.)

(2) **Change of Plan Year.** If the Plan is amended to change its Plan Year, resulting in a Short Plan Year (see Section 11.11), the Plan will not fail to satisfy the requirements of subsection (j), provided:

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 68 of 177   Document 23-6

MTD Page 67

**(i)** The Plan satisfies the safe harbor requirements under this Section 6.04 for the immediately preceding Plan Year; and

**(ii)** The plan satisfies the safe harbor requirements under this Section 6.04 (determined without regard to subsection (g) above) for the immediately following Plan Year or for the immediately following 12 months if the immediately following Plan Year is less than 12 months.

**(3)** **Final plan year.** If the Plan is terminated during a Plan Year, the Plan will not fail to satisfy the requirements of subsection (j) merely because the final Plan Year is less than 12 months, provided that the plan satisfies the safe harbor requirements under this Section 6.04 through the date of termination and either:

**(i)** The Plan would satisfy the requirements of subsection (g), treating the termination of the Plan as a reduction or suspension of Safe Harbor Matching Contributions (other than the requirement that Employees have a reasonable opportunity to change their Salary Deferral or After-Tax Employee Contribution elections); or

**(ii)** The Plan termination is in connection with a transaction described in Code §410(b)(6)(C) or the Employer incurs a substantial business hardship, comparable to a substantial business hardship described in Code §412(d). If this subsection (ii) applies, the Plan will continue to qualify as a Safe Harbor 403(b) Plan for the year of termination.

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 69 of 177    Document 23-6

MTD Page 68

## SECTION 7
## PARTICIPANT VESTING AND FORFEITURES

**7.01** **Vesting of Contributions.** A Participant's vested interest in his/her Employer Contribution Account and Matching Contribution Account is determined based on the vesting schedule elected in AA §8. A Participant is always fully vested in his/her Salary Deferral Account, After-Tax Contribution Account, QNEC Account, Safe Harbor Employer Contribution Account, Safe Harbor Matching Contribution Account, and Rollover Contribution Account.

**7.02** **Vesting Schedules.** A Participant's vested interest in his/her Employer Contribution Account and/or Matching Contribution Account is determined by multiplying the Participant's vesting percentage (determined under the applicable vesting schedule selected in AA §8) by the total amount under the applicable Account.

    **(a)** **Vesting schedule.** The Employer may choose any of the vesting schedules described in this subsection (a) as the normal vesting schedule with respect to Employer Contributions.

        **(1)** **Full and immediate vesting schedule.** Under the full and immediate vesting schedule, the Participant is always 100% vested in his/her Account Balance.

        **(2)** **5-year graded vesting schedule.** Under the 5-year graded vesting schedule, an Employee vests in his/her Employer Contribution Account and/or Matching Contribution Account in the following manner:

> After 1 Year of Service – 20% vesting
> After 2 Years of Service – 40% vesting
> After 3 Years of Service – 60% vesting
> After 4 Years of Service – 80% vesting
> After 5 Years of Service – 100% vesting

        **(3)** **6-year graded vesting schedule.** Under the 6-year graded vesting schedule, an Employee vests in his/her Employer Contribution Account and/or Matching Contribution Account in the following manner:

> After 2 Years of Service – 20% vesting
> After 3 Years of Service – 40% vesting
> After 4 Years of Service – 60% vesting
> After 5 Years of Service – 80% vesting
> After 6 Years of Service – 100% vesting

        **(4)** **3-year cliff vesting schedule.** Under the 3-year cliff vesting schedule, an Employee is 100% vested after 3 Years of Service. Prior to the third Year of Service, the vesting percentage is zero.

        **(5)** **Modified vesting schedule.** Under the modified vesting schedule, the Employer may designate in the Adoption Agreement the vesting percentage that applies for each Year of Service.

    **(b)** **Special vesting rules.**

        **(1)** **Normal Retirement Age.** Regardless of the Plan's vesting schedule, a Participant's right to his/her Account Balance is fully vested upon the date he/she attains Normal Retirement Age (as defined in AA §7-1), provided the Participant is an Employee on or after such date.

        **(2)** **Separate Accounting.** The Plan Administrator will maintain separate bookkeeping account for each type of contribution made by the Employer on behalf of a Participant that is subject to a different vesting schedule. Any portion of such account in which the Participant is not vested shall be accounted for separately and treated as a contract to which Code §403(c) (or another applicable provision of the Internal Revenue Code) applies. On or after the date on which the Participant's interest in the separate account becomes nonforfeitable, the contract shall be treated as a Code §403(b) Annuity Contract if:

            **(i)** No election has been made under Code §83(b) with respect to the contract;

            **(ii)** The Participant's interest in the separate account has been subject to a substantial risk of forfeiture before becoming nonforfeitable;

            **(iii)** Contributions subject to different vesting schedules have been maintained in separate accounts; and

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 70 of 177   Document 23-6

MTD Page 69

    **(iv)** The separate account at all times satisfied the requirements of section 403(b) except for the nonforfeitability requirement in Code §403(b)(1)(C).

    If only a portion of the Participant's interest in a separate account becomes nonforfeitable in a year, then that portion of the contract will be considered a Code §403(b) Annuity Contract and the remaining forfeitable portion will be considered a separate contract to w Code §403(c) (or another applicable provision of the Internal Revenue Code) applies. Each contribution (and earning thereon) that is subject to a different vesting schedule must be maintained in a separate account for the Participant.

    **(3)**   **100% vesting upon death, or becoming Disabled.** The Employer may elect under AA §8-4 to allow a Participant's vesting percentage to automatically increase to 100% if the Participant dies, becomes Disabled while employed by the Employer or reaches Early Retirement Age while employed with the Employer.

    **(4)**   **Safe Harbor Plans.** If the Plan is a Safe Harbor Plan as defined in Section 6.04, any Safe Harbor Contributions made under the Plan are always 100% vested. If the Plan provides for QACA Safe Harbor Contributions under AA §6C-2, such contributions will vest in accordance with the vesting schedule selected under AA §8-2(b). If a Safe Harbor Plan provides for regular Employer Contributions or Matching Contributions, such amounts will be vested in accordance with the vesting schedule selected under AA §8. Section 7.08 will not apply merely because the Plan is amended to add a vesting schedule for regular Employer Contributions or Matching Contributions.

    **(5)**   **Vesting upon merger, consolidation or transfer.** No accelerated vesting will be required solely because a Code §403(b) Plan is merged with another Code §403(b) Plan, or because assets are transferred from a Code §403(b) Plan to another Code §403(b) Plan.

**7.03**   **Year of Service.** An Employee's position on the vesting schedule is dependent on the Employee's Years of Service with the Employer. Generally, an Employee will earn a vesting Year of Service for each Vesting Computation Period during which the Employee completes at least 1,000 Hours of Service. Alternatively, the Employer may elect under AA §8-5 to modify the definition of Year of Service to require completion of any lesser number of Hours of Service or may elect to calculate Years of Service using the Elapsed Time method (as defined in subsection (b) below).

    **(a)**   **Hours of Service.** Unless the Employer elects to use the Elapsed Time method under AA §8-5(c), vesting Years of Service will be determined based on an Employee's Hours of Service earned during the Vesting Computation Period.

    **(1)**   **Actual Hours of Service.** In determining an Employee's vesting Years of Service, the Employer will credit an Employee with the actual Hours of Service earned during the Vesting Computation Period, unless the Employer elects under AA §8-5(d) to determine Hours of Service using the Equivalency Method.

    **(2)**   **Equivalency Method.** Instead of counting actual Hours of Service in applying the Plan's vesting schedules, the Employer may elect under AA §8-5(d) to determine Hours of Service based on the Equivalency Method. Under the Equivalency Method, an Employee receives credit for a specified number of Hours of Service based on the period worked with the Employer.

    **(i)**   **Monthly.** Under the monthly Equivalency Method, an Employee is credited with 190 Hours of Service for each calendar month during which the Employee completes at least one Hour of Service with the Employer.

    **(ii)**   **Daily.** Under the daily Equivalency Method, an Employee is credited with 10 Hours of Service for each day during which the Employee completes at least one Hour of Service with the Employer.

    **(iii)**   **Weekly.** Under the weekly Equivalency Method, an Employee is credited with 45 Hours of Service for each week during which the Employee completes at least one Hour of Service with the Employer.

    **(iv)**   **Semi-monthly.** Under the semi-monthly Equivalency Method, an Employee is credited with 95 Hours of Service for each semi-monthly period during which the Employee completes at least one Hour of Service with the Employer.

    **(3)**   **Employee need not be employed for entire Vesting Computation Period.** If an Employee completes the required Hours of Service during a Vesting Computation Period, the Employee will receive credit for a Year of Service as of the end of such Vesting Computation Period, even if the Employee is not employed for the entire Vesting Computation Period.

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 71 of 177    Document 23-6

MTD Page 70

**(b)**  **Elapsed Time method.** Instead of using Hours of Service in applying the Plan's vesting schedules, the Employer may elect under AA §8-5(c) to apply the Elapsed Time method for calculating an Employee's vesting service with the Employer. Under the Elapsed Time method, an Employee receives credit for the aggregate period of time worked for the Employer commencing with the Employee's first day of employment (or reemployment, if applicable) and ending on the date the Employee begins a Period of Severance which lasts at least 12 consecutive months. In calculating an Employee's aggregate period of service, an Employee receives credit for any Period of Severance that lasts less than 12 consecutive months. If an Employee's aggregate period of service includes fractional years, such fractional years are expressed in terms of days.

    **(1)**  **Period of Severance.** For purposes of applying the Elapsed Time method, a Period of Severance is any continuous period of time during which the Employee is not employed by the Employer. A Period of Severance begins on the date the Employee retires, quits or is discharged, or if earlier, the 12-month anniversary of the date on which the Employee is first absent from service for a reason other than retirement, quit or discharge.

    In the case of an Employee who is absent from work for maternity or paternity reasons, the 12-consecutive month period beginning on the first anniversary of the first date of such absence shall not constitute a Period of Severance. For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence (i) by reason of the pregnancy of the Employee, (ii) by reason of the birth of a child of the Employee, (iii) by reason of the placement of a child with the Employee in connection with the adoption of such child by the Employee, or (iv) for purposes of caring for a child of the Employee for a period beginning immediately following the birth or placement of such child.

    **(2)**  **Related Employers.** For purposes of applying the Elapsed Time method, service will be credited for employment with any Related Employer.

**(c)**  **Change in service crediting method.** If the service crediting method is changed from an Hours of Service method to the Elapsed Time method or from the Elapsed Time method to an Hours of Service method, the amount of service credited to an Employee will be determined under subsection (1) or (2) below. For this purpose, a change in service crediting method will occur if the Plan is amended to change the service crediting method or if the service crediting method is changed as a result of an Employee's change in employment status.

    **(1)**  **Change to Elapsed Time method.** If the service crediting method is changed from an Hours of Service method to the Elapsed Time method, the amount of vesting service credited to an Employee will equal the sum of the service under subsections (i) and (ii) below:

        **(i)**  The number of Years of Service equal to the number of Years of Service credited under the Hours of Service method before the Vesting Computation Period during which the change to the Elapsed Time method occurs.

        **(ii)**  For the Vesting Computation Period in which the change occurs, the greater of:

            **(A)**  the period of service that would be credited under the Elapsed Time method from the first day of that Vesting Computation Period through the date of the change, or

            **(B)**  the service that would be taken into account under the Hours of Service method for the Vesting Computation Period which includes the date of the change.

    If the period of service described in subsection (i) is the greater amount, then subsequent periods of service are credited under the Elapsed Time method beginning with the date of the change. If the period of service described in subsection (ii) applies, the Elapsed Time method will be used beginning with the first day of the Vesting Computation Period that would have followed the Vesting Computation Period in which the change to the Elapsed Time method occurred.

    If the change to the Elapsed Time method occurs as of the first day of a Vesting Computation Period, the use of the Elapsed Time method begins as of the date of the change, and the calculation in subsection (B) above does not apply. In such case, the Employee's service is determined under subsection (A) above plus the subsequent periods of service determined under the Elapsed Time method, starting with the effective date of the change.

    **(2)**  **Change to Hours of Service method.** If the service crediting method is changed from the Elapsed Time method to an Hours of Service method, the Employee's Elapsed Time service earned as of the date of the change is converted into Years of Service under the Hours of Service method, determined as the sum of subsections (i) and (ii), below:

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 72 of 177   Document 23-6

MTD Page 71

> **(i)** A number of Years of Service is credited that equals the number of 1-year periods of service credited under the Elapsed Time method as of the date of the change.
>
> **(ii)** For the Vesting Computation Period which includes the date of the change, the Employee is credited with an equivalent number of Hours of Service, using one of the Equivalency Methods defined in Section 7.03(a)(2) above for any fractional year that was credited under the Elapsed Time method as of the date of the change.
>
> For the portion of the Vesting Computation Period following the date of the change, actual Hours of Service are counted. The Hours of Service credited for the portion of the Vesting Computation Period in which the Elapsed Time method was in effect are added to the actual Hours of Service credited for the remaining portion of the Vesting Computation Period to determine if the Employee has a Year of Service for that Vesting Computation Period.

**7.04** **Vesting Computation Period.** Generally, the Vesting Computation Period is the Plan Year. Alternatively, the Employer may elect under AA §8-5(b) to use the 12-month period commencing on the Employee's date of hire (or reemployment date, if applicable) and each subsequent 12-month period commencing on the anniversary of such date or the Employer may elect to use any other 12-consecutive month period as the Vesting Computation Period.

**7.05** **Excluded service.** Generally, except as provided under Section 7.07 with respect to service excluded under the Break in Service rules, all service with the Employer counts for purposes of applying the Plan's vesting schedules. However, the Employer may elect under AA §8-3 to exclude certain service with the Employer in calculating an Employee's vesting Years of Service.

> **(a)** **Service before the Effective Date of the Plan.** The Employer may elect under AA §8-3(a) to exclude service earned during any period prior to the date the Employer established the Plan or a Predecessor Plan. For this purpose, a Predecessor Plan is a plan maintained by the Employer that is terminated within the 5-year period immediately preceding or following the establishment of this Plan. A Participant's service under a Predecessor Plan must be counted for purposes of determining the Participant's vested percentage under this Plan.
>
> **(b)** **Service before a specified age.** The Employer may elect under AA §8-3(b) to exclude service before an Employee attains a specified age (not to exceed age 18). An Employee will be credited with a Year of Service for the Vesting Computation Period during which the Employee attains the required age, provided the Employee satisfies all other conditions required for a Year of Service.

**7.06** **Service with Predecessor Employers.** If the Employer maintains the plan of a Predecessor Employer, any service with such Predecessor Employer is treated as service with the Employer for purposes of applying the provisions of this Plan. If the Employer does not maintain the plan of a Predecessor Employer, service with such Predecessor Employer does not count for vesting purposes under this Section 7, unless the Employer specifically designates under AA §4-5 to credit service with such Predecessor Employer for vesting. Unless designated otherwise under AA §4-5, if the Employer takes into account service with a Predecessor Employer, such service will count for purposes of eligibility under Section 2 (see Section 2.06) vesting under this Section 7, and for purposes of the minimum allocation conditions under Section 3.07.

**7.07** **Break in Service Rules.** In addition to any service excluded under Section 7.05, the Employer may elect under AA §8-5 to disregard an Employee's vesting service with the Employer under the Break in Service rules set forth in this Section 7.07.

> **(a)** **Break in Service.** An Employee incurs a Break in Service for any Vesting Computation Period (as defined in Section 7.04) during which the Employee does not complete more than five hundred (500) Hours of Service with the Employer. However, if the Employer elects under AA §8-5(a) to require less than 1,000 Hours of Service to earn a vesting Year of Service, a Break in Service will occur for any Vesting Computation Period during which the Employee does not complete more than one-half (1/2) of the Hours of Service required to earn a vesting Year of Service. In applying these Break in Service rules, Years of Service and Breaks in Service are measured on the same Vesting Computation Period.
>
> **(b)** **One-Year Break in Service rule.** Under the One-Year Break in Service rule, if an Employee incurs a one-year Break in Service, such Employee will not be credited with any service earned prior to such one-year Break in Service for purposes of applying the Plan's vesting schedules until the Employee has completed a Year of Service after the Employee's return to employment. The Employer must elect to apply the One-Year Break in Service rule under AA §8-5(f).
>
> If a Participant has service disregarded under the One-Year Break in Service rule, such Participant will have his/her service reinstated upon returning to employment as of the first day of the Vesting Computation Period during which the Participant completes a Year of Service.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 73 of 177   Document 23-6

MTD Page 72

(c) **Nonvested Participant Break in Service rule.** Under the Nonvested Participant Break in Service rule, if an Employee is totally nonvested (i.e., 0% vested) in his/her Account Balance attributable to Employer and Matching Contributions, and such Employee incurs five (5) or more consecutive one-year Breaks in Service (or, if greater, a consecutive period of Breaks in Service at least equal to the Employee's aggregate number of Years of Service with the Employer), the Plan will disregard all service earned prior to such consecutive Breaks in Service for purposes of applying the vesting schedules under the Plan. If the Employer elects the Elapsed Time method of crediting service, an Employee will be treated as incurring five consecutive Breaks in Service when he/she incurs a Period of Severance of at least 60 months.

If the Employee continues in employment with the Employer after incurring the requisite Break in Service, such Employee will be treated as a new Employee for purposes of determining vesting under the Plan. For this purpose, a Participant who has made Salary Deferrals under the Plan will be treated as having a vested interest in the Plan. Thus, the Nonvested Participant Break in Service rule may not be used with respect to any contributions under the Plan (even if such Participant is totally nonvested in his/her Account Balance attributable to Employer and Matching Contributions) for a Participant who has made Salary Deferrals under the Plan. The Employer must elect to apply the Nonvested Participant Break in Service rule under AA §8-5. Unless elected otherwise under AA §8-5, the Nonvested Participant Break in Service rule applies only with respect to an Employee who has terminated employment. In determining an Employee's aggregate Years of Service for purposes of applying the Nonvested Participant Break in Service rule, any Years of Service otherwise disregarded under a previous application of this rule are not counted.

(d) **Five-Year Forfeiture Break in Service.** A Participant's vesting service also may be disregarded if the Participant incurs a Five-Year Forfeiture Break in Service, as described in Section 7.10(b) below.

**7.08** **Amendment of Vesting Schedule.** If the Plan's vesting schedule is amended or if the plan is amended in any way that directly or indirectly affects the computation of the Participant's vested percentage, each Participant with at least three (3) Years of Service with the Employer, as of the end of the election period described in the following paragraph, may elect to have his/her vested interest computed under the Plan without regard to such amendment or change. However, the new vesting schedule will apply automatically to an Employee, and no election will be provided, if the new vesting schedule is at least as favorable to such Employee, in all circumstances, as the prior vesting schedule.

The period during which the election may be made shall commence with the date the amendment is adopted or is deemed to be made and shall end on the latest of:

(a) 60 days after the amendment is adopted;

(b) 60 days after the amendment becomes effective; or

(c) 60 days after the Participant is issued written notice of the amendment by the Employer or Plan Administrator.

Furthermore, if the vesting schedule of the Plan is amended, in the case of an Employee who is a Participant as of the later of the date such amendment is adopted or effective, the vested percentage (determined as of such date) of such Employee's Account Balance will not be less than the percentage computed under the Plan without regard to such amendment. With respect to benefits accrued as of the later of the adoption or effective date of the amendment, the vested percentage of each Participant will be the greater of the vested percentage under the old vesting schedule or the vested percentage under the new vesting schedule.

No amendment to the plan shall be effective to the extent that it has the effect of decreasing a participant's accrued benefit. Notwithstanding the preceding sentence, a participant's Account Balance may be reduced to the extent permitted under Code §412(d)(2) or to the extent permitted under Treas. Reg. §§1.411(d)-3 and 1.411(d)-4. For purposes of this section, a Plan amendment includes any changes to the terms of the Plan, including changes resulting from a merger, consolidation, or transfer (as defined in Code §414(l)) or a Plan termination. The rules of this Section 7.08 apply to a Plan amendment that decreases a Participant's benefit, or otherwise places greater restrictions or conditions on a Participant's right to protected benefits, even if the amendment merely adds a restriction or condition that is permitted under the vesting rules in Code §411. However, such an amendment does not violate this Section 7.08 to the extent it applies with respect to benefits that accrue after the applicable amendment date. An amendment that satisfies the applicable requirements under DOL Reg. §2530.203-2(c) relating to Vesting Computation Periods does not fail to satisfy the requirements of this Section 7.08 merely because the amendment changes the Plan's Vesting Computation Period.

**7.09** **Special Vesting Rule - In-Service Distribution When Account Balance is Less than 100% Vested.** If amounts are distributed from a Participant's Employer Contribution Account or Matching Contribution Account at a time when the Participant's vested percentage in such amounts is less than 100% and the Participant may increase the vested percentage in the Account Balance:

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 74 of 177   Document 23-6

MTD Page 73

(a)   A separate Account will be established for the Participant's interest in the Plan as of the time of the distribution, and

(b)   At any relevant time, the Participant's vested portion of the separate Account will be equal to an amount ("X") determined by the formula:

X = P (AB + D) - D

Where:

      P is the vested percentage at the relevant time;

      AB is the Account Balance at the relevant time; and

      D is the amount of the distribution.

**7.10**   **Forfeiture of Benefits.** A Participant will forfeit the nonvested portion of his/her Employer Contribution and/or Matching Contribution Account upon the occurrence of any of the events described below. The Plan Administrator has the responsibility to determine the amount of a Participant's forfeiture. Until an amount is forfeited pursuant to this Section, a Participant's entire Account must remain in the Plan and continue to share in gains and losses. A Participant will not forfeit any of his/her nonvested Account until the occurrence of one of the following events.

(a)   **Cash-Out Distribution.** Following termination of employment, a Participant may receive a total distribution of his/her vested benefit under the Plan (a Cash-Out Distribution) in accordance with the distribution and Participant consent provisions under Section 8. If a Participant receives a Cash-Out Distribution upon termination of employment, the Participant's nonvested benefit under the Plan will be forfeited in accordance with subsection (1) below. If at the time of termination, a Participant is totally nonvested in his/her entire Account Balance, the Participant will be deemed to receive a total Cash-Out Distribution of his/her entire vested Account Balance (i.e., a deemed Cash-Out Distribution of zero dollars) as of the date of termination, subject to the forfeiture provisions under subsection (1) below.

A Cash-Out Distribution does not occur until such time as the Participant receives a distribution of his/her entire vested Account Balance, including amounts attributable to Salary Deferrals. If a Participant receives a distribution of less than the entire vested portion of his/her Account Balance (including any additional amounts to be allocated under subsection (1)(ii) below), the Participant will not be treated as receiving a Cash-Out Distribution until such time as the Participant receives a distribution of the remainder of the vested portion of his/her Account Balance.

(1)   **Timing of forfeiture.** Unless elected otherwise under AA §8-7(b), if a Participant receives a Cash-Out Distribution of his/her vested Account Balance, the Participant will immediately forfeit the nonvested portion of such Account Balance, as of the date of the distribution or deemed distribution (as determined under subsection (i) or (ii) below, whichever applies). (See Section 7.11 below for a discussion of the treatment of forfeitures under the Plan.)

(i)   **No further allocations.** For purposes of applying the Cash-Out Distribution rules, a terminated Participant who receives a total distribution of his/her vested Account Balance will be treated as receiving the Cash-Out Distribution as of the date the Participant receives such distribution (or in the case of a deemed Cash-Out Distribution as of the date the Participant terminates employment), provided the Participant is not entitled to any further allocations under the Plan for the Plan Year in which the Participant terminates employment. The Participant will forfeit his/her nonvested benefit as of the date the Participant receives the Cash-Out Distribution, in accordance with the provisions under Section 7.11.

(ii)   **Additional allocations.** For purposes of applying the Cash-Out Distribution rules, if upon termination of employment, a Participant is entitled to an additional allocation for the Plan Year in which the Participant terminates, such Participant will not be deemed to receive a Cash-Out Distribution until such time as the Participant receives a distribution of his/her entire vested Account Balance, including any amounts that are still to be allocated under the Plan. Thus, a terminated Participant who is entitled to an additional allocation (e.g., an additional Employer Contribution) for the Plan Year of termination will not be deemed to have a total Cash-Out Distribution until the Participant receives a distribution of such additional amounts. In the case of a deemed Cash-Out Distribution, if the Participant is entitled to an additional allocation under the Plan for the Plan Year in which the Participant terminates employment, the deemed Cash-Out Distribution is deemed to occur on the first day of the Plan Year following the Plan Year in which the termination occurs, provided the Participant is still totally nonvested in his/her Account Balance.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 75 of 177   Document 23-6

MTD Page 74

(iii) **Modification of Cash-Out Distribution rules.** The Employer may elect under AA §8-7(a) to modify the Cash-Out Distribution provision under subsection (a) above to provide that the Cash-Out Distribution and related forfeiture occur immediately upon distribution (or deemed distribution) of the terminated Participant's vested Account Balance, without regard to whether the Participant is entitled to an additional allocation under the Plan.

(2) **Repayment of Cash-Out Distribution.** If a Participant receives a Cash-Out Distribution that results in a forfeiture under subsection (a) above, and the Participant resumes employment covered under the Plan, such Participant may repay to the Plan the amount received as a Cash-Out Distribution. For this purpose, to be entitled to a restoration of benefits (as described below), the Participant must repay the entire amount of the Cash-Out Distribution, including any amounts attributable to Salary Deferrals. A Participant will only be permitted to repay his/her Cash-Out Distribution if such repayment is made before the earlier of:

(i) five (5) years after the first date on which the Participant is subsequently re-employed by the Employer, or

(ii) the date the Participant incurs a Five-Year Forfeiture Break in Service (as defined in subsection (b) below).

If a Participant receives a deemed Cash-Out Distribution, and the Participant resumes employment covered under this Plan before the date the Participant incurs a Five-Year Forfeiture Break in Service, the Participant is deemed to repay the Cash-Out Distribution immediately upon his/her reemployment.

(3) **Restoration of forfeited benefit.** If a rehired Participant repays a Cash-Out Distribution in accordance with subsection (2) above, any amounts that were forfeited on account of such Cash-Out Distribution (unadjusted for any interest that might have accrued on such amounts after the distribution date) will be restored to the Plan no later than the end of the Plan Year following the Plan Year in which the Participant repays the Cash-Out Distribution (or is deemed to repay the Cash-Out Distribution under subsection (2) above). No amount will be restored under the Plan, however, until such time as the Participant repays the entire amount of the Cash-Out Distribution. (However, see subsection (d) below for a discussion of special rules that apply if a Participant's Cash-Out Distribution includes a distribution of Salary Deferrals.) In no event will a Participant be entitled to a restoration under this subsection (3) if the Participant returns to employment after incurring a Five-Year Forfeiture Break in Service (as defined in subsection (b) below).

(4) **Sources of restoration.** If a Participant's forfeited benefit is required to be restored under subsection (3), the restoration of such forfeited benefits will occur from the following sources. If the following sources are not sufficient to completely restore the Participant's benefit, the Employer must make an additional contribution to the Plan.

(i) Any unallocated forfeitures for the Plan Year of the restoration.

(ii) Any unallocated earnings for the Plan Year of the restoration.

(iii) Any portion of a discretionary Employer Contribution to the extent such contribution has not been allocated to Participants' Accounts for the Plan Year of the restoration.

(b) **Five-Year Forfeiture Break in Service.** If a Participant has five (5) consecutive one-year Breaks in Service (a "Five-Year Forfeiture Break in Service"), all Years of Service after such Breaks in Service will be disregarded for the purpose of vesting in the portion of the Participant's Employer Contribution Account and/or Matching Contribution Account that accrued before such Breaks in Service. A Participant who incurs a Five-Year Forfeiture Break in Service will forfeit the nonvested portion of his/her Employer Contribution and/or Matching Contribution Account as of the end of the Vesting Computation Period in which the Participant incurs the fifth consecutive Break in Service. Except as provided under Section 7.07, a Participant who is rehired after incurring a Five-Year Forfeiture Break in Service will be credited with both pre-break and post-break service for purposes of determining his/her vested percentage in amounts that accrue under the Plan after the Five-Year Forfeiture Break in Service.

(c) **Missing Participant or Beneficiary.** If the Plan is able to make a distribution to a Participant or Beneficiary without consent (as permitted under Section 8.04) and such Participant or Beneficiary cannot be located within a reasonable period following a reasonable diligent search, the Plan Administrator may forfeit the missing Participant's or Beneficiary's Account, as provided in subsection (2) below. An Employer will be deemed to have performed a reasonable diligent search if it performs the actions described in subsection (1) below. In determining whether a reasonable period has elapsed following a reasonable diligent search, the Plan Administrator may follow any applicable guidance provided under statute, regulation, or other IRS or DOL guidance of general applicability. However, the Plan

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 76 of 177    Document 23-6

MTD Page 75

Administrator will be deemed to have waited a reasonable period following a reasonable diligent search if the Plan Administrator waits at least 6 months following the completion of the actions described in subsection (1) below. For purposes of applying this subsection (c), a Participant or Beneficiary is considered missing only if the Plan may make a distribution to such Participant or Beneficiary without consent. (See Section 8.06 for the availability of Automatic Rollover rules that permit the Plan Administrator to automatically rollover a Participant's Involuntary Cash-Out Distribution to an IRA upon the Participant's failure to consent to a distribution, without the need to locate the Participant.)

      **(1)**   **Reasonable diligent search.** The Plan Administrator will be deemed to have performed a reasonable diligent search if it performs the following actions:

           **(i)**   Send a certified letter to the Participant's or Beneficiary's last known address.

           **(ii)**   Check related plan records of the Employer (e.g., health plan records) to determine if a more current address exists for the Participant or Beneficiary.

           **(iii)**   If the Participant cannot be located, the Plan Administrator may attempt to identify and contact any individual that the Participant has designated as a Beneficiary under the Plan for updated information concerning the location of the missing Participant.

           **(iv)**   In addition to the search methods discussed above, the Plan Administrator may use other search methods, including the use of Internet search tools, commercial locator services, and credit reporting agencies to locate the missing Participant.

      **(2)**   **Forfeiture of Account of missing Participant or Beneficiary.** If a Participant or Beneficiary is deemed to be missing (as described in subsection (c) above), the Plan Administrator may forfeit the distributable amount attributable to such missing Participant or Beneficiary, as permitted under applicable laws and regulations and subject to the terms of the applicable Investment Arrangement. If, after an amount is forfeited under this subsection (2), the missing Participant or Beneficiary is located, the Plan will restore the forfeited amount (unadjusted for gains or losses) to such Participant or Beneficiary within a reasonable time. However, if a missing Participant or Beneficiary has not been located by the time the Plan terminates, the forfeiture of such Participant's or Beneficiary's distributable amount will be irrevocable.

      **(3)**   **Expenses attributable to search for missing Participant.** Reasonable expenses attendant to locating a missing Participant may be charged to such Participant's Account, provided that the amount of such expenses is reasonable. The Plan Administrator may take into account the size of a Participant's Account in relation to the cost of the search when deciding how extensive a search is required before declaring such Participant as missing under subsection (c).

   **(d)**   **Excess Deferrals and Excess Aggregate Contributions.** If a Participant receives a distribution of Excess Deferrals or Excess Aggregate Contributions, the Employer will forfeit the portion of his/her Matching Contribution Account (whether vested or not) which is attributable to such distributed amounts (except to the extent such amount has been distributed as Excess Aggregate Contributions, pursuant to Section 6.02(b)(2)). A forfeiture of Matching Contributions under this subsection (d) occurs in the Plan Year in which the Participant receives the distribution of Excess Deferrals and/or Excess Aggregate Contributions.

**7.11**   **Allocation of Forfeitures.** The Employer may elect in AA §8-6 how it wishes to allocate forfeitures under the Plan. Forfeitures may be allocated in the Plan Year in which the forfeitures occur or in the Plan Year following the Plan Year in which the forfeitures occur. In applying the forfeiture provisions under the Plan, if there are any unused forfeitures as of the end of the Plan Year designated in AA §8-6, as applicable, any remaining forfeiture will be used (as designated in AA §8-6) in the immediately following Plan Year.

   **(a)**   **Reallocation as additional contributions.** The Employer may elect in AA §8-6 to reallocate forfeitures as additional contributions under the Plan. If the Employer elects to reallocate forfeitures as additional contributions, the Employer may elect, in its discretion, to allocate such amounts as additional Employer Contributions and/or additional Matching Contributions. Forfeitures allocated under this subsection (a) will be allocated in the same manner as selected under AA §6-3 or AA §6B-2 with respect to the contribution type being allocated. If no allocation method is selected for a particular contribution type, forfeitures will be reallocated as a pro rata allocation (as described in AA §6-3(a)) if such amount is reallocated as an additional Employer Contribution or as a discretionary Matching Contribution (as described in AA §6B-2(a)) if such amount is reallocated as an additional Matching Contribution. In applying the provisions of this subsection (a), no allocation of forfeitures will be made to any Participant with respect to forfeitures that arise out of his/her own Account.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 77 of 177   Document 23-6

MTD Page 76

**(b)** **Reduction of contributions.** The Employer may elect in AA §8-6 to use forfeitures to reduce Employer Contributions and/or Matching Contributions under the Plan. If the Employer elects to use forfeitures to reduce contributions, the Employer may, in its discretion, use such forfeitures to reduce Employer Contributions, Matching Contributions, or both. The Employer may adjust its contribution deposits in any manner, provided the total Employer Contributions made for the Plan Year properly take into account the forfeitures that are to be allocated to reduce such contributions for that Plan Year. If contributions are allocated over multiple allocation periods, the Employer may reduce its contribution for any allocation periods within the Plan Year in which the forfeitures are to be allocated so that the total amount allocated for the Plan Year is proper. If the Employer elects to use forfeitures to reduce contributions and there are forfeitures remaining after all required contributions have been reduced to zero, then Employer may elect to reallocate any remaining forfeitures as additional contributions, pursuant to subsection (a).

**(c)** **Payment of Plan expenses.** The Employer may elect under AA §8-6 to first use forfeitures to pay Plan expenses for the Plan Year in which the forfeitures would otherwise be applied. If any forfeitures remain after the payment of Plan expenses under this subsection, the remaining forfeitures will be allocated as selected under AA §8-6.

**(d)** **Forfeiture rules for other contribution types.**

**(1)** **Forfeitures under a Safe Harbor 403(b) Plan.** Effective with the adoption of this Plan, if the Plan is a Safe Harbor 403(b) Plan, the Employer may not use forfeitures to reduce the Safe Harbor Employer Contribution or Safe Harbor Matching Contribution under the Plan, unless provided otherwise under IRS guidance. However, regardless of any elections under AA §8-6, forfeitures may be used to reduce Matching Contributions that satisfy the ACP Test Safe Harbor or may be allocated as additional discretionary Matching Contributions. If forfeitures under a Safe Harbor 403(b) Plan are allocated as additional discretionary Matching Contributions, such discretionary Matching Contributions will be subject to the requirements applicable to ACP Test Safe Harbor Matching Contributions, without regard to any elections under the Plan.

**(2)** **Prior Employer and/or Matching Contributions.** If the Plan maintains Employer Contribution and/or Matching Contribution Accounts, but the Plan no longer provides for such contributions, such amounts will continue to vest under the vesting schedule applicable to such contributions under the prior Plan or under any vesting schedule designated under Appendix A of the Adoption Agreement. If there are any forfeitures related to such prior contributions, such amounts may be reallocated as an additional Employer Contribution or as an additional Matching Contribution in accordance with the provisions of subsection (a), to the extent such contributions are authorized under the Plan, or may be used to reduce any Employer Contribution or Matching Contribution, consistent with the provisions of subsection (b) above. If the Plan does not provide for either Employer Contributions or Matching Contributions, the Employer may reallocate forfeitures of prior contributions as an Employer Contribution (using the pro rata allocation formula) or as a discretionary Matching Contribution. Alternatively, the Employer may use such forfeitures to pay Plan expenses as authorized under subsection (c). The Employer may elect to use such forfeitures in the Plan Year the forfeiture occurs or in the following Plan Year.

**(3)** **Excess Contributions and Excess Aggregate Contributions.** If a Participant forfeits any portion of his/her Matching Contribution Account as a result of a corrective distribution of Excess Aggregate Contributions, such amounts will be treated as a forfeiture in the Plan Year in which the Participant receives the distribution of Excess Contributions and/or Excess Aggregate Contributions. A forfeiture of Matching Contributions under this subsection (3) will be treated in accordance with the selections applicable to Matching Contributions under the Adoption Agreement. If Matching Contributions are 100% vested, the Employer may elect to reallocate the forfeiture as an additional Matching Contribution or may use the forfeiture to reduce Matching Contributions in the year the forfeiture occurs or in the following Plan Year. Alternatively, the Employer may use such forfeitures to pay Plan expenses as authorized under subsection (c) above.

**(4)** **Other contributions.** If a Participant has any other amounts under the Plan which are treated as forfeited (e.g., a forfeiture for a missing Participant), such amounts may be forfeited.

MTD Page 77

## SECTION 8
## PLAN DISTRIBUTIONS

Subject to the Qualified Joint and Survivor Annuity Requirements under Section 9 and to the terms of any Investment Arrangement associated with the Plan, a Participant may receive a distribution of his/her vested Account Balance at the time and in the manner provided under this Section 8. A Participant must begin receiving required minimum distributions under the Plan (in accordance with the provisions of Section 8.11).

**8.01**  **Deferred distributions.** A Participant must be permitted to receive a distribution from the Plan no later than the 60th day after the latest of the close of the Plan Year in which:

    **(a)**  the Participant attains age 65 (or Normal Retirement Age, if earlier);

    **(b)**  occurs the 10th anniversary of the year in which the Participant commenced participation in the Plan; or

    **(c)**  the Participant terminates service with the Employer.

    A failure by the Participant (and Spouse, if applicable) to consent to a distribution while a benefit is immediately distributable shall be deemed to be an election to defer commencement of payment of any benefit sufficient to satisfy this section. For this purpose, an Account Balance is immediately distributable if any part of the Account Balance could be distributed to the Participant (or surviving Spouse) before the Participant attains (or would have attained if not deceased) the later of Normal Retirement Age or age 62.

**8.02**  **Available Forms of Distribution.** Subject to the Qualified Joint and Survivor Annuity (QJSA) rules described in Section 9 and the terms governing the applicable Investment Arrangement, the Employer may elect under AA §9-1 the forms of distribution that are available to a Participant or Beneficiary under the Plan. Different distribution options may apply depending on whether a distribution is made upon termination of employment, death, disability or as an in-service withdrawal. Available distribution options under AA §9-1 may include a lump sum of all or a portion of the Participant's vested Account Balance, installments, annuity payments, or any other form designated in AA §9-1. Any distribution options selected under the Plan must comply with the required minimum distribution rules under Section 8.11.

    If the Plan provides for installment payments as an optional form of distribution, such payments may be made in monthly, quarterly, semi-annual, or annual payments over a period not exceeding the life expectancy of the Participant and his/her designated Beneficiary. The Plan Administrator may permit a Participant or Beneficiary to accelerate the payment of all, or any portion, of an installment distribution. If the Plan provides for annuity payments, the Plan must purchase an annuity that provides for payments over a period that does not extend beyond either the life of the Participant (or the lives of the Participant and his/her designated Beneficiary) or the life expectancy of the Participant (or the life expectancy of the Participant and his/her designated Beneficiary). (The availability of installments and or annuity payments may be restricted under AA §9-1(c).)

    Regardless of the distribution options selected under AA §9-1, if the Plan is subject to the Joint and Survivor Annuity requirements (as described in Section 9), the Plan must make distribution in the form of a QJSA (as defined in Section 9.02(a)) unless the Participant (and Spouse, if the Participant is married) elects an alternative distribution form in accordance with a Qualified Election (as defined in Section 9.04).

**8.03**  **Amount Eligible for Distribution.** For purposes of determining the amount a Participant may receive as a distribution from the Plan, a Participant's Account Balance is determined as of the Valuation Date which immediately precedes the date the Participant receives his/her distribution from the Plan. For this purpose, the Participant's Account Balance must be increased for any contributions allocated to the Participant's Account since the most recent Valuation Date and must be reduced for any distributions the Participant received from the Plan since the most recent Valuation Date. A Participant does not share in any allocation of gains or losses attributable to the period between the Valuation Date and the date of the distribution under the Plan, unless the Plan Administrator establishes an alternative policy.

    **(a)**  **Individual or Participant-Directed Accounts.** In the case of a Participant-directed Account, an individual Custodial Account or individual Annuity Contract, the determination of the value of the Participant's Account for distribution purposes is subject to the funding and valuation procedures applicable to such directed Account, individual Custodial Account or individual Annuity Contract.

    **(b)**  **Permissible distribution events.** In no event may Participants receive distributions under the Plan until the conditions set forth below are satisfied. The Employer and the terms of the applicable Investment Arrangement may further restrict the distribution conditions under the Adoption Agreement.

        **(1)**  **Salary Deferral Account.** A Participant may not receive a distribution of any amounts held under a Salary Deferral Account unless the Participant satisfies one of the following conditions:

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 79 of 177   Document 23-6

MTD Page 78

      **(i)**     The Participant has a Severance from Employment with the Employer.

      **(ii)**    The Participant has attained age 59 ½.

      **(iii)**   The Participant dies or becomes Disabled.

      **(iv)**   The Participant qualifies for a Hardship distribution.

**(2)**   **Custodial Account.** A Participant may not receive a distribution of any amounts attributable to Matching Contributions or Employer Contributions held under a Custodial Account unless the Participant satisfies one of the following conditions:

      **(i)**     The Participant has a Severance from Employment with the Employer.

      **(ii)**    The Participant has attained age 59 ½.

      **(iii)**   The Participant dies or becomes Disabled.

**(3)**   **Annuity Contract.** A Participant may not receive a distribution of any amounts attributable to Matching Contributions or Employer Contributions held under an Annuity Contract unless the Participant satisfies one of the following conditions:

      **(i)**     The Participant has a Severance from Employment with the Employer.

      **(ii)**    The Participant qualifies for a distribution due to the occurrence of some event, such as after affixed number of years or the attainment of a stated age, as specified under the Adoption Agreement.

      **(iii)**   The Participant dies or becomes Disabled.

      **(iv)**   The Participant qualifies for a Hardship distribution.

**(4)**   **Special rule regarding deemed Severance from Employment for military service.** For purposes of Plan distributions, a Participant shall be treated as having a deemed Severance from Employment during any period the Participant is performing service in the uniformed services described in Code §3401(h)(2)(A). A Participant who elects to receive a distribution pursuant to the preceding sentence may not make an Elective Deferral or an After-Tax Employee Contribution during the 6-month period beginning on the date of the distribution.

**8.04**   **Participant Consent.** If the value of a Participant's entire vested Account Balance exceeds the Involuntary Cash-Out threshold (as defined in subsection (a) below), the Participant must consent to any distribution of such Account Balance prior to his/her required beginning date for minimum distribution purposes or, if so provided in AA §9, as of the date the Participant attains (or would have attained if not deceased) the later of Normal Retirement Age or age 62. If a distribution is subject to Participant consent, the Participant must consent in writing to the distribution within the 180-day period ending on the Annuity Starting Date. If the distribution is subject to the Qualified Joint and Survivor Annuity requirements under Section 9, the Participant's Spouse (if the Participant is married at the time of the distribution) also must consent to the distribution in accordance with Section 9. In any event, the Participant's consent must be obtained before any distribution regardless of the amount, if such participant is the sole owner of the investment vehicle under the Plan.

  **(a)**   **Involuntary Cash-Out threshold.** For purposes of determining whether a distribution is subject to the Participant consent requirements as described in Section 8.04, the Involuntary Cash-Out threshold is $5,000 unless a lesser amount is designated under AA §9-6. (See Section 8.06 for a discussion of the Automatic Rollover rules that apply if a Participant does not consent to a distribution that does not exceed the Involuntary Cash-Out threshold.)

  **(b)**   **Rollovers disregarded in determining value of Account Balance for Involuntary Cash-Outs.** For purposes of determining whether a Participant's vested Account Balance exceeds the Involuntary Cash-Out threshold described in subsection (a), the value of the Participant's vested Account Balance shall be determined without regard to that portion of the Account Balance that is attributable to Rollover Contributions (and earnings allocable thereto) within the meaning of Code §§402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii), and 457(e)(16). The Employer may elect in the AA to include Rollover Contributions (and earnings allocable thereto) in determining whether the Participant's vested Account Balance exceeds the Involuntary Cash-Out threshold.

  **(c)**   **Participant notice.** Prior to receiving a distribution from the Plan, a Participant must be notified of his/her right to defer any distribution from the Plan in accordance with the provisions under Section 8.01. The notification shall include a

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 80 of 177   Document 23-6

MTD Page 79

general description of the material features, the consequences of a Participant's decision not to defer the receipt of a distribution, and the relative values of the optional forms of benefit available under the Plan (consistent with the requirements under Code §417(a)(3)). The notice must be provided no less than 30 days and no more than 180 days prior to the Participant's Annuity Starting Date. However, distribution may commence less than 30 days after the notice is given, if the Participant is clearly informed of his/her right to take 30 days after receiving the notice to decide whether or not to elect a distribution (and, if applicable, a particular distribution option), and the Participant, after receiving the notice, affirmatively elects to receive the distribution prior to the expiration of the 30-day minimum period. (But see Section 9.02(c) for the rules regarding the timing of distributions when the Qualified Joint and Survivor Annuity requirements apply.) The notice requirements described in this paragraph may be satisfied by providing a summary of the required information, so long as the conditions described in applicable regulations for the provision of such a summary are satisfied, and the full notice is also provided (without regard to the 180-day period described in this subsection).

**(d)** **Special rules.** The consent rules under this Section 8.04 apply to distributions made after the Participant's termination of employment and to distributions made prior to the Participant's termination of employment. However, the consent of the Participant (and the Participant's Spouse, if applicable) shall not be required to the extent that a distribution is required to satisfy the required minimum distribution rules under Section 8.11 or to satisfy the requirements of Code §415, as described in Section 5.03. A Participant also will not be required to consent to a corrective distribution of Excess Deferrals or Excess Aggregate Contributions.

**8.05** **Direct Rollovers.** Notwithstanding any provision in the Plan to the contrary, a Participant may elect, at the time and the manner prescribed by the Plan Administrator, to have all or any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan in a Direct Rollover. If an Eligible Rollover Distribution is less than $500, the Participant may not elect a Direct Rollover of only a portion of such distribution (i.e., a Participant must elect a complete Direct Rollover if the Eligible Rollover Distribution is less than $500). For purposes of this Section 8.05, a Participant includes a Participant or former Participant. In addition, this Section applies to any distribution from the Plan made to a Participant's surviving Spouse or to a Participant's Spouse or former Spouse who is the Alternate Payee under a QDRO.

**(a)** **Definitions.**

**(1)** **Eligible Rollover Distribution.** An Eligible Rollover Distribution is any distribution of all or any portion of a Participant's Account Balance, except an Eligible Rollover Distribution does not include:

**(i)** any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Participant or the joint lives (or joint life expectancies) of the Participant and the Participant's Beneficiary, or for a specified period of ten years or more;

**(ii)** any distribution to the extent such distribution is a required minimum distribution under Code §401(a)(9), as described under Section 8.11;

**(iii)** any Hardship distribution, as described in Section 8.09;

**(iv)** any distribution if it is reasonably expected (at the time of the distribution) that the total amount the Participant will receive as a distribution during the calendar year will total less than $200; or

**(v)** a distribution made to satisfy the requirements of Code §415 or a distribution to correct Excess Deferrals or Excess Aggregate Contributions.

**(2)** **Eligible Retirement Plan.** For purposes of applying the Direct Rollover provisions under this Section 8.05, an Eligible Retirement Plan is:

**(i)** a qualified plan described in Code §401(a);

**(ii)** an individual retirement account described in Code §408(a);

**(iii)** an individual retirement annuity described in Code §408(b);

**(iv)** an annuity plan described in Code §403(a);

**(v)** a simple retirement account to the extent rollovers are allowed under Code §408(p)(1)(B);

**(vi)** an annuity contract described in Code §403(b); or

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 81 of 177    Document 23-6

MTD Page 80

(vii) an eligible plan under Code §457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan.

The definition of Eligible Retirement Plan also applies in the case of a distribution to a surviving Spouse, or to a Spouse or former Spouse who is the Alternate Payee under a QDRO.

To the extent any portion of an Eligible Rollover Distribution is attributable to Roth Deferrals, an Eligible Retirement Plan with respect to such portion of the distribution shall include only another designated Roth account of the Participant or a Roth IRA. To the extent any portion of an Eligible Rollover Distribution is attributable to After-Tax Employee Contributions, an Eligible Retirement Plan with respect to such portion of the distribution shall include only an individual retirement account or annuity described in Code §408(a) or (b) or a qualified defined contribution plan described in Code §401(a) or §403(a) that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not includible in gross income.

(3) **Direct Rollover.** A Direct Rollover is a payment made directly from the Plan to the Eligible Retirement Plan specified by the Participant. The Plan Administrator may develop reasonable procedures for accommodating Direct Rollover requests.

(b) **Direct Rollover notice.** A Participant entitled to an Eligible Rollover Distribution must receive a written explanation of his/her right to a Direct Rollover, the tax consequences of not making a Direct Rollover, and, if applicable, any available special income tax elections. The notice must be provided within 30 – 180 days prior to the Participant's Annuity Starting Date, in the same manner as described in Section 8.04(c). The Direct Rollover notice must be provided to all Participants, unless the total amount the Participant will receive as a distribution during the calendar year is expected to be less than $200.

If a Participant terminates employment and is eligible for a distribution which is not subject to Participant consent, and the Participant does not respond to the Direct Rollover notice indicating whether a Direct Rollover is desired and the name of the Eligible Retirement Plan to which the Direct Rollover is to be made, the Plan Administrator may distribute the Participant's entire vested Account Balance in the form of an Automatic Rollover (pursuant to Section 8.06). (However, see Section 8.06(b) for special rules that apply to Involuntary Cash-Out Distributions below $1,000.) If a distribution would qualify for Automatic Rollover, the Direct Rollover notice must describe the procedures for making an Automatic Rollover, including the name, address, and telephone number of the IRA trustee and information regarding IRA maintenance and withdrawal fees and how the IRA funds will be invested. The Direct Rollover notice also must describe the timing of the Automatic Rollover and the Participant's ability to affirmatively opt out of the Automatic Rollover.

(c) **Direct Rollover by non-Spouse beneficiary.** Effective for Plan Years beginning after December 31, 2009, the Plan must permit a non-Spouse beneficiary (as defined in Code §401(a)(9)(E)) to make a direct rollover of an eligible rollover distribution to an individual retirement account under Code §408(a) or an individual retirement annuity under Code §408(b) that is established on behalf of the designated beneficiary and that will be treated as an inherited IRA pursuant to the provisions of Code §402(c)(11). A non-Spouse rollover made after December 31, 2009 will be subject to the direct rollover requirements under Code §401(a)(31), the rollover notice requirements under Code §402(f) or the mandatory withholding requirements under Code §3405(c).

(d) **Direct Rollover of non-taxable amounts.** Notwithstanding any other provision of the Plan, effective for Taxable Years beginning on or after January 1, 2007, an Eligible Rollover Distribution may include the portion of any distribution that is not includible in gross income. For this purpose, an Eligible Retirement Plan includes a Defined Contribution or Defined Benefit Plan qualified under Code §401(a) and a tax-sheltered annuity plan under Code §403(b), provided the rollover is accomplished through a direct rollover and the recipient Eligible Retirement Plan separately accounts for any amounts attributable to the rollover of any nontaxable distribution and earnings thereon.

(e) **Rollovers to Roth IRA.** For distributions occurring on or after January 1, 2008, a Participant or beneficiary (including a non-spousal beneficiary to the extent permitted under subsection (c) above), may rollover an Eligible Rollover Distribution (as defined in subsection (a)(1)) to a Roth IRA, provided the Participant (or beneficiary) satisfies the requirements for making a Roth contribution under Code §408A(c)(3)(B). Any amounts rolled over to a Roth IRA will be included in gross income to the extent such amounts would have been included in gross income if not rolled over (as required under Code §408A(d)(3)(A)). For purposes of this subsection (e), the Plan Administrator is not responsible for assuring the Participant (or beneficiary) is eligible to make a rollover to a Roth IRA.

MTD Page 81

**8.06**      **Automatic Rollover.** The Automatic Rollover rules in this Section 8.06 are effective for all Involuntary Cash-Out Distributions (as defined in subsection (b)) made on or after March 28, 2005.

(a)      **Automatic Rollover requirements.** If a Participant is entitled to an Involuntary Cash-Out Distribution (as defined in subsection (b)), and the Participant does not elect to receive a distribution of such amount (either as a Direct Rollover to an Eligible Retirement Plan or as a direct distribution to the Participant), then the Plan Administrator may pay the distribution in a Direct Rollover to an individual retirement plan (IRA) designated by the Plan Administrator. (The Automatic Rollover provisions under this subsection (a) apply to any Involuntary Cash-Out Distribution for which the Participant fails to consent to a distribution, without regard to whether the Participant can be located. See Section 7.10(c) for alternatives if the Participant cannot be located after a reasonable diligent search.)

(b)      **Involuntary Cash-Out Distribution.** An Involuntary Cash-Out Distribution is any distribution that is made from the Plan without the Participant's consent. Unless elected otherwise under the AA, an Involuntary Cash-Out Distribution, for purposes of applying the Automatic Rollover requirements under this Section 8.06, does not include any amounts below $1,000. (See Section 8.04 for the Participant consent requirements with respect to distributions under the Plan.)

(c)      **Treatment of Rollover Contributions.** Unless elected otherwise under the AA, for purposes of determining whether a mandatory distribution is greater than $1,000, the portion of the Participant's distribution attributable to any Rollover Contribution is excluded.

**8.07**      **Distribution Upon Termination of Employment.** Subject to the required minimum distribution provisions under Section 8.11 and the terms governing the applicable Investment Arrangement, a Participant who terminates employment for any reason (other than death) is entitled to receive a distribution of his/her vested Account Balance in accordance with this Section 8.07. (See Section 8.08 for the applicable rules when a Participant dies before distribution of his/her vested Account Balance is completed.)

(a)      **Account Balance not exceeding $5,000.** If a Participant's vested Account Balance does not exceed $5,000 (or other Cash-Out threshold designated under AA §9) at the time of distribution, the only distribution option available under the Plan is a lump sum option. The Participant will be eligible to receive a distribution of his/her vested Account Balance as of the date selected in AA §9. The Employer may elect in AA §9 to require a Participant to consent to a distribution where his/her vested Account Balance does not exceed $5,000. However, this will not change the distribution options described in this subsection (a), unless the Employer specifically modifies such options under AA §9. In any event, the Participant's consent must be obtained before any distribution regardless of the amount, if such participant is the sole owner of the investment vehicle under the Plan.

(b)      **Account Balance exceeding $5,000.** If a Participant's vested Account Balance exceeds $5,000 (or other Cash-Out threshold designated under AA §9) at the time of distribution, the Participant may elect to receive a distribution of his/her vested Account Balance in any form permitted under AA §9. The Participant will be eligible to receive a distribution of his/her vested Account Balance as of the date selected in AA §9.

**8.08**      **Distribution Upon Death.** Subject to the required minimum distribution rules in Section 8.11 and the terms governing the applicable Investment Arrangement, a Participant's vested Account Balance will be distributed to the Participant's Beneficiary(ies) in accordance with this Section 8.08. (See subsection (c) for rules regarding the determination of Beneficiaries upon the death of the Participant.) The form of benefit payable with respect to a deceased Participant will depend on whether the Participant dies before or after distribution of his/her Account Balance has commenced.

(a)      **Death after commencement of benefits.** If a Participant begins receiving a distribution of his/her benefits under the Plan, and subsequently dies prior to receiving the full value of his/her vested Account Balance, the remaining benefit will continue to be paid to the Participant's Beneficiary(ies) in accordance with the form of payment that has already commenced. If a Participant commences distribution prior to death only with respect to a portion of his/her Account Balance, then the rules in subsection (b) apply to the rest of the Account Balance.

(b)      **Death before commencement of benefits.** If a Participant dies before commencing distribution of his/her benefits under the Plan, the form and timing of any death benefits will depend on whether the value of the death benefit exceeds $5,000 (or other threshold designated under AA §9). In determining whether the value of the death benefit exceeds $5,000, if there is both a QPSA death benefit and a non-QPSA death benefit, each death benefit is valued separately to determine whether it exceeds $5,000.

(1)      **Death benefit not exceeding $5,000.** If the value of the death benefit does not exceed $5,000, such benefit will be paid to the Participant's Beneficiary(ies) in a single sum as soon as administratively feasible following the Participant's death.

**(2)** __Death benefit exceeding $5,000.__ If the value of the death benefit exceeds $5,000, the payment of the death benefit will depend on whether the Qualified Joint and Survivor Annuity requirements apply. (See Section 9 to determine whether the Qualified Joint and Survivor Annuity rules apply to a death distribution from the Plan.)

    **(i)** __If the Qualified Joint and Survivor Annuity requirements do not apply__, the entire death benefit is payable in the form and at the time described in subsection (ii)(B).

    **(ii)** __If the Qualified Joint and Survivor Annuity requirements apply__, the death benefit may consist of a QPSA death benefit (as described in Section 9.03(a)) and, if applicable, a non-QPSA death benefit.

        **(A)** __QPSA death benefit.__ Subject to the waiver procedures under Section 9.04(b), if the Participant is married at the time of death, the surviving Spouse is entitled to a QPSA death benefit payable in accordance with the provisions under Section 9.03. (See Section 9.04(c) for rules regarding the determination of a Participant's marital status.)

        **(B)** __Non-QPSA death benefits.__ If a Participant is not married at the time of death, the QPSA death benefit was waived under a Qualified Election, or if the QPSA death benefit is less than 100% of the Participant's vested Account Balance, then the non-QPSA death benefit is payable in the form and at the time described in this subsection (B). Any death benefit payable under this subsection (B) will be paid in a lump sum as soon as administratively feasible following the Participant's death. However, the death benefit may be payable in a different form if prescribed by the Participant's Beneficiary designation, or the Beneficiary, before a lump sum payment of the benefit is made, elects to receive the distribution in an alternative form of benefit permitted under Section 8.02.

In no event will any death benefit be paid in a manner that is inconsistent with the required minimum distribution rules under Section 8.11. The Beneficiary of any pre-retirement death benefit described in this subsection (b) may postpone the commencement of the death benefit to a date that is not later than the latest commencement date permitted under Section 8.11, unless such election is prohibited in AA §9-11.

**(c)** __Determining a Participant's Beneficiary.__ Subject to the terms governing the applicable Investment Arrangement, the determination of a Participant's Beneficiary(ies) to receive any death benefits under the Plan will be based on the Participant's Beneficiary designation under the Plan. If a Participant does not designate a Beneficiary to receive the death benefits under the Plan, distribution will be made to the default Beneficiaries, as set forth in subsection (3) below. However, any designation of a Beneficiary other than the Participant's Spouse, must satisfy the consent requirements under subsection (1) and (2) below.

    **(1)** __Post-retirement death benefit.__ If a Participant dies after commencing distribution of benefits under the Plan (but prior to receiving a distribution of his/her entire vested Account Balance under the Plan), the Beneficiary of any post-retirement death benefit is the Participant's surviving Spouse, unless (i) there is no surviving Spouse, (ii) the surviving Spouse has consented to the designation of an alternate Beneficiary(ies) under a Qualified Election (as defined in Section 9.04), or (iii) the surviving Spouse makes a valid disclaimer of the death benefit. If the Qualified Joint and Survivor Annuity requirements apply, the Spouse is determined as of the Annuity Starting Date for purposes of determining whether a valid election has been made to waive the post-retirement death benefit. If the Qualified Joint and Survivor Annuity requirements do not apply, the Spouse is determined as of the Participant's date of death for purposes of determining whether a valid election has been made to waive the post-retirement death benefit.

    **(2)** __Pre-retirement death benefit.__ If a Participant dies before commencing distribution of his/her benefits under the Plan, the determination of the Participant's Beneficiary will be determined as follows:

        **(i)** __If the Qualified Joint and Survivor Annuity requirements apply__, the QPSA death benefit will be payable in accordance with Section 9.02. If a QPSA death benefit is payable under Section 9.02, such benefit will be paid to the Participant's surviving Spouse, unless the Spouse consents to the designation of an alternative Beneficiary pursuant to a Qualified Election under Section 9.04 or a valid disclaimer. If the QPSA death benefit applies to less than 100% of the Participant's vested Account Balance, the remaining death benefit is payable to any Beneficiary(ies) named in the Participant's Beneficiary designation, without regard to whether spousal consent is obtained for such designation. If a Spouse does not properly consent to a Beneficiary designation, the QPSA waiver is invalid, and the QPSA death benefit is still payable to the Spouse, but the Beneficiary designation remains valid with respect to any non-QPSA death benefit.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 84 of 177   Document 23-6

MTD Page 83

    **(ii)**   **If the Joint and Survivor Annuity requirements do not apply**, the surviving Spouse (determined at the time of the Participant's death) will be treated as the sole Beneficiary, regardless of any contrary Beneficiary designation, unless there is no surviving Spouse, or the Spouse has consented to the Beneficiary designation in a manner that is consistent with the requirements for a Qualified Election under Section 9.04 or makes a valid disclaimer. (See Section 9.04(c) for rules regarding the determination of a Participant's marital status.)

**(3)**   **Default beneficiaries.** Subject to the terms governing the applicable Investment Arrangement and to the extent a Beneficiary has not been named by the Participant (subject to the spousal consent rules discussed above) and is not designated under the terms of this Plan to receive all or any portion of the deceased Participant's death benefit, such amount shall be distributed to the Participant's surviving Spouse (if the Participant was married at the time of death). If the Participant does not have a surviving Spouse at the time of death, distribution will be made to the Participant's surviving children, in equal shares. If the Participant has no surviving children, distribution will be made to the Participant's estate. The Employer may modify the default beneficiary rules described in this subparagraph under AA §9-5(a).

**(4)**   **Identification of Beneficiaries.** The Plan Administrator may request proof of the Participant's death and may require the Beneficiary to provide evidence of his/her right to receive a distribution from the Plan in any form or manner the Plan Administrator may deem appropriate. The Plan Administrator's determination of the Participant's death and of the right of a Beneficiary to receive payment under the Plan shall be conclusive. If a distribution is to be made to a minor or incompetent Beneficiary, payments may be made to the person's legal guardian, conservator recognized under state law, or custodian in accordance with the Uniform Gifts to Minors Act or similar law as permitted under the laws of the state where the Beneficiary resides. The Plan Administrator will not be liable for any payments made in accordance with this subsection (4) and will not be required to make any inquiries with respect to the competence of any person entitled to benefits under the Plan.

**(5)**   **Death of Beneficiary.** Unless specified otherwise in the Participant's Beneficiary designation form or under AA §9-5(a), if a Beneficiary does not predecease the Participant but dies before distribution of the death benefit is made to the Beneficiary, the death benefit will be paid to the Beneficiary's estate. If the Participant and the Participant's Beneficiary die simultaneously, and the Participant's Beneficiary designation form does not address simultaneous death, the determination of the death beneficiary will be determined under any state simultaneous death laws, to the extent applicable. If no applicable state law applies, the death benefit will be paid to the any contingent beneficiaries named under the Participant's beneficiary designation. If there are no contingent beneficiaries, the death benefit will be paid to the Participant's default beneficiaries, as described in subsection (3).

**(6)**   **Divorce from Spouse.** Unless designated otherwise under AA §9-5(c), if a Participant designates his/her Spouse as Beneficiary and subsequent to such Beneficiary designation, the Participant and Spouse are divorced, the designation of the Spouse as Beneficiary under the Plan is automatically rescinded unless specifically provided otherwise under a divorce decree or QDRO, or unless the Participant enters into a new Beneficiary designation naming the prior Spouse as Beneficiary. In addition, the provisions under this subsection (6) will not apply if the Participant has entered into a Beneficiary designation that specifically overrides the provisions of this subsection (6). For periods prior to the date this Plan is executed by the Employer, this subsection (6) also applies to situations where the Participant and Spouse are legally separated.

**8.09**   **In-Service Distributions.** Subject to the terms governing the applicable Investment Arrangement, the Employer may elect under AA §10 to permit in-service distributions under the Plan. If an in-service distribution is not specifically permitted under AA §10, a Participant may not receive a distribution from the Plan until termination of employment, death or disability. If the Plan permits a Participant to receive an in-service distribution, and such distribution is subject to the Qualified Joint and Survivor Annuity requirements under Section 9, such distribution may be made only if the Participant's Spouse (if the Participant is married at the time of distribution) consents to such distribution in accordance with the requirements under Section 9.04.

    **(a)**   **After-Tax Contributions and Rollover Contributions.** A Participant may withdraw at any time, upon written request, all or any portion of his/her Account Balance attributable to After-Tax Contributions or Rollover Contributions. No forfeiture will occur solely as a result of an Employee's withdrawal of After-Tax Contributions.

    **(b)**   **Employer Contributions.** The Employer may elect under AA §10 the extent to which in-service distributions will be permitted from Employer Contributions (including Matching Contributions, if applicable) under the Plan. (See subsection (c) below for the in-service distribution rules applicable to Salary Deferrals, QNECs and Safe Harbor Contributions.) If permitted under AA §10, Employer Contributions may be withdrawn upon the occurrence of a specified event (including a Hardship, as defined in subsection (e)) or upon the completion of a certain number of years, provided no distribution on account of years may be made with respect to Employer Contributions that have been

accumulated in the Plan for less than 2 years, unless the Participant has been a Participant in the Plan for at least 5 years. (See Section 7.09 for special vesting rules that apply if a Participant takes an in-service distribution prior to becoming 100% vested in such contributions.) Mandatory Contributions are treated as Employer Contributions for purposes of in-service distributions, unless otherwise specified in the Adoption Agreement.

**(c)** **Salary Deferrals, QNECs, and Safe Harbor Contributions.** Any Salary Deferrals, QNECs, or Safe Harbor Contributions (including any earnings on such amounts) generally may not be distributed prior to the Participant's severance from employment, death, or disability. However, the Employer may elect under AA §10 to permit an in-service distribution of such amounts upon attainment of a specified age (no earlier than age 59½) or upon a Hardship (as defined in subsection (e)). A Hardship distribution is not available with respect to QNECs, or Safe Harbor Contributions.

**(d)** **Penalty-free withdrawals for individuals called to active duty.** The distribution provisions applicable to Salary Deferrals include a Qualified Reservist Distribution, as defined in subsection (1) below. If a Participant takes a Qualified Reservist Distribution, such distributions will not be subject to the 10% penalty tax under Code §72(t). A Qualified Reservist Distribution is only available if permitted under AA §10-1.

  **(1)** **Qualified Reservist Distribution.** For purposes of this subsection (d), a Qualified Reservist Distribution means any distribution to an individual if:

   **(i)** such distribution is from amounts attributable to elective deferrals described in Code §402(g)(3)(A) or (C) or Code §501(c)(18)(D)(iii),

   **(ii)** such individual was (by reason of being a member of a reserve component (as defined in §101 of Title 37 of the United States Code)) ordered or called to active duty for a period in excess of 179 days or for an indefinite period, and

   **(iii)** such distribution is made during the period beginning on the date of such order or call and ending at the close of the active duty period.

  **(2)** **Active duty.** A Qualified Reservist Distribution will only be available for individuals who are ordered or called into active duty after September 11, 2001.

**(e)** **Hardship distribution.** Subject to the terms governing the applicable Investment Arrangement, the Employer may elect under AA §10 to authorize an in-service distribution upon the occurrence of a Hardship event. A Hardship distribution must meet the requirements of a safe harbor Hardship as described under subsection (1) or a non-safe harbor Hardship as described under subsection (2) below. A Hardship distribution is not available for QNECs or Safe Harbor Contributions.

  **(1)** **Safe harbor Hardship distribution.** To qualify for a safe harbor Hardship, a Participant must demonstrate an immediate and heavy financial need, as described in subsection (i), and the distribution must be necessary to satisfy such need, as described in subsection (ii).

   **(i)** **Immediate and heavy financial need.** To be considered an immediate and heavy financial need, the Hardship distribution must be made to satisfy one of the following financial needs:

    **(A)** to pay expenses incurred or necessary for medical care (as described in Code §213(d)) of the Participant, the Participant's Spouse or dependents (determined without regard to whether the expenses exceed 7.5% of adjusted gross income);

    **(B)** for the purchase (excluding mortgage payments) of a principal residence for the Participant;

    **(C)** for payment of tuition and related educational fees (including room and board) for the next 12 months of post-secondary education for the Participant, the Participant's Spouse, children or dependents;

    **(D)** to prevent the eviction of the Participant from, or a foreclosure on the mortgage of, the Participant's principal residence;

    **(E)** to pay funeral or burial expenses for the Participant's deceased parent, Spouse, child or dependent;

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 86 of 177   Document 23-6

MTD Page 85

(F)   to pay expenses to repair damage to the Participant's principal residence that would qualify for a casualty loss deduction under Code §165 (determined without regard to whether the loss exceeds the 10% of adjusted gross income limit); or

(G)   for any other event that the IRS recognizes as a safe harbor Hardship distribution event under ruling, notice or other guidance of general applicability, provided the event sets forth nondiscriminatory and objective standards for determining the existence of an immediate and heavy financial need.

For purposes of determining eligibility of a Hardship distribution under this subsection (i), a dependent is determined under Code §152. However, the determination of dependent for purposes of tuition and education fees under subsection (C) above will be made without regard to Code §152(b)(1), (b)(2), and (d)(1)(B) and the determination of dependent for purposes of funeral or burial expenses under subsection (E) above will be made without regard to Code §152(d)(1)(B).

A Participant must provide the Plan Administrator with a written request for a Hardship distribution. The Plan Administrator may require written documentation, as it deems necessary, to sufficiently document the existence of a proper Hardship event.

(ii)   **Distribution necessary to satisfy need.** A distribution will be considered as necessary to satisfy an immediate and heavy financial need of the Participant if:

(A)   The distribution is not in excess of the amount of the immediate and heavy financial need (including amounts necessary to pay any federal, state or local income taxes or penalties reasonably anticipated to result from the distribution);

(B)   The Participant has obtained all available distributions, other than Hardship distributions, and all nontaxable loans under the Plan and all plans maintained by the Employer; and

(C)   The Participant is suspended from making Salary Deferrals (and After-Tax Contributions) for 6 months after the receipt of the Hardship distribution.

(2)   **Non-safe harbor Hardship distribution.** The Employer may elect in the Adoption Agreement to permit Participants to take a Hardship distribution without satisfying the requirements of subsection (1) above, provided the hardship distribution event sets forth nondiscriminatory and objective standards for determining the existence of an immediate and heavy financial need. A non-safe harbor Hardship distribution is not available for QNECs or Safe Harbor Contributions.

(i)   **Immediate and heavy financial need.** For purposes of determining whether a Hardship exists under this subsection (2), the same Hardship distribution events described in subsection (1)(i) will qualify as a Hardship distribution event under this subsection (2). The Employer may modify the permissible Hardship distribution events under the Adoption Agreement.

(ii)   **Distribution necessary to satisfy need.** A Hardship distribution under this subsection (2) need not satisfy the requirements under subsection (1)(ii) above. Instead, all relevant facts and circumstances are considered to determine whether the Employee has other resources reasonably available to relieve or satisfy the need. For this purpose, resources include assets of the Employee's Spouse and minor children that are reasonably available to the Employee. In addition, the amount withdrawn for hardship may include amounts necessary to pay federal, state or local income taxes, or penalties reasonably anticipated to result from the distribution.

The Employer may rely upon the Employee's written representation that the need cannot be reasonably relieved through the following sources:

(A)   Reimbursement or compensation by insurance;

(B)   Liquidation of the Employee's assets;

(C)   Cessation of Salary Deferrals or After-Tax Employee Contributions under the Plan;

(D)   Other currently available distributions or nontaxable loans from the Plan or any other plan maintained by the Employer (or any other employer); or

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 87 of 177   Document 23-6

MTD Page 86

(E) Borrowing from commercial sources on reasonable commercial terms in an amount sufficient to satisfy the need.

The Employer may not rely upon the written representation under this subsection (ii) if the Employer has actual knowledge to the contrary.

(3) **Amount available for Hardship distribution.** A Participant in an Annuity Contract (but not a Custodial Account) may receive a Hardship distribution of any portion of his/her vested Employer Contribution Account or Matching Contribution Account (including earnings thereon), as permitted under AA §10. A Participant may receive a Hardship distribution of Salary Deferrals provided such distribution, when added to other Hardship distributions from Salary Deferrals, does not exceed the total Salary Deferrals the Participant has made to the Plan (increased by income allocable to such Salary Deferrals as of the later of December 31, 1988 or the end of the last Plan Year ending before July 1, 1989).

(4) **Application of Hardship distributions rules with respect to primary beneficiaries.** If elected under AA §10-3(e), if the Plan otherwise permits Hardship distributions based on the safe harbor hardship provisions under subsection (1), the existence of an immediate and heavy financial need under subsection (1)(i) may be determined with respect to a primary beneficiary under the Plan. For this purpose, a primary beneficiary is an individual who is named as a beneficiary under the Plan and has an unconditional right to all or a portion of a Participant's Account Balance upon the death of the Participant. Hardship distributions with respect to primary beneficiaries under this subsection (4) are limited to hardship distributions on account of medical expenses, educational expenses and funeral expenses. Any Hardship distribution with respect to a primary beneficiary must satisfy all the other requirements applicable to Hardship distributions.

(f) **Qualified Distributions for Retired Public Safety Officers.** A Participant who is an eligible retired public safety officer may elect, after separation from service, to have qualified health insurance premiums deducted from amounts to be distributed from the Plan that would otherwise be includible in gross income, and to have such amounts paid directly to the insurer or group health plan. The distribution shall be excluded from the Participant's gross income to the extent that the aggregate amount of the distribution does not exceed the lesser of the amount used to pay the qualified health insurance premiums of the Participant, the Participant's Spouse, and the Participant's dependents (as defined in Code §152), or $3,000, determined by aggregating all distributions with respect to the Participant that are used to pay qualified health insurance premiums from all eligible retirement plans of the Employer.

(1) **Qualified health insurance premiums.** The term "qualified health insurance premiums" means premiums for coverage for the Participant, the Participant's Spouse, and the Participant's dependents (as defined in Code Section 152) by an accident or health insurance plan (including under a self-insured plan) or qualified long-term care insurance contract (within the meaning of Code Section 7702B(b)).

(2) **Eligible retired public safety officer.** The term "eligible retired public safety officer" means an individual who separated from service, either by reason of disability or after attainment of Normal Retirement Age, as a public safety officer with the Employer. For this purpose, a public safety officer is an individual serving the Employer in an official capacity, with or without compensation, as a law enforcement officer, a firefighter, a chaplain, or a member of a rescue squad or ambulance crew.

**8.10** **Sources of Distribution.** Unless provided otherwise in separate administrative provisions adopted by the Plan Administrator, in applying the distribution provisions under this Section 8.10, distributions will be made on a pro rata basis from all Accounts from which a distribution is permitted under this Section 8. Alternatively, the Plan Administrator may permit Participants to direct the Plan Administrator as to which Account the distribution is to be made. Regardless of a Participant's direction as to the source of any distribution, the tax effect of such a distribution will be governed by Code §72 and the regulations thereunder.

(a) **Exception for Hardship withdrawals.** If the Plan permits a Hardship withdrawal from both Salary Deferrals (including Roth Deferrals) and Employer Contributions (including Employer Matching Contributions), a Hardship distribution will first be treated as having been made from a Participant's Employer Contribution Account and then from the Employer's Matching Contribution Account, to the extent such Hardship distribution is available with respect to such Accounts. Only when all available amounts have been exhausted under the Participant's Employer Contribution Account and/or Matching Contribution Account will a Hardship distribution be made from a Participant's Pre-Tax Deferral Account and/or Roth Deferral Account. (See subsection (b) below for the ordering rules for distributions from the Pre-Tax Deferral and Roth Deferral Accounts.) The Plan Administrator may modify the ordering rules under this subsection (a) under separate administrative procedures.

(b) **Roth Deferrals.** Unless designated otherwise under AA §6A-5 or separate administrative procedures, if a Participant has both a Pre-Tax Deferral Account and a Roth Deferral Account, the Participant may designate the extent to which a distribution or withdrawal of Salary Deferrals will come from the Pre-Tax Deferral Account or the Roth Deferral

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 88 of 177    Document 23-6

MTD Page 87

Account. Alternatively, the Employer may provide under AA §6A-5 (or under separate administrative procedures) that any distribution or withdrawal of Salary Deferrals will be made on a pro rata basis from the Pre-Tax Deferral Account and the Roth Deferral Account. Alternatively, the Employer may designate any other order of distribution and withdrawals under AA §6A-5 or separate administrative procedures.

(c) **In-kind distributions.** Nothing in this Section 8 precludes the Plan Administrator from making a distribution in the form of property, or other in-kind distribution.

**8.11** **Required Minimum Distributions.** The Plan shall comply with the minimum distribution requirements of Code §401(a)(9) and the regulations thereunder in accordance with the terms governing each Investment Arrangement (if applicable), unless and to the extent otherwise permitted by law and in regulations or other rules of general applicability published by the Department of the Treasury or the Internal Revenue Service. For purposes of applying the distribution rules of Code §401(a)(9) of the Code, each Investment Arrangement is treated as an individual retirement account (IRA) and distributions shall be made in accordance with the provisions of Treas. Reg. §1.408-8, except as provided in Treas. Reg. §1.403(b)-6(e).

**8.12** **Correction of Plan Defects.** Nothing in this Section 8 precludes the Plan Administrator from making a distribution to a Participant to correct a Plan defect consistent with the correction procedures under the IRS' voluntary compliance programs. Thus, for example, if an Employee is permitted to enter the Plan prior to his/her proper Entry Date under Section 2.03(b) and the Plan Administrator determines that a corrective distribution is a proper means of correcting the operational violation, nothing in this Section 8 would prevent the Plan from making such corrective distribution. Any such distribution must be made in accordance with the correction procedures applicable under the IRS' voluntary correction programs.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 89 of 177   Document 23-6

MTD Page 88

# SECTION 9
# JOINT AND SURVIVOR ANNUITY REQUIREMENTS

**9.01**   **Application of Joint and Survivor Annuity Rules.** The Joint and Survivor Annuity rules apply only to the extent that the Plan is subject to such rules under Title I of ERISA. A Plan that receives only Salary Deferral contributions and is not otherwise subject to Title I of ERISA is not subject to the rules under this Section 9. With respect to any Plan that is not otherwise subject to the Joint and Survivor Annuity rules under ERISA §205, the Employer may elect, under AA §9-2, to apply the rules of this Section 9.

    **(a)**   **Election to apply Joint and Survivor Annuity Requirements.** The Employer may elect under AA §9-2 to apply the Joint and Survivor Annuity requirements under this Section 9 to all Participants under the Plan. If the Employer does not elect under AA §9-2 to apply the Joint and Survivor Annuity requirements to all Participants, such requirements will only apply to a distribution from the Plan if:

        **(1)**   the Participant elects to receive a distribution in the form of a life annuity; or

        **(2)**   the distribution is made from benefits that were directly or indirectly transferred from a plan that was subject to the Joint and Survivor Annuity requirements at the time of the transfer; or

        **(3)**   the distribution is made from benefits that are used to offset the benefits under another plan of the Employer that is subject to the Joint and Survivor Annuity requirements.

    **(b)**   **Exception to the Joint and Survivor Annuity Requirements.** If, as of the Annuity Starting Date, the Participant's vested Account Balance (for pre-death distributions) or the value of the Qualified Preretirement Survivor Annuity death benefit (for post-death distributions) does not exceed $5,000, the Participant or surviving Spouse, as applicable, will receive a lump sum distribution pursuant to Section 8.07(a) or Section 8.08(b)(1), in lieu of any Qualified Joint and Survivor Annuity or Qualified Preretirement Survivor Annuity benefits.

    **(c)**   **Administrative procedures.** The Plan Administrator may provide alternative procedures for applying the spousal consent requirements under this Section 9 provided such procedures are consistent with the requirements under this Section 9. For example, the Plan Administrator may require under separate administrative procedures to require spousal consent to Participant distributions or may in a separate loan procedure require spousal consent prior to granting a Participant loan, without subjecting the Plan to the Joint and Survivor Annuity requirements.

**9.02**   **Pre-Death Distribution Requirements.** If a pre-death distribution is subject to the Qualified Joint and Survivor Annuity requirements under this Section 9, the distribution will be paid in the form of a Qualified Joint and Survivor Annuity, unless the Participant (and Spouse, if the Participant is married) elects to receive the distribution in an alternative form. Any election of an alternative form of distribution must be pursuant to a Qualified Election (as defined in Section 9.04).

    **(a)**   **Qualified Joint and Survivor Annuity (QJSA).** A QJSA is an immediate annuity payable over the life of the Participant with a survivor annuity payable over the life of the Spouse equal to 50% of the amount of the annuity which is payable during the joint lives of the Participant and the Spouse. The Employer may elect under AA §9-2(a)(2) to increase the percentage of the Spouse's survivor annuity to 100%, 75% or 66-2/3% (instead of 50%). If the Participant is not married as of the Annuity Starting Date, the QJSA is an immediate annuity payable over the life of the Participant.

    **(b)**   **Qualified Optional Survivor Annuity.** At the election of the Participant, benefits will be paid in the form of a Qualified Optional Survivor Annuity. A Qualified Optional Survivor Annuity is an annuity for the life of the Participant with a survivor annuity for the life of the Spouse which is equal to the "applicable percentage" of the amount of the annuity that is: (1) payable during the joint lives for the Participant and the Spouse; and (2) the actuarial equivalent of a single annuity for the life of the Participant.

    If the survivor annuity provided by the QJSA under the Plan is less than 75% of the annuity payable during the joint lives of the Participant and Spouse, then the "applicable percentage" is 75%. If the survivor annuity provided by the QJSA under the Plan is greater than or equal to 75% of the annuity payable during the joint lives of the Participant and Spouse, the "applicable percentage" is 50%.

    **(c)**   **Notice requirements.** The Plan Administrator shall provide each Participant with a written explanation of: (1) the terms and conditions of the QJSA; (2) the Participant's right to make and the effect of an election to waive the QJSA form of benefit; (3) the rights of the Participant's Spouse; and (4) the right to make, and the effect of, a revocation of a previous election to waive the QJSA. The notice must be provided to each Participant under the Plan no less than 30 days and no more than 180 days prior to the Annuity Starting Date. The written explanation shall comply with the requirements of Treas. Reg. §1.417(a)(3)-1.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 90 of 177   Document 23-6

MTD Page 89

The Annuity Starting Date for a distribution in a form other than a QJSA may be less than 30 days after receipt of the written explanation described in the preceding paragraph provided: (1) the Participant has been provided with information that clearly indicates that the Participant has at least 30 days to consider whether to waive the QJSA and elect (with spousal consent) a form of distribution other than a QJSA; (2) the Participant is permitted to revoke any affirmative distribution election at least until the Annuity Starting Date or, if later, at any time prior to the expiration of the 7-day period that begins the day after the explanation of the QJSA is provided to the Participant; and (3) the Annuity Starting Date is after the date the written explanation was provided to the Participant. For distributions on or after December 31, 1996, the Annuity Starting Date may be a date prior to the date the written explanation is provided to the Participant if the distribution does not commence until at least 30 days after such written explanation is provided, subject to the waiver of the 30-day period described above.

(d)  **Annuity Starting Date.** The Annuity Starting Date is the date a Participant (or Beneficiary) commences distributions from the Plan. If a Participant commences distribution with respect to a portion of his/her Account Balance, a separate Annuity Starting Date applies to any subsequent distribution. If distribution is made in the form of an annuity, the Annuity Starting Date is the first day of the first period for which annuity payments are made.

**9.03**  **Distributions After Death.** If the Joint and Survivor Annuity requirements apply with respect to a distribution on behalf of a married Participant who dies before the Annuity Starting Date (as defined in Section 9.02(d) above), the surviving Spouse of that Participant is entitled to receive such distribution in the form of a QPSA, unless the Participant and Spouse have waived the QPSA pursuant to a Qualified Election. Any portion of a Participant's vested Account Balance that is not payable to the surviving Spouse as a QPSA will be payable under the rules described in Section 8.08(b)(2)(ii)(B).

(a)  **Qualified Preretirement Survivor Annuity (QPSA).** A QPSA is an annuity payable over the life of the surviving Spouse that is purchased using 50% of the Participant's vested Account Balance (that is subject to the QJSA requirements) as of the date of death. The Employer may elect under AA §9-2(b) to increase the amount used to purchase the QPSA to 100% (instead of 50%) of the Participant's vested Account Balance. To the extent that less than 100% of the Participant's vested Account Balance is paid to the surviving Spouse, any After-Tax Contributions will be allocated to the surviving Spouse in the same proportion as the After-Tax Contributions bear to the total vested Account Balance of the Participant. If elected under AA §9, a surviving Spouse will not be entitled to a QPSA if the Participant and surviving Spouse were not married throughout the one year period ending on the date of the Participant's death.

If a surviving Spouse is entitled to a QPSA distribution, the surviving Spouse may elect to receive such distribution at any time following the Participant's death (subject to the required minimum distribution rules under Section 8.11) and may elect to receive distribution in any form permitted under Section 8.02 of the Plan. A QPSA distribution will not commence to a surviving Spouse without the consent of the surviving Spouse prior to the date the Participant would have reached Normal Retirement Age (or age 62, if later). If the QPSA death benefit has been waived, in accordance with the procedures in Section 9.04(b), then the portion of the Participant's vested Account Balance that would have been payable as a QPSA death benefit in the absence of such a waiver is treated as a non-QPSA death benefit payable under Section 8.08(b)(2)(ii)(B).

The QPSA death benefit may be payable to a non-Spouse Beneficiary only if the Spouse consents to the Beneficiary designation, pursuant to the Qualified Election requirements under Section 9.04, or makes a valid disclaimer. The non-QPSA death benefit, if any, is payable to the person named in the Beneficiary designation, without regard to whether spousal consent is obtained for such designation. If a Spouse does not properly consent to a Beneficiary designation, the QPSA waiver is invalid, and the QPSA death benefit is still payable to the Spouse, but the Beneficiary designation remains valid with respect to any non-QPSA death benefit.

(b)  **Notice requirements.** The Plan Administrator shall provide each Participant within the applicable period for such Participant a written explanation of the QPSA in such terms and in such manner as would be comparable to the explanation provided for the QJSA in subsection 9.02(b) above. The applicable period for a Participant is whichever of the following periods ends last: (1) the period beginning with the first day of the Plan Year in which the Participant attains age 32 and ending with the close of the Plan Year preceding the Plan Year in which the Participant attains age 35; (2) a reasonable period ending after the individual becomes a Participant; or (3) a reasonable period ending after the joint and survivor annuity requirements first apply to the Participant. Notwithstanding the foregoing, notice must be provided within a reasonable period ending after separation from service in the case of a Participant who separates from service before attaining age 35.

For purposes of applying the preceding paragraph, a reasonable period ending after the enumerated events described in (2) and (3) is the end of the two-year period beginning one year prior to the date the applicable event occurs, and ending one year after that date. In the case of a Participant who separates from service before the Plan Year in which age 35 is attained, notice shall be provided within the two-year period beginning one year prior to separation and ending one year

© Copyright 2017

after separation. If such a Participant thereafter returns to employment with the employer, the applicable period for such Participant shall be redetermined.

**9.04**    **Qualified Election.** A Participant (and the Participant's Spouse) may waive the QJSA or QPSA pursuant to a Qualified Election. A Qualified Election is a written election signed by both the Participant and the Participant's Spouse (if applicable) that specifically acknowledges the effect of the election. The Spouse's consent must be witnessed by a plan representative or notary public. Any consent by a Spouse under a Qualified Election (or a determination that the consent of a Spouse is not required) shall be effective only with respect to such Spouse. If the Qualified Election permits the Participant to change a payment form or Beneficiary designation without any further consent by the Spouse, the Qualified Election must acknowledge that the Spouse has the right to limit consent to a specific Beneficiary, and a specific form of benefit, as applicable, and that the Spouse voluntarily elects to relinquish either or both of such rights. A Participant or Spouse may revoke a prior waiver of the QPSA benefit at any time before the commencement of benefits. Spousal consent is not required for a Participant to revoke a prior QPSA waiver. No consent obtained under this provision shall be valid unless the Participant has received notice as provided in Section 9.02(c) or Section 9.03(b), as applicable.

(a)    **QJSA.** In the case of a waiver of the QJSA, the election must designate an alternative form of benefit payment that may not be changed without spousal consent (unless the Spouse enters into a general consent agreement expressly permitting the Participant to change the form of payment without any further spousal consent). Only the Participant needs to consent to the commencement of a distribution in the form of a QJSA.

(b)    **QPSA.** In the case of a waiver of the QPSA, the election must be made on a timely basis and the election must designate a specific alternate Beneficiary, including any class of Beneficiaries or any contingent Beneficiaries, which may not be changed without spousal consent (unless the Spouse enters into a general consent agreement expressly permitting the Participant to change the Beneficiary designation without any further spousal consent). To be timely, a Participant (and the Participant's Spouse) may waive the QPSA at any time during the period beginning on the first day of the Plan Year in which the Participant attains age 35 and ending on the date of the Participant's death. If a Participant separates from service prior to the first day of the Plan Year in which age 35 is attained, with respect to the Account Balance as of the date of separation, the election period begins on the date of separation. A Participant who has not yet attained age 35 as of the end of a Plan Year may make a special Qualified Election to waive, with spousal consent, the QPSA for the period beginning on the date of such election and ending on the first day of the Plan Year in which the Participant will attain age 35. Such election is not valid unless the Participant receives the proper notice required under Section 9.03(b). QPSA coverage is automatically reinstated as of the first day of the Plan Year in which the Participant attains age 35. Any new waiver on or after such date must satisfy all the requirements for a Qualified Election.

(c)    **Identification of surviving Spouse.** If it is established to the satisfaction of the Plan Administrator that there is no Spouse or that the Spouse cannot be located, any waiver signed by the Participant is deemed to be a Qualified Election.

(1)    **Definition of Spouse.** For this purpose, a Participant will be deemed to not have a Spouse if the Participant is legally separated or has been abandoned and the Participant has a court order to such effect. However, a former Spouse of the Participant will be treated as the Spouse or surviving Spouse and any current Spouse will not be treated as the Spouse or surviving Spouse to the extent provided under a QDRO.

(2)    **One-year marriage rule.** The Employer may elect under AA §9-5(b), for purposes of applying the provisions of this Section 9, that an individual will not be considered the surviving Spouse of the Participant if the Participant and the surviving Spouse have not been married for the entire one-year period ending on the date of the Participant's death.

## SECTION 10
## INVESTMENT ARRANGEMENTS AND PARTICIPANT ACCOUNTS

**10.01** **Permissible Investment Arrangements.** Amounts contributed to this Plan may only be invested in Annuity Contracts, Custodial Accounts or a combination of these investment vehicles. The 403(b) Fund will consist of all Annuity Contracts and Custodial Accounts held under the Plan and identified under Addendum B of the Adoption Agreement. The terms of each Investment Arrangement under the Plan, excluding those terms that are inconsistent with the Plan or Code §403(b), are incorporated by reference in the Plan.

**10.02** **Annuity Contract Requirements.**

**(a)** An Annuity Contract must meet the requirements of Code §403(b)(1).

**(b)** An Annuity Contract may only be offered by an Insurance Company.

**(c)** The Annuity Contract may be owned by the Participant, or in the case of a group annuity contract, by the Employer maintaining the Annuity Contract may hold variable or guaranteed annuities.

**(d)** The Annuity Contract must provide that it is nontransferable and meets the requirements of Code §401(g).

A life insurance contract, an endowment contract, a health or accident insurance contract, or a property, casualty, or liability insurance contract do not constitute an Annuity Contract. However, this does not apply for contracts issued before September 24, 2007.

**10.03** **Custodial Account Requirements.**

**(a)** The Custodial Account must meet the requirements of Code §403(b)(7).

**(b)** The assets of a Custodial Account must be held by a bank or approved non-bank trustee or custodian under Code §401(f).

**(c)** The assets of the Custodial Account must be invested exclusively in regulated investment company within the meaning of Code §851(a).

**10.04** **Participant Accounts.** The Plan Administrator will direct the Custodian/Insurance Company to establish and maintain a separate Account (or multiple Accounts, if appropriate) for each Participant to reflect the Participant's entire interest under the Plan. To the extent applicable, the Plan Administrator may direct the Custodian and/or Insurance Company to establish and maintain separate sub-Accounts for a Participant. Accounts may include, but are not limited to:

- Pre-Tax Deferral Account
- Roth Deferral Account
- Employer Contribution Account
- Matching Contribution Account
- Qualified Nonelective Contribution (QNEC) Account
- Safe Harbor Employer Contribution Account
- Safe Harbor Matching Contribution Account
- QACA Employer Contribution Account
- QACA Matching Contribution Account
- After-Tax Contribution Account
- Mandatory Contribution Account
- Rollover Contribution Account
- Roth Rollover Account
- In-Plan Roth Conversion Account
- Transfer Account

The Plan Administrator will maintain separate Accounts for the vested and non-vested portions of any Employer Contribution Account and Matching Contribution Account, for any excess amounts under Code §415 and for Retirement Income Accounts.

**10.05** **Value of Participant Accounts.** The value of a Participant's Account consists of the fair market value of the Participant's share of the Plan assets.

**(a)** **Periodic valuation.** The Custodian/Insurance Company must value Plan assets at least annually.

(b) **Daily valuation.** If the Employer elects daily valuation under AA §11-1(a) or, if in operation, the Employer elects to have the Plan daily valued, the Plan Administrator may adopt reasonable procedures for performing such valuations. Unless otherwise set forth in the written procedures, a daily valued Plan will have its assets valued at the end of each business day during which the New York Stock Exchange is open. The Plan Administrator has authority to interpret the provisions of this Plan in the context of a daily valuation procedure. This includes, but is not limited to, the determination of the value of the Participant's Account for purposes of Participant loans, distribution and consent rights, and corrective distributions.

(c) **Interim valuations.** The Plan Administrator may perform interim valuations, provided such valuations do not result in discrimination in favor of Highly Compensated Employees.

10.06 **Adjustments to Participant Accounts.** As of each Valuation Date under the Plan, each Participant's Account is adjusted in the following manner.

(a) **Distributions and forfeitures from a Participant's Account.** A Participant's Account will be reduced by any distributions and forfeitures from the Account since the previous Valuation Date.

(b) **Contributions and forfeitures allocated to a Participant's Account.** A Participant's Account will be credited with any contribution or forfeiture allocated to the Participant since the previous Valuation Date.

(c) **Net income or loss.** A Participant's Account will be adjusted for any net income or loss in accordance with the provisions under Section 10.07.

10.07 **Procedures for Determining Net Income or Loss.** The Plan Administrator may establish any reasonable procedures for determining net income or loss under Section 10.06(c). Such procedures may be reflected in a funding agreement governing the applicable investments under the Plan and the terms of any applicable Investment Arrangement under the Plan.

10.08 **Investments under the Plan.**

(a) **Investment options.** Amounts contributed to this Plan may only be invested in Annuity Contracts, Custodial Accounts or a combination of these investment vehicles. The choice of investments is subject to the terms governing the applicable Investment Arrangement.

(b) **Individual/Pooled Accounts.** The Plan may maintain individual or pooled accounts for Participants.

10.09 **Information Sharing.** Each Vendor and the Plan Administrator shall exchange such information as may be necessary to satisfy Code §403(b) or other requirements of applicable law. In the case of a Vendor which is not eligible to receive Elective Deferrals under the Plan (including a Vendor which has ceased to be a Vendor eligible to receive Elective Deferrals under the Plan and a Vendor holding assets under the Plan), the Eligible Employer shall keep the Vendor informed of the name and contact information of the Plan Administrator in order to coordinate information necessary to satisfy Code §403(b) or other requirements of applicable law.

10.10 **Participant-directed investments.** If the Plan (by election in AA §C-1, under separate investment procedures or under the applicable Investment Arrangement) permits Participant direction of investments, each Participant shall have the exclusive right, in accordance with the provisions of the Plan, to direct the investment of all or a portion of the amounts allocated to the separate Accounts of the Participant under the Plan. (A reference to Participant under this Section 10.10 also applies to any Beneficiary or Alternate Payee eligible to direct investments under the Plan.)

(a) **Limits on participant investment direction.** The Employer may elect under AA §C-1 or under separate investment procedures to limit Participant direction of investment to specific types of contributions or with respect to specific investment options. The terms of the governing Investment Arrangement may limit Participant direction of investment. If Participant investment direction is limited to specific investment options, it shall be the sole and exclusive responsibility of the Employer, Plan Administrator or Vendor to select the investment options. In no case may Participants direct that investments be made in collectibles, other than U.S. Government or State issued gold and silver coins.

(b) **Failure to direct investment.** If Participant direction of investments is permitted, the Plan Administrator will designate how accounts will be invested in the absence of proper affirmative direction from the Participant. The Plan or Plan Administrator may designate a default fund under the Plan.

(c) **Disclosure requirements.** To the extent the Plan allows Participant direction of investment, each Participant or beneficiary that has the right to direct the investment of Plan assets must receive the disclosures required under DOL

Reg. §2550.404a-5 on a regular and periodic basis. The Plan Administrator will not be liable for the completeness and accuracy of information used to satisfy these disclosure requirements when the Plan Administrator reasonably and in good faith relies on information received from or provided by a Plan service provider or the issuer of a designated investment alternative. For purposes of this subsection (c), a designated investment alternative is an investment alternative designated by the Plan into which Participants and beneficiaries may direct the investment of Plan assets held in their individual Accounts. The term designated investment alternative shall not include brokerage windows, self-directed brokerage accounts, or similar plan arrangements that enable Participants and beneficiaries to select investments beyond those designated by the Plan.

(d) **ERISA §404(c) protection.** If the Plan (by Employer election under AA §C-1(b) or pursuant to the Plan's investment procedures) is intended to comply with ERISA §404(c), the Participant investment direction program adopted by the Plan Administrator should comply with applicable Department of Labor regulations. Compliance with ERISA §404(c) is not required for plan qualification purposes. The following information is provided solely as guidance to assist the Plan Administrator in meeting the requirements of ERISA §404(c). Failure to meet any of the following safe harbor requirements does not impose any liability on the Plan Administrator (or any other fiduciary under the Plan) for investment decisions made by Participants, nor does it mean that the Plan does not comply with ERISA §404(c).

(1) **Disclosure requirements.** The Plan Administrator (or other Plan fiduciary who has agreed to perform this activity) shall provide, or shall cause a person designated to act on his behalf to provide, the following information to Participants:

(i) **Mandatory disclosures.** To satisfy the requirements of ERISA §404(c), the Participants must receive certain mandatory disclosures, including:

(A) an explanation that the Plan is intended to be an ERISA §404(c) plan and that the fiduciaries of the Plan may be relieved of liability for any losses which are the direct and necessary result of investment instructions given by the Participant or beneficiary; and

(B) the information required pursuant to subsection (c) above.

(2) **Diversified investment options.** The Plan must provide at least three diversified investment options that offer a broad range of investment opportunity. Each of the investment opportunities must have materially different risk and return characteristics. The procedure may allow investment under a segregated brokerage account.

(3) **Frequency of investment instructions.** Participants must have the opportunity to give investment instructions as frequently as is appropriate to the volatility of the investment. For each investment option, the frequency can be no less than quarterly.

**10.11** **Life Insurance.** Plan assets may not be held under a life insurance contract issued on or after September 24, 2007. If Plan assets include life insurance contracts issued before September 24, 2007, those contracts will continue to be held pursuant to the terms of the plan relating to life insurance as in effect immediately prior to September 24, 2007 until discontinued by the Participant.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 95 of 177   Document 23-6

MTD Page 94

## SECTION 11
## PLAN ADMINISTRATION AND OPERATION

**11.01** **Plan Administrator.** The Employer is the Plan Administrator, unless the Employer designates in writing an alternative Plan Administrator. The Plan Administrator has the responsibilities described in this Section 11.

**11.02** **Allocation of Administrative Functions.** Administrative functions, including functions to comply with Code §403(b) and other tax requirements, may be allocated among various persons pursuant to service agreements or other written documents. However, in no case shall administrative functions be allocated to Participants (other than permitting Participants to make investment elections for self-directed accounts). Any administrative functions not allocated to other persons are reserved to the Administrator.

**11.03** **Administrative and Vendor Addendums.** Persons to whom administrative functions have been allocated and the specific functions allocated to such persons shall be identified in Addendum A – Allocation of Administrative Functions – in the Adoption Agreement. Service agreements and other records or information pertaining to the administration of the Plan may be included or incorporated by reference in Addendum A. Addendum B of the Adoption Agreement will include a list of all the Vendors of Investment Arrangements approved for use under the Plan, including sufficient information to identify the approved Investment Arrangements. Addendums A and B may be modified from time to time. A modification of the Addendums is not an amendment of the Plan.

**11.04** **Information Provided by a Participant.** Each Participant shall provide at the time of initial enrollment, and later if there are any changes, any information necessary or advisable for the administration of the Plan, including any information required under the terms governing the Investment Arrangement.

**11.05** **Information Sharing.** Each Vendor and the Plan Administrator shall exchange such information as may be necessary to satisfy Code §403(b) or other requirements of applicable law. In the case of a Vendor which is not eligible to receive Elective Deferrals under the Plan (including a Vendor which has ceased to be a Vendor eligible to receive Elective Deferrals under the Plan and a Vendor holding assets under the Plan), the Eligible Employer shall keep the Vendor informed of the name and contact information of the Plan Administrator in order to coordinate information necessary to satisfy Code §403(b) or other requirements of applicable law.

**11.06** **Named Fiduciary.** The Plan Administrator is the Named Fiduciary for the Plan, unless the Plan Administrator specifically names another person or persons as Named Fiduciary and the designated person accepts its responsibilities as Named Fiduciary in writing. The Plan must always have at least one Named Fiduciary.

**11.07** **Duties, Powers and Responsibilities of the Plan Administrator.** The Plan Administrator will administer the Plan for the exclusive benefit of the Plan Participants and Beneficiaries, and in accordance with the terms of the Plan. If the terms of the Plan are unclear, the Plan Administrator may interpret the Plan. This right to interpret the Plan is an express grant of discretionary authority to resolve ambiguities in the Plan document and to make discretionary decisions regarding the interpretation of the Plan's terms, including who is eligible to participate under the Plan, and the benefit rights of a Participant or Beneficiary. Unless an interpretation or decision is determined to be arbitrary and capricious, the Plan Administrator will not be held liable for any interpretation of the Plan terms or decision regarding the application of a Plan provision.

    **(a)** **Delegation of duties, powers and responsibilities.** The Employer, as Plan Administrator, may delegate its duties, powers or responsibilities to one or more persons under Addendum A. Such delegation must be in writing and accepted by the person or persons receiving the delegation. The Employer may not delegate responsibilities to Plan Participants. The Employer must agree to such delegation by an alternative Plan Administrator. In delegating responsibilities, the Plan may, under Addendum A, incorporate by reference other documents, including annuity policies and custodial agreements.

    **(b)** **Specific Plan Administrator responsibilities.** The Plan Administrator has the general responsibility to control and manage the operation of the Plan. This responsibility includes, but is not limited to, the following:

        **(1)** To interpret and enforce the provisions of the Plan and applicable rules under Code §403(b) including those related to Plan eligibility, vesting, benefits and other tax requirements;

        **(2)** To communicate with the appropriate persons with respect to the crediting of Plan contributions, the disbursement of Plan distributions and other relevant matters;

        **(3)** To develop separate procedures (if necessary) consistent with the terms of the Plan to assist in the administration of the Plan, including the adoption of a separate or modified loan policy), procedures for direction of investment by Participants, procedures for determining whether domestic relations orders are QDROs), and procedures for the determination of investment earnings to be allocated to Participants' Accounts:

    **(4)**    To maintain all records necessary for tax and other administration purposes;

    **(5)**    To furnish and to file all appropriate notices, reports and other information to Participants, Beneficiaries, the Employer, the Custodian, Insurance Company and government agencies (as necessary);

    **(6)**    To provide information relating to Plan Participants and Beneficiaries;

    **(7)**    To retain the services of other persons, including investment managers, attorneys, consultants, advisers and others, to assist in the administration of the Plan;

    **(8)**    To review and decide on claims for benefits under the Plan;

    **(9)**    To correct any defect or error in the operation of the Plan;

    **(10)**    To establish a "funding policy and method" for the Plan for purposes of ensuring the Plan is satisfying its financial objectives and is able to meet its liquidity needs; and

    **(11)**    To suspend contributions, including Salary Deferrals and/or After-Tax Contributions, on behalf of any or all Highly Compensated Employees, if the Plan Administrator reasonably believes that such contributions will cause the Plan to discriminate in favor of Highly Compensated Employees. (See Section 6.02(c).)

**11.08**    **Plan Administration Expenses.**

    **(a)**    **Reasonable Plan administration expenses.** All reasonable expenses related to plan administration may be paid from Plan assets, except to the extent the expenses are paid (or reimbursed) by the Employer. For this purpose, Plan expenses include, but are not limited to, all reasonable costs, charges and expenses incurred in connection with the administration of the Plan.

    **(b)**    **Plan expense allocation.** The Plan Administrator may allocate plan expenses among the accounts of Plan Participants. The Plan Administrator has authority to allocate these expenses either proportionally based on the value of the Account Balances or pro rata based on the number of Participants in the Plan. The Plan Administrator will determine the proper method for allocating expenses in accordance with such reasonable nondiscriminatory rules as the Plan Administrator deems appropriate under the circumstances. Unless the Plan Administrator decides otherwise, the following expenses will be allocated to the Participant's Account relative to which the expense is incurred: distribution expenses, including those relating to lump sums, installments, QDROs, hardship, in-service and required minimum distributions; loan expenses; participant direction expenses, including brokerage fees; and benefit calculations.

    **(c)**    **Expenses related to administration of former Employee or surviving Spouse.** If the Plan is making distributions to a former Employee, surviving Spouse or non-Spouse beneficiary, the Plan may charge reasonable Plan administrative expenses to the Account of that former Employee, surviving Spouse or nonSpouse beneficiary, but only if the administrative expenses are on a pro rata basis. Under the pro rata basis, the expenses are based on the amount in each account of a former Employee, surviving Spouse or nonSpouse beneficiary receiving benefits from the Plan. The Plan Administrator may use another reasonable basis for charging the expenses, provided it complies with the requirements of Title I of ERISA. In any event, the allocation of plan expenses must meet the nondiscrimination rules of §401(a)(4).

**11.09**    **Qualified Domestic Relations Orders (QDROs).**

    **(a)**    **In general.** The Plan Administrator must develop written procedures for determining whether a domestic relations order is a QDRO and for administering distributions under a QDRO. For this purpose, the Plan Administrator may use the default QDRO procedures set forth in subsection (h) below or may develop separate QDRO procedures. If applicable, the procedures must recognize the requirements under applicable State law.

    **(b)**    **Definitions related to Qualified Domestic Relations Orders (QDROs).**

        **(1)**    **QDRO.** A QDRO is a domestic relations order that creates or recognizes the existence of an Alternate Payee's right to receive, or assigns to an Alternate Payee the right to receive, all or a portion of the benefits payable with respect to a Participant under the Plan. (See Code §414(p).) The QDRO must contain certain information and meet other requirements described in this Section 11.09.

        **(2)**    **Domestic relations order.** A domestic relations order is a judgment, decree, or order (including the approval of a property settlement) that is made pursuant to state domestic relations law (including community property law).

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 97 of 177   Document 23-6

MTD Page 96

     **(3)**     <u>Alternate Payee.</u> An Alternate Payee must be a Spouse, former Spouse, child, or other dependent of a Participant.

     **(4)**     <u>Revision of QDRO.</u> A domestic relations order otherwise meeting the requirements to be a QDRO under Code §414(p) shall not fail to be treated as a QDRO solely because:

          **(i)**     the order is issued after, or revises, another domestic relations order or QDRO; or

          **(ii)**     of the time at which the order is issued, including orders issued after the death of the Participant.

          Any QDRO described in this Section 11.09 shall be subject to the same requirements and protections which apply to QDROs under Code §414(p)(7).

**(c)**     <u>Recognition as a QDRO.</u> To be a QDRO, an order must be a domestic relations order (as defined in subsection (b)(2) above) that relates to the provision of child support, alimony payments, or marital property rights for the benefit of an Alternate Payee. The Plan Administrator is not required to determine whether the court or agency issuing the domestic relations order had jurisdiction to issue an order, whether state law is correctly applied in the order, whether service was properly made on the parties, or whether an individual identified in an order as an Alternate Payee is a proper Alternate Payee under state law.

**(d)**     <u>Contents of QDRO.</u> A QDRO must contain the following information:

     **(1)**     the name and last known mailing address of the Participant and each Alternate Payee;

     **(2)**     the name of each plan to which the order applies;

     **(3)**     the dollar amount or percentage (or the method of determining the amount or percentage) of the benefit to be paid to the Alternate Payee; and

     **(4)**     the number of payments or time period to which the order applies.

**(e)**     <u>Impermissible QDRO provisions.</u>

     **(1)**     The order must not require the Plan to provide an Alternate Payee or Participant with any type or form of benefit, or any option, not otherwise provided under the Plan;

     **(2)**     The order must not require the Plan to provide for increased benefits (determined on the basis of actuarial value);

     **(3)**     The order must not require the Plan to pay benefits to an Alternate Payee that are required to be paid to another Alternate Payee under another order previously determined to be a QDRO; and

     **(4)**     The order must not require the Plan to pay benefits to an Alternate Payee in the form of a Qualified Joint and Survivor Annuity for the lives of the Alternate Payee and his or her subsequent Spouse.

**(f)**     <u>Immediate distribution to Alternate Payee.</u> Even if a Participant is not eligible to receive an immediate distribution from the Plan, an Alternate Payee may receive a QDRO benefit immediately in a lump sum, provided such distribution is consistent with the QDRO provisions.

**(g)**     <u>Fee for QDRO determination.</u> The Plan Administrator may condition the making of a QDRO determination on the payment of a fee by a Participant or an Alternate Payee (either directly or as a charge against the Participant's Account).

**(h)**     <u>Default QDRO procedure.</u> If the Plan Administrator chooses this default QDRO procedure or if the Plan Administrator does not establish a separate QDRO procedure, this subsection (h) will apply as the procedure the Plan Administrator will use to determine whether a domestic relations order is a QDRO. This default QDRO procedure incorporates the requirements set forth below.

     **(1)**     <u>Access to information.</u> The Plan Administrator will provide access to Plan and Participant benefit information sufficient for a prospective Alternate Payee to prepare a QDRO. Such information might include the summary plan description, other relevant plan documents, and a statement of the Participant's benefit entitlements. The disclosure of this information is conditioned on the prospective Alternate Payee providing to the Plan Administrator information sufficient to reasonably establish that the disclosure request is being made in connection with a domestic relations order.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 98 of 177   Document 23-6

MTD Page 97

**(2)**     **Notifications to Participant and Alternate Payee.** The Plan Administrator will promptly notify the affected Participant and each Alternate Payee named in the domestic relations order of the receipt of the order. The Plan Administrator will send the notification to the address included in the domestic relations order. Along with the notification, the Plan Administrator will provide a copy of the Plan's procedures for determining whether a domestic relations order is a QDRO.

**(3)**     **Alternate Payee representative.** The prospective Alternate Payee may designate a representative to receive copies of notices and Plan information that are sent to the Alternate Payee with respect to the domestic relations order.

**(4)**     **Evaluation of domestic relations order.** Within a reasonable period of time, the Plan Administrator will evaluate the domestic relations order to determine whether it is a QDRO. A reasonable period will depend on the specific circumstances. The domestic relations order must contain the information described in subsection (d). If the order is only deficient in a minor respect, the Plan Administrator may supplement information in the order from information within the Plan Administrator's control or through communication with the prospective Alternate Payee.

    **(i)**     **Separate accounting.** Upon receipt of a domestic relations order, the Plan Administrator will separately account for and preserve the amounts that would be payable to an Alternate Payee until a determination is made with respect to the status of the order. During the period in which the status of the order is being determined, the Plan Administrator will take whatever steps are necessary to ensure that amounts that would be payable to the Alternate Payee, if the order were a QDRO, are not distributed to the Participant or any other person. The separate accounting requirement may be satisfied, at the Plan Administrator's discretion, by a segregation of the assets that are subject to separate accounting.

    **(ii)**     **Separate accounting until the end of "18-month period."** The Plan Administrator will continue to separately account for amounts that are payable under the QDRO until the end of an "18-month period." The "18-month period" will begin on the first date following the Plan's receipt of the order upon which a payment would be required to be made to an Alternate Payee under the order. If, within the "18-month period," the Plan Administrator determines that the order is a QDRO, the Plan Administrator must pay the Alternate Payee in accordance with the terms of the QDRO. If, however, the Plan Administrator determines within the "18-month period" that the order is not a QDRO, or, if the status of the order is not resolved by the end of the "18-month period," the Plan Administrator may pay out the amounts otherwise payable under the order to the person or persons who would have been entitled to such amounts if there had been no order. If the order is later determined to be a QDRO, the order will apply only prospectively; that is, the Alternate Payee will be entitled only to amounts payable under the order after the subsequent determination.

    **(iii)**     **Preliminary review.** The Plan Administrator will perform a preliminary review of the domestic relations order to determine if it is a QDRO. If this preliminary review indicates the order is deficient in some manner, the Plan Administrator will allow the parties to attempt to correct any deficiency before issuing a final decision on the domestic relations order. The ability to correct is limited to a reasonable period of time.

    **(iv)**     **Notification of determination.** The Plan Administrator will notify in writing the Participant and each Alternate Payee of the Plan Administrator's decision as to whether a domestic relations order is a QDRO. In the case of a determination that an order is not a QDRO, the written notice will contain the following information:

       **(A)**     references to the Plan provisions on which the Plan Administrator based its decision;

       **(B)**     an explanation of any time limits that apply to rights available to the parties under the Plan (such as the duration of any protective actions the Plan Administrator will take); and

       **(C)**     a description of any additional material, information, or modifications necessary for the order to be a QDRO and an explanation of why such material, information, or modifications are necessary.

    **(v)**     **Treatment of Alternate Payee.** If an order is accepted as a QDRO, the Plan Administrator will act in accordance with the terms of the QDRO as if it were a part of the Plan. An Alternate Payee will be considered a Beneficiary under the Plan and be afforded the same rights as a Beneficiary. The Plan

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 99 of 177   Document 23-6

MTD Page 98

Administrator will provide any appropriate disclosure information relating to the Plan to the Alternate Payee.

**11.10** **Claims Procedure.** The Plan Administrator shall establish a procedure for benefit claims consistent with the requirements of ERISA Reg. §2560.503-1. The Plan Administrator is authorized to conduct an examination of the relevant facts to determine the merits of a Participant's or Beneficiary's claim for Plan benefits. The claims procedure must incorporate the following guidelines:

The Plan Administrator may establish procedures for administering benefit claims. Such benefit claims procedures should provide claimants with a reasonable opportunity to have a full and fair review of a denied claim. The Plan Administrator is authorized to conduct an examination of the relevant facts to determine the merits of a Participant's or Beneficiary's claim for Plan benefits.

    **(a)**     **Filing a claim.** The claims procedure will set forth a reasonable means for a Participant or Beneficiary to file a claim for benefits under the Plan.

    **(b)**     **Plan Administrator's decision.** The Plan Administrator must provide a claimant with written notification of the Plan Administrator's decision relating to a claim within a reasonable period of time (not more than 90 days unless special circumstances require an extension to process the claim) after the claim was filed. If the claim is denied, the notification must set forth the reasons for the denial, specific reference to pertinent Plan provisions on which the denial is based, a description of any additional information necessary for the claimant to perfect the claim, and the steps the claimant must take to submit the claim for review.

    **(c)**     **Review procedure.** The claims procedure will provide a claimant a reasonable opportunity to have a full and fair review of a denied claim. Such procedure shall allow a review upon a written application, for the claimant to review pertinent documents, and to allow the claimant to submit written comments to the Plan Administrator. The procedure may establish a limited period (not less than 60 days after the claimant receives written notification of the denial of the claim) for the claimant to request a review of the claim denial.

    **(d)**     **Decision on review.** If a claimant requests a review, the Plan Administrator must respond promptly to the request. Unless special circumstances exist (such as the need for a hearing), the Plan Administrator must respond in writing within 60 days of the date the claimant submitted the review application. The response must explain the Plan Administrator's decision on review.

    **(e)**     **Final review.** If the Plan Administrator makes a final written determination denying a Participant's or Beneficiary's benefit claim, the Participant or Beneficiary may commence legal or equitable action with respect to the denied claim upon completion of the claims procedures under this Section 11.10. Any legal or equitable action must be commenced no later than the earlier of: (1) 180 days following the date of the final determination or (2) three years following the proof of loss. If a claimant fails to commence legal or equitable action with respect to the denied claim within the above timeframe, the claimant will be deemed to have accepted the Plan Administrator's final decision with respect to the claim for benefits.

**11.11** **Operational Rules for Short Plan Years.** The following operational rules apply if the Plan has a Short Plan Year. A Short Plan Year is any Plan Year that is less than a 12-month period, either because of the amendment of the Plan Year, or because the Effective Date of a new Plan is less than 12 months prior to the end of the first Plan Year.

    **(a)**     If the Plan is amended to create a Short Plan Year, and an Eligibility Computation Period or Vesting Computation Period is based on the Plan Year, the applicable computation period begins on the first day of the Short Plan Year, but such period ends on the day which is 12 months from the first day of such Short Plan Year. Thus, the computation period that begins on the first day of the Short Plan Year overlaps with the computation period that starts on the first day of the next Plan Year. This rule applies only to an Employee who has at least one Hour of Service during the Short Plan Year.

        If a Plan has an initial Short Plan Year, the rule in the above paragraph applies only for purposes of determining an Employee's Vesting Computation Period and only if the Employer elects under AA §8-3 to exclude service earned prior to the adoption of the Plan. For eligibility and vesting (where service prior to the adoption of the Plan is not ignored), if the Eligibility Computation Period or Vesting Computation Period is based on the Plan Year, the applicable computation period will be determined on the basis of the Plan's normal Plan Year, without regard to the initial short Plan Year.

    **(b)**     If Employer Contributions and/or Matching Contributions are allocated for a Short Plan Year, any allocation condition under AA §6-7 or AA §6B-7 that requires a Participant to complete a specified number of Hours of Service to receive

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 100 of 177   Document 23-6

MTD Page 99

an allocation of such Employer Contributions and/or Matching Contributions will not be prorated as a result of such Short Plan Year unless otherwise specified in AA §6-7 or AA §6B-7, if applicable.

**(c)** The Compensation Limit will be prorated to reflect the number of months (or partial months) included in the Short Plan Year unless the compensation used for such Short Plan Year is a period of 12 months.

In all other respects, the Plan shall be operated for the Short Plan Year in the same manner as for a 12-month Plan Year, unless the context requires otherwise. If the terms of the Plan are ambiguous with respect to the operation of the Plan for a Short Plan Year, the Plan Administrator has the authority to make a final determination on the proper interpretation of the Plan.

**SECTION 12**
**CUSTODIAL AGREEMENTS/ANNUITY CONTRACTS**

12.01    <u>**Creation of Custodial Agreement.**</u> If the Employer elects in the Adoption Agreement to fund the Plan using Custodial Accounts, the Employer (or, if applicable each Participant) will execute a Custodial Agreement with the Custodian, as a Vendor, in which Participants' Accounts are invested. The Custodial Agreement will describe the duties and responsibilities of the Custodian. The Custodian will be listed in Addendum B – Vendors of Investment Arrangements. The Addendum will include sufficient information to identify the approved Investment Arrangement. The terms governing each Investment Arrangement under the Plan, excluding those terms that are inconsistent with the Plan or Code §403(b), are incorporated by reference in the Plan.

12.02    <u>**Annuity Contracts.**</u> If the Employer elects in the Adoption Agreement to provide Annuity Contracts as an investment option, the Employer will list the Vendor of the Annuity Contract in Addendum B – Vendors of Investment Arrangements. The Addendum will include sufficient information to identify the approved Investment Arrangement. The terms governing each Investment Arrangement under the Plan, excluding those terms that are inconsistent with the Plan or Code §403(b), are incorporated by reference in the Plan.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 102 of 177   Document 23-6

MTD Page 101

## SECTION 13
## PARTICIPANT LOANS

**13.01**    **Availability of Participant Loans.** Subject to the terms governing the applicable Investment Arrangement, the Employer may elect under Appendix B of the Adoption Agreement to permit Participants to take loans from their vested Account Balance under the Plan. If the Employer elects to permit loans under the Plan, the Employer may elect to use the default loan policy under this Section 13, as modified under Appendix B of the Adoption Agreement, or may establish an outside loan policy for purposes of administering Participant loans under the Plan. If the Employer adopts a separate written loan policy, the terms of such separate loan policy will control over the terms of this Plan with respect to the administration of any Participant loans. Any separate written loan policy must satisfy the requirements under Code §72(p) and the regulations thereunder. Participant loans are subject to the terms of any Investment Arrangements associated with the Plan.

Participant loans under this Section 13 are available to Participants and Beneficiaries who are parties in interest (as defined in ERISA §3(14)). The Employer may describe in a separate loan policy the treatment of parties in interest and terminated Employees. Unless modified in a separate loan policy, any reference to Participant under this Section is a reference to a Participant or Beneficiary who is a party in interest.

To receive a Participant loan, a Participant must sign a promissory note along with a pledge or assignment of the portion of the Account Balance used for security on the loan. The loan will be evidenced by a legally enforceable agreement which specifies the amount and term of the loan, and the repayment schedule.

**13.02**    **Must be Available in Reasonably Equivalent Manner.** Participant loans must be made available to Participants in a reasonably equivalent manner. Participant loans will not be made available to Highly Compensated Employees in an amount greater than the amount made available to other Employees. The Employer may elect under AA §B-8 to limit the availability of Participant loans to specified events.

**13.03**    **Loan Limitations.** A Participant loan may not be made to the extent such loan (when added to the outstanding balance of all other loans made to the Participant) exceeds the lesser of:

     **(a)**    $50,000 (reduced by the excess, if any, of the Participant's highest outstanding balance of loans from the Plan during the one-year period ending on the day before the date on which such loan is made, over the Participant's outstanding balance of loans from the Plan as of the date such loan is made) or

     **(b)**    one-half (½) of the Participant's vested Account Balance, determined as of the Valuation Date coinciding with or immediately preceding such loan, adjusted for any contributions or distributions made since such Valuation Date, or, if the Plan is not subject to ERISA, $10,000, if greater.

In applying the limitations under this Section 13.03, all plans maintained by the Employer are aggregated and treated as a single plan. In addition, any assignment or pledge of any portion of the Participant's interest in the Plan and any loan, pledge, or assignment with respect to any insurance contract purchased under the Plan will be treated as loan under this Section.

**13.04**    **Limit on Amount and Number of Loans.** Unless elected otherwise under AA §B-5 and/or AA §B-6, or under a separate written loan policy, a Participant may not receive a Participant loan of less than $1,000 nor may a Participant have more than one Participant loan outstanding at any time.

     **(a)**    **Loan renegotiation.** A Participant may renegotiate a loan without violating the one outstanding loan requirement to the extent such renegotiated loan is a new loan (i.e., the renegotiated loan separately satisfies the reasonable interest rate requirement under Section 13.05, the adequate security requirement under Section 13.06, and the periodic repayment requirement under Section 13.07) and the renegotiated loan does not exceed the limitations under Section 13.03 above, treating both the replaced loan and the renegotiated loan as outstanding at the same time. However, if the term of the renegotiated loan does not end later than the original term of the replaced loan, the replaced loan may be ignored in applying the limitations under Section 13.03 above.

     **(b)**    **Participant must be creditworthy.** The Plan Administrator may refuse to make a loan to any Participant who is determined to be not creditworthy. For this purpose, a Participant is not creditworthy if, based on the facts and circumstances, it is reasonable to believe that the Participant will not repay the loan. A Participant who has defaulted on a previous loan from the Plan and has not repaid such loan (with accrued interest) at the time of any subsequent loan will be treated as not creditworthy until such time as the Participant repays the defaulted loan (with accrued interest).

**13.05**    **Reasonable Rate of Interest.** All Participant loans will be charged a reasonable rate of interest. For this purpose, the interest rate charged on a Participant loan must be commensurate with the interest rates charged by persons in the business of lending money for loans under similar circumstances. The Employer may identify alternative methods for determining a reasonable rate

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 103 of 177    Document 23-6

MTD Page 102

of interest under AA §B-7 or under a separate written loan policy. The Plan Administrator must periodically review its interest rate assumptions to ensure the interest rate charged on Participant loans is reasonable.

If a Participant is in "military service" while he/she has an outstanding Participant loan, the applicable interest charged on such loan during the period while the Participant is in "military service" will not exceed 6% per year provided the Participant provides written notice and a copy of his/her call-up or extension orders to the Plan Administrator within 180 days following the Participant's termination or release from "military service." For this purpose, "military service" is as defined in the Soldier's and Sailor's Civil Relief Act of 1940 as modified by the Servicemembers Civil Relief Act of 2003. The Participant may voluntarily waive this 6% interest limitation and the Plan Administrator may petition the court to retain the original interest rate if the ability to repay is not affected by the Participant's activation to military duty.

**13.06**   **Adequate Security.** All Participant loans must be adequately secured. The Participant's vested Account Balance shall be used as security for a Participant loan provided the outstanding balance of all Participant loans made to such Participant does not exceed 50% of the Participants vested Account Balance, determined immediately after the origination of each loan, and if applicable, the spousal consent requirements described in Section 13.08 have been satisfied. The Plan Administrator may require a Participant to provide additional collateral to receive a Participant loan if the Plan Administrator determines such additional collateral is required to protect the interests of Plan Participants. A separate loan policy or written modifications to this loan policy may prescribe alternative rules for obtaining adequate security. However, the 50% rule in this paragraph may not be replaced with a greater percentage, unless the Plan is not subject to ERISA.

**13.07**   **Periodic Repayment.** A Participant loan must provide for level amortization with payments to be made not less frequently than quarterly. A Participant loan must be payable within a period not exceeding five (5) years from the date the Participant receives the loan from the Plan, unless the loan is for the purchase of the Participant's principal residence, in which case the loan must be payable within a reasonable time commensurate with the repayment period permitted by commercial lenders for similar loans. Loan repayments must be made through payroll withholding, except to the extent the Plan Administrator determines payroll withholding is not practical given the level of a Participant's wages, the frequency with which the Participant is paid, or other circumstances.

   **(a)**   **Unpaid leave of absence.** A Participant with an outstanding Participant loan may suspend loan payments to the Plan for up to 12 months for any period during which the Participant is on an unpaid leave of absence. Upon the Participant's return to employment (or after the end of the 12-month period, if earlier), the Participant's outstanding loan will be reamortized over the remaining period of such loan to make up for the missed payments. The reamortized loan may extend beyond the original loan term so long as the loan is paid in full by whichever of the following dates comes first: (1) the date which is five (5) years from the original date of the loan (or the end of the suspension, if sooner), or (2) the original loan repayment deadline (or the end of the suspension period, if later) plus the length of the suspension period. Alternatively, the Participant may resume loan payments under the pre-leave of absence amortization schedule with a balloon payment due at the end of the loan term.

   **(b)**   **Military leave.** A Participant with an outstanding Participant loan also may suspend loan payments for any period such Participant is on military leave, in accordance with Code §414(u)(4). Upon the Participant's return from military leave (or the expiration of five years from the date the Participant began his/her military leave, if earlier), loan payments will recommence under the amortization schedule in effect prior to the Participant's military leave, without regard to the five-year maximum loan repayment period. Alternatively, the loan may be reamortized to require a different level of loan payment, as long as the amount and frequency of such payments are not less than the amount and frequency under the amortization schedule in effect prior to the Participant's military leave.

**13.08**   **Spousal Consent.** If this Plan is subject to the Joint and Survivor Annuity requirements under Section 9, a Participant may not use his/her Account Balance as security for a Participant loan unless the Participant's Spouse, if any, consents to the use of such Account Balance as security for the loan. The spousal consent must be made within the 180-day period ending on the date the Participant's Account Balance is to be used as security for the loan. Spousal consent is not required, however, if the value of the Participant's total vested Account Balance does not exceed $5,000. If the Plan is not subject to the Joint and Survivor Annuity requirements under Section 9, a Spouse's consent is not required to use a Participant's Account Balance as security for a Participant loan, regardless of the value of the Participant's Account Balance.

Any spousal consent required under this Section must be in writing, must acknowledge the effect of the loan, and must be witnessed by a plan representative or notary public. Any such consent to use the Participant's Account Balance as security for a Participant loan is binding with respect to the consenting Spouse and with respect to any subsequent Spouse as it applies to such loan. A new spousal consent will be required if the Account Balance is subsequently used as security for a renegotiation, extension, renewal, or other revision of the loan. A new spousal consent also will be required only if any portion of the Participant's Account Balance will be used as security for a subsequent Participant loan.

**13.09**   **Designation of Accounts.** A Participant loan will be treated as a segregated investment on behalf of the individual Participant for whom the loan is made or may be treated as a general investment of the Plan. Unless designated otherwise under the AA or

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 104 of 177   Document 23-6

MTD Page 103

under a separate loan procedure, loan amounts may be taken from any available contribution source under the Plan. The Plan Administrator may determine the contribution sources from which a loan is taken or may follow directions of the Participant. Each payment of principal and interest paid by a Participant on his/her Participant loan shall be credited to the same Participant Accounts and investment funds within such Accounts from which the loan was treated.

**13.10** **Procedures for Loan Default.** A Participant will be considered to be in default with respect to a loan if any scheduled repayment with respect to such loan is not made by the end of the calendar quarter following the calendar quarter in which the missed payment was due.

If a Participant defaults on a Participant loan, the Plan may not offset the Participant's Account Balance until the Participant is otherwise entitled to an immediate distribution of the portion of the Account Balance which will be offset and such amount being offset is available as security on the loan, pursuant to Section 13.06. For this purpose, a loan default is treated as an immediate distribution event to the extent the law does not prohibit an actual distribution of the type of contributions which would be offset as a result of the loan default (determined without regard to the consent requirements under Sections 8.04 and 9.04, so long as spousal consent was properly obtained at the time of the loan, if required under Section 13.08). The Participant may repay the outstanding balance of a defaulted loan (including accrued interest through the date of repayment) at any time.

Pending the offset of a Participant's Account Balance following a defaulted loan, the following rules apply to the amount in default.

(a) Interest continues to accrue on the amount in default until the time of the loan offset or, if earlier, the date the loan repayments are made current or the amount is satisfied with other collateral.

(b) A subsequent offset of the amount in default is not reported as a taxable distribution, except to the extent the taxable portion of the default amount was not previously reported by the Plan as a taxable distribution.

(c) The post-default accrued interest included in the loan offset is not reported as a taxable distribution at the time of the offset.

A separate loan policy or written modifications to this loan policy may modify the procedures for determining a loan default.

**13.11** **Termination of Employment.**

(a) **Offset of outstanding loan.** A Participant loan becomes due and payable in full immediately upon the Participant's termination of employment. Upon a Participant's termination, the Participant may repay the entire outstanding balance of the loan (including any accrued interest) within a reasonable period following termination of employment. If the Participant does not repay the entire outstanding loan balance, the Participant's vested Account Balance will be reduced by the remaining outstanding balance of the loan (without regard to the consent requirements under Sections 8.04 and 9.05, so long as spousal consent was properly obtained at the time of the loan, if required), to the extent such Account Balance is available as security on the loan, pursuant to Section 13.06, and the remaining vested Account Balance will be distributed in accordance with the distribution provisions under Section 8. If the outstanding loan balance of a deceased Participant is not repaid, the outstanding loan balance shall be treated as a distribution to the Participant and shall reduce the death benefit amount payable to the Beneficiary under Section 8.08.

(b) **Direct Rollover.** Unless otherwise elected under the AA, upon termination of employment, a Participant may request a Direct Rollover of the loan note (provided the distribution is an Eligible Rollover Distribution as defined in Section 8.05(a)(1)) to another plan which agrees to accept a Direct Rollover of the loan note. A Participant may not engage in a Direct Rollover of a loan to the extent the Participant has already received a deemed distribution with respect to such loan.

(c) **Modified loan policy.** A separate loan policy or written modifications to this loan policy may modify this Section 13.11, including, but not limited to: (1) a provision to permit loan repayments to continue beyond termination of employment; (2) to prohibit the Direct Rollover of a loan note; and (3) to provide for other events that may accelerate the Participant's repayment obligation under the loan.

**13.12** **Mergers, Transfers or Direct Rollovers from another Plan/Change in Loan Record Keeper.** Any Participant loan transferred into the Plan as the result of a merger, consolidation, or plan to plan transfer, or rolled over to the Plan from another plan, shall be administered in accordance with the provisions of the note reflecting such loan, and shall remain outstanding until repaid in accordance with its terms, except that the Employer may permit the renegotiation of the terms of the loan to the extent necessary to ensure the administration of such loan continues to satisfy the requirements of Code §72(p) and the regulations thereunder. In addition, if there is a change in the person or persons to whom the record keeping of Participant loans has been delegated, a loan shall continue to be administered in accordance with the provisions of the note reflecting such loan, and shall

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 105 of 177   Document 23-6

MTD Page 104

remain outstanding until repaid in accordance with its terms, except that the Employer may permit the renegotiation of the terms of a loan to the extent necessary to ensure the administration of the loan after the change in the loan record keeper continues to satisfy the requirements of Code §72(p) and the regulations thereunder, regardless of any contrary election under AA §B-14.

**13.13** **Amendment of Plan to Eliminate Participant Loans.** The Plan may be amended at any time to eliminate Participant loans on a prospective basis. However, the elimination of a Participant loan feature may not result in the acceleration of payment of any existing Participant loans, unless the terms of the Participant loan permit such acceleration.

## SECTION 14
## PLAN AMENDMENTS, TERMINATION, MERGERS, EXCHANGES, AND TRANSFERS

**14.01** **Plan Amendments.**

(a) **Amendment by the Volume Submitter Sponsor.** The Volume Submitter Sponsor may amend the Plan on behalf of all adopting Employers, including those Employers who adopt the Plan prior to or after the amendment, for changes in the Code, regulations, revenue rulings, and other statements published by the Internal Revenue Service, including model, sample or other required good faith amendments (but only if their adoption will not cause such Plan to be individually designed), and for corrections of prior approved plans. These amendments will be applied to all Employers who have adopted the Plan.

For purposes of Volume Submitter Plan amendments, the ASC Institute, as mass submitter, shall be recognized as the agent of the Volume Submitter Sponsor. If the Volume Submitter Sponsor does not adopt the amendments made by ASC Institute, as the mass submitter, it no longer will be identical to the ASC Institute mass submitter plan.

The Volume Submitter Sponsor will maintain, or have maintained on its behalf, a record of the Employers that have adopted the Plan, and the Volume Submitter Sponsor will make reasonable and diligent efforts to ensure that adopting Employers have actually received and are aware of all Plan amendments and that such Employers adopt new documents when necessary.

(b) **Amendment by the Employer.** The Employer shall have the right at any time to amend the Adoption Agreement in the following manner without affecting the Plan's status as a Volume Submitter Plan. (The ability to amend the Plan as authorized under this subsection (b) applies only to the Employer that executes the Employer Signature Page of the Adoption Agreement. Any amendment to the Plan by the Employer under this subsection (b) also applies to any other Employer that participates under the Plan as a Participating Employer.)

(1) The Employer may change any optional selections under the Adoption Agreement.

(2) The Employer may add overriding language to the Adoption Agreement when such language is necessary to satisfy Code §415 because of the required aggregation of multiple plans.

(3) The Employer may change the administrative selections under Appendix C of the Adoption Agreement by replacing the appropriate page(s) within the Adoption Agreement. Such amendment does not require re-execution of the Employer Signature Page of the Adoption Agreement.

(4) The Employer may amend Addendum A – Allocation of Administrative Functions – and Addendum B – Vendors of Investment Arrangements - in the Adoption Agreement. Such amendment does not require re-execution of the Employer Signature Page of the AA.

(5) The Employer may add certain sample or model amendments published by the IRS which specifically provide that their adoption will not cause the Plan to be treated as an individually designed plan.

(6) The Employer may add or change provisions permitted under the Plan and/or specify or change the effective date of a provision as permitted under the Plan.

(7) The Employer may adopt any amendments that it deems necessary to satisfy the requirements for resolving qualification failures under the IRS' compliance resolution programs.

(8) The Employer may adopt an amendment to cure a coverage or nondiscrimination testing failure, as permitted under applicable Treasury regulations.

The Employer may amend the Plan at any time for any other reason. The Plan will not lose its status as a Volume Submitter Plan, unless the amendment causes the Plan to not be substantially similar to the approved Volume Submitter Plan.

(c) **Method of amendment.** An amendment to the Plan may be adopted as a modification to the Adoption Agreement and/or Basic Plan Document or as a separate snap-on amendment. An amendment to the Plan may be adopted as part of a properly executed board resolution or other authorized action of the Employer. Any such amendment must be executed by the board of directors or a duly authorized officer of the Employer.

(d) **Reduction of accrued benefit.** No amendment to the plan shall be effective to the extent that it has the effect of reducing a Participant's accrued benefit. Notwithstanding the preceding sentence, a Participant's Account Balance may

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 107 of 177   Document 23-6

MTD Page 106

be reduced to the extent permitted under statute, regulations, or other IRS guidance of general applicability. For this purpose, a Plan amendment (or other transaction having the effect of a Plan amendment, such as a merger, acquisition, plan transfer, or similar transaction) shall have the effect of reducing a Participant's accrued benefit to the extent such amendment eliminates or reduces a protected benefit (as defined in Code §411(d)(6)) with respect to benefits accrued prior to the adoption date (or effective date, if later) of the Plan amendment. If the adoption of this Plan will result in the elimination of a protected benefit, the Employer may preserve such protected benefit by identifying the protected benefit in AA §11-13. Failure to identify protected benefits under the Adoption Agreement will not override the requirement that such protected benefits be preserved under this Plan.

The Employer may eliminate or restrict the ability of a Participant to receive payment of his/her Account Balance under a particular form of benefit for distributions with annuity starting dates after the date the amendment is adopted if, after the amendment is effective with respect to the Participant, the Participant has the ability to elect to receive distribution in the form of a lump sum that is otherwise identical to the optional form of benefit being eliminated or restricted. For this purpose, a lump sum distribution form is otherwise identical only if the lump sum distribution form is identical in all respects to the eliminated or restricted optional form of benefit (or would be identical except that it provides greater rights to the participant) except with respect to the timing of payments after commencement.

(e) **Amendment of vesting schedule.** If the Plan's vesting schedule is amended or the Plan is amended in any way that directly or indirectly affects the computation of a Participant's nonforfeitable percentage, in the case of an Employee who is a Participant as of the later of the date such amendment or change is adopted or the date it becomes effective, the nonforfeitable percentage (determined as of such date) of such Employee's account balance will not be less than the percentage computed under the Plan without regard to such amendment or change. With respect to benefits accrued as of the later of the adoption or effective date of the amendment, the vested percentage of each Participant will be the greater of the vested percentage under the old vesting schedule or the vested percentage under the new vesting schedule.

**14.02    Amendment to Correct Coverage or Nondiscrimination Violation.**

(a) **Amendment within correction period under Treas. Reg. §1.401(a)(4)-11(g).** If the Plan fails the minimum coverage test under Code §410(b) or the nondiscrimination requirements under Code §401(a)(4) for any Plan Year, the Employer may amend the Plan to correct the coverage or nondiscrimination violation within 9½ months after the end of the Plan Year, as permitted under Treas. Reg. §1.401(a)(4)-11(g). Any such amendment will not be subject to the general amendment timing requirements under Rev. Proc. 2007-44. Any such amendment may be adopted as a modification of the Adoption Agreement or as a snap-on amendment as described under Section 14.01(c) and will not affect the Volume Submitter status of the Plan, provided the amendment does not violate any of the requirements applicable to Volume Submitter plans under Rev. Proc. 2013-22.

(b) **Fail-Safe Coverage Provision.** If the Employer has elected to apply a last day of the Plan Year allocation condition and/or an Hours of Service allocation condition, the Employer may elect under AA §11 to apply the Fail-Safe Coverage Provision described in this subsection (b). Under the Fail-Safe Coverage Provision, if the Plan fails to satisfy the ratio percentage coverage requirements under Code §410(b) for a Plan Year due to the application of a last day of the Plan Year allocation condition and/or an Hours of Service allocation condition, such allocation condition(s) will be automatically eliminated for the Plan Year for certain Employees, under the process described in subsections (2)(i) through (2)(ii) below, until enough Employees are benefiting under the Plan so that the ratio percentage test of Treasury Regulation §1.410(b)-2(b)(2) is satisfied.

(1) **Application of Fail-Safe Coverage Provision.** If the Employer elects to have the Fail-Safe Coverage Provision apply, such provision automatically applies for any Plan Year for which the Plan does not satisfy the ratio percentage coverage requirements under Code §410(b). (Except as provided in the following paragraph, the Plan may not use the average benefits test to comply with the minimum coverage requirements if the Fail-Safe Coverage Provision is elected.) The Plan satisfies the ratio percentage test if the percentage of the Nonhighly Compensated Employees under the Plan is at least 70% of the percentage of the Highly Compensated Employees who benefit under the Plan. An Employee is benefiting for this purpose only if he/she actually receives an allocation of Employer Contributions or forfeitures or, if testing coverage of a 401(m) arrangement (i.e., a Plan that provides for Matching Contributions and/or After-Tax Employee Contributions), the Employee would receive an allocation of Matching Contributions by making the necessary contributions or the Employee is eligible to make After-Tax Employee Contributions. To determine the percentage of Nonhighly Compensated Employees or Highly Compensated Employees who are benefiting, the following Employees are excluded for purposes of applying the ratio percentage test:

(i)    Employees who have not satisfied the Plan's minimum age and service conditions under Section 2.03;

(ii)    Nonresident Alien Employees;

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 108 of 177    Document 23-6

MTD Page 107

      **(iii)**    Union Employees; and

      **(iv)**    Employees who terminate employment during the Plan Year with less than 501 Hours of Service and do not benefit under the Plan.

**(2)**   **Fail-Safe Coverage test.** Under the Fail-Safe Coverage Provision, certain Employees who are not benefiting for the Plan Year as a result of a last day of the Plan Year allocation condition or an Hours of Service allocation condition will participate under the Plan based on whether such Employees are Category 1 Employees or Category 2 Employees. If after applying the Fail-Safe Coverage Provision, the Plan does not satisfy the ratio percentage coverage test, the Fail-Safe Coverage Provision does not apply, and the Plan may use any other available method (including the average benefit test) to satisfy the minimum coverage requirements under Code §410(b).

      **(i)**   **Category 1 Employees – Nonhighly Compensated Employees who are still employed by the Employer on the last day of the Plan Year but who failed to satisfy the Plan's Hours of Service condition.** The Hours of Service allocation condition will first be eliminated for Category 1 Employees (who did not receive an allocation under the Plan due to the Hours of Service allocation condition) beginning with the Category 1 Employee(s) credited with the most Hours of Service for the Plan Year and continuing with the Category 1 Employee(s) with the next most Hours of Service until the ratio percentage test is satisfied. If two or more Category 1 Employees have the same number of Hours of Service, the allocation condition will be eliminated for those Category 1 Employees starting with the Category 1 Employee(s) with the lowest Plan Compensation. If the Plan still fails to satisfy the ratio percentage test after all Category 1 Employees receive an allocation, the Plan proceeds to Category 2 Employees.

      **(ii)**   **Category 2 Employees - Nonhighly Compensated Employees) who terminated employment during the Plan Year with more than 500 Hours of Service.** The last day of the Plan Year allocation condition will then be eliminated for Category 2 Employees (who did not receive an allocation under the Plan due to the last day of the Plan Year allocation condition) beginning with the Category 2 Employee(s) who terminated employment closest to the last day of the Plan Year and continuing with the Category 2 Employee(s) with a termination of employment date that is next closest to the last day of the Plan Year until the ratio percentage test is satisfied. If two or more Category 2 Employees terminate employment on the same day, the allocation condition will be eliminated for those Category 2 Employees starting with the Category 2 Employee(s) with the lowest Plan Compensation.

**14.03**   **Plan Termination.** The Employer may terminate this Plan at any time by delivering to the Plan Administrator written notice of such termination. However, to the extent that the Plan holds Salary Deferral Accounts and/or Custodial Accounts, Plan termination is only permitted if the Employer does not make contributions to any Code §403(b) plan that is not part of the Plan during the period beginning on the date of Plan termination and ending 12 months after the distribution of all assets from the terminated Plan. The Employer may terminate the Plan pursuant to a Board resolution or other appropriate Employer action. The Employer should amend the Plan to reflect the effective date of the Plan termination and any laws or regulations effective as of the date of termination.

**(a)**   **Full and immediate vesting.** Upon a full or partial termination of the Plan (or the complete discontinuance of contributions), all amounts credited to an affected Participant's Account become 100% vested, regardless of the Participant's vested percentage. The Plan Administrator has discretion to determine whether a partial termination has occurred.

**(b)**   **Distribution upon Plan termination.** Upon the termination of the Plan, the Plan Administrator shall direct the distribution of Accumulated Benefits to Participants in accordance with the provisions under Section 8 and subject to any restrictions contained in the terms governing the applicable Investment Arrangement as soon as administratively practicable after termination of the Plan.

**(c)**   **Termination upon merger, liquidation or dissolution of the Employer.** The Plan may terminate upon the liquidation or dissolution of the Employer provided however, that in any such event, arrangements may be made for the Plan to be continued by any successor to the Employer.

**(d)**   **Missing Participants.** Upon termination of the Plan, if any Participant cannot be located after a reasonable diligent search, the Plan Administrator may make a direct rollover to an IRA selected by the Plan Administrator. For this purpose, the Plan Administrator will adopt procedures similar to the procedures required under Section 8.06 for making Automatic Rollovers in applying the provisions under this subsection (d). An Automatic Rollover under this subsection (d) may be made on behalf of any missing Participant, regardless of the value of his/her vested Account Balance under the Plan.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 109 of 177   Document 23-6

MTD Page 108

**14.04**  **Merger or Consolidation.** In the event the Plan is merged or consolidated with another plan, each Participant must be entitled to a benefit immediately after such merger or consolidation that is at least equal to the benefit the Participant would have been entitled to had the Plan terminated immediately before such merger or consolidation.

**14.05**  **Contract exchanges within the Plan.** Subject to the terms governing the applicable Investment Arrangement, the Plan Administrator may, but is not required to, exchange Section 403(b) contracts among the Vendors of Investment Arrangements approved for use under the Plan. Such exchanges must satisfy the following conditions:

(a)  The Plan provides for the exchange;

(b)  The Participant or Beneficiary has an Accumulated Benefit immediately after the exchange that is at least equal to the Accumulated Benefit of that Participant or Beneficiary immediately before the exchange (taking into account the Accumulated Benefit of that Participant or Beneficiary under both Section 403(b) Contracts immediately before the exchange);

(c)  The other Section 403(b) contract is subject to distribution restrictions with respect to the Participant that are not less stringent than those imposed on the contract being exchanged, and the Employer enters into an agreement with the issuer of the other Section 403(b) contract under which the employer and the issuer will from time to time in the future provide each other with the following information:

(1)  Information necessary for the resulting Section 403(b) contract, or any other contract to which contributions have been made by the employer, to satisfy Code §403(b), including information concerning the Participant's employment and information that takes into account other Section 403(b) contracts or employer plans (such as whether a Severance from Employment has occurred for purposes of the distribution restrictions in Treas. Reg. §1.403(b)-6 and whether the hardship withdrawal rules of Treas. Reg. §1.403(b)-6(d)(2) are satisfied).

(2)  Information necessary for the resulting Section 403(b) contract, or any other contract to which contributions have been made by the Employer, to satisfy other tax requirements (such as whether a plan loan satisfies the conditions in Code §72(p)(2) so that the loan is not a deemed distribution under Code §72(p)(1)).

**14.06**  **Plan-To-Plan Transfers.** Subject to the terms governing the applicable Investment Arrangement, the Plan Administrator may, but is not required to, permit plan-to-plan transfers. The Plan Administrator may decide in a separate policy whether the Plan accepts plan-to-plan transfers into the Plan and separately whether the Plan allows plan-to-plan transfers from the plan. Plan-to-plan transfers must satisfy the following conditions:

(a)  In the case of a transfer for a Participant, the Participant is an Employee or former Employee of the Employer (or the business of the employer) for the receiving plan;

(b)  In the case of a transfer for a Beneficiary of a deceased Participant, the Participant was an Employee or former Employee of the Employer (or business of the Employer) for the receiving plan;

(c)  The transferor plan provides for transfers;

(d)  The receiving plan provides for the receipt of transfers;

(e)  The Participant or Beneficiary whose assets are being transferred has an Accumulated Benefit immediately after the transfer that is at least equal to the Accumulated Benefit of that Participant or Beneficiary immediately before the transfer;

(f)  The receiving plan provides that, to the extent any amount transferred is subject to any distribution restrictions under Treas. Reg. §1.403(b)-6, the receiving plan imposes restrictions on distributions to the participant or beneficiary whose assets are being transferred that are not less stringent than those imposed on the transferor plan; and

(g)  If a plan-to-plan transfer does not constitute a complete transfer of the Participant's or Beneficiary's interest in the Plan, the transferee plan treats the amount transferred as a continuation of a pro rata portion of the Participant's or Beneficiary's interest in the Plan.

**14.07**  **Transfers to purchase permissive service credits.** The Plan Administrator may, but is not required to, permit transfers to purchase service credits as provided under this Section.

(a)  If a Participant is also a participant in a tax-qualified defined benefit governmental plan (as defined in Code §414(d)) that provides for the acceptance of plan-to-plan transfers with respect to the Participant, then the Participant may elect

to have any portion of the Participant's Accumulated Benefit transferred to the defined benefit governmental plan. A transfer may be made before the Participant has had a Severance from Employment.

**(b)**    A transfer may be made only if the transfer is either for the purchase of permissive service credits (as defined in Code §415(n)(3)(A)) under the receiving defined benefit governmental plan or a repayment to which Code §415 does not apply by reason of Code §415(k)(3).

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 111 of 177   Document 23-6

MTD Page 110

# SECTION 15
# MISCELLANEOUS

**15.01**    **Exclusive Benefit.** Except as provided under Section 15.02, no part of the Plan assets may revert to the Employer prior to the satisfaction of all liabilities under the Plan nor will such Plan assets be used for, or diverted to, a purpose other than the exclusive benefit of Participants or their Beneficiaries.

No amendment may authorize or permit any portion of the assets held under the Plan to be used for or diverted to a purpose other than the exclusive benefit of Participants or their Beneficiaries, except to the extent such assets are used to pay taxes or administrative expenses of the Plan. An amendment also may not cause or permit any portion of the assets held under the Plan to revert to or become property of the Employer.

**15.02**    **Return of Contributions.** Upon written request by the Plan Administrator, the Custodian/Insurance Company must return any Plan contributions (adjusted for any income or loss in value, if any) made because of a mistake of fact within one year of the contribution.

**15.03**    **General Compliance with Code §403(b).**

**(a)**    A Participant may not transfer his interest in the Plan, except as allowed by IRS regulations and approved by the Plan Administrator.

**(b)**    A Participant may not make Salary Deferrals under the Plan and all other plans, contracts or arrangements maintained by the Employer in any calendar year which exceeds the dollar limitation in effect under Code §402(g)(1).

**(c)**    Distributions of a Participant's benefits from the Plan shall begin no later than the Participant's required beginning date under Code §401(a)(9) and all payments shall satisfy the minimum distribution and incidental death benefit requirements of Code §401(a)(9).

**(d)**    In form and in operation, the Plan shall satisfy the direct rollover rules under Code §§403(b)(10) and 401(a)(31).

**(e)**    In form and in operation, the Plan shall satisfy the nondiscrimination requirements of Code §403(b)(12), if applicable.

**15.04**    **Alienation or Assignment.** Except as permitted under applicable statute or regulation, a Participant or Beneficiary may not assign, alienate, transfer or sell any right or claim to a benefit or distribution from the Plan, and any attempt to assign, alienate, transfer or sell such a right or claim shall be void, except as permitted by statute or regulation. Any such right or claim under the Plan shall not be subject to attachment, execution, garnishment, sequestration, or other legal or equitable process. This prohibition against alienation or assignment also applies to the creation, assignment, or recognition of a right to a benefit payable with respect to a Participant pursuant to a domestic relations order, unless such order is determined to be a QDRO pursuant to Section 11.09, or any domestic relations order entered before January 1, 1985.

This Section 15.04 shall not preclude the following:

**(a)**    The enforcement of a Federal tax levy made pursuant to Code §6331.

**(b)**    The collection by the United States on a judgment resulting from an unpaid tax assessment.

**(c)**    Any arrangement for the recovery by the plan of overpayments of benefits previously made to a participant.

This Section 15.04 shall not apply to an offset of a Participant's benefits as a result of a judgment of conviction for a crime involving the Plan, under a civil judgment brought in connection with a violation (or alleged violation) of ERISA, or pursuant to a settlement agreement as defined in Code §401(a)(13)(C).

**15.05**    **Participants' Rights.** The adoption of this Plan by the Employer does not give any Participant, Beneficiary, or Employee a right to continued employment with the Employer and does not affect the Employer's right to discharge an Employee or Participant at any time. This Plan also does not create any legal or equitable rights in favor of any Participant, Beneficiary, or Employee against the Employer or Plan Administrator. Unless the context indicates otherwise, any amendment to this Plan is not applicable to determine the benefits accrued (and the extent to which such benefits are vested) by a Participant or former Employee whose employment terminated before the effective date of such amendment, except where application of such amendment to the terminated Participant or former Employee is required by statute, regulation or other guidance of general applicability. Where the provisions of the Plan are ambiguous as to the application of an amendment to a terminated Participant or former Employee, the Plan Administrator has the authority to make a final determination on the proper interpretation of the Plan.

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 112 of 177    Document 23-6

MTD Page 111

15.06  **Military Service.** To the extent required under Code §414(u), an Employee who returns to employment with the Employer following a period of qualified military service will receive any contributions, benefits and service credit required under Code §414(u), provided the Employee satisfies all applicable requirements under the Code and regulations. In addition, the survivors of any Participant who dies on or after January 1, 2007, while performing qualified military service, are entitled to any additional benefits (other than benefit accruals relating to the period of qualified military service) that would have been provided under the Plan had the Participant resumed employment and then terminated employment on account of death.

The Employer may, for benefit accrual purposes, treat an individual who dies or becomes disabled while performing qualified military service as if that individual had resumed employment in accordance with USERRA reemployment rights on the day preceding the death or disability and then terminated employment on the actual date of death or disability.

15.07  **Annuity Contracts.** Any annuity contract distributed under the Plan must be nontransferable. In addition, the terms of any annuity contract purchased and distributed to a Participant or to a Participant's Spouse must comply with all requirements under this Plan.

15.08  **IRS Levy.** The Plan Administrator may pay from a Participant's or Beneficiary's Accumulated Benefit the amount that the Plan Administrator finds is lawfully demanded under a levy issued by the Internal Revenue Service with respect to that Participant or Beneficiary or is sought to be collected by the United States Government under a judgment resulting from an unpaid tax assessment against the Participant or Beneficiary.

15.09  **Use of IRS compliance programs.** Nothing in this Plan document should be construed to limit the availability of the IRS' voluntary compliance programs, An Employer may take whatever corrective actions are permitted under the IRS voluntary compliance programs, as is deemed appropriate by the Plan Administrator or Employer.

15.10  **Governing Law.** The provisions of this Plan shall be construed, administered, and enforced in accordance with the provisions of applicable Federal Law and, to the extent applicable, the laws of the State in which the Employer has its principal place of business.

15.11  **Waiver of Notice.** Any person entitled to a notice under the Plan may waive the right to receive such notice, to the extent such a waiver is not prohibited by law, regulation or other pronouncement.

15.12  **Use of Electronic Media.** The Plan Administrator may use telephonic or electronic media to satisfy any notice requirements required by this Plan, to the extent permissible under regulations (or other generally applicable guidance). In addition, a Participant's consent to immediate distribution, as required by Section 8.04, may be provided through telephonic or electronic means, to the extent permissible under regulations (or other generally applicable guidance). The Plan Administrator also may use telephonic or electronic media to conduct plan transactions such as enrolling participants, making (and changing) salary reduction elections, electing (and changing) investment allocations, applying for Plan loans, and other transactions, to the extent permissible under regulations (or other generally applicable guidance).

15.13  **Severability of Provisions.** In the event that any provision of this Plan shall be held to be illegal, invalid or unenforceable for any reason, the remaining provisions under the Plan shall be construed as if the illegal, invalid or unenforceable provisions had never been included in the Plan.

15.14  **Binding Effect.** The Plan, and all actions and decisions made thereunder, shall be binding upon all applicable parties, and their heirs, executors, administrators, successors and assigns.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 113 of 177   Document 23-6

MTD Page 112

# SECTION 16
# PARTICIPATING EMPLOYERS

**16.01**    **Participation by Participating Employers.** An Employer (other than the Employer that executes the Employer Signature Page of the Adoption Agreement) may elect to participate under this Plan by executing a Participating Employer Adoption Page under the Adoption Agreement. A Participating Employer (including a Related Employer) may not contribute to this Plan unless it executes the Participating Employer Adoption Page. If an unrelated Employer executes a Participating Employer Adoption Page, the Plan will be a Multiple Employer Plan. (See Section 16.07 for special rules applicable to Multiple Employer Plans).

**16.02**    **Participating Employer Adoption Page.**

    **(a)**    **Application of Plan provisions.** By executing a Participating Employer Adoption Page, a Participating Employer adopts all the provisions of the Plan, including the elective choices made by the signatory Employer under the Adoption Agreement. The Participating Employer may elect under the Participating Employer Adoption Page to modify the elective provisions under the Adoption Agreement as they apply to the Participating Employer.

    **(b)**    **Plan amendments.** In addition, unless provided otherwise under the Participating Employer Adoption Page, a Participating Employer is bound by any amendments made to the Plan in accordance with Section 14.01.

    **(c)**    **Investment Arrangements.** The Participating Employer agrees to use the same Vendors of Investment Arrangements designated in Addendum B – Vendors of Investment Arrangements. The Participating Employer may add additional Vendors of Investment Arrangements under Addendum B.

**16.03**    **Compensation of Related Employers.** In applying the provisions of this Plan, Total Compensation includes amounts earned with a Related Employer, regardless of whether such Related Employer executes a Participating Employer Adoption Page. The Employer may elect under AA §5-3(h) to exclude amounts earned with a Related Employer that does not execute a Participating Employer Adoption Page for purposes of determining an Employee's Plan Compensation.

**16.04**    **Allocation of Contributions and Forfeitures.** Unless selected otherwise under the Participating Employer Adoption Page, any contributions made by a Participating Employer (and any forfeitures relating to such contributions) will be allocated to all Participants employed by the Employer and Participating Employers in accordance with the provisions under this Plan. A Participating Employer may elect under the Participating Employer Adoption Page to allocate its contributions (and forfeitures relating to such contributions) only to the Participants employed by the Participating Employer making such contributions. If so elected, Employees of the Participating Employer will not share in an allocation of contributions (or forfeitures relating to such contributions) made by any other Participating Employer (except in such individual's capacity as an Employee of that other Participating Employer). Thus, for example, a Participating Employer may make a different discretionary contribution and allocate such contribution only to its Employees. Where contributions are allocated only to the Employees of a contributing Participating Employer, a separate accounting must be maintained of Employees' Account Balances attributable to the contributions of a particular Participating Employer. This separate accounting is necessary only for contributions that are not 100% vested, so that the allocation of forfeitures attributable to such contributions can be allocated for the benefit of the appropriate Employees. An election to allocate contributions and forfeitures only to the Participants employed by the Participating Employer making such contributions will preclude the Plan from satisfying the nondiscrimination safe harbor rules under Treas. Reg. §1.401(a)(4)-2 and may require additional nondiscrimination testing. (See Section 16.07 for special coverage and nondiscrimination testing requirements applicable to Multiple Employer Plans.)

**16.05**    **Discontinuance of Participation by a Participating Employer.** A Participating Employer may discontinue its participation under the Plan at any time. To document a Participating Employer's cessation of participation, the following procedures should be followed: (1) the Participating Employer should adopt a resolution that formally terminates active participation in the Plan as of a specified date, (2) the Employer that has executed the Employer Signature Page of the Adoption Agreement should re-execute such page, indicating an amendment by page substitution through the deletion of the Participating Employer Adoption Page executed by the withdrawing Participating Employer, and (3) the withdrawing Participating Employer should provide any notices to its Employees that are required by law. Discontinuance of participation means that no further benefits accrue after the effective date of such discontinuance with respect to employment with the withdrawing Participating Employer. The portion of the Plan attributable to the withdrawing Participating Employer may continue as a separate plan, under which benefits may continue to accrue, through the adoption by the Participating Employer of a successor plan (which may be created through the execution of a separate Adoption Agreement by the Participating Employer) or by spin-off of the portion of the Plan attributable to such Participating Employer followed by a merger or transfer into another existing plan, as specified in a merger or transfer agreement.

**16.06**    **Operational Rules for Related Employer Groups.** If an Employer has one or more Related Employers, the Employer and such Related Employer(s) constitute a Related Employer group. In such case, the following rules apply to the operation of the Plan.

---

© Copyright 2017
Volume Submitter 403(b) Basic Plan Document #08-001

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 114 of 177   Document 23-6

MTD Page 113

(a)     If the term "Employer" is used in the context of administrative functions necessary to the operation, establishment, maintenance, or termination of the Plan, only the Employer executing the Employer Signature Page under the Adoption Agreement, and any Related Employer executing a Participating Employer Adoption Page, is treated as the Employer.

(b)     Hours of Service are determined by treating all members of the Related Employer group as the Employer.

(c)     The term Excluded Employee is determined by treating all members of the Related Employer group as the Employer, except as specifically provided in the Plan.

(d)     Compensation is determined by treating all members of the Related Employer group as the Employer, except as specifically provided in the Plan.

(e)     An Employee is not treated as terminated from employment if the Employee is employed by any member of the Related Employer group.

(f)     The Code §415 Limitation described in Section 5.03 is applied by treating all members of the Related Employer group as the Employer.

In all other contexts, the term "Employer" generally means a reference to all members of the Related Employer group, unless the context requires otherwise. If the terms of the Plan are ambiguous with respect to the treatment of the Related Employer group as the Employer, the Plan Administrator has the authority to make a final determination on the proper interpretation of the Plan.

**16.07**     **Special rules for Multiple Employer Plans.** If an Employer (other than a Related Employer) executes a Participating Employer Adoption Page under the Adoption Agreement, the Plan is treated as a Multiple Employer Plan. If the Plan is a Multiple Employer Plan, the following rules apply.

(a)     **Eligibility requirements.** If the Plan is a Multiple Employer Plan, the eligibility rules under Section 2 are applied as if the Employees of all Employers participating in the Multiple Employer Plan are employed by a single Employer.

(b)     **Vesting rules.** If the Plan is a Multiple Employer Plan, the vesting rules under Section 7 are applied as if the Employees of all Employers participating in the Multiple Employer Plan are employed by a single Employer.

(c)     **Code §415 Limit.** If the Employer is a Multiple Employer Plan, the Code §415 Limit under Section 5.03 is applied as if the Employees of all Employers participating in the Multiple Employer Plan are employed by a single Employer. Thus, if a Participant receives contributions from more than one Employer within the Multiple Employer Plan, such contributions must be aggregated for purposes of applying the Code §415 Limit. For this purpose, Total Compensation from all participating Employers may be considered in applying the Code §415 Limit.

(d)     **Minimum coverage and nondiscrimination testing.** Each Participating Employer (that is not a Related Employer) that participates in a Multiple Employer Plan must separately satisfy, if applicable, the minimum coverage requirements under Code §410(b) and the nondiscrimination requirements under Code §401(a)(4) (including the ACP Tests) taking into account only Employees of that Employer. The failure of any participating Employer to satisfy the minimum coverage or nondiscrimination rules for a particular Plan Year may affect the tax status of the entire Plan.

(e)     **Other rules applicable to Multiple Employer Plans.** To the extent not addressed in this Section 16.07, rules similar to the rules under Code §413(c) and applicable regulations will apply to a Multiple Employer Plan.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 115 of 177   Document 23-6

MTD Page 114

**APPENDIX A**
**ACTUARIAL FACTORS**
**(For use with age-based allocation formula)**

**Actuarial Factor Table.** The following table sets forth Actuarial Factors based on a testing age of 65, an interest rate of 8.5% and a UP-1984 mortality table. The Actuarial Factors in this table must be modified if the Employer uses a testing age other than age 65 or selects a different interest rate or mortality table under AA §6-3(f). To determine a Participant's Actuarial Factor, use the factor corresponding to the number of years to the Participant's testing age. The number of years to the testing age is determined by counting the number of years from the last day of the current Plan Year to the last day of the Plan Year in which the Participant reaches the testing age. If the Participant has reached the testing age as of the last day of the current Plan Year, the number of years is 0 for that year and all subsequent years.

| Years to Testing Age | Actuarial Factor | | Years to Testing Age | Actuarial Factor |
|---|---|---|---|---|
| 0 | 0.07949 | | 25 | 0.01034 |
| 1 | 0.07326 | | 26 | 0.00953 |
| 2 | 0.06752 | | 27 | 0.00878 |
| 3 | 0.06223 | | 28 | 0.00810 |
| 4 | 0.05736 | | 29 | 0.00746 |
| 5 | 0.05286 | | 30 | 0.00688 |
| 6 | 0.04872 | | 31 | 0.00634 |
| 7 | 0.04490 | | 32 | 0.00584 |
| 8 | 0.04139 | | 33 | 0.00538 |
| 9 | 0.03814 | | 34 | 0.00496 |
| 10 | 0.03516 | | 35 | 0.00457 |
| 11 | 0.03240 | | 36 | 0.00422 |
| 12 | 0.02986 | | 37 | 0.00389 |
| 13 | 0.02752 | | 38 | 0.00358 |
| 14 | 0.02537 | | 39 | 0.00330 |
| 15 | 0.02338 | | 40 | 0.00304 |
| 16 | 0.02155 | | 41 | 0.00280 |
| 17 | 0.01986 | | 42 | 0.00258 |
| 18 | 0.01831 | | 43 | 0.00238 |
| 19 | 0.01687 | | 44 | 0.00219 |
| 20 | 0.01555 | | 45 | 0.00202 |
| 21 | 0.01433 | | 46 | 0.00186 |
| 22 | 0.01321 | | 47 | 0.00172 |
| 23 | 0.01217 | | 48 | 0.00158 |
| 24 | 0.01122 | | 49 | 0.00146 |

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 116 of 177   Document 23-6

MTD Page 115

**APPENDIX B
INTERIM AMENDMENT #1**

**ARTICLE I
PURPOSE OF APPENDIX B**

B-1.01    **Adoption by Pre-Approved Plan Sponsor.** Pursuant to Revenue Procedure 2013-22 and Section 14.01(a) of the Plan, the Plan is being amended by the Pre-Approved Plan Sponsor on behalf of all adopting Employers. This interim amendment is intended to qualify as a good-faith amendment to document the Plan's compliance with the plan qualification requirements under IRS guidance. A copy of this amendment will be provided to all adopting Employers of the Pre-Approved Plan and made a part of their Plans.

B-1.02    **Application.** This Appendix B supersedes any contrary provisions under the Plan. However, this amendment does not replace any prior amendments that were adopted to comply with applicable requirements. Thus, the date of adoption of any prior amendments will continue to control in determining the date as of which such amendments were first adopted.

**ARTICLE II
AMENDMENTS APPLICABLE TO SAFE HARBOR 403(b) PLANS
USE OF FORFEITURES TO FUND QUALIFIED NONELECTIVE EMPLOYER CONTRIBUTIONS AND
SAFE HARBOR 403(b) CONTRIBUTIONS; and MID-YEAR CHANGES TO 403(b) PLANS**

B-2.01    **Change in Definition for QNEC.** This section amends the Plan to reflect the proposed Treasury regulations issued January 18, 2017, which change the definitions of Qualified Nonelective Contribution (QNEC) under Treas. Reg. §1.401(k)-6. As provided in the preamble of the proposed regulations, the Employer may rely on the change in definition of QNECs for periods preceding the applicability date of the proposed regulations. These amendments supersede any contrary provisions under the Plan. Pursuant to this amendment, Section 3.02(a)(6)(i) is deleted and replaced with the following:

>       "**Requirements for a QNEC.** In order to qualify as a QNEC, an Employer Contribution must satisfy the following requirements:

>       **(A)**    **100% vesting.** A QNEC must be 100% vested when allocated to a Participant's Account.

>       **(B)**    **Distribution restrictions.** A QNEC when allocated to a Participant's Account must be subject to the same distribution restrictions applicable to Salary Deferrals under Section 8.09(c), except that no portion of a Participant's QNEC Account may be distributed on account of Hardship.

>       **(C)**    **Allocation conditions.** A QNEC will not be subject to the allocation provisions applicable to Employer Contributions, as designated under AA §6-3, unless provided otherwise under the AA §6D-3."

B-2.02    **Forfeiture Rules for Other Contributions.** Section 7.11(d)(1) of the Plan is amended by deleting the sentence that reads: "Effective with the adoption of this Plan, if the Plan is a Safe Harbor 403(b) Plan, the Employer may not use forfeitures to reduce the Safe Harbor Employer Contribution or Safe Harbor Matching Contribution under the Plan, unless provided otherwise under IRS guidance." and inserting the following sentence: "The Employer may use forfeitures to reduce the Safe Harbor Employer Contribution and/or Safe Harbor Matching Contribution under the Plan."

B-2.03    **Mid-Year Changes to Safe Harbor 403(b) Plans.** Effective for mid-year changes to Safe Harbor 403(b) Plans, the Employer may make mid-year changes to the Plan as provided under IRS Notice 2016-16.

**ARTICLE III
AMENDMENTS RELATING TO REQUIRED MINIMUM DISTRIBUTION REQUIREMENTS**

B-3.01    **Application of the Minimum Distribution Requirements of Code §401(a)(9).** As set forth in Section 8.11 of the Plan, the Plan shall comply with the minimum distribution requirements of Code §401(a)(9) and the regulations thereunder as applicable to Code §403(b) plans. These requirements are incorporated by reference into the Plan, with the general rules set forth in Sections B-3.02 – B-3.07 below. Subject to the terms of the applicable Investment Arrangements, the Plan Administrator shall ensure that the Plan conforms with the minimum distribution requirements, including the final regulations under Treas. Reg. §1.401(a)(9)-6 relating to the purchase of Qualifying Longevity Annuity Contracts. The Plan Administrator may adopt appropriate administrative procedures, consistent with the provisions of the applicable Investment Arrangements, to assist in compliance with the minimum distribution requirements of Code §401(a)(9) and the regulations thereunder as applicable to

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 117 of 177   Document 23-6

MTD Page 116

Code §403(b) plans. In the event of any conflict between the terms of the Plan and terms of any associated Investment Arrangement, the terms of the Plan shall govern.

**B-3.02** **General Rules Regarding Minimum Distribution Requirements.** Unless and to the extent otherwise permitted by law and in regulations or other rules of general applicability published by the Department of the Treasury or the Internal Revenue Service, the Plan shall comply with the minimum distribution requirements of section 401(a)(9) of the Internal Revenue Code and the regulations thereunder in accordance with Sections B-3.03 through B-3.07. The distribution requirements in Sections B-3.03 through B-3.07 generally apply to a Participant's entire Accumulated Benefit. However, these requirements do not apply to the undistributed portion of a Participant's Accumulated Benefit valued as of December 31, 1986, exclusive of subsequent earnings (the pre-'87 account balance), provided that the applicable requirements of §1.401(a)(9)-6(e)(6) of the Treasury Regulations are satisfied. In this case, a Participant's pre-'87 account balance shall be distributed in accordance with the incidental benefit requirements of §1.401-1(b)(1)(i) of the Treasury Regulations. To the extent permitted under §1.403(b)-6(e)(7), a Participant's Investment Arrangement(s) under the Plan, or under the Plan and other §403(b) plans in which the Participant participates as an Employee, may be aggregated and the minimum distribution requirements satisfied by distribution from any one or more of the Investment Arrangements.

**B-3.03** **Required Minimum Distributions.** Distribution of the Participant's Accumulated Benefit will begin no later than the first day of April following the later of the calendar year in which the Participant attains age 70½ or the calendar year in which the Participant retires from employment (the "required beginning date") over (1) the life of the Participant, (2) the lives of the Participant and Beneficiary, or (3) a period certain not extending beyond the life expectancy of the Participant or the joint and last survivor expectancy of the Participant and Beneficiary. However, distributions to a 5-percent owner (if applicable) must commence by April 1 of the calendar year following the calendar year in which the owner attains age 70½.

    **(a)** If the Participant's Accumulated Benefit is not distributed as an annuity, the amount to be distributed each year, beginning with the calendar year the Participant attains age 70 ½ or retires and continuing through the year of death, shall not be less than the quotient obtained by dividing the value of the Accumulated Benefit, including outstanding rollovers and transfers, as of the end of the preceding year by the distribution period in the Uniform Lifetime Table in Q&A-2 of §1.401(a)(9)-9 of the Treasury Regulations, using the Participant's age as of his or her birthday in the Distribution Calendar Year. However, if the Participant's sole Beneficiary is his or her surviving Spouse and such Spouse is more than 10 years younger than the Participant, then the distribution period is determined under the Joint and Last Survivor Table in Q&A-3 of §1.401(a)(9)-9, using the ages as of the Participant's and Spouse's birthdays in the year of the Spouse's death.

    **(b)** If the Participant's Accumulated Benefit is distributed as an annuity, the distribution periods described in paragraph (a) above cannot exceed the periods specified in §1.401(a)(9)-6 of the Treasury Regulations. Payments must be made in periodic payments at intervals of no longer than one year and must be either non-increasing or they may increase only as provided in Q&As-1 and -4 of §1.401(a)(9)-6 of the Treasury Regulations. In addition, any distribution must satisfy the incidental benefit requirements specified in Q&A-2 of §1.401(a)(9)-6.

    **(c)** The required minimum distribution for the year the Participant attains age 70 ½ or retires (or first required annuity payment) can be made as late as the required beginning date. The required minimum distribution (or required annuity payment) for any other year, including the year that contains the required beginning date, must be made by the end of such year.

**B-3.04** **Death On or After Required Beginning Date or Date Required Annuity Payments Begin.** If the Participant's Accumulated Benefit is distributed as an annuity and the Participant dies on or after required payments begin, the remaining portion of the Participant's interest will continue to be distributed under the contract option chosen. If the Participant's Accumulated Benefit is not distributed as an annuity and the Participant dies on or after the required beginning date, the remaining portion of the Participant's interest will be distributed at least as rapidly as follows:

    **(a)** If the Beneficiary is someone other than the Participant's surviving Spouse, the remaining interest will be distributed over the remaining life expectancy of the Beneficiary, with such life expectancy determined using the Beneficiary's age as of his or her birthday in the year following the year of the Participant's death, or over the period described in paragraph (c) below if longer.

    **(b)** If the Participant's sole Beneficiary is the Participant's surviving Spouse, the remaining interest will be distributed over the Spouse's life or over the period described in paragraph (c) below if longer. Any interest remaining after the Spouse's death will be distributed over the Spouse's remaining life expectancy determined using the Spouse's age as of his or her birthday in the year of the Spouse's death, or, if the distributions are being made over the period described in paragraph (c) below, over such period.

    **(c)** If there is no Beneficiary, or if applicable by operation of paragraph (a) or (b) above, the remaining interest will be distributed over the Participant's remaining life expectancy determined in the year of the Participant's death.

(d)     The amount to be distributed each year under paragraph (a), (b) or (c), beginning with the calendar year following the calendar year of the Participant's death, is the quotient obtained by dividing the value of the Accumulated Benefit as of the end of the preceding year by the remaining life expectancy specified in such paragraph. Life expectancy is determined using the Single Life Table in Q&A-1 of §1.401(a)(9)-9 of the Treasury Regulations. If distributions are being made to a surviving Spouse as the sole Beneficiary, the Spouse's remaining life expectancy for a year is the number in the Single Life Table corresponding to such Spouse's age in the year. In all other cases, remaining life expectancy for a year is the number in the Single Life Table corresponding to the Beneficiary's or Participant's age in the year specified in paragraph (a), (b) or (c) and reduced by 1 for each subsequent year.

**B-3.05**     **Death Before Required Beginning Date or Date Required Annuity Payments Begin.** If the Participant dies before the required beginning date (or the date required payments begin, in the case of an annuity), his or her entire interest will be distributed at least as rapidly as follows:

(a)     If the Beneficiary is someone other than the Participant's surviving Spouse, the entire interest will be distributed, starting by the end of the calendar year following the calendar year of the Participant's death, over the remaining life expectancy of the Beneficiary, with such life expectancy determined using the age of the Beneficiary as of his or her birthday in the year following the year of the Participant's death, or, if elected, in accordance with paragraph (c) below.

(b)     If the Participant's Beneficiary is the Participant's surviving Spouse, the entire interest will be distributed, starting by the end of the calendar year following the calendar year of the Participant's death (or by the end of the calendar year in which the Participant would have attained age 70½, if later), over the Spouse's life, or, if elected, in accordance with paragraph (c) below. If the surviving Spouse dies before distributions are required to begin, the remaining interest will be distributed, starting by the end of the calendar year following the calendar year of the Spouse's death, over the Spouse's Beneficiary's remaining life expectancy determined using the Beneficiary's age as of his or her birthday in the year following the death of the Spouse, or, if elected, will be distributed in accordance with paragraph (c) below. If the surviving Spouse dies after distributions are required to begin, any remaining interest will be distributed under the contract option chosen, in the case of an annuity, or over the Spouse's remaining life expectancy determined using the Spouse's age as of his or her birthday in the year of the Spouse's death.

(c)     If there is no Beneficiary, or if applicable by operation of paragraph (a) or (b) above, the entire interest, to the extent required by regulations, will be distributed by the end of the calendar year containing the fifth anniversary of the Participant's death (or of the Spouse's death in the case of the surviving Spouse's death before distributions are required to begin under paragraph (b) above).

**B-3.06**     Except in the case of a distribution as an annuity, the amount to be distributed each year under paragraph B-3.05(a) or B-3.05(b) is the quotient obtained by dividing the value of the account as of the end of the preceding year by the remaining life expectancy specified in such paragraph. Life expectancy is determined using the Single Life Table in Q&A-1 of §1.401(a)(9)-9 of the Treasury Regulations. If distributions are being made to a surviving Spouse as the designated Beneficiary, the Spouse's remaining life expectancy for a year is the number in the Single Life Table corresponding to the Spouse's age in the year. In all other cases, remaining life expectancy for a year is the number in the Single Life Table corresponding to the Beneficiary's age in the year specified in Section B-3.05(a) or B-3.05(b) and reduced by 1 for each subsequent year. The "value" of the Accumulated Benefit or the "interest" in the annuity includes the amount of any outstanding rollover and transfer and the actuarial value of any other benefits provided under the annuity such as guaranteed death benefits, to the extent required under applicable regulations.

**B-3.07**     For purposes of Sections B-3.04 and B-3.05 above, required annuity payments are considered to begin on the Participant's required beginning date or, if applicable, on the date distributions are required to begin to the surviving Spouse under Section B-3.05(b) above. However, if distributions start prior to the applicable date in the preceding sentence, on an irrevocable basis (except for acceleration) under an Annuity Contract meeting the requirements of §1.401(a)(9)-6 of the Treasury Regulations, then required annuity payments are considered to begin on the annuity starting date.

# ARTICLE IV
## AMENDMENTS RELATING TO CLAIMS FOR DISABILITY BENEFITS

**B-4.01**     **Claims for Disability Benefits.** Effective for all claims for disability benefits filed on or after January 1, 2018 and to the extent applicable to the Plan, the Plan Administrator must follow the revised claims procedure rules as enumerated by the Department of Labor under ERISA §503 and revised regulations under Department of Labor Regulation §2560-503-1. To the extent that the claims procedures under Section 11.10 of the Plan conflict with the revised disability claims procedures rules, those procedures are superseded. The new disability claims procedures apply only to the determination under the Plan as to whether a Participant is entitled to a Plan benefit due to disability. The new disability claims procedures do not apply if a third party (such as the Social Security Administration), rather than the Plan Administrator, makes the determination of disability.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 119 of 177   Document 23-6

MTD Page 118

**B-4.02** **Revision to Disability Claims Regulations.** If the Department of Labor revises, delays or withdraws its Regulation §2560-503-1, the claims procedures applicable to claims for disability benefits will change accordingly.

**ARTICLE V**
**AMENDMENTS RELATING TO DISASTER RELIEF**

**B-5.01** **Relief for Victims of Certain Qualified Natural Disasters.** Notwithstanding other provisions of the Plan, the Employer may operate the Plan to provide relief from certain qualification rules relating to hardship distributions and loans for Participants who are victims of certain Qualified Natural Disasters, as set forth under applicable IRS or legislative guidance.

**B-5.02** **Qualified Natural Disasters.** For purposes of this section, Qualified Natural Disasters include:

**(a)** Louisiana storms, as provided under IRS Announcement 2016-30.

**(b)** Hurricane Matthew, as provided under IRS Announcement 2016-36.

**(c)** Hurricane Harvey, as provided under IRS Announcement 2017-11.

**(d)** Hurricane Irma, as provided under IRS Announcement 2017-13.

**(e)** Hurricane Maria and the California Wildfires, as provided under IRS Announcement 2017-15.

**(f)** Any other natural disaster for which the IRS or Congress provides relief from certain qualification rules.

**B-5.03** **General Rules.** If the Employer and the Plan Administrator make good-faith efforts to apply the Plan provisions in conformance with the relief provided under applicable guidance, the Plan will not be treated as failing to satisfy the requirements of the Code or regulations. In general, the following rules apply:

**(a)** In order to make a loan or distribution (including a hardship distribution), the Plan must provide for loans or distributions, as applicable.

**(b)** Participants (victims) for whom the relief is available are determined under the appropriate IRS or legislative guidance.

**(c)** The amount available for hardship distribution is limited to the maximum amount that would be available for a hardship distribution under the Plan. However, the relief provided applies to any hardship of the Participant and no post-distribution contribution restrictions apply.

**(d)** To qualify for relief under this section, a hardship distribution must be made on account of a hardship resulting from the applicable Qualified Natural Disaster and within the time frame provided under the applicable guidance relating to the Qualified Natural Disaster.

**(e)** The Plan will not be treated as failing to follow Plan procedural requirements for loans or distributions during the periods provided under guidance relating to the applicable Qualified Natural Disaster.

**Froedtert Health, Inc.**
**VOLUME SUBMITTER 403(b) PLAN**
**ADOPTION AGREEMENT #001**
**For 501(c)(3) Organizations and Electing Churches**
**[Dual Status Code §501(c)(3)/Governmental Organizations should use AA #004]**

By executing this Volume Submitter 403(b) Plan Adoption Agreement (the "Agreement or AA"), the undersigned Employer agrees to establish or continue a 403(b) Plan. The 403(b) Plan adopted by the Employer consists of the Volume Submitter 403(b) Plan Basic Plan Document #08 (the "BPD") and the elections made under this Agreement (collectively referred to as the "Plan"). An Employer may jointly co-sponsor the Plan by signing a Participating Employer Adoption Page, which is attached to this Agreement. **This Plan is effective as of the Effective Date identified on the Signature Page of this Agreement.**

In completing the provisions of this Adoption Agreement, unless designated otherwise, selections under the Deferral column apply to all Salary Deferrals (including Roth Deferrals and Catch-Up Contributions) and After-Tax Employee Contributions. In addition, selections under the Deferral column apply to any Safe Harbor Contributions, unless designated otherwise under AA §6C, and also apply to any QNECs made under the Plan, unless designated otherwise under AA §6D. The selections under the Match column apply to Matching Contributions under AA §6B and selections under the ER column apply to Employer Contributions under AA §6.

Generally, this Plan is subject to the requirements under Title I of ERISA. However, if the Plan is funded solely through Salary Reduction Agreements with Employees, the Plan is not subject to the requirements under Title I of ERISA if it satisfies the safe harbor conditions of Department of Labor regulation §2510.3-2(f).

**All elections the Employer makes under the Adoption Agreement are subject to the terms governing the applicable Investment Arrangement(s) and any applicable state or local law.**

## SECTION 1
## EMPLOYER INFORMATION

*The information contained in this Section 1 is informational only. The information set forth in this Section 1 may be modified without amending this Agreement. Any changes to this Section 1 may be accomplished by substituting a new Section 1 with the updated information. The information contained in this Section 1 is not required for qualification purposes and any changes to the provisions under this Section 1 will not affect the Employer's reliance on the Favorable IRS Letter.*

**1-1    EMPLOYER INFORMATION:**

Name: Froedtert Health, Inc.

Address: 400 Woodland Prime, Suite 302

N74 W12501 Leatherwood Court

City, State, Zip Code: Menomonee Falls, WI 53051

Telephone: 414-777-1999

**1-2    EMPLOYER IDENTIFICATION NUMBER (EIN):** 39-2014409

**1-3    TYPE OF EMPLOYER: (Select (a) or (b))**

☑ (a)  Organization exempt from tax under Code §501(c)(3)
Describe (optional): _____

☐ (b)  Electing Church (as defined in Section 1.43 of the Plan)

**1-4    EMPLOYER'S TAX YEAR END:** The Employer's tax year ends June 30

**1-5    RELATED EMPLOYERS:** Is the Employer part of a group of Related Employers (as defined in Section 1.113 of the Plan)?

☑  Yes

☐  No

If yes, Related Employers may be listed below. A Related Employer must complete a Participating Employer Adoption Page for Employees of that Related Employer to participate in this Plan. The failure to cover the Employees of a Related Employer may result in a violation of the minimum coverage rules under Code §410(b).

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 121 of 177   Document 23-6
MTD Page 120

*[Note: This AA §1-5 is for informational purposes. The failure to identify all Related Employers under this AA §1-5 will not jeopardize the qualified status of the Plan.]*

## SECTION 2
## PLAN INFORMATION

2-1  **PLAN NAME:** Froedtert Health, Inc. 403(b) Plan

2-2  **PLAN NUMBER:** 003

2-3  **TYPE OF PLAN:**
- ☐ (a)  Custodial Account under Code §403(b)(7)
- ☐ (b)  Annuity Contract under Code §403(b)(1)
- ☑ (c)  Combination Custodial Account and Annuity Contract

*[Note: Employers may not use this Adoption Agreement to adopt a retirement income account under Code §403(b)(9).]*

2-4  **PLAN YEAR:**
- ☑ (a)  Calendar year.
- ☐ (b)  The 12-consecutive month period ending on _____ each year.
- ☐ (c)  The Plan has a Short Plan Year running from _____ to _____.

2-5  **FROZEN PLAN:** Check this AA §2-5 if the Plan is a frozen Plan to which no contributions will be made.
- ☐  This Plan is a frozen Plan effective _____.

*[Note: As a frozen Plan, the Employer will not make any contributions with respect to Plan Compensation earned after such date and no Participant will be permitted to make any contributions to the Plan after such date. In addition, no Employee will become a Participant after the date the Plan is frozen.]*

2-6  **MULTIPLE EMPLOYER PLAN:** Is this Plan a Multiple Employer Plan as defined in Section 1.81 of the Plan? (See Section 16.07 of the Plan for special rules applicable to Multiple Employer Plans.)
- ☐  Yes
- ☑  No

2-7  **PLAN ADMINISTRATOR:**
- ☐ (a)  The Employer identified in AA §1-1.
- ☑ (b)  Name: Froedtert Health, Inc. Benefit Plan Committee

  Address: 400 Woodland Prime, Suite 302, N74 W12501 Leatherwood Court Menomonee Falls, WI 53051

  Telephone: 414-777-1999

*[Note: This AA §2-7 may be used to designate an individual who is acting as Plan Administrator under ERISA §3(16). To the extent an individual is named under this AA §2-7 and does not take on all responsibilities of Plan Administrator, the Employer will retain those responsibilities as Plan Administrator. See Section 1.93 of the Plan.]*

## SECTION 3
## ELIGIBLE EMPLOYEES

3-1  **ELIGIBLE EMPLOYEES:** In addition to the Employees identified in Section 2.02 of the Plan, the following Employees are excluded from participation under the Plan with respect to the contribution source(s) identified in this AA §3-1. (See Sections 2.02(e) and (f) of the Plan for rules regarding the effect on Plan participation if an Employee changes between an eligible and ineligible class of employment.)

| Deferral | Match | ER | | |
|---|---|---|---|---|
| ☐ | ☐ | ☐ | (a) | No exclusions |
| N/A | ☐ | ☐ | (b) | Collectively Bargained Employees (as defined in Section 1.28 of the |

| Deferral | Match | ER | | |
|:---:|:---:|:---:|:---|:---|
| | | | | Plan) |
| ☑ | ☑ | ☑ | (c) | Non-resident aliens who receive no compensation from the Employer which constitutes U.S. source income |
| ☐ | ☐ | ☐ | (d) | Student Employees (as defined in Section 1.130 of the Plan) |
| ☐ | ☐ | ☐ | (e) | Employees who normally work less than ___ (not more than 20) hours a week. (See Section 2.02(b)(4) of the Plan, especially for the application of this exclusion to plans covered by Title I of ERISA.) |
| N/A | ☐ | ☐ | (f) | Highly Compensated Employees (as defined in Section 1.66 of the Plan) |
| ☐ | ☐ | ☐ | (g) | Employees eligible for a Code §401(k) plan sponsored by the Employer |
| ☐ | ☐ | ☐ | (h) | Employees eligible for another 403(b) plan sponsored by the Employer |
| ☐ | N/A | N/A | (i) | Employees whose contribution would be $200 or less. |
| N/A | ☑ | ☑ | (j) | Other: <u>1) For purposes of Matching Contributions and Employer Contributions, Collectively Bargained Employees, unless the Collective Bargaining Agreement allows it; 2) For purposes of Employer Contributions (historically known as "Employer Service Contributions"), grandfathered Participants who are participating in and accruing a benefit from the Community Memorial Hospital Retirement Plan.</u> |

*[**Note:** Any election to exclude Employees from making Salary Deferrals must satisfy the universal availability requirements under Treas. Reg. §1.403(b)-5(b). A class of Employees excluded under the Plan must be defined in such a way that it precludes Employer discretion and may not provide for an exclusion designed to cover only Nonhighly Compensated Employees with the lowest amount of compensation and/or the shortest period of service who may represent the minimum number of Nonhighly Compensated Employees necessary to satisfy the coverage requirements under Code §410(b). If a Plan is covered by Title I of ERISA, the Plan must satisfy the minimum age and service requirements of ERISA §202(a) and an Employee otherwise excluded under AA §3-1 must enter the Plan no later than the first day of the Plan Year or 6 months (whichever is earlier) following the attainment of age 21 and completion of a Year of Service. For this purpose, an Employee is credited with a Year of Service if such Employee is credited with 1,000 Hours of Service in the 12-month period starting with the Employee's Employment Commencement Date or in any Plan Year commencing after the Employment Commencement Date. Once eligible due to satisfaction of this service condition, the Employee will continue to be eligible under the Plan.]*

3-2  **EMPLOYEES OF AN EMPLOYER ACQUIRED AS PART OF A CODE §410(b)(6)(C) TRANSACTION.** An Employee acquired as part of a Code §410(b)(6)(C) transaction will become an Eligible Employee as of the date of the transaction (unless otherwise excluded under AA §3-1 or this AA §3-2). (See Section 2.02(d) of the Plan.)

*[**Note:** The Plan may not exclude Employees in violation of the universal availability rules under Treas. Reg. §1.403(b)-5(b).]*

Employees of the following Employers acquired as part of a Code §410(b)(6)(C) transaction are not eligible to participate under the Plan.

☐ (a)  Employees of an Employer acquired as part of a Code §410(b)(6)(C) transaction will not become an Eligible Employee until after the expiration of the transition period described in Code §410(b)(6)(C)(ii) (i.e., the period beginning on the date of the transaction and ending on the last day of the first Plan Year beginning after the date of the transaction). (See Section 2.02(d) of the Plan.)

☐ (b)  All Employees of any Employer acquired as part of a Code §410(b)(6)(C) transaction are excluded.

☐ (c)  The following acquired Employees are excluded/included under the Plan:

  *[**Note:** This subsection may be used to provide for the inclusion or exclusion of Employees with respect to specific Employers at a time other than provided under this AA §3-2.]*

☐ (d)  Describe any special rules that apply for purposes of applying the rules under this AA §3-2: _____

*[**Note:** If this AA §3-2 is not completed, Employees acquired under a Code §410(b)(6)(C) transaction will become Eligible Employees as of the date of the transaction. However, see Section 2.02(c) of the Plan for rules regarding the coverage of Employees of a Related Employer and AA §4-5 for rules regarding the crediting of service with a Predecessor Employer. Any special rules are subject to the minimum coverage requirements under Code §410(b) and the nondiscrimination rules under Code §401(a)(4).]*

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 123 of 177   Document 23-6
MTD Page 122

## SECTION 4
## MINIMUM AGE AND SERVICE REQUIREMENTS

**4-1    ELIGIBILITY REQUIREMENTS – MINIMUM AGE AND SERVICE:** An Eligible Employee (as defined in AA §3-1) who satisfies the minimum age and service conditions under this AA §4-1 will be eligible to participate under the Plan as of his/her Entry Date (as defined in AA §4-2 below).

*[**Note:** An Eligible Employee becomes eligible to make Salary Deferrals on such Employee's first day of employment with the Employer. The Plan Administrator may establish reasonable administrative procedures to implement a Participant's election to make Salary Deferrals, as described in Section 6.01(b) of the Plan.]*

(a)    **Service Requirement.** An Eligible Employee must complete the following minimum service requirements to participate in the Plan. If a different minimum service requirement applies for the same contribution type for different groups of Employees or for different contribution formulas, such differences may be described below.

| Match | ER | | |
|:---:|:---:|---|---|
| ☑ | ☑ | (1) | There is no minimum service requirement for participation in the Plan. |
| ☐ | ☐ | (2) | One Year of Service (as defined in Section 2.03(a)(1) of the Plan and AA §4-3). |
| ☐ | ☐ | (3) | The completion of at least ___ *[cannot exceed 1,000]* Hours of Service during the first ___ *[cannot exceed 12]* months of employment or the completion of a Year of Service (as defined in AA §4-3), if earlier. |

      ☐ (i)  An Employee who completes the required Hours of Service satisfies eligibility at the end of the designated period, regardless if the Employee actually works for the entire period.

      ☐ (ii)  An Employee who completes the required Hours of Service must also be employed continuously during the designated period of employment. (See Section 2.03(a)(2) of the Plan for rules regarding the application of this subsection (ii).)

| Match | ER | | |
|:---:|:---:|---|---|
| ☐ | ☐ | (4) | The completion of ___ *[cannot exceed 1,000]* Hours of Service during an Eligibility Computation Period (as defined in AA §4-3). *[An Employee satisfies the service requirement immediately upon completion of the designated Hours of Service rather than at the end of the Eligibility Computation Period.]* |
| ☐ | ☐ | (5) | Full-time Employees are eligible to participate as set forth in subsection (i). Employees who are "part-time" Employees must complete a Year of Service (as defined in AA §4-3). For this purpose, a full-time Employee is any Employee not defined in subsection (ii). |

      (i)  Full-time Employees must complete the following minimum service requirements to participate in the Plan:

        ☐ (A)  There is no minimum service requirement for participation in the Plan.

        ☐ (B)  The completion of at least ___ *[cannot exceed 1,000]* Hours of Service during the first ___ *[cannot exceed 12]* months of employment or the completion of a Year of Service (as defined in AA §4-3), if earlier.

        ☐ (C)  Under the Elapsed Time method as defined in AA §4-3 below.

        ☐ (D)  Describe: _____

        *[**Note:** Any conditions provided under (D) must satisfy the requirements of Code §410(a).]*

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 124 of 177    Document 23-6
MTD Page 123

|  Match | ER |  |
|--------|-----|--|

(ii) Part-time Employees must complete a Year of Service (as defined in AA §4-3). For this purpose, a part-time Employee is any Employee (including a temporary or seasonal Employee) whose normal work schedule is less than:

☐ (A) _____ hours per week. [No more than 20 hours.]

☐ (B) _____ hours per month. [No more than 80 hours.]

☐ (C) _____ hours per year. [No more than 1,000 hours.]

| Match | ER | | |
|-------|-----|--|--|
| ☐ | ☐ | (6) | Two (2) Years of Service. [*Full and immediate vesting must be chosen under AA §8-2.*] |
| ☐ | ☐ | (7) | Under the Elapsed Time method as defined in AA §4-3 below. |
| ☐ | ☐ | (8) | Describe eligibility conditions: _____ |
| ☐ | ☐ | | Describe eligibility conditions: _____ |

*[**Note:** Any conditions on eligibility must satisfy the requirements of Code §410(a). An eligibility condition under this AA §4-1 may not cause an Employee to enter the Plan later than the first Entry Date following the completion of a Year of Service (as defined in AA §4-3). Also see Section 2.02(b)(8) and (9) for rules regarding the exclusion of certain "short-service" Employees and disguised service conditions.]*

(b) **Minimum Age Requirement.** An Eligible Employee (as defined in AA §3-1) must have attained the following age with respect to the contribution source(s) identified in this AA §4-1(b).

| Match | ER | | |
|-------|-----|--|--|
| ☑ | ☑ | (1) | There is no minimum age for Plan eligibility. |
| ☐ | ☐ | (2) | Age 21. |
| ☐ | ☐ | (3) | Age 20½. |
| ☐ | ☐ | (4) | Age ___ (not later than age 21, but see Note below for certain educational organizations). |

*[**Note:** If the Employer is an educational organization described in Code §170(b)(1)(A)(ii) exempt from tax under Code §501(a), the maximum age may be up to age 26, provided the Plan does not require more than one Year of Service to participate and all Participants are immediately vested in their Accounts.]*

☐ (c) **Special eligibility rules.** The following special eligibility rules apply with respect to the Plan: _____

*[**Note:** This subsection (c) may be used to apply the eligibility conditions selected under this AA §4-1 separately with respect to different Employee groups or different contribution formulas under the Plan. Any special eligibility rules must satisfy the requirements of Code §410(a) and the nondiscrimination requirements under Code §401(a)(4) and the regulations thereunder.]*

4-2 **ENTRY DATE:** An Eligible Employee (as defined in AA §3-1) who satisfies the minimum age and service requirements in AA §4-1 shall be eligible to participate in the Plan as of his/her Entry Date. For this purpose, the Entry Date is the following date with respect to the contribution source(s) identified under this AA §4-2.

| Match | ER | | |
|-------|-----|--|--|
| ☑ | ☑ | (a) | **Immediate.** The date the minimum age and service requirements are satisfied (or date of hire, if no minimum age and service requirements apply). |
| ☐ | ☐ | (b) | **Semi-annual.** The first day of the 1st and 7th month of the Plan Year. |
| ☐ | ☐ | (c) | **Quarterly.** The first day of the 1st, 4th, 7th and 10th month of the Plan Year. |
| ☐ | ☐ | (d) | **Monthly.** The first day of each calendar month. |
| ☐ | ☐ | (e) | **Payroll period.** The first day of the payroll period. |
| ☐ | ☐ | (f) | **The first day of the Plan Year.** |

An Eligible Employee's Entry Date (as defined above) is determined based on when the Employee satisfies the minimum age and service requirements in AA §4-1. For this purpose, an Employee's Entry Date is the Entry Date:

| Match | ER | | |
|-------|-----|-----|-----|
| ☐ | ☐ | (g) | **next following** satisfaction of the minimum age and service requirements. |
| ☐ | ☐ | (h) | **coinciding with or next following** satisfaction of the minimum age and service requirements. |
| ☐ | ☐ | (i) | **nearest** the satisfaction of the minimum age and service requirements. |
| ☐ | ☐ | (j) | **preceding** the satisfaction of the minimum age and service requirements. |

This section may be used to describe any special rules for determining Entry Dates under the Plan. For example, if different Entry Date provisions apply for the same contribution sources with respect to different groups of Employees, such different Entry Date provisions may be described below.

| Match | ER | | |
|-------|-----|-----|-----|
| ☐ | ☐ | (k) | **Describe** any special rules that apply with respect to the Entry Dates under this AA §4-2: _____ |

*[Note: Any special rules must satisfy the requirements of Code §410(a), the nondiscrimination requirements under Code §401(a)(4) and the regulations thereunder and may not cause an Employee to enter the Plan later than the first Entry Date following the completion of a Year of Service (as defined in AA §4-3).]*

**4-3 DEFAULT ELIGIBILITY RULES.** In applying the minimum age and service requirements under AA §4-1 above, the following default rules apply with respect to all contribution sources under the Plan:

- **Year of Service.** An Employee earns a Year of Service for eligibility purposes upon completing 1,000 Hours of Service during an Eligibility Computation Period. Hours of Service are calculated based on actual hours worked during the Eligibility Computation Period.

- **Eligibility Computation Period.** If one Year of Service is required for eligibility, the Plan will determine subsequent Eligibility Computation Periods on the basis of Plan Years. (See Section 2.03(a)(3)(i) of the Plan.) If more than one Year of Service is required for eligibility, the Plan will determine subsequent Eligibility Computation Periods on the basis of Anniversary Years. (See Section 2.03(a)(3)(ii) of the Plan.)

- **Break in Service Rules.** The Nonvested Participant Break in Service rule (see Section 2.07(b) of the Plan) and the One-Year Break in Service rule (see Section 2.07(d) of the Plan) do NOT apply.

To override the default eligibility rules, complete the applicable sections of this AA §4-3. **If this AA §4-3 is not completed for a particular contribution source, the default eligibility rules apply.**

| Match | ER | | |
|-------|-----|-----|-----|
| ☐ | ☐ | (a) | **Year of Service.** Instead of 1,000 Hours of Service, an Employee earns a Year of Service upon the completion of ___ *[must be less than 1,000]* Hours of Service during an Eligibility Computation Period. |
| ☐ | ☐ | (b) | **Eligibility Computation Period.** The Plan will use Anniversary Years for all Eligibility Computation Periods. (See Section 2.03(a)(3) of the Plan.) |
| ☐ | ☐ | (c) | **Elapsed Time method.** Eligibility service will be determined under the Elapsed Time method. An Eligible Employee (as defined in AA §3-1) must complete a ___ period of service to participate in the Plan. (See Section 2.03(a)(6) of the Plan.) |

*[Note: Under the Elapsed Time method, service will be measured from the Employee's employment commencement date (or reemployment commencement date, if applicable) without regard to the Eligibility Computation Period designated in Section 2.03(a)(3) of the Plan. The period of service may not exceed 12 months for eligibility for After-Tax Employee Contributions. If a period greater than 12 months applies to Matching Contributions or Employer Contributions, 100% vesting must be selected under AA §8 for those contributions.]*

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 126 of 177   Document 23-6
MTD Page 125

| Match | ER |
|-------|-----|
| ☐ | ☐ |

(d) **Equivalency Method.** For purposes of determining an Employee's Hours of Service for eligibility, the Plan will use the Equivalency Method (as defined in Section 2.03(a)(5) of the Plan). The Equivalency Method will apply to:

☐ (1) All Employees.

☐ (2) Only Employees for whom the Employer does not maintain hourly records. For Employees for whom the Employer maintains hourly records, eligibility will be determined based on actual hours worked.

Hours of Service for eligibility will be determined under the following Equivalency Method:

☐ (3) **Monthly.** 190 Hours of Service for each month worked.

☐ (4) **Weekly.** 45 Hours of Service for each week worked.

☐ (5) **Daily.** 10 Hours of Service for each day worked.

☐ (6) **Semi-monthly.** 95 Hours of Service for each semi-monthly period worked.

| Match | ER |
|-------|-----|
| ☐ | ☐ |

(e) **Nonvested Participant Break in Service rule applies.** Service earned prior to a Nonvested Participant Break in Service will be disregarded in applying the eligibility rules. (See Section 2.07(b) of the Plan.)

☐ The Nonvested Participant Break in Service rule applies to all Employees, including Employees who have not terminated employment.

| Match | ER |
|-------|-----|
| ☐ | ☐ |

(f) **One-Year Break in Service rule applies.** The One-Year Break in Service rule (as defined in Section 2.07(d) of the Plan) applies to temporarily disregard an Employee's service earned prior to a one-year Break in Service.

☐ The One-Year Break in Service rule applies to all Employees, including Employees who have not terminated employment.

| Match | ER |
|-------|-----|
| ☑ | ☑ |

(g) **Special eligibility provisions:** <u>Notwithstanding any provisions to the contrary, Hours of Service shall not include on-call hours.</u>

[*Note: Any conditions provided under this AA §4-3 must satisfy the requirements of Code §410(a), the nondiscrimination requirements under Code §401(a)(4) and the regulations thereunder and may not cause an Employee to enter the Plan later than the first Entry Date following the completion of a Year of Service.*]

**4-4 EFFECTIVE DATE OF MINIMUM AGE AND SERVICE REQUIREMENTS.** The minimum age and/or service requirements under AA §4-1 apply to all Employees under the Plan. An Employee will participate with respect to all contribution sources under the Plan as of his/her Entry Date under AA §4-2, taking into account all service with the Employer, including service earned prior to the Effective Date.

To allow Employees hired on a specified date to enter the Plan without regard to the minimum age and/or service conditions, complete this AA §4-4.

| Match | ER |
|-------|-----|
| ☐ | ☐ |

An Eligible Employee who is employed by the Employer on the following date will become eligible to enter the Plan without regard to minimum age and/or service requirements (as designated below):

☐ (a) the Effective Date of this Plan (as designated in the Employer Signature Page).

☐ (b) the date the Plan is executed by the Employer (as indicated on the Employer Signature Page).

☐ (c) _____ [*insert date no earlier than the Effective Date of this Plan*].

An Eligible Employee who is employed on the designated date will become eligible to participate in the Plan without regard to the minimum age and service requirements under AA §4-1. If both minimum age and service conditions are not waived, select (d) or (e) to designate which condition is waived under this AA §4-4.

☐ (d) This AA §4-4 only applies to the minimum service condition.

☐ (e) This AA §4-4 only applies to the minimum age condition.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 127 of 177   Document 23-6

MTD Page 126

The provisions of this AA §4-4 apply to all Eligible Employees employed on the designated date unless designated otherwise under subsection (f) or (g) below.

☐ (f)     The provisions of this AA §4-4 apply to the following group of Employees employed on the designated date: _____

☐ (g)     Describe special rules: _____

*[Note: An Employee who is employed as of the date described in this AA §4-4 will be eligible to enter the Plan as of such date unless a different Entry Date is designated under subsection (g). The provisions of this AA §4-4 may not violate the minimum age or service rules under Code §410(a)(4) or violate the nondiscrimination requirements under Code §401(a)(4).]*

4-5    **SERVICE WITH PREDECESSOR EMPLOYER.** If the Employer is maintaining the Plan of a Predecessor Employer, service with such Predecessor Employer is automatically counted for eligibility, vesting and for purposes of applying any allocation conditions under AA §6-7 and AA §6B-7.

In addition, this AA §4-5 may be used to identify any Predecessor Employers for whom service will be counted for purposes of determining eligibility, vesting and allocation conditions under this Plan.

If this AA §4-5 is not completed, no service with a Predecessor Employer will be counted except as otherwise required under this AA §4-5.

☐ (a)    **Identify Predecessor Employer(s):**

☐ (1)    The Plan will count service with all Employers which have been acquired as part of a transaction under Code §410(b)(6)(C).

☐ (2)    The Plan will count service with the following Predecessor Employers:

| Name of Predecessor Employer | Eligibility | Vesting | Allocation Conditions |
|---|---|---|---|
| ☐ (1) _____ | ☐ | ☐ | ☐ |

☑ (b)    **Describe** any special provisions applicable to Predecessor Employer service: The Plan will count service with the Predecessor Employers listed on Addendum C, as described on Addendum C.

*[Note: Any special provisions may not violate the nondiscrimination requirements under Code §401(a)(4).]*

## SECTION 5
## COMPENSATION DEFINITIONS

5-1    **TOTAL COMPENSATION.** Total Compensation is based on the definition set forth under this AA §5-1. (See Section 1.137 of the Plan for a specific definition of the various types of Total Compensation.)

☐ (a)    W-2 Wages

☐ (b)    Code §415 Compensation

☑ (c)    Wages under Code §3401(a)

*[Note: For purposes of determining Total Compensation, the definition includes Elective Deferrals as defined in Section 1.44 of the Plan, pre-tax contributions to a Code §125 cafeteria plan or a Code §457 plan, and qualified transportation fringes under Code §132(f)(4).]*

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 128 of 177   Document 23-6

MTD Page 127

**5-2 POST-SEVERANCE COMPENSATION.** Total Compensation includes post-severance compensation, to the extent provided in Section 1.137(b) of the Plan.

☑ (a) **Exclusion of post-severance compensation from Total Compensation.** The following amounts paid after a Participant's severance of employment are excluded from Total Compensation:

☐ (1) **Unused leave payments.** Payment for unused accrued bona fide sick, vacation, or other leave, but only if the Employee would have been able to use the leave if employment had continued.

☑ (2) **Deferred compensation.** Payments received by an Employee pursuant to a nonqualified unfunded deferred compensation plan, but only if the payment would have been paid to the Employee at the same time if the Employee had continued in employment and only to the extent that the payment is includible in the Employee's gross income.

*[Note: Plan Compensation (as defined in Section 1.94 of the Plan) includes any post-severance compensation amounts that are includible in Total Compensation. The Employer may elect to exclude all compensation paid after severance of employment or may elect to exclude specific types of post-severance compensation from Plan Compensation under AA §5-3.]*

(b) **Continuation payments for disabled Participants.** Unless designated otherwise under this subsection, Total Compensation does not include continuation payments for disabled Participants.

☐ **Payments to disabled Participants.** Total Compensation shall include post-severance compensation paid to a Participant who is permanently and totally disabled, as provided in Section 1.137(c) of the Plan. For this purpose, disability continuation payments will be included for:

☐ (1) Nonhighly Compensated Employees only.

☐ (2) All Participants.

**5-3 PLAN COMPENSATION:** Plan Compensation is **Total Compensation** (as defined in AA §5-1 above) with the following exclusions described below.

| Deferral | Match | ER | | |
|---|---|---|---|---|
| ☐ | ☐ | ☐ | (a) | No exclusions. |
| N/A | ☐ | ☐ | (b) | Elective Deferrals (as defined in Section 1.44 of the Plan), pre-tax contributions to a Code §125 cafeteria plan or a Code §457 plan, and qualified transportation fringes under Code §132(f)(4) are excluded. |
| ☑ | ☑ | ☑ | (c) | All fringe benefits (cash and noncash), reimbursements or other expense allowances, moving expenses, deferred compensation, and welfare benefits are excluded. |
| ☐ | ☐ | ☐ | (d) | Compensation above $___ is excluded. |
| ☐ | ☐ | ☐ | (e) | Amounts received as a bonus are excluded. |
| ☐ | ☐ | ☐ | (f) | Amounts received as commissions are excluded. |
| ☐ | ☐ | ☐ | (g) | Overtime payments are excluded. |
| ☐ | ☑ | ☑ | (h) | Amounts received for services performed for a non-signatory Related Employer are excluded. (See Section 2.02(c) of the Plan.) |
| ☐ | ☐ | ☐ | (i) | "Deemed §125 compensation" as defined in Section 1.137(d) of the Plan. |
| ☐ | ☐ | ☐ | (j) | Amounts received after termination of employment are excluded. (See Section 1.137(b) of the Plan.) |
| ☐ | ☐ | ☐ | (k) | Differential Pay (as defined in Section 1.137(e) of the Plan). |
| ☐ | ☐ | ☐ | (l) | Describe adjustments to Plan Compensation: _____ |

*[Note: Any exclusions selected under this AA §5-3 that do not meet the safe harbor exclusions under Treas. Reg. §1.414(s)-1, as described in Section 1.94(a) of the Plan, may cause the definition of Plan Compensation to fail to satisfy a safe harbor definition of compensation under Code §414(s). Failure to use a definition of Plan Compensation that satisfies the nondiscrimination requirements under Code §414(s) will cause the Plan to fail to qualify for any contribution safe harbors, such as the permitted disparity allocation or Safe Harbor 403(b) Plan safe harbors. Any adjustments to Plan Compensation under this AA §5-3 must be definitely determinable and preclude Employer discretion. See AA §6C-4 for the definition of Plan Compensation as it applies to*

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 129 of 177    Document 23-6
MTD Page 128

*Safe Harbor Contributions. Any exclusions selected with respect to Salary Deferrals must satisfy the requirements with respect to nondiscrimination under Code §414(s) and universal availability under Treas. Reg. §1.403(b)-5(b).]*

5-4    **PERIOD FOR DETERMINING COMPENSATION.**

(a)    **Compensation Period.** Plan Compensation will be determined on the basis of the following period(s) for the contribution sources identified in this AA §5-4. [*If a period other than Plan Year applies for any contribution source, any reference to the Plan Year as it refers to Plan Compensation for that contribution source will be deemed to be a reference to the period designated under this AA §5-4.*]

| Deferral | Match | ER | | |
|----------|-------|-----|-----|-----|
| ☑ | ☑ | ☑ | (1) | The Plan Year. |
| ☐ | ☐ | ☐ | (2) | The calendar year ending in the Plan Year. |
| ☐ | ☐ | ☐ | (3) | The Employer's fiscal tax year ending in the Plan Year. |
| ☐ | ☐ | ☐ | (4) | The 12-month period ending on ____ which ends during the Plan Year. |

(b)    **Compensation while a Participant.** Unless provided otherwise under this subsection (b), in determining Plan Compensation, only compensation earned while an individual is a Participant under the Plan with respect to a particular contribution source will be taken into account.

To count compensation for the entire Plan Year for a particular contribution source, including compensation earned while an individual is not a Participant with respect to such contribution source, check below. (See Section 1.94 of the Plan.)

| Match | ER | |
|-------|-----|-----|
| ☐ | ☐ | All compensation earned during the Plan Year will be taken into account, including compensation earned while an individual is not a Participant. |

(c)    **Few weeks rule.** The few weeks rule under Code §415 will not apply unless designated otherwise under this subsection (c).

☐    Amounts earned but not paid during a Limitation Year solely because of the timing of pay periods and pay dates shall be included in Total Compensation for the Limitation Year, provided the amounts are paid during the first few weeks of the next Limitation Year, the amounts are included on a uniform and consistent basis with respect to all similarly situated Employees, and no amounts are included in more than one Limitation Year.

## SECTION 6
## EMPLOYER CONTRIBUTIONS

6-1    **EMPLOYER CONTRIBUTIONS.** Is the Employer authorized to make Employer Contributions under the Plan (other than Safe Harbor Employer Contributions or QNECs)?

☑ Yes

☐ No [*If No, skip to Section 6A.*]

[*Note: See AA §6C below for rules regarding Safe Harbor Employer Contributions.*]

6-2    **EMPLOYER CONTRIBUTION FORMULA.** For the period designated in AA §6-4 below, the Employer will make the following Employer Contributions on behalf of Participants who satisfy the allocation conditions designated in AA §6-7 below. Any Employer Contribution authorized under this AA §6-2 will be allocated in accordance with the allocation formula selected under AA §6-3.

☐ (a)    **Discretionary contribution.** The Employer will determine in its sole discretion how much, if any, it will make as an Employer Contribution.

☐ (b)    **Fixed contribution.**

☐ (1)    __% of each Participant's Plan Compensation.

☐ (2)    $____ for each Participant.

☐ (c)    **Outside agreements, contracts or arrangements.**

☐ (1)    The Employer Contribution will be determined in accordance with any Collective Bargaining Agreement(s) addressing retirement benefits of Collectively Bargained Employees under the Plan.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 130 of 177   Document 23-6
MTD Page 129

☐ (2) The Employer Contribution will be determined in accordance with any applicable employment contract or other arrangement the Employer has with the Participant(s).

☐ (d) **Service-based contribution.** The Employer will make the following contribution:

☐ (1) **Discretionary.** A discretionary contribution determined as a uniform percentage of Plan Compensation or a uniform dollar amount for each period of service designated below.

☐ (2) **Fixed percentage.** ____% of Plan Compensation paid for each period of service designated below.

☐ (3) **Fixed dollar.** $____ for each period of service designated below.

The service-based contribution will be based on the following periods of service:

☐ (4) Each Hour of Service.

☐ (5) Each week of employment.

☐ (6) Describe period: _____

The service-based contribution is subject to the following rules:

☐ (7) Describe any special provisions that apply to service-based contribution: _____

[**Note:** *Any period described in subsection (6) must apply uniformly to all Participants and cannot exceed a 12-month period. Any special provisions under subsection (7) must satisfy the nondiscrimination requirements under Code §401(a)(4) and the regulations thereunder.*]

☐ (e) **Year of Service contribution.** The Employer will make an Employer Contribution based on Years of Service with the Employer.

| Years of Service | Contribution % |
|---|---|
| ☐ (1) For Years of Service between ___ and ___ | ___% |
| ☐ (2) For Years of Service between ___ and ___ | ___% |
| ☐ (3) For Years of Service between ___ and ___ | ___% |
| ☐ (4) For Years of Service ___ and above | ___% |

For this purpose, a Year of Service is each Plan Year during which an Employee completes at least 1,000 Hours of Service. Alternatively, a Year of Service is: _____

[**Note:** *Any alternative definition of a Year of Service must meet the requirements of a Year of Service as defined in Section 2.03 of the Plan.*]

☑ (f) **Describe special rules for determining contributions under the Plan:** The Employer will contribute to the Plan, on behalf of each Participant who is an Eligible Employee earning/accruing Periods of Service, an Employer Contribution equal to a percentage of the Participant's Plan Compensation for the Plan Year as follows:

0-10 Periods of Service = 3.0%

11-15 Periods of Service = 3.5%

16-20 Periods of Service = 4.0%

21-25 Periods of Service = 4.5%

26 or more Periods of Service = 5.0%

A Participant will earn/accrue a "Period of Service" upon being employed for each complete 12 month period from the date the Employee becomes eligible to participate in the Plan until the earlier of (i) the date the Employee quits, retires, is discharged or dies; or (ii) the first anniversary of the first date of the period the Employee remains absent from service (with or without pay) with the Employer for any other reason (such as sickness, disability, leave of absence or layoff). To the extent an Employee has more than one Period of Service, all such Periods of Service shall be aggregated, except that any period prior to a Five-Year Forfeiture Break in Service, determined using the Elapsed Time method as described in the Plan, shall be disregarded. The Period of Service of any Employee who was dually employed by, or transferred directly between, Froedtert Memorial Lutheran Hospital (and its affiliates) and Community Health Care Services of Menomonee Falls, Inc. (and its affiliates) after 1-1-2001 shall begin on the earliest date the Employee performed services of either entity.

Notwithstanding the foregoing, any Participant in the Froedtert Hospital Retirement Plan for Certain Former Milwaukee County Employees shall receive an Employer Contribution equal to 3% of such Participant's Plan Compensation, regardless of his or her total Periods of Service

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 131 of 177   Document 23-6

MTD Page 130

[*Note: Any special rules must be described in a manner that precludes Employer discretion and must satisfy the nondiscrimination requirements of Code §401(a)(4) and the regulations thereunder.*]

6-3    **ALLOCATION FORMULA.**

☐ (a)    **Pro rata allocation.** The discretionary Employer Contribution under AA §6-2 will be allocated:

☐ (1)    as a uniform percentage of Plan Compensation.

☐ (2)    as a uniform dollar amount.

☐ (b)    **Fixed or outside agreement, contract or arrangement contribution.** The fixed or outside agreement, contract or arrangement Employer Contribution under AA §6-2 will be allocated in accordance with the selections made with respect to fixed or outside agreement Employer Contributions under AA §6-2.

☐ (c)    **Permitted disparity allocation.** The discretionary Employer Contribution under AA §6-2 will be allocated under the two-step method (as defined in Section 3.02(a)(1)(ii)(A) of the Plan), using the Taxable Wage Base (as defined in Section 1.132 of the Plan) as the Integration Level.

To modify these default rules, complete the appropriate provision(s) below:

☐ (1)    **Integration Level.** Instead of the Taxable Wage Base, the Integration Level is:

☐ (i)    ____% of the Taxable Wage Base, increased (but not above the Taxable Wage Base) to the next higher:

☐ (A)    N/A          ☐ (B)    $1

☐ (C)    $100         ☐ (D)    $1,000

☐ (ii)    $____ (not to exceed the Taxable Wage Base)

☐ (iii)    20% of the Taxable Wage Base

[*Note: See Section 3.02(a)(1)(ii) of the Plan for rules regarding the Maximum Disparity Rate that may be used where an Integration Level other than the Taxable Wage Base is selected.*]

☐ (2)    **Describe** special rules for applying permitted disparity allocation formula: _____

[*Note: Any special rules must satisfy the nondiscrimination requirements of Code §401(a)(4) and the regulations thereunder.*]

☐ (d)    **Uniform points allocation.** The discretionary Employer Contribution designated in AA §6-2 will be allocated to each Participant in the ratio that each Participant's total points bears to the total points of all Participants. A Participant will receive the following points:

☐ (1)    ____ point(s) for each ____ year(s) of age (attained as of the end of the Plan Year).

☐ (2)    ____ point(s) for each $____ (not to exceed $200) of Plan Compensation.

☐ (3)    ____ point(s) for each ____ Year(s) of Service. For this purpose, Years of Service are determined:

☐ (i)    in the same manner as determined for eligibility.

☐ (ii)    in the same manner as determined for vesting.

☐ (iii)    points will not be provided with respect to Years of Service in excess of ____.

☐ (e)    **Employee group allocation.** The Employer may make a separate Employer Contribution to the Participants in the following allocation groups. The Employer must notify the Plan Administrator in writing of the amount of the contribution to be allocated to each allocation group.

☐ (1)    A separate discretionary Employer Contribution may be made to each Participant of the Employer (i.e., each Participant is in his/her own allocation group).

☐ (2)    A separate discretionary or fixed Employer Contribution may be made to the following allocation groups. If no fixed amount is designated for a particular allocation group, the contribution made for such allocation group will be allocated as a uniform percentage of Plan Compensation or as a uniform dollar amount to all Participants within that allocation group.

[*Note: The allocation groups designated above must be clearly defined in a manner that will not violate the definite allocation formula requirement of Treas. Reg. §1.401-1(b)(1)(ii). See Section 3.02(a)(1)(iv)(b)(IV) of the Plan for restrictions that apply with respect to "short-service".*]

☐ (3)   **Special rules.** The following special rules apply to the Employee group allocation formula.

    ☐ (i)   **Benefiting Participants who do not receive Minimum Gateway Contribution.** In determining the separate groups under (2) above, Benefiting Participants who do not receive a Minimum Gateway Contribution are always in a separate allocation group.

    ☐ (ii)   **More than one Employee group.** Unless designated otherwise under this subsection (ii), if a Participant is in more than one allocation group described in (2) above during the Plan Year, the Participant will receive an Employer Contribution based on the Participant's status on the last day of the Plan Year.

        ☐ (A)   **Determined separately for each Employee group.** If a Participant is in more than one allocation group during the Plan Year, the Participant's share of the Employer Contribution will be based on the Participant's status for the part of the year the Participant is in each allocation group.

        ☐ (B)   **Describe:** _____

            *[**Note:** Any language under this subsection (B) must be definitely determinable and may not violate the nondiscrimination requirements Code §401(a)(4).]*

☐ (f)   **Age-based allocation.** The discretionary Employer Contribution designated in AA §6-2 will be allocated under the age-based allocation formula so that each Participant receives a pro rata allocation based on adjusted Plan Compensation. For this purpose, a Participant's adjusted Plan Compensation is determined by multiplying the Participant's Plan Compensation by an Actuarial Factor (as defined in Section 3.02(a)(1)(v)(B) of the Plan).

A Participant's Actuarial Factor is determined based on a specified interest rate and mortality table. Unless designated otherwise under (1) or (2) below, the Plan will use an applicable interest rate of 8.5% and a UP-1984 mortality table.

    ☐ (1)   **Applicable interest rate.** Instead of 8.5%, the Plan will use an interest rate of ___% (must be between 7.5% and 8.5%) in determining a Participant's Actuarial Factor.

    ☐ (2)   **Applicable mortality table.** Instead of the UP-1984 mortality table, the Plan will use the following mortality table in determining a Participant's Actuarial Factor: _____

    ☐ (3)   **Describe special rules applicable to age-based allocation:** _____

*[**Note:** See Appendix A of the Plan for sample Actuarial Factors based on an 8.5% applicable interest rate and the UP-1984 mortality table. If an interest rate or mortality table other than 8.5% or UP-1984 is selected, appropriate Actuarial Factors must be calculated. Any alternative interest or mortality factors must meet the requirements for standard interest and mortality assumptions as defined in Treas. Reg. §1.401(a)(4)-12. Any special rules described under subsection (3) may not violate the nondiscrimination requirements under Code §401(a)(4).]*

☐ (g)   **Service-based allocation formula.** The service-based Employer Contribution selected in AA §6-2 will be allocated in accordance with the selections made under the service-based allocation formula in AA §6-2.

☐ (h)   **Year of Service allocation formula.** The Year of Service Employer Contribution selected in AA §6-2 will be allocated in accordance with the selections made under the Year of Service allocation formula in AA §6-2.

☑ (i)   **Describe special rules for determining allocation formula:** <u>The Employer Contribution will be allocated as a uniform percentage of Plan Compensation, pertaining to each applicable service tier, or as otherwise described.</u>

*[**Note:** Any special rules must be described in a manner that precludes Employer discretion and must satisfy the nondiscrimination requirements of Code §401(a)(4) and the regulations thereunder.]*

**6-4**   **SPECIAL RULES.** No special rules apply with respect to Employer Contributions under the Plan, except to the extent designated under this AA §6-4. Unless designated otherwise, in determining the amount of the Employer Contributions to be allocated under this AA §6, the Employer Contribution will be based on Plan Compensation earned during the Plan Year.

☐ (a)   **Period for determining Employer Contributions.** Instead of the Plan Year, Employer Contributions will be determined based on Plan Compensation earned during the following period: *[The Plan Year must be used if the permitted disparity allocation method is selected under AA §6-3 above.]*

    ☐ (1)   Plan Year quarter

    ☐ (2)   calendar month

    ☐ (3)   payroll period

    ☐ (4)   Other: _____

*[**Note:** Although Employer Contributions are determined on the basis of Plan Compensation earned during the period designated under this subsection, this does not require the Employer to actually make contributions or allocate contributions on the basis of such period. Employer Contributions may be contributed and allocated to Participants at*

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 133 of 177   Document 23-6
MTD Page 132

*any time within the contribution period permitted under Treas. Reg. §1.415(c)-1(b)(6)(B), regardless of the period selected under this subsection. Any alternative period designated under subsection (4) may not exceed a 12-month period and will apply uniformly to all Participants.]*

☐ **(b)** **Limit on Employer Contributions.** The Employer Contribution elected in AA §6-2 may not exceed:

   ☐ **(1)** ____% of Plan Compensation

   ☐ **(2)** $____

   ☐ **(3)** Describe: _____

   *[Note: Any limitations under this subsection must satisfy the nondiscrimination requirements of Code §401(a)(4) and the regulations thereunder.]*

☐ **(c)** **Offset of Employer Contribution.**

   ☐ **(1)** A Participant's allocation of Employer Contributions under AA §6-2 of this Plan is reduced by contributions under _____ *[insert name of plan(s)].*

   ☐ **(2)** In applying the offset under this subsection, the following rules apply: _____

   *[Note: Any language regarding the offset of benefits must satisfy the nondiscrimination requirements under Code §401(a)(4) and the regulations thereunder.]*

☐ **(d)** **Other special rules relating to Employer Contributions:** _____

   *[Note: Any special rules must satisfy the nondiscrimination requirements under Code §401(a)(4).]*

**6-5 SPECIAL EMPLOYER CONTRIBUTIONS.**

☐ **(a)** **Contributions for former Employees.** If this (a) is elected, the Employer may continue to make Employer Contributions on behalf of a former Employee as provided in Section 3.01(c) of the Plan, as described below: *[Note: Contributions for former Employees must satisfy the nondiscrimination rules under Code §401(a)(4).]*

_____

☐ **(b)** **Contributions of accrued sick and/or vacation leave.**

   ☐ **(1)** The Employer will make Employer Contributions of amounts of accrued unpaid sick leave, as described below: _____

   ☐ **(2)** The Employer will make Employer Contributions of amounts of accrued unpaid vacation leave, as described below: _____

**6-6 MANDATORY CONTRIBUTIONS.** If elected below, a Participant will be required to make a Mandatory Contribution (as defined in Section 1.76 of the Plan) to the Plan equal to the amount specified under this subsection 6-6. Any amounts contributed pursuant to this subsection 6-6 will be treated as Employer Contributions under the Plan. Such contributions and earnings thereon will be 100% vested at all times.

☐ **(a)** The following amounts will be contributed to the Plan as a Mandatory Contribution:

   ☐ **(1)** ____% of Plan Compensation.

   ☐ **(2)** $____ per pay period.

   ☐ **(3)** Any amount from ____% to ____% of Plan Compensation, as designated by the Participant.

   ☐ **(4)** The amount designated under an applicable Collective Bargaining Agreement, employment contract or other arrangement with the Employee.

   ☐ **(5)** Describe amount: _____

   *[Note: Amount may not exceed 100% of Plan Compensation.]*

☐ **(b)** Special rules applicable to Mandatory Contribution: _____

   *[Note: Special rules may describe special eligibility requirements and the definitely determinable amounts.]*

**6-7 ALLOCATION CONDITIONS.** A Participant must satisfy any allocation conditions designated under this AA §6-7 to receive an allocation of Employer Contributions under the Plan. Allocation conditions do not apply to Mandatory Contributions.

*[Note: Any allocation conditions set forth under this AA §6-7 do not apply to Safe Harbor Employer Contributions under AA §6C, or QNECs under AA §6D, unless provided otherwise under those specific sections. See AA §4-5 for treatment of service with Predecessor Employers for purposes of applying the allocation conditions under this AA §6-7.]*

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 134 of 177   Document 23-6
MTD Page 133

☐ (a)    **No allocation conditions** apply with respect to Employer Contributions under the Plan.

☐ (b)    **Safe harbor allocation condition.** An Employee must be employed by the Employer on the last day of the Plan Year OR must complete more than:

     ☐ (1)    ____ (not to exceed 500) Hours of Service during the Plan Year.

         ☐ (i)    Hours of Service are determined using actual Hours of Service.

         ☐ (ii)    Hours of Service are determined using the following Equivalency Method (as defined under AA §4-3):

            ☐ (A)    Monthly               ☐ (B)    Weekly

            ☐ (C)    Daily                  ☐ (D)    Semi-monthly

     ☐ (2)    ____ (not more than 91) consecutive days of employment with the Employer during the Plan Year.

     [***Note:*** *Under this safe harbor allocation condition, an Employee will satisfy the allocation conditions if the Employee completes the designated Hours of Service or period of employment, even if the Employee is not employed on the last day of the Plan Year. See Section 3.07 of the Plan for rules regarding the application of this allocation condition to the minimum coverage test.*]

☑ (c)    **Employment condition.** An Employee must be employed with the Employer on the last day of the Plan Year.

☑ (d)    **Minimum service condition.** An Employee must be credited with at least:

     ☑ (1)    <u>1,000</u> (not to exceed 1,000) Hours of Service during the Plan Year.

         ☑ (i)    Hours of Service are determined using actual Hours of Service.

         ☐ (ii)    Hours of Service are determined using the following Equivalency Method (as defined under AA §4-3):

            ☐ (A)    Monthly               ☐ (B)    Weekly

            ☐ (C)    Daily                  ☐ (D)    Semi-monthly

     ☐ (2)    ____ (not more than 182) consecutive days of employment with the Employer during the Plan Year.

☐ (e)    **Application to a specified period.** The allocation conditions selected under this AA §6-7 apply on the basis of the Plan Year. Alternatively, if an employment or minimum service condition applies under this AA §6-7, the Employer may elect under this subsection to apply the allocation conditions on a periodic basis as set forth below. (See Section 3.07(a) of the Plan for a description of the rules for applying the allocation conditions on a periodic basis.)

     ☐ (1)    **Period for applying allocation conditions.** Instead of the Plan Year, the allocation conditions set forth under subsection (2) below apply with respect to the following periods:

         ☐ (i)    Plan Year quarter

         ☐ (ii)    calendar month

         ☐ (iii)    payroll period

         ☐ (iv)    Other: _____

     ☐ (2)    **Application to allocation conditions.** If this subsection is checked to apply allocation conditions on the basis of specified periods, to the extent an employment or minimum service allocation condition applies under this AA §6-7, such allocation condition will apply based on the period selected under subsection (1) above, unless designated otherwise below:

         ☐ (i)    Only the employment condition will be based on the period selected in subsection (1) above.

         ☐ (ii)    Only the minimum service condition will be based on the period selected in subsection (1) above.

         ☐ (iii)    Describe any special rules: _____

            [***Note:*** *Any special rules under subsection (iii) must satisfy the nondiscrimination requirements of Code §401(a)(4).*]

☐ (f)    **Exceptions.**

     ☐ (1)    The above allocation condition(s) will **not** apply if the Employee:

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 135 of 177    Document 23-6

MTD Page 134

    ☐ (i)  dies during the Plan Year.

    ☐ (ii)  terminates employment due to becoming Disabled.

    ☐ (iii)  terminates employment after attaining Normal Retirement Age.

    ☐ (iv)  terminates employment after attaining Early Retirement Age.

    ☐ (v)  is on an authorized leave of absence from the Employer.

  ☐ (2)  The exceptions selected under subsection (1) will apply even if an Employee has not terminated employment at the time of the selected event(s).

  ☐ (3)  The exceptions selected under subsection (1) will not apply to:

    ☐ (i)  an employment condition designated under this AA §6-7.

    ☐ (ii)  a minimum service condition designated under this AA §6-7.

    ☐ (iii)  a Discretionary Employer Contribution.

    ☐ (iv)  a Fixed Employer Contribution.

 ☑ (g)  **Describe** any special rules governing the allocation conditions under the Plan: The 1,000 Hours of Service and last day of Plan Year employment requirements will be waived for an Employee who: (i) has a Severance from Employment during a Plan Year at any time after reaching age 65 or due to death, and (ii) completed at least 1,000 Hours of Service in at least one out of the last six calendar years of the Employee's employment with the Employer, including the calendar year in which the Employee severs employment. Notwithstanding any provisions to the contrary, Hours of Service shall not include on-call hours.

  *[**Note:** Any special rules must satisfy the nondiscrimination requirements under Code §401(a)(4).]*

## SECTION 6A
## SALARY DEFERRALS

**6A-1** **SALARY DEFERRALS.** Unless elected below, Eligible Employees are permitted to make Salary Deferrals under the Plan.

 ☐ Employees are **not** permitted to make Salary Deferrals under the Plan. *[Skip to Section 6B.]*

**6A-2** **MAXIMUM LIMIT ON SALARY DEFERRALS.** Unless designated below, a Participant may defer any amount up to the Elective Deferral Dollar Limit and the Code §415 Limitation (as set forth in Sections 5.02 and 5.03 of the Plan).

 ☐ Describe any Plan limitations on Salary Deferrals: _____

  *[**Note:** Any limits provided under this AA §6A-2 must satisfy the nondiscrimination requirements under Code §401(a)(4) and the universal availability requirements.]*

**6A-3** **MINIMUM DEFERRAL RATE.** No minimum deferral requirement applies under the Plan.

**6A-4** **CATCH-UP CONTRIBUTIONS.** Age 50 Catch-Up Contributions (as defined in Section 3.03(d) of the Plan) and Special Catch-Up Contributions for Qualified Employees of Qualified Organizations (as defined in Section 3.03(e) of the Plan) are permitted under the Plan, unless designated otherwise under this AA §6A-4.

 ☐ (a) Age 50 Catch-Up Contributions are not permitted under the Plan.

 ☑ (b) Special Catch-Up Contributions for Qualified Employees of Qualified Organizations are not permitted under the Plan.

**6A-5** **ROTH DEFERRALS.** Roth Deferrals (as defined in Section 3.03(g) of the Plan) are not permitted under the Plan, unless designated otherwise under this AA §6A-5. Roth Deferrals, if available, are subject to the terms of the governing Investment Arrangement(s).

 ☑ (a) **Availability of Roth Deferrals.** Roth Deferrals are permitted under the Plan. *[**Note:** If Roth Deferrals are effective as of a date later than the Effective Date of the Plan, designate such special Effective Date in AA §6A-9 below.]*

 ☐ (b) **Distribution of Roth Deferrals.** Unless designated otherwise under this subsection, to the extent a Participant takes a distribution or withdrawal from his/her Salary Deferral Account(s), the Participant may designate the extent to which such distribution is taken from the Pre-Tax Deferral Account or from the Roth Deferral Account. (See Section 8.10 of the Plan for default distribution rules if a Participant fails to designate the appropriate Account for corrective distributions from the Plan.)

  Alternatively, the Employer may designate the order of distributions for the distribution types listed below or in a separate administrative procedure:

Case 2:20-cv-00893-PP  Filed 10/26/20  Page 136 of 177  Document 23-6

MTD Page 135

☐ (1) **Distributions and withdrawals.**

☐ (i) Any distribution will be taken on a pro rata basis from the Participant's Pre-Tax Deferral Account and Roth Deferral Account.

☐ (ii) Any distribution will be taken first from the Participant's Roth Deferral Account and then from the Participant's Pre-Tax Deferral Account.

☐ (iii) Any distribution will be taken first from the Participant's Pre-Tax Deferral Account and then the Participant's Roth Deferral Account.

☐ (2) **Distribution of Excess Deferrals.**

☐ (i) Distribution of Excess Deferrals will be made from Roth and Pre-Tax Deferral Accounts in the same proportion that deferrals were allocated to such Accounts for the calendar year.

☐ (ii) Distribution of Excess Deferrals will be made first from the Roth Deferral Account and then from the Pre-Tax Deferral Account.

☐ (iii) Distribution of Excess Deferrals will be made first from the Pre-Tax Deferral Account and then from the Roth Deferral Account.

☐ (c) **IN-PLAN ROTH CONVERSIONS.** The Plan does not permit a Participant to make an In-Plan Roth Conversion under the Plan. To override this provision to allow Participants to make an In-Plan Roth Conversion, subsection (a) and this subsection (c) must be checked.

☐ (1) **Effective date.** Effective _____, a Participant may elect to convert all or any portion of his/her non-Roth vested Account Balance to an In-Plan Roth Conversion Account.

*[**Note:** The Plan must provide for Roth Deferrals under AA §6A-5 as of the effective date designated in this subsection (c). An election under this subsection (c) does not affect an In-Plan Roth Conversion that was allowed under prior Plan provisions.]*

(2) **In-Service Distribution.** For a Participant to convert his/her eligible contributions to Roth Deferrals through an In-Plan Roth Conversion, the Participant need not be eligible to take a distribution from the Plan.

To override this default provision to require a distributable event, complete this subsection (2).

☐ If this subsection (2) is checked, a Participant must be eligible for a distribution of any amounts converted to Roth Deferrals through an In-Plan Roth Conversion. Thus, only amounts that are eligible for distribution under AA §9 or AA §10 are eligible for In-Plan Roth Conversion.

*[**Note:** If this subsection (2) is not checked, a Participant may convert any or all of the eligible contribution sources to Roth Deferrals through an In-Plan Roth Conversion.]*

(3) **Contribution sources.** An Employee may elect to make an In-Plan Roth Conversion from all available contribution sources under the Plan.

To override this default provision to limit the contributions sources available for In-Plan Roth Conversion, select the applicable contribution sources from which an In-Plan Roth Conversion is available:

☐ (i) Pre-tax Deferrals

☐ (ii) Employer Contributions

☐ (iii) Matching Contributions

☐ (iv) Safe Harbor Contributions

☐ (v) QNECs

☐ (vi) After-Tax Contributions

☐ (vii) Rollover Contributions

☐ (viii) Describe: _____

*[**Note:** Any contribution sources described in this subsection (viii) must be definitely determinable and not subject to Employer discretion.]*

☐ (4) **Limits applicable to In-Plan Roth Conversions.** No special limits apply with respect to In-Plan Roth Conversions, unless designated otherwise under this subsection (4).

☐ (i) Roth conversions may only be made from contribution sources that are fully vested (i.e., 100% vested).

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 137 of 177    Document 23-6
MTD Page 136

> *[Note: If an In-Plan Roth Conversion is permitted from partially-vested sources, special rules apply for determining the vested percentage of such amounts after conversion.]*

☐ (ii)   A Participant may not make an In-Plan Roth Conversion of less than $____.

☐ (iii)   A Participant may not make an In-Plan Roth Conversion of any outstanding loan amount.

> *[Note: If this subsection (iii) is not checked, a Participant may convert amounts that are attributable to an outstanding loan, to the extent the loan relates to a contribution source that is eligible for conversion under subsection (3) above.]*

☐ (iv)   Describe: _____

> *[Note: Any selection in this subsection (iv) must be definitely determinable and not subject to Employer discretion.]*

☐ **(5)**   **Amounts available to pay federal and state taxes generated from an In-Plan Roth Conversion.** No special provisions apply to allow Participants to withdraw funds to pay federal or state taxes generated from an In-Plan Roth Conversion, except as provided otherwise under this subsection (5).

> ☐ **(i)**   **In-service distribution.** If the Plan does not otherwise permit an in-service distribution at the time of the In-Plan Roth Conversion and this subsection (i) is checked, a Participant may elect to take an in-service distribution solely to pay taxes generated from the In-Plan Roth Conversion to the extent such in-service distribution would otherwise be permitted under Section 8.09 of the Plan.
>
> > *[Note: If this subsection (i) is checked, a Participant may take an in-service distribution only to the extent such distribution would otherwise be permitted under the provisions of Section 8.09 of the Plan. Thus, for example, a Participant may not take an in-service distribution of amounts attributable to Salary Deferrals (including any QNECs or Safe Harbor contributions) prior to age 59½.]*
>
> ☐ **(ii)**   **Participant loan.** Generally, a Participant may request a loan from the Plan to the extent permitted under Section 13 of the Plan and AA Appendix B. However, to the extent a Participant loan is not otherwise allowed and this subsection (ii) is selected, a Participant may receive a Participant loan solely to pay taxes generated from an In-Plan Roth Conversion.
>
> > *[Note: If this subsection (ii) is selected and Participant loans are not otherwise authorized under the Plan, any Participant loan made pursuant to this subsection (ii) will be made in accordance with the default loan policy described in Section 13 of the Plan.]*

☐ **(6)**   **Distribution from In-Plan Roth Conversion Account.** Distributions from the In-Plan Roth Conversion Account will be permitted at the same time as permitted for Roth Deferrals, as set forth under AA §10-1, unless designated otherwise under this subsection (6). However, earlier distribution of certain converted amounts may be required to the extent necessary to protect distribution options that were available with respect to such converted amounts prior to the In-Plan Roth Conversion.

> ☐ **(i)**   In-service distributions will not be permitted from an In-Plan Roth Conversion Account. However, a distribution must continue to be offered for any converted amounts as of the earliest date a distribution would otherwise be permitted for such converted amounts, without regard to the In-Plan Roth Conversion.
>
> ☐ **(ii)**   An in-service distribution may be made from the In-Plan Roth Conversion Account at any time, subject to any source distributions restrictions that applied to amounts prior to the conversion.
>
> ☐ **(iii)**   Describe distribution options: _____
>
> *[Note: This subsection (6) may not be used to eliminate an in-service distribution option that was otherwise available at the time of the In-Plan Roth Conversion. Thus, for example, if a Participant is permitted to make an In-Plan Roth Conversion of After-Tax Employee Contributions or Rollover Contributions, and such contributions are eligible for immediate distribution at the time of the In-Plan Roth Conversion, those amounts must continue to be available for distribution after the In-Plan Roth Conversion. To the extent a selection in this subsection (6) results in an improper elimination of a distribution right, the provisions of this subsection (6) will not apply.]*

☐ **(d)**   **Describe special rules applicable to Roth Deferrals:** _____

> *[Note: Any special rules must satisfy the requirements applicable to Roth Deferrals under Code §402A and the nondiscrimination requirements under Code §401(a)(4).]*

**6A-6**   **ADP TESTING.** This Plan is not subject to ADP testing as described under Code §401(k).

**6A-7**   **CHANGE OR REVOCATION OF DEFERRAL ELECTION.** In addition to the Participant's Entry Date under the Plan, a Participant's election to change or resume a deferral election will be effective as set forth under the Salary Reduction Agreement

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 138 of 177   Document 23-6

MTD Page 137

or other written procedures adopted by the Plan Administrator. A Participant must be permitted to change or revoke a deferral election at least once per year. Unless the Salary Reduction Agreement or other written procedures adopted by the Plan Administrator provide otherwise, a Participant may revoke a deferral election (on a prospective basis) at any time.

**6A-8** **AUTOMATIC CONTRIBUTION ARRANGEMENT.** No automatic contribution provisions apply under Section 3.03 of the Plan, unless provided otherwise under this AA §6A-8. [*Note: An Employer's election to include automatic deferral provisions is subject to State and local anti-garnishment and other applicable State and local laws and regulations.*]

☐ (a) **Automatic deferral election.** Upon becoming eligible to make Salary Deferrals under the Plan (pursuant to AA §3), a Participant will be deemed to have entered into a Salary Deferral Election for each payroll period, unless the Participant completes a Salary Deferral Election (subject to the limitations under AA §6A-2 and AA §6A-3) in accordance with procedures adopted by the Plan Administrator.

    ☐ (1) **Effective date of Automatic Contribution Arrangement.** The automatic deferral provisions under this AA §6A-8 are effective as of:

        ☐ (i) The Effective Date of this Plan as set forth under the Employer Signature Page.

        ☐ (ii) _____ [*insert date no earlier than the Effective Date of this Plan as set forth under the Employer Signature Page*].

        ☐ (iii) As set forth under a prior Plan document.

        [*Note: If this subsection (iii) is checked, the automatic deferral provisions under this AA §6A-8 will apply as of the original Effective Date of the automatic contribution arrangement. Unless provided otherwise under this AA §6A-8, an Employee who is automatically enrolled under a prior Plan document will continue to be automatically enrolled under the current Plan document.*]

    ☐ (2) **Automatic Contribution Arrangement.** Check this subsection (2) if the Plan is designated as an Automatic Contribution Arrangement, as described under Section 3.03 of the Plan. [*Note: Unless an election is made under this AA §6A-8 that is inconsistent with the requirements of an Eligible Automatic Contribution Arrangement (EACA), the Automatic Contribution Arrangement will qualify as an EACA, as described in Section 3.03 of the Plan.*]

        ☐ (i) **Automatic deferral percentage.**

            ☐ (A) \_\_\_% of Plan Compensation

            ☐ (B) $\_\_\_

        ☐ (ii) **Automatic increase.** If elected under this subsection (ii), the automatic deferral amount will increase each Plan Year by the following amount: (See Section 3.03 of the Plan.)

            ☐ (A) \_\_\_% of Plan Compensation

            ☐ (B) $\_\_\_

            ☐ (C) Describe: _____
                *(not greater than 100% of Plan Compensation.)*

        Any automatic increase elected under this subsection (ii) will not cause the automatic deferral amount to exceed:

            ☐ (D) \_\_\_% of Plan Compensation

            ☐ (E) $\_\_\_

            ☐ (F) Describe: _____
                *(not greater than 100% of Plan Compensation.)*

    ☐ (3) **Qualified Automatic Contribution Arrangement (QACA).** Check this subsection if the Plan is designated as a QACA under Section 6.04(b) of the Plan. [*Note: If this subsection (3) is checked, a QACA Safe Harbor Contribution must also be selected under AA §6C-2.*]

        ☐ (i) **Automatic deferral percentage.** \_\_\_% [*must be at least 3% and no more than 10%*] of Plan Compensation.

        ☐ (ii) **Automatic increase.** If elected under this subsection (ii), the automatic deferral amount will increase each Plan Year by the following amount:

            ☐ (A) \_\_\_% of Plan Compensation

        but not in excess of

☐ (B)    \_\_\_\_% [*not less than 6% or more than 10%*] of Plan Compensation

[***Note:*** *If the percentage under subsection (i) is less than 6% of Plan Compensation, an automatic deferral of at least 1% must apply under subsection (A). If no percentage is entered under subsection (B), any automatic increase selected under subsection (ii) will not exceed 10% of Plan Compensation.*]

☐ **(4)**    **Application of automatic deferral provisions.** The automatic deferral election under subsection (2) or (3), as applicable, will apply to new Participants and existing Participants as set forth under this subsection (4).

    ☐ (i)    **New Participants.** The automatic deferral provisions apply to all eligible Participants who do not enter into a Salary Deferral Election (including an election not to defer) and who:

        ☐ (A)    become Participants on or after the effective date of the automatic deferral provisions.

        ☐ (B)    are hired on or after the effective date of the automatic deferral provisions.

    ☐ (ii)    **Current Participants.** The automatic deferral provisions apply to all other eligible Participants as follows:

        ☐ (A)    Automatic deferral provisions apply to all current Participants who have not entered into a Salary Deferral Election (including an election not to defer under the Plan).

        ☐ (B)    Automatic deferral provisions apply to all current Participants who have not entered into a Salary Deferral Election that is at least equal to the automatic deferral amount under subsection (2)(i) or (3)(i), as applicable. Current Participants who have made a Salary Deferral Election that is less than the automatic deferral amount or who have not made a Salary Deferral Election will automatically be increased to the automatic deferral amount unless the Participant enters into a new Salary Deferral election on or after the effective date of the automatic deferral provisions.

        ☐ (C)    Automatic deferral provisions do not apply to current Participants. Only new Participants described in subsection (i) are subject to the automatic deferral provisions. [***Note:*** *This subsection (C) may not be selected if the Plan is a QACA under subsection (3). Also see Section 3.03 of the Plan for the application of this subsection under an EACA.*]

        ☐ (D)    Describe: _____

               [***Note:*** *Any special provisions under subsection (D) must comply with the nondiscrimination requirements under Code §401(a)(4).*]

    (iii)    **Treatment of automatic deferrals.** Any Salary Deferrals made pursuant to an automatic deferral election will be treated as Pre-Tax Deferrals, unless designated otherwise under this subsection (iii).

        ☐    Any Salary Deferrals made pursuant to an automatic deferral election will be treated as Roth Deferrals. [*This subsection (iii) may only be checked if Roth Deferrals are permitted under AA §6A-5.*]

[***Note:*** *Any Salary Deferral election (including an election not to defer under the Plan) made after the effective date of the automatic deferral provisions will override such automatic deferral provisions. See Section 6.04(b)(1)(iii) of the Plan for the application of this provision to rehired Employees.*]

☐ **(5)**    **Application of automatic increase.** Unless designated otherwise under this subsection (5), if an automatic increase is selected under subsection (2)(ii) or (3)(ii) above, the automatic increase will take effect as of the first day of the second Plan Year following the Plan Year in which the automatic deferral election first becomes effective with respect to a Participant. (See Section 3.03 of the Plan.)

    ☐ (i)    **First Plan Year.** Instead of applying as of the second Plan Year, the automatic increase described in subsection (2)(ii) or (3)(ii), as applicable, takes effect as of the appropriate date (as designated under subsection (iii) below) within the first Plan Year following the date automatic contributions begin.

    ☐ (ii)    **Designated Plan Year.** Instead of applying as of the second Plan Year, the automatic increase described in subsection (2)(ii) or (3)(ii), as applicable, takes effect as of the appropriate date (as designated under subsection (iii) below) within the Plan Year following the Plan Year in which the automatic deferral election first becomes effective with respect to a Participant.

        [***Note:*** *If this subsection (ii) is checked and the Plan is intended to qualify for the QACA safe harbor, the Plan must satisfy the minimum deferral requirements. See Section 6.04(b)(1)(i) of the Plan for special rules that apply if this subsection (ii) is checked for a QACA plan. Also see Rev. Rul. 2009-30.*]

☐ (iii)   **Effective date.** The automatic increase described under subsection (2)(ii) or (3)(ii), as applicable, is generally effective as of the first day of the Plan Year. If this subsection (iii) is checked, instead of becoming effective on the first day of the Plan Year, the automatic increase will be effective on:

    ☐ (A)   The anniversary of the Participant's date of hire.

    ☐ (B)   The anniversary of the Participant's first automatic deferral contribution.

    ☐ (C)   The first day of each calendar year.

    ☐ (D)   Other date: _____

*[Note: If this subsection (iii) is checked and the Plan is intended to qualify for the QACA safe harbor, the Plan must satisfy the minimum deferral requirements. See Section 6.04(b)(1)(i) of the Plan for special rules that apply if this subsection (iii) is checked for a QACA plan. Also see Rev. Rul. 2009-30.]*

☐ (iv)   **Special rules:** _____

*[Note: Any special rules under this subsection (iv) must satisfy the rules applicable to automatic increases under Treas. Reg. §1.401(k)-3, if applicable, and must satisfy the nondiscrimination requirements under Code §401(a)(4).]*

☐ (6)   **Treatment of terminated Employees.** Unless designated otherwise under subsection (i) below, a Participant's affirmative election to defer (or to not defer) will cease upon termination of employment. In addition, unless designated otherwise under subsection (ii) below, in applying the automatic deferral provisions under the Plan, a rehired Participant is treated as a new Employee if the Participant is precluded from making automatic deferrals to the Plan for a full Plan Year.

    ☐ (i)   **Terminated Employees.** If this subsection (i) is selected, a terminated Participant's affirmative election to defer (or to not defer) will not cease upon termination of employment. Thus, a Participant who entered into an election to defer (or not to defer) prior to termination of employment will not be subject to the automatic deferral provisions upon rehire. (See Section 3.03 of the Plan.)

    ☐ (ii)   **Rehired Employees.** If this provision applies, a Participant who is precluded from making automatic deferrals to the Plan for a full Plan Year will not be treated as a new Employee for purposes of applying the automatic deferral provisions under the Plan. Thus, a rehired Participant's minimum deferral percentage will continue to be calculated based on the date the individual first began making automatic deferrals under the Plan. (See Section 6.04(b)(1)(iii) of the Plan.)

☐ (b)   **Permissible Withdrawals under Automatic Contribution Arrangement.**

    ☐ (1)   **Permissible withdrawals allowed.** If the Plan satisfies the requirements for an EACA (as set forth in Section 3.03(c) of the Plan) or a QACA (as set forth in Section 6.04(b) of the Plan), the permissible withdrawal provisions under Section 3.03(c) of the Plan apply. Thus, a Participant who receives an automatic deferral may withdraw such contributions (and earnings attributable thereto) within the time period set forth under Section 3.03(c) of the Plan, without regard to the in-service distribution provisions selected under AA §10-1.

    ☐ (2)   **No permissible withdrawals.** Although the Plan contains an automatic deferral election that is designed to satisfy the requirements of an EACA or QACA, the permissible withdrawal provisions under this subsection (b) are not available.

    ☐ (3)   **Time period for electing a permissible withdrawal.** Instead of a 90-day election period, a Participant must request a permissible withdrawal no later than _____ *[may not be less than 30 or more than 90]* days after the date the Plan Compensation from which such Salary Deferrals are withheld would otherwise have been included in gross income.

☐ (c)   **Other automatic deferral provisions:** _____

*[Note: Any language added under this subsection must comply with the nondiscrimination requirements under Code §401(a)(4) and the regulations thereunder.]*

**6A-9   SPECIAL DEFERRAL EFFECTIVE DATES.** Unless designated otherwise under this AA §6A-9, a Participant is eligible to make Salary Deferrals under the Plan as of the Effective Date of the Plan (as designated in the Employer Signature Page). However, in no case may a Participant begin making Salary Deferrals prior to the later of the date the Employee becomes a Participant, the date the Participant executes a Salary Reduction Agreement or the date the Plan is adopted or effective.

To designate a later Effective Date for Salary Deferrals or Roth Deferrals, complete this AA §6A-9. *[Any election may not violate the universal availability requirements under Treas. Reg. §1.403(b)-5(b).]*

- ☐ (a) **Salary Deferrals.** A Participant is eligible to make Salary Deferrals under the Plan as of:

  - ☐ (1) the date the Plan is executed by the Employer (as indicated on the Employer Signature Page).

  - ☐ (2) _____ (insert date).

- ☑ (b) **Roth Deferrals.** The Roth Deferral provisions under AA §6A-5 are effective as of <u>1-1-2009            </u>. *[If Roth Deferrals are permitted under AA §6A-5 above, Roth Deferrals are effective as of the Effective Date applicable to Salary Deferrals under this AA §6A-9, unless a later date is designated under this subsection.]*

**6A-10 SPECIAL RULES APPLICABLE TO SALARY DEFERRALS.** The following special rules apply to Salary Deferrals:

_____

*[**Note:** Any special rules must satisfy the requirements under Code §403(b) and Code §402A (if applicable), the universal availability requirements and the nondiscrimination requirements under Code §401(a)(4).]*

## SECTION 6B
## MATCHING CONTRIBUTIONS

**6B-1 MATCHING CONTRIBUTIONS.** Is the Employer authorized to make Matching Contributions under the Plan?

- ☑ **Yes.** *[Check this box if Matching Contributions may be made under the Plan, including Matching Contributions that satisfy the ACP safe harbor.]*

- ☐ **No.** *[Check this box if there are no Matching Contributions. If "No" is checked, skip to Section 6C.]*

**6B-2 MATCHING CONTRIBUTION FORMULA:** For the period designated in AA §6B-5 below, the Employer will make the following Matching Contribution on behalf of Participants who satisfy the allocation conditions under AA §6B-7 below.

*[**Note:** See AA §6B-3 for the definition of Eligible Contributions for purposes of the Matching Contributions under the Plan. If the Plan provides for After-Tax Employee Contributions, also see AA §6D-2 to determine the application of the Matching Contribution formulas to After-Tax Employee Contributions.]*

- ☐ (a) **Discretionary match.** The Employer will determine in its sole discretion how much, if any, it will make as a Matching Contribution. Such amount can be determined either as a uniform percentage of deferrals or as a flat dollar amount for each Participant.

- ☑ (b) **Fixed match.** The Employer will make a Matching Contribution for each Participant equal to:

  - ☑ (1) <u>50   </u> % of Eligible Contributions made for each period designated in AA §6B-5 below.

  - ☐ (2) $____ for each period designated in AA §6B-5 below.

  - ☐ (3) ____% of Eligible Contributions made for each period designated in AA §6B-5 below. However, to receive the Matching Contribution for a given period, a Participant must contribute Eligible Contributions equal to at least ____% of Plan Compensation for such period.

  - ☐ (4) $____ for each period designated in AA §6B-5 below. However, to receive the Matching Contribution for a given period, a Participant must contribute Eligible Contributions equal to at least ____% of Plan Compensation for such period.

- ☐ (c) **Outside agreements, contracts or arrangements.**

  - ☐ (1) The Matching Contribution will be determined in accordance with any Collective Bargaining Agreement(s) addressing retirement benefits of Collectively Bargained Employees under the Plan.

  - ☐ (2) The Matching Contribution will be determined in accordance with any applicable employment contract or other arrangement the Employer has with the Participant(s).

- ☐ (d) **Tiered match.** The Employer will make a Matching Contribution to all Participants based on the following tiers of Eligible Contributions. *[**Note:** If the Plan is designed to satisfy the ACP safe harbor with respect to the Matching Contributions, the rate of Matching Contribution may not increase as the rate of Eligible Contributions increase.]*

☐ (1)   **Tiers as percentage of Plan Compensation.**

| Eligible Contributions | Fixed Match | Discretionary Match |
|---|---|---|
| ☐ (i) Up to ___% of Plan Compensation | ___% | ☐ |

*[**Note:** Employer may add additional tiers.]*

☐ (2)   **Tiers as dollar amounts.**

| Eligible Contributions | Fixed Match | Discretionary Match |
|---|---|---|
| ☐ (i) Up to $___ | ___% | ☐ |
| ☐ (ii) Above $___ | ___% | ☐ |

*[**Note:** Employer may add additional tiers.]*

☐ (e)   **Year of Service match.** The Employer will make a Matching Contribution as a uniform percentage of Salary Deferrals to all Participants based on Years of Service with the Employer.

| Years of Service | Matching % | Discretionary Match |
|---|---|---|
| ☐ (1)  From ___ up to ___ Years of Service | ___% | ☐ |
| ☐ (2)  From ___ up to ___ Years of Service | ___% | ☐ |
| ☐ (3)  From ___ up to ___ Years of Service | ___% | ☐ |
| ☐ (4)  Years of Service equal to and above ___ | ___% | ☐ |

For this purpose, a Year of Service is each Plan Year during which an Employee completes at least 1,000 Hours of Service. Alternatively, a Year of Service is: _____

*[**Note:** Each separate rate of Matching Contribution must satisfy the nondiscrimination requirements under Treas. Reg. §1.401(a)(4)-4 as a separate benefit, right or feature. Any alternative definition of a Year of Service must meet the requirements of a Year of Service as defined in Section 2.03 of the Plan.]*

☐ (f)   **Different Employee groups.** The Employer may make a different Matching Contribution to the Employee groups designated under subsection (1) below. The Matching Contribution will be allocated separately to each designated Employee group in accordance with the formula designated under subsection (2).

    (1)   **Designated Employee groups.**

       *[**Note:** Each Employee group must be defined in such a way that it precludes Employer discretion and may not be based on time or service (e.g., part-time Employees) and may not provide for a group designed to cover only Nonhighly Compensated Employees with the lowest amount of compensation and/or the shortest periods of service which may represent the minimum number of Nonhighly Compensated Employees necessary to satisfy the coverage requirements under Code §410(b).]*

    (2)   **Matching Contribution formulas.**

       ☐ (i)   **Discretionary Matching Contribution.** The Employer may make a different discretionary Matching Contribution for each Employee group designated under subsection (1).

       ☐ (ii)   **Different Matching Contribution formula.** The following Matching Contribution will apply for each Employee group designated under subsection (1).

          *[**Note:** Each separate rate of Matching Contribution must satisfy the nondiscrimination requirements under Treas. Reg. §1.401(a)(4)-4 as a separate benefit, right or feature.]*

☐ (g)   **Describe special rules for determining allocation formula:** _____

    *[**Note:** Any special rules must be described in a manner that precludes Employer discretion and must satisfy the nondiscrimination requirements of Code §401(a)(4) and the regulations thereunder.]*

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 143 of 177   Document 23-6

MTD Page 142

**6B-3 CONTRIBUTIONS ELIGIBLE FOR MATCHING CONTRIBUTIONS ("ELIGIBLE CONTRIBUTIONS").** Unless designated otherwise under this AA §6B-3, all Salary Deferrals, including any Roth Deferrals and Catch-Up Contributions, are eligible for the Matching Contributions designated under AA §6B-2.

☐ (a) **Matching Contributions.** Only the following contribution sources are eligible for a Matching Contribution under AA §6B-2:

　　☐ (1)　Pre-tax Deferrals

　　☐ (2)　Roth Deferrals

　　☐ (3)　Age 50 Catch-Up Contributions

　　☐ (4)　Special Catch-Up Contributions for Qualified Employees of Qualified Employers

　　*[Note: Any amounts excluded under this subsection do not apply to Safe Harbor Matching Contributions under AA §6C-2. See AA §6D-2 to determine eligibility of After-Tax Employee Contributions for Matching Contributions.]*

☐ (b) **Application of Matching Contributions to elective deferrals made under another plan maintained by the Employer.** If this subsection is checked, the Matching Contributions described in AA §6B-2 will apply to elective deferrals made under another plan maintained by the Employer.

　　☐ (1)　The Matching Contribution designated in AA §6B-2 above will apply to elective deferrals under the following plan maintained by the Employer: _____

　　☐ (2)　The following special rules apply in determining the amount of Matching Contributions under this Plan with respect to elective deferrals under the plan described in subsection (1): _____

　　*[Note: This subsection may be used to describe special provisions applicable to Matching Contributions provided with respect to elective deferrals under another plan maintained by the Employer, including another Code §403(b) plan, a Code §401(a) plan or a Code §457(b) plan.]*

☐ (c) **Special rules.** The following special rules apply for purposes of determining the Matching Contribution under this AA §6B-3: _____

　　*[Note: Any special rules must satisfy the nondiscrimination requirements under Code §401(a)(4) and the regulations thereunder. If contribution sources are limited for only certain Matching Contributions, those limitations may be described under this subsection.]*

**6B-4 LIMITS ON MATCHING CONTRIBUTIONS.** In applying the Matching Contribution formula(s) selected under AA §6B-2 above, all Eligible Contributions are eligible for Matching Contributions, unless elected otherwise under this AA §6B-4. (See AA §6D-2 for any limits that apply with respect to After-Tax Employee Contributions.)

☐ (a) **ACP safe harbor match.** The Matching Contribution formula(s) selected in AA §6B-2 are designed to satisfy the ACP Safe Harbor as described in Section 6.04(a) of the Plan. Therefore, any Matching Contribution selected in AA §6B-2 will only apply with respect to Eligible Contributions that do not exceed 6% of Plan Compensation and, to the extent any Matching Contribution formula is discretionary, the total amount of discretionary Matching Contributions will not exceed 4% of Plan Compensation for the Plan Year.

　　*[Note: If this subsection (a) is checked, no allocation conditions should be selected under AA §6B-7. If allocation conditions are selected under AA §6B-7, the Matching Contributions under this AA §6B-2 may not qualify for the ACP safe harbor. See Section 6.04(a) of the Plan. Also, if this subsection (a) is checked, the Employer must complete AA§6C.]*

☒ (b) **Limit on the amount of Eligible Contributions.** The Matching Contribution formula(s) selected in AA §6B-2 above apply only to Eligible Contributions that do not exceed:

　　☒ (1)　__5__% of Plan Compensation.

　　☐ (2)　$____ .

　　☐ (3)　A discretionary amount determined by the Employer.

　　*[Note: If both (1) and (2) are selected, the limit under this subsection is the lesser of the percentage selected in subsection (1) or the dollar amount selected in subsection (2).]*

☐ (c) **Limit on Matching Contributions.** The total Matching Contribution provided under the formula(s) selected in AA §6B-2 above will not exceed:

　　☐ (1)　____% of Plan Compensation.

　　☐ (2)　$____ .

　　☐ (3)　Other limits on Matching Contributions: _____ *(not greater than 100% of Plan Compensation.)*

© Copyright 2018

☐ (d)    **Application of limits.** The limits identified under this AA §6B-4 do **not** apply to the following Matching Contribution formula(s):

☐ (1)  Any limit on the amount of Eligible Contributions does not apply to:

☐ (i)   Discretionary match

☐ (ii)  Fixed match

☐ (iii) Tiered match

☐ (iv)  Year of Service match

☐ (v)   Employee group match

☐ (2)  Any limit on Matching Contributions does not apply to:

☐ (i)   Discretionary match

☐ (ii)  Fixed match

☐ (iii) Tiered match

☐ (iv)  Year of Service match

☐ (v)   Employee group match

☐ (e)    **Special limits applicable to Matching Contributions:** _____

*[**Note:** Any special provisions under this subsection must comply with the nondiscrimination requirements under Code §401(a)(4).]*

**6B-5    PERIOD FOR DETERMINING MATCHING CONTRIBUTIONS.** The Matching Contribution formula(s) selected in AA §6B-2 above (including any limitations on such amounts under AA §6B-4) are based on Eligible Contributions and Plan Compensation for the Plan Year. To apply a different period for determining the Matching Contributions and limits under AA §6B-2 and AA §6B-4, complete this AA §6B-5.

☐ (a)    payroll period

☐ (b)    Plan Year quarter

☐ (c)    calendar month

☐ (d)    Other: _____

*[**Note:** Although Matching Contributions (and any limits on those Matching Contributions) will be determined on the basis of the period designated under this AA §6B-5, this does not require the Employer to actually make contributions or allocate contributions on the basis of such period. Matching Contributions may be contributed and allocated to Participants at any time within the contribution period permitted under Treas. Reg. §1.415-6, regardless of the period selected under this AA §6B-5. Any alternative period designated under this AA §6B-5 may not exceed a 12-month period and will apply uniformly to all Participants.]*

*[**Note:** In determining the amount of Matching Contributions for a particular period, if the Employer actually makes Matching Contributions to the Plan on a more frequent basis than the period selected in this AA §6B-5, a Participant will be entitled to a true-up contribution to the extent he/she does not receive a Matching Contribution based on the Eligible Contributions and/or Plan Compensation for the entire period selected in this AA §6B-5. If a period other than the Plan Year is selected under this AA §6B-5, the Employer may make an additional discretionary Matching Contribution equal to the true-up contribution that would otherwise be required if Plan Year was selected under this AA §6B-5.]*

**6B-6    ACP TESTING.** The ACP Test will be performed using the Current Year Testing Method, unless designated otherwise under this AA §6B-6.

☐ (a)    **Prior Year Testing Method.** Instead of the Current Year Testing Method, the Plan will use the Prior Year Testing Method in running the ACP Test.

*[**Note:** If the Plan is intended to be a Safe Harbor 403(b) Plan (as designated in AA §6C below), the Plan must use the Current Year Testing Method. Thus, for any year the Plan is a Safe Harbor 403(b) Plan, the Current Year Testing Method applies, regardless of any selection under this subsection.]*

☐ (b)    **Application of Current Year Testing Method.** The Current Year Testing Method has applied since the _____ Plan Year.

*[**Note:** If the Plan has switched from the Prior Year Testing Method to the Current Year Testing Method, this subsection may be checked to designate the first Plan Year for which the Current Year Testing Method applies.]*

☐ (c)    **Special rule for first Plan Year.** If this is a new Plan, the testing method selected in this AA §6B-6 applies for purposes of applying the ACP Test for the first Plan Year of the Plan, unless designated otherwise under this subsection. If the Prior Year Testing Method applies, the ACP of the Nonhighly Compensated Employee Group for the first Plan Year is deemed to be 3%. (See Section 6.02(a)(3) of the Plan.)

☐ (1)    **Instead of the Prior Year Testing Method,** the Plan will use the Current Year Testing Method for the first Plan Year for which the 401(m) Plan is effective.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 145 of 177   Document 23-6
MTD Page 144

☐ (2)     **Instead of the Current Year Testing Method,** the Plan will use the Prior Year Testing Method for the first Plan Year for which the 401(m) Plan is effective.

**6B-7 ALLOCATION CONDITIONS.** A Participant must satisfy any allocation conditions designated under this AA §6B-7 to receive an allocation of Matching Contributions under the Plan.

*[**Note:** Any allocation conditions set forth under this AA §6B-7 do not apply to Safe Harbor Matching Contributions under AA §6C, unless provided otherwise under those specific sections. See AA §4-5 for treatment of service with Predecessor Employers for purposes of applying the allocation conditions under this AA §6B-7.]*

☑ (a)     **No allocation conditions** apply with respect to Matching Contributions under the Plan.

☐ (b)     **Safe harbor allocation condition.** An Employee must be employed by the Employer on the last day of the Plan Year OR must complete more than:

     ☐ (1)     ____ (not to exceed 500) Hours of Service during the Plan Year.

         ☐ (i)     Hours of Service are determined using actual Hours of Service.

         ☐ (ii)     Hours of Service are determined using the following Equivalency Method (as defined under AA §4-3(d)):

             ☐ (A)    Monthly              ☐ (B)    Weekly

             ☐ (C)    Daily                 ☐ (D)    Semi-monthly

     ☐ (2)     ____ (not more than 91) consecutive days of employment with the Employer during the Plan Year.

*[**Note:** Under this safe harbor allocation condition, an Employee will satisfy the allocation conditions if the Employee completes the designated Hours of Service or period of employment, even if the Employee is not employed on the last day of the Plan Year. See Section 3.07 of the Plan for rules regarding the application of this allocation condition to the minimum coverage test.]*

☐ (c)     **Employment condition.** An Employee must be employed with the Employer on the last day of the Plan Year.

☐ (d)     **Minimum service condition.** An Employee must be credited with at least:

     ☐ (1)     _____ Hours of Service (not to exceed 1,000) during the Plan Year.

         ☐ (i)     Hours of Service are determined using actual Hours of Service.

         ☐ (ii)     Hours of Service are determined using the following Equivalency Method (as defined under AA §4-3(d)):

             ☐ (A)    Monthly              ☐ (B)    Weekly

             ☐ (C)    Daily                 ☐ (D)    Semi-monthly

     ☐ (2)     ____ (not more than 182) consecutive days of employment with the Employer during the Plan Year.

☐ (e)     **Application to a specified period.** The allocation conditions selected under this AA §6B-7 apply on the basis of the Plan Year. Alternatively, if an employment or minimum service condition applies under this AA §6B-7, the Employer may elect under this subsection to apply the allocation conditions on a periodic basis as set forth below. (See Section 3.07(a) of the Plan for a description of the rules for applying the allocation conditions on a periodic basis.)

     ☐ (1)     **Period for applying allocation conditions.** Instead of the Plan Year, the allocation conditions set forth under subsection (2) below apply with respect to the following periods:

         ☐ (i)     Plan Year quarter

         ☐ (ii)     calendar month

         ☐ (iii)     payroll period

         ☐ (iv)     Other: _____

     ☐ (2)     **Application to allocation conditions.** To the extent an employment or minimum service allocation condition applies under this AA §6B-7, such allocation condition will apply based on the period selected under subsection (1) above, unless designated otherwise below:

         ☐ (i)     Only the employment condition will be based on the period selected in subsection (1) above.

         ☐ (ii)     Only the minimum service condition will be based on the period selected in subsection (1) above.

         ☐ (iii)     Describe any special rules: _____

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 146 of 177    Document 23-6

MTD Page 145

*[**Note:** Any special rules under subsection (iii) must satisfy the nondiscrimination requirements of Code §401(a)(4).]*

☐ (f) **Exceptions.**

    ☐ (1) The above allocation condition(s) will **not** apply if the Employee:

        ☐ (i) dies during the Plan Year.

        ☐ (ii) terminates employment due to becoming Disabled.

        ☐ (iii) terminates employment after attaining Normal Retirement Age.

        ☐ (iv) terminates employment after attaining Early Retirement Age.

        ☐ (v) is on an authorized leave of absence from the Employer.

    ☐ (2) The exceptions selected under subsection (1) will apply even if an Employee has not terminated employment at the time of the selected event(s).

    ☐ (3) The exceptions selected under subsection (1) do not apply to:

        ☐ (i) an employment condition designated under this AA §6B-7.

        ☐ (ii) a minimum service condition designated under this AA §6B-7.

        ☐ (iii) the following Matching Contributions:

            ☐ (A) Discretionary match

            ☐ (B) Fixed match

            ☐ (C) Tiered match

            ☐ (D) Year of Service match

            ☐ (E) Employee group match

☐ (g) **Describe** any special rules governing the allocation conditions under the Plan: _____

*[**Note:** Any special rules must satisfy the nondiscrimination requirements under Code §401(a)(4).]*

**6B-8 SPECIAL RULES APPLICABLE TO MATCHING CONTRIBUTIONS.** The following special rules apply to Matching Contributions: _____

*[**Note:** Any special rule applicable to matching contributions must satisfy the nondiscrimination requirements of Code §401(a)(4) and provide definitely determinable benefits.]*

---

## SECTION 6C
## SAFE HARBOR 403(b) CONTRIBUTIONS

---

**6C-1 SAFE HARBOR 403(b) PLAN.** Is the Plan intended to be a Safe Harbor 403(b) Plan?

☐ Yes

☑ No *[If "No" is checked, skip to Section 6D.]*

**6C-2 SAFE HARBOR CONTRIBUTIONS.** To qualify as a Safe Harbor 403(b) Plan, the Employer must make a Safe Harbor/QACA Safe Harbor Matching Contribution or Safe Harbor/QACA Safe Harbor Employer Contribution. The Safe Harbor Contribution elected under this AA §6C-2 will be in addition to any Employer Contribution or Matching Contribution elected in AA §6 or AA §6B above.

☐ (a) **Safe Harbor/QACA Safe Harbor Matching Contribution.**

    ☐ (1) **Safe Harbor Matching Contribution formula.**

        ☐ (i) **Basic match:** 100% of Salary Deferrals up to the first 3% of Plan Compensation, plus 50% of Salary Deferrals up to the next 2% of Plan Compensation.

        ☐ (ii) **Enhanced match:** ____% of Salary Deferrals up to ____% of Plan Compensation.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 147 of 177   Document 23-6

MTD Page 146

    ☐ (iii)  **Tiered match:** ___% of Salary Deferrals up to the first ___% of Plan Compensation,

        ☐ (A)  plus ___% of Salary Deferrals up to the next ___% of Plan Compensation,

        ☐ (B)  plus ___% of Salary Deferrals up to the next ___% of Plan Compensation.

*[**Note:** The enhanced match under subsection (ii) and the tiered match under subsection (iii) must provide a matching contribution that is at least equivalent at all deferral levels to the basic match described in subsection (i). If the enhanced match or tiered match applies to Salary Deferrals in excess of 6% of Plan Compensation or if the tiered match provides for a greater level of match at higher levels of Salary Deferrals, the Matching Contribution will be subject to ACP Testing. See Section 6.04(a)(1) of the Plan. The rate of Matching Contributions cannot increase as the rate of Salary Deferrals increases.]*

☐ (2)  **QACA Safe Harbor Matching Contribution formula.** *[**Note:** Also must select AA §6A-8.]*

    ☐ (i)  **Basic match:** 100% of Salary Deferrals up to the first 1% of Plan Compensation, plus 50% of Salary Deferrals up to the next 5% of Plan Compensation.

    ☐ (ii)  **Enhanced match:** ___% of Salary Deferrals up to ___% of Plan Compensation.

    ☐ (iii)  **Tiered match:** ___% of Salary Deferrals up to the first ___% of Plan Compensation,

        ☐ (A)  plus ___% of Salary Deferrals up to the next ___% of Plan Compensation,

        ☐ (B)  plus ___% of Salary Deferrals up to the next ___% of Plan Compensation.

*[**Note:** The enhanced match under subsection (ii) and the tiered match under subsection (iii) must provide a matching contribution that is at least equivalent at all deferral levels to the basic match described in subsection (i). If the enhanced match or tiered match applies to Salary Deferrals in excess of 6% of Plan Compensation or if the tiered match provides for a greater level of match at higher levels of Salary Deferrals, the Matching Contribution will be subject to ACP Testing. See Section 6.04(a)(1) of the Plan. The rate of Matching Contributions cannot increase as the rate of Salary Deferrals increases.]*

☐ (3)  **Period for determining Safe Harbor Matching Contributions.** Instead of the Plan Year, the Safe Harbor/QACA Safe Harbor Matching Contribution formula selected in (1) or (2) above is based on Salary Deferrals for the following period:

    ☐ (i)  payroll period

    ☐ (ii)  Plan Year quarter

    ☐ (iii)  calendar month

    ☐ (iv)  Other: _____

*[**Note:** In determining the amount of Safe Harbor/QACA Safe Harbor Matching Contributions for a particular period, if the Employer actually makes Safe Harbor/QACA Safe Harbor Matching Contributions to the Plan on a more frequent basis than the period selected in this subsection (3), a Participant will be entitled to a "true-up" contribution to the extent he/she does not receive a Safe Harbor/QACA Safe Harbor Matching Contribution based on the Salary Deferrals and/or Plan Compensation for the entire period selected in subsection (3). Thus, for example, if Plan Year applies under this subsection (3), additional Safe Harbor/QACA Safe Harbor Matching Contributions may be required if the Safe Harbor/QACA Safe Harbor Matching Contributions are made on a more frequent basis than annually. If true-up contributions will not be made for any Participant under the Plan, payroll period should be selected under subsection (i).]*

☐ (b)  **Safe Harbor/QACA Safe Harbor Employer Contribution:** ____% (not less than 3%) of Plan Compensation.

*[**Note:** If the Plan is designated as a QACA under AA §6A-8, the Safe Harbor/QACA Safe Harbor Employer Contribution will be a QACA Safe Harbor Contribution. If the Plan is not designated as a QACA under AA §6A-8, the Safe Harbor/QACA Safe Harbor Employer Contribution will be a regular Safe Harbor Employer Contribution.]*

    ☐ (1)  **Supplemental Safe Harbor notice.** Check this selection if the Employer will make the Safe Harbor/QACA Safe Harbor Employer Contribution pursuant to a supplemental notice, as described in Section 6.04(a)(4)(iii) of the Plan.

*[**Note:** If this subsection (1) is checked, the Safe Harbor/QACA Safe Harbor Employer Contribution described above will be required for a Plan Year only if the Employer provides a supplemental notice (as described in Section 6.04(a)(4)(iii) of the Plan). If the Employer properly provides the Safe Harbor notice but does not provide a supplemental notice, the Employer need not provide the Safe Harbor/QACA Safe Harbor Employer Contribution described above. In such a case, the Plan will not qualify as a Safe Harbor 403(b) Plan for that*

*Plan Year and will be subject to ACP testing, as applicable. See Section 6.04(a)(4)(iii) of the Plan for rules that apply in subsequent Plan Years.*]

☐ (2) **Other plan.** Check this subsection (2) if the Safe Harbor/QACA Safe Harbor Employer Contribution will be made under another plan maintained by the Employer and identify the plan: _____

☐ (c) **Special rules:** The following special rules apply for purposes of applying the Safe Harbor provisions under the Plan: __

*[Note: Any special rules must satisfy the nondiscrimination requirements of Code §401(a)(4).]*

**6C-3 ELIGIBILITY FOR SAFE HARBOR CONTRIBUTION.** The Safe Harbor Contribution selected in AA §6C-2 above will be allocated to all Participants who are eligible to make Salary Deferrals under the Plan, unless designated otherwise under this AA §6C-3.

☐ (a) **Availability of Safe Harbor Contributions.** Instead of being allocated to all eligible Participants, the Safe Harbor Contribution selected in AA §6C-2 will be allocated only to:

☐ (1) Nonhighly Compensated Participants

☐ (2) Nonhighly Compensated Participants and any Highly Compensated Non-Key Employees

(b) **Eligible Employees.** Any Excluded Employees will be determined under the Deferral column under AA §3-1. Note that a Safe Harbor 403(b) Plan is required to provide a Safe Harbor Contribution on behalf of any Employee who is eligible to make Salary Deferrals under the Plan.

☐ (c) **Minimum age and service conditions.** If this subsection is checked, the following minimum age and service conditions apply for Safe Harbor Contributions. *[Note: The addition of minimum age or service conditions under this subsection may require additional nondiscrimination testing. See Section 6.04(d) of the Plan.]*

☐ (1) **Minimum service requirement.**

☐ (i) No minimum service conditions apply.

☐ (ii) The minimum service conditions applicable to Matching Contributions (as selected in AA §4).

☐ (iii) The minimum service conditions applicable to Employer Contributions (as selected in AA §4).

☐ (iv) One Year of Service using shifting Eligibility Computation Period. (See Section 2.03(a)(3)(i) of the Plan.)

☐ (v) The completion of at least ____ *[cannot exceed 1,000]* Hours of Service during the first ____ months of employment or the completion of a Year of Service (as defined in AA §4-3), if earlier.

☐ (vi) Describe: _____

*[Note: For purposes of determining eligibility for Safe Harbor Contributions, an Employee may not be required to complete more than one Year of Service.]*

☐ (2) **Minimum age requirement.**

☐ (i) No minimum age requirement

☐ (ii) Age 21

☐ (iii) Age ____ (not later than age 21)

☐ (3) **Entry Date.**

☐ (i) Immediate                ☐ (ii) Semi-annual

☐ (iii) Quarterly               ☐ (iv) Monthly

☐ (d) **Describe eligibility conditions:** _____

*[Note: Any additional eligibility conditions must satisfy the requirements of Code §410(a) and may not violate the nondiscrimination requirements of Code §401(a)(4).]*

**6C-4 DEFINITION OF PLAN COMPENSATION.** Unless designated otherwise under this AA §6C-4, Plan Compensation is the same definition as selected under the Deferral column of AA §5-3 and AA §5-4. (*See Note below for special rules applicable to definition of Plan Compensation.*)

☐ (a) **Modification of Plan Compensation.** Instead of using the definition of Plan Compensation used for Salary Deferrals under AA §5-3, the following exclusions apply for Safe Harbor Contributions:

☐ (1) No exclusions.

☐ (2) All fringe benefits, expense reimbursements, deferred compensation, moving expenses, and welfare benefits are excluded.

☐ (3) Amounts received as a bonus are excluded.

☐ (4)    Amounts received as commissions are excluded.

☐ (5)    Overtime payments are excluded.

☐ (6)    Describe adjustments to Plan Compensation: _____

*[**Note:** Any exclusions selected under subsections (3) – (6) may cause the definition of Plan Compensation to fail to satisfy a safe harbor definition of compensation under Code §414(s). Any modification under subsection (6) must be definitely determinable and preclude Employer discretion.]*

☐ (b)    **Exclusions applicable only to Highly Compensated Employees.** If this subsection is checked, any non-safe harbor adjustments selected under AA §5-3 or under this AA §6C-4, to the extent the adjustments apply to Safe Harbor Contributions, will apply only to Highly Compensated Employees.

    *[**Note:** If this subsection is checked, the definition of Plan Compensation that applies for purposes of determining the amount of Safe Harbor Contributions under the Plan will be deemed to satisfy a safe harbor definition of compensation under Code §414(s). See Section 1.137 of the Plan for a description of non-safe harbor compensation adjustments.]*

☐ (c)    **Compensation while a Participant.** Instead of using the period of compensation designated under AA §5-4 for Salary Deferrals, the following Plan Compensation will be taken into account for Safe Harbor Contributions:

    ☐ (1)    Only Plan Compensation earned while the Employee is eligible to receive a Safe Harbor Contribution.

    ☐ (2)    Plan Compensation for the entire Plan Year, including compensation earned while an individual is not eligible to receive the Safe Harbor Contribution.

*[**Note:** In order to qualify as a Safe Harbor 403(b) Plan, the Plan must use a definition of Plan Compensation that satisfies a nondiscriminatory definition under Code §414(s). If the definition of Plan Compensation used for determining Safe Harbor Contributions under the Plan does not satisfy a nondiscriminatory definition under Code §414(s) for a given Plan Year, the Employer will be deemed to have elected to use Total Compensation for purposes of determining the Safe Harbor/QACA Safe Harbor Contribution for such Plan Year.]*

**6C-5**    **OFFSET OF ADDITIONAL EMPLOYER CONTRIBUTIONS.** Any additional Employer Contributions under AA §6 will be allocated to all eligible Participants in addition to the Safe Harbor Employer Contribution, unless selected otherwise under this AA §6C-5.

    ☐    Check this AA §6C-5 to provide that the Safe Harbor Employer Contribution offsets any additional Employer Contributions designated under AA §6.

**6C-6**    **DELAYED EFFECTIVE DATE.** The Safe Harbor provisions under this AA §6C are effective as of the Effective Date of the Plan, as designated in the Employer Signature Page. To provide for a delayed effective date for the Safe Harbor provisions, check this AA §6C-6.

    ☐    The Safe Harbor provisions under this AA §6C are effective beginning _____. Prior to this delayed effective date, the provisions of this AA §6C do not apply. Thus, prior to the delayed effective date, the Employer is not obligated to make a Safe Harbor Contribution and the Plan is subject to ACP Testing, to the extent applicable.

---

**SECTION 6D**
**SPECIAL CONTRIBUTIONS**

---

**6D-1**    **SPECIAL CONTRIBUTIONS.** The following Special Contributions may be made under the Plan:

    ☑ (a)    No Special Contributions are permitted. *[Skip to Section 7.]*

    ☐ (b)    After-Tax Employee Contributions.

    ☐ (c)    Qualified Nonelective Contributions (QNECs).

*[**Note:** Regardless of any elections under this AA §6D-1, the Employer may make additional QNECs to the Plan on behalf of the Nonhighly Compensated Employees and use such amounts to correct an ACP Test violation. See Section 6.02(b)(3) of the Plan for special rules regarding the allocation of QNECs under the Plan.]*

**6D-2**    **AFTER-TAX EMPLOYEE CONTRIBUTIONS.** If After-Tax Employee Contributions are authorized under AA §6D-1, a Participant may contribute any amount as After-Tax Employee Contributions up to the Code §415 Limitation (as defined in Section 5.03 of the Plan), except as limited under this AA §6D-2.

    ☐ (a)    **Eligibility for After-Tax Contributions.** If authorized under AA §6D-1, all Eligible Participants may make After-Tax Employee Contributions, except the following: _____

[*Note: Any exclusion of Eligible Participants must satisfy applicable coverage requirement under Code §410(b) and the nondiscrimination requirements of Code §401(a)(4).*]

☐ (b) **Limits on After-Tax Employee Contributions.** If this subsection is checked, the following limits apply to After-Tax Employee Contributions:

  ☐ (1) **Maximum limit.** A Participant may make After-Tax Employee Contributions up to:

    ☐ (i) ____% of Plan Compensation

    ☐ (ii) $____

    for the following period:

    ☐ (iii) the entire Plan Year.

    ☐ (iv) the portion of the Plan Year during which the Employee is eligible to participate.

    ☐ (v) each separate payroll period during which the Employee is eligible to participate.

  ☐ (2) **Minimum limit.** The amount of After-Tax Employee Contributions a Participant may make for any payroll period may not be less than:

    ☐ (i) ____% of Plan Compensation.

    ☐ (ii) $____.

☐ (c) **Eligibility for Matching Contributions.** Unless designated otherwise under this subsection, After-Tax Employee Contributions will **not** be eligible for Matching Contributions under the Plan.

  ☐ (1) After-Tax Employee Contributions are eligible for the following Matching Contributions under the Plan:

    ☐ (i) All Matching Contributions elected under AA §6B and AA §6C.

    ☐ (ii) All Matching Contributions elected under AA §6B (other than Safe Harbor/QACA Safe Harbor Matching Contributions elected under AA §6C-2).

    ☐ (iii) Only Safe Harbor/QACA Safe Harbor Matching Contributions under AA §6C-2.

    ☐ (iv) All Matching Contributions designated under AA §6B-2 and/or AA §6C-2, except for the following Matching Contributions: _____

  ☐ (2) The Matching Contribution formula only applies to After-Tax Employee Contributions that do not exceed:

    ☐ (i) ____% of Plan Compensation.

    ☐ (ii) $____.

    ☐ (iii) A discretionary amount determined by the Employer.

(d) **Change or revocation of After-Tax Employee Contributions.** In addition to the Participant's Entry Date under the Plan, a Participant's election to change or resume an after-tax election will be effective as set forth under the After-Tax Contributions election form or other written procedures adopted by the Plan Administrator. A Participant must be permitted to change or revoke an after-tax election at least once per year. Unless the After-Tax Contributions election form or other written procedures adopted by the Plan Administrator provide otherwise, a Participant may revoke an after-tax election (on a prospective basis) at any time.

☐ (e) **ACP Testing Method.** The same ACP Testing Method will apply to After-Tax Employee Contributions as applies to Matching Contributions, as designated under AA §6B-6. If no method is selected under AA §6B-6, the Current Year Testing Method will apply, unless designated otherwise under this subsection.

  ☐ (1) Instead of the Current Year Testing Method, if no testing method is selected under AA §6B-6, the Plan will use the **Prior Year Testing Method** in running the ACP Test.

  [*Note: If the Plan is a Safe Harbor 403(b) Plan (as designated in AA §6C), the Plan must use the Current Year Testing Method.*]

  **Special rule for first Plan Year.** If this is a new 401(m) Plan, the testing method selected in this AA §6B-6 applies for purposes of applying the ACP Test for the first Plan Year of the Plan, unless designated otherwise under this subsection. If the Prior Year Testing Method applies, the ACP of the Nonhighly Compensated Employee Group for the first Plan Year is deemed to be 3%.

  ☐ (2) **Instead of the Prior Year Testing Method,** the Plan will use the Current Year Testing Method for the first Plan Year for which the 401(m) Plan is effective.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 151 of 177   Document 23-6
MTD Page 150

☐ (3)  **Instead of the Current Year Testing Method**, the Plan will use the Prior Year Testing Method for the first Plan Year for which the 401(m) Plan is effective.

☐ (f)  **Other limits:** _____

[*Note: Any other limits must comply with the nondiscrimination requirements under Code §401(a)(4).*]

**6D-3  QUALIFIED NONELECTIVE CONTRIBUTIONS (QNECs).** If QNECs are authorized under AA §6D-1, the Employer may make a discretionary QNEC to the Plan as a uniform percentage of Plan Compensation, a uniform dollar amount, or as a Targeted QNEC. (See Section 3.02(a)(6)(ii)(B) of the Plan for the description of a Targeted QNEC.) The Employer also may elect under this AA §6D-3 to make a fixed QNEC to the Plan. If the Employer decides to make a discretionary QNEC, the Employer must designate the contribution as a QNEC prior to making such contribution to the Plan. (See Section 6.02(a)(4) of the Plan for a description of the amount of QNEC that may be used in the ACP Test.)

Unless provided otherwise under this AA §6D-3, any QNEC authorized under AA §6D-1 will be allocated to Nonhighly Compensated Employees who are eligible to make Salary Deferrals, without regard to the allocation conditions selected in AA §6-7. Any contribution designated as a QNEC will automatically be subject to the requirements for QNECs (as described in Section 3.02(a)(6) of the Plan). QNECs will be eligible for in-service distribution under the same conditions as elected for Salary Deferrals under AA §10 (other than hardship distributions), unless designated otherwise under AA §10.

To modify these default allocation provisions, complete the applicable provisions under this AA §6D-3.

☐ (a)  **All Participants.** Any QNEC made pursuant to this AA §6D-3 will be allocated to all Participants who are eligible to defer, including Highly Compensated Employees.

☐ (b)  **Fixed QNEC.**

☐ (1)  The Employer will make a QNEC each Plan Year equal to ____% of Plan Compensation.

☐ (2)  The Employer will make a QNEC each Plan Year equal to $____.

☐ (c)  **Allocation conditions.** Any QNEC made pursuant to this AA §6D-3 will be allocated only to Participants who have satisfied the following allocation conditions:

☐ (1)  **Safe harbor allocation condition.** An Employee must be employed by the Employer on the last day of the Plan Year OR must complete more than 500 Hours of Service. (See Section 3.07 of the Plan.)

☐ (2)  **Employment condition.** An Employee must be employed with the Employer on the last day of the Plan Year.

☐ (3)  **Minimum service condition.** An Employee must be credited with at least 1,000 Hours of Service during the Plan Year.

☐ (4)  **Describe:** _____

[*Note: The allocation conditions may not violate the nondiscrimination requirements of Code §401(a)(4).*]

☐ (d)  **Eligibility for QNECs.** In determining eligibility for QNECs, only those Participants who are eligible for the following contributions will share in the allocation of QNECs (subject to the selections in this AA §6D-3):

☐ (1)  **Employer Contributions**

☐ (2)  **Matching Contributions**

☐ (3)  **Describe:** _____

[*Note: The allocation conditions may not violate the nondiscrimination requirements of Code §401(a)(4).*]

☐ (e)  **Special rules:** _____

[*Note: Any special provisions under this AA §6D-3 must satisfy the nondiscrimination requirements of Code §401(a)(4) and the regulations thereunder.*]

## SECTION 7
## RETIREMENT AGES

**7-1  NORMAL RETIREMENT AGE:** Normal Retirement Age under the Plan is:

☑ (a)  Age _65_ (not to exceed 65).

☐ (b)  The later of age ____ (not to exceed 65) or the ____ (not to exceed 5th) anniversary of the Employee's:

☐ (1)  Participation commencement date.

☐ (2)  Employment date.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 152 of 177   Document 23-6

MTD Page 151

☐ (c)    Describe Normal Retirement Age: _____

> *[**Note:** May not be later than the later of age 65 or the 5[th] anniversary of the Employee's participation commencement date.]*

7-2    **EARLY RETIREMENT AGE:**  Unless designated otherwise under this AA §7-2, there is no Early Retirement Age under the Plan.

☐ (a)    A Participant reaches Early Retirement Age if he/she is still employed after attainment of each of the following:

☐ (1)    Attainment of age ____.

☐ (2)    The ____ anniversary of the date the Employee commenced participation in the Plan, and/or

☐ (3)    The completion of ____ Years of Service, determined as follows:

☐ (i)    Same as for eligibility.

☐ (ii)    Same as for vesting.

☐ (b)    Describe: _____

> *[**Note:** Any special rules under this subsection (b) must preclude Employer discretion and must satisfy the nondiscrimination requirements of Code §401(a)(4) and the regulations thereunder.]*

---

## SECTION 8
## VESTING AND FORFEITURES

8-1    **CONTRIBUTIONS SUBJECT TO VESTING.** Does the Plan provide for Employer Contributions under AA §6, Matching Contributions under AA §6B, or QACA Safe Harbor Contributions under AA §6C that are subject to vesting?

☑    Yes

☐    No [*If "No" is checked, skip to Section 9.*]

> *[**Note:** "Yes" should be checked under this AA §8-1 if the Plan provides for Employer Contributions and/or Matching Contributions that are subject to a vesting schedule, even if such contributions are always 100% vested under AA §8-2. "No" should be checked if the only contributions under the Plan are Salary Deferrals and/or After-Tax Employee Contributions.]*

8-2    **VESTING SCHEDULE.** The vesting schedule under the Plan is as follows for both Employer Contributions and Matching Contributions, to the extent authorized under AA §6 and AA §6B. (See Section 7.02 of the Plan for a description of the various vesting schedules under this AA §8-2.)

☑ (a)    **Vesting schedule for Employer Contributions and Matching Contributions:**

| ER | Match | | |
|----|-------|---|---|
| ☐ | ☐ | (1) | Full and immediate vesting |
| ☐ | ☐ | (2) | 3-year cliff vesting schedule |
| ☐ | ☐ | (3) | 5-year graded vesting schedule |
| ☐ | ☐ | (4) | 6-year graded vesting schedule |
| ☐ | ☐ | (5) | Modified vesting schedule |

____% after 1 Year of Service

____% after 2 Years of Service

____% after 3 Years of Service

____% after 4 Years of Service

____% after 5 Years of Service

100% after 6 Years of Service

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 153 of 177    Document 23-6
MTD Page 152

**ER**    **Match**

☑      (6)   Describe additional modifications applicable to Employer Contributions: <u>0% after 1 Year of Service; 33 1/3% after 2 Years of Service; 66 2/3% after 3 Years of Service; 100% after 4 Years of Service.</u>

     ☑    (7)   Describe additional modifications applicable to Matching Contributions: <u>0% after 1 Year of Service; 33 1/3% after 2 Years of Service; 66 2/3% after 3 Years of Service; 100% after 4 Years of Service.</u>

[***Note:*** *If a modified vesting schedule is selected under this subsection (a), the vested percentage for every Year of Service must satisfy the vesting requirements under the 6-year graded vesting schedule, unless 100% vesting occurs after no more than 3 Years of Service.*]

☐ **(b)**   **Special vesting schedule for QACA Safe Harbor Contributions.** Unless designated otherwise under this subsection, any QACA Safe Harbor Contributions will be 100% vested. However, if this subsection is checked, the following vesting schedule applies for QACA Safe Harbor Contributions. [***Note:*** *This subsection may be checked only if a QACA Safe Harbor Contribution is selected under AA §6C-2.*]

Instead of being 100% vested, QACA Safe Harbor Contributions are subject to the following vesting schedule:

☐ (1)   2-year cliff vesting

☐ (2)   1-year cliff vesting

☐ (3)   Graduated vesting

     ____% after 1 Year of Service

     100% after 2 Years of Service

☑ **(c)**   **Special provisions applicable to vesting schedule:** <u>(1) The Employer Contributions and Matching Contributions of Participants who were employed by Community Memorial Hospital prior to 1-1-2008 shall vest in accordance with the following schedule: 1 Year of Service = 0%, 2 Years of Service = 33 1/3%, 3 Years of Service = 100%;  (2) The Employer Contributions and Matching Contributions of Participants who were employed by Froedtert Lutheran Memorial Hospital, Inc. or Froedtert Health, Inc. prior to 1-1-2008 shall at all times be 100% vested; (3)(a) The Employer Contributions and Matching Contributions for Participants who were employed by St. Joseph's Community Hospital of West Bend, Inc. prior to 1-1-2010, and became Participants in the Plan on 1-1-2010, shall at all times be 100% vested and (b) The Employer Contributions and Matching Contributions for Participants who were first hired by St. Joseph's Community Hospital of West Bend, Inc. on or after 1-1-2010 shall vest in accordance with the Plan's current vesting schedule; (4)(a) The Employer Contributions and Matching Contributions for Participants who were employed by West Bend Clinic, Inc. prior to 1-1-2008, and became Participants in the Plan on 1-1-2010, shall at all times be 100% vested, (b) The Employer Contributions and Matching Contributions for Participants who were employed by West Bend Clinic, Inc. on or after 1-1-2008, but prior to 1-1-2010, and became Participants in the Plan on 1-1-2010, shall vest in accordance with the following schedule: 1 Year of Service = 20%, 2 Years of Service = 40%, 3 Years of Service = 66 2/3%, 4 Years of Service = 100%, and (c) The Employer Contributions and Matching Contributions for Participants who were first hired by West Bend Clinic, Inc. on or after 1-1-2010, shall vest in accordance with the Plan's current vesting schedule.</u>

[***Note:*** *Any special provisions must satisfy the nondiscrimination requirements under Code §401(a)(4) and must satisfy the vesting requirements under Code §411.*]

**8-3**   **VESTING SERVICE.** In applying the vesting schedules under this AA §8, all service with the Employer counts for vesting purposes, unless designated otherwise under this AA §8-3.

☐ (a)   Service before the original Effective Date of this Plan (or a Predecessor Plan) is excluded.

☐ (b)   Service completed before the Employee's ____ (not to exceed 18th) birthday is excluded.

[***Note:*** *See Section 7.06 of the Plan and AA §4-5 for rules regarding the crediting of service with Predecessor Employers for purposes of vesting under the Plan.*]

8-4    **VESTING UPON DEATH, DISABILITY OR EARLY RETIREMENT AGE.** An Employee's vesting percentage increases to 100% if the Employee:

☑ (a)    dies while employed with the Employer.

☐ (b)    terminates employment due to becoming Disabled.

☐ (c)    reaches Early Retirement Age while employed with the Employer.

☐ (d)    N.A. No vesting increase applies.

[*Note: This AA §8-4(d) should not be completed if the Plan provides for 100% vesting for all contribution sources.*]

8-5    **DEFAULT VESTING RULES.** In applying the vesting requirements under this AA §8, the following default rules apply. [***Note:*** *No election should be made under this AA §8-5 if all contributions are 100% vested.*]

- **Year of Service.** An Employee earns a Year of Service for vesting purposes upon completing 1,000 Hours of Service during a Vesting Computation Period. Hours of Service are calculated based on actual hours worked during the Vesting Computation Period. (See Section 1.68 of the Plan for the definition of Hours of Service.)

- **Vesting Computation Period.** The Vesting Computation Period is the Plan Year.

- **Break in Service Rules.** The Nonvested Participant Break in Service rule and One-Year Break in Service rules do NOT apply.

To override the default vesting rules, complete the applicable sections of this AA §8-5. If this AA §8-5 is not completed, the default vesting rules apply.

| ER | Match | | |
|----|-------|---|---|
| ☐ | ☐ | (a) | **Year of Service.** Instead of 1,000 Hours of Service, an Employee earns a Year of Service upon the completion of ____ Hours of Service during a Vesting Computation Period. |
| ☐ | ☐ | (b) | **Vesting Computation Period.** Instead of the Plan Year: |

    ☐ (1)    The Plan will use Anniversary Years for all Vesting Computation Periods.

    ☐ (2)    Describe: _____

    [*Note: Any Vesting Computation Period described in (2) must be a 12-consecutive month period and must apply uniformly to all Participants.*]

| ER | Match | | |
|----|-------|---|---|
| ☐ | ☐ | (c) | **Elapsed Time Method.** Instead of determining vesting service based on actual Hours of Service, vesting service will be determined under the Elapsed Time Method. If this subsection is checked, service will be measured from the Employee's employment commencement date (or reemployment commencement date, if applicable) without regard to the Vesting Computation Period designated in Section 7.04 of the Plan. |
| ☐ | ☐ | (d) | **Equivalency Method.** For purposes of determining an Employee's Hours of Service for vesting, the Plan will use the Equivalency Method (as defined in Section 7.03(a)(2) of the Plan). The Equivalency Method will apply to: |

    ☐ (1)    All Employees.

    ☐ (2)    Only to Employees for whom the Employer does not maintain hourly records. For Employees for whom the Employer maintains hourly records, vesting will be determined based on actual hours worked.

    Hours of Service for vesting will be determined under the following Equivalency Method:

    ☐ (3)    **Monthly.** 190 Hours of Service for each month worked.

    ☐ (4)    **Weekly.** 45 Hours of Service for each week worked.

    ☐ (5)    **Daily.** 10 Hours of Service for each day worked.

    ☐ (6)    **Semi-monthly.** 95 Hours of Service for each semi-monthly period worked.

| ER | Match | | |
|----|-------|---|---|
| ☑ | ☑ | (e) | **Nonvested Participant Break in Service rule applies.** Service earned prior to a Nonvested Participant Break in Service will be disregarded in applying the vesting rules. (See Section 7.07 of the Plan.) |

    ☐    The Nonvested Participant Break in Service rule applies to all Employees, including Employees who have not terminated employment.

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 155 of 177    Document 23-6
MTD Page 154

| ER | Match | | |
|----|-------|----|---|
| ☐ | ☐ | (f) | **One-Year Break in Service rule applies.** The One-Year Break in Service rule (as defined in Section 7.07 of the Plan) applies to temporarily disregard an Employee's service earned prior to a one-year Break in Service. |
| | | | ☐    The One-Year Break in Service rule applies to all Employees, including Employees who have not terminated employment. |
| ☑ | ☑ | (g) | **Special rules:** <u>For purposes of determining whether a Break in Service has occurred, Froedtert Memorial Lutheran Hospital (and its affiliates) and Community Memorial Hospital (and its affiliates) were not affiliated with each other prior to 2001 and any service of any Employee of either organization shall be disregarded to the extent the Employee terminated prior to 1-1-2001 and was subsequently employed by the other organization. Notwithstanding any provisions to the contrary, Hours of Service shall not include on-call hours.</u> |

*[**Note:** Any special rules must satisfy the nondiscrimination requirements of Code §401(a)(4) and the regulations thereunder.]*

**8-6 ALLOCATION OF FORFEITURES.**

The Employer may decide in its discretion how to treat forfeitures under the Plan. Alternatively, the Employer may designate under this AA §8-6 how forfeitures occurring during a Plan Year will be treated.

| ER | Match | | |
|----|-------|----|---|
| ☐ | ☐ | (a) | N/A. All contributions are 100% vested. *[Do not complete the rest of this AA §8-6.]* |
| ☐ | ☐ | (b) | Reallocated as additional Employer Contributions or as additional Matching Contributions. |
| ☑ | ☑ | (c) | Used to reduce Employer and/or Matching Contributions. |

For purposes of subsection (b) or (c), forfeitures will be applied:

| ER | Match | | |
|----|-------|----|---|
| ☑ | ☑ | (d) | for the Plan Year in which the forfeiture occurs. |
| ☐ | ☐ | (e) | for the Plan Year following the Plan Year in which the forfeiture occur. |

Prior to applying forfeitures under subsection (b) or (c):

| ER | Match | | |
|----|-------|----|---|
| ☑ | ☑ | (f) | Forfeitures may be used to pay Plan expenses. |
| ☐ | ☐ | (g) | Forfeitures may not be used to pay Plan expenses. |

In determining the amount of forfeitures to be allocated under subsection (b), the same allocation conditions apply as for the source for which the forfeiture is being allocated under AA §6-7 or AA §6B-7, unless designated otherwise below:

| ER | Match | | |
|----|-------|----|---|
| ☐ | ☐ | (h) | Forfeitures are not subject to any allocation conditions. |
| ☐ | ☐ | (i) | Forfeitures are subject to a last day of employment allocation condition. |
| ☐ | ☐ | (j) | Forfeitures are subject to a ____ Hours of Service minimum service requirement. |

In determining the treatment of forfeitures under this AA §8-6, the following special rules apply:

| ER | Match | | |
|----|-------|----|---|
| ☐ | ☐ | (k) | Describe: _____ |
| | | | *[**Note:** Any language added under this subsection (k) may not result in a discriminatory allocation of forfeitures in violation of the requirements of Code §401(a)(4).]* |

**8-7 SPECIAL RULES REGARDING CASH-OUT DISTRIBUTIONS.**

(a)    **Additional allocations.** If a terminated Participant receives a complete distribution of his/her vested Account Balance while still entitled to an additional allocation, the Cash-Out Distribution forfeiture provisions do not apply until the Participant receives a distribution of the additional amounts to be allocated. (See Section 7.10(a)(1) of the Plan.)

To modify the default Cash-Out Distribution forfeiture rules, complete this AA §8-7(a).

     ☑    The Cash-Out Distribution forfeiture provisions will apply if a terminated Participant takes a complete distribution, regardless of any additional allocations during the Plan Year.

(b)    **Timing of forfeitures.** A Participant who receives a Cash-Out Distribution (as defined in Section 7.10(a) of the Plan) is treated as having an immediate forfeiture of his/her nonvested Account Balance.

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 156 of 177   Document 23-6

MTD Page 155

To modify the forfeiture timing rules to delay the occurrence of a forfeiture upon a Cash-Out Distribution, complete this AA §8-7(b).

☐      A forfeiture will occur upon the completion of ___ *[cannot exceed 5]* consecutive Breaks in Service.

## SECTION 9
## DISTRIBUTION PROVISIONS – TERMINATION OF EMPLOYMENT

**9-1    AVAILABLE FORMS OF DISTRIBUTION.**

**Lump sum distribution.** A Participant may take a distribution of his/her entire vested Account Balance in a single lump sum upon termination of employment. The Plan Administrator may, in its discretion, permit Participants to take distributions of less than their entire vested Account Balance provided, if the Plan Administrator permits multiple distributions, all Participants are allowed to take multiple distributions upon termination of employment. In addition, the Plan Administrator may permit a Participant to take partial distributions or installment distributions solely to the extent necessary to satisfy the required minimum distribution rules under Section 8 of the Plan.

**Additional distribution options.** To provide for additional distribution options, check the applicable distribution forms under this AA §9-1.

☑ (a)    **Installment distributions.** A Participant may take a distribution over a specified period not to exceed the life or life expectancy of the Participant (and a designated beneficiary).

☐ (b)    **Annuity distributions.** A Participant may elect to have the Plan Administrator use the Participant's vested Account Balance to purchase an annuity as described in Section 8.02 of the Plan. [*This annuity distribution option is in addition to any QJSA distribution required under AA §9-2.*]

☐ (c)    **Describe distribution options:** _____

     [*Note: Any additional distribution options may not be subject to the discretion of the Employer or Plan Administrator.*]

**9-2    QUALIFIED JOINT AND SURVIVOR ANNUITY RULES.** This Plan is not subject to the Qualified Joint and Survivor Annuity rules, except to the extent required under Section 9.01 of the Plan (e.g., if the Plan is a transferee plan). Upon termination of employment, a Participant may receive a distribution from the Plan, in accordance with the provisions of AA §9-3, in any form allowed under AA §9-1. (If any portion of this Plan is subject to the Qualified Joint and Survivor Annuity rules, the QJSA and QPSA provisions will automatically apply to such portion of the Plan.)

To override this default provision, complete the applicable sections of this AA §9-2.

☐ (a)    **Qualified Joint and Survivor Annuity rules.** Check this subsection to apply the Qualified Joint and Survivor Annuity rules to the entire Plan. If this subsection is checked, all distributions from the Plan must satisfy the QJSA requirements under Section 9 of the Plan, with the following modifications:

     ☐ (1)    **No modifications.**

     ☐ (2)    **Modified QJSA benefit.** Instead of a 50% survivor benefit, the Spouse's survivor benefit is:

         ☐ (i)    100%          ☐ (ii)    75%          ☐ (iii)    66-2/3%

☐ (b)    **Modified QPSA benefit.** Instead of a 50% QPSA benefit, the QPSA benefit is 100% of the Participant's vested Account Balance.

9-3    **TIMING OF DISTRIBUTIONS UPON TERMINATION OF EMPLOYMENT.**

    (a)    **Distribution of vested Account Balances exceeding $5,000.** A Participant who terminates employment with a vested Account Balance exceeding $5,000 may receive a distribution of his/her vested Account Balance in any form permitted under AA §9-1 within a reasonable period following:

        ☑ (1)    the date the Participant terminates employment.

        ☐ (2)    the last day of the Plan Year during which the Participant terminates employment.

        ☐ (3)    the first Valuation Date following the Participant's termination of employment.

        ☐ (4)    the completion of ____ Breaks in Service *(no more than 5)*.

        ☐ (5)    the end of the calendar quarter following the date the Participant terminates employment.

        ☐ (6)    attainment of Normal Retirement Age, death or becoming Disabled.

        ☐ (7)    Describe: _____

             *[**Note:** Any distribution event under this subsection (a) will apply uniformly to all Participants under the Plan, may not be subject to the discretion of the Employer or Plan Administrator and may not violate the nondiscrimination requirements of Code §401(a)(4).]*

    (b)    **Distribution of vested Account Balances not exceeding $5,000.** A Participant who terminates employment with a vested Account Balance that does not exceed $5,000 may receive a **lump sum** distribution of his/her vested Account Balance within a reasonable period following:

        ☑ (1)    the date the Participant terminates employment.

        ☐ (2)    the last day of the Plan Year during which the Participant terminates employment.

        ☐ (3)    the first Valuation Date following the Participant's termination of employment.

        ☐ (4)    the end of the calendar quarter following the date the Participant terminates employment.

        ☐ (5)    Describe: _____

             *[**Note:** Any distribution event under this subsection (b) will apply uniformly to all Participants under the Plan and may not be subject to the discretion of the Employer or Plan Administrator and may not violate the nondiscrimination requirements of Code §401(a)(4).]*

9-4    **DISTRIBUTION UPON DISABILITY.** Unless designated otherwise under this AA §9-4, a Participant who terminates employment on account of becoming Disabled may receive a distribution of his/her vested Account Balance in the same manner as a regular distribution upon termination.

    (a)    **Termination of Disabled Employee.**

        ☐ (1)    **Immediate distribution.** Distribution will be made as soon as reasonable following the date the Participant terminates on account of becoming Disabled.

        ☐ (2)    **Following year.** Distribution will be made as soon as reasonable following the last day of the Plan Year during which the Participant terminates on account of becoming Disabled.

        ☐ (3)    **Describe:** _____

             *[**Note:** Any distribution event described in subsection (3) will apply uniformly to all Participants under the Plan and may not be subject to the discretion of the Employer or Plan Administrator. The event can be no later than the last day of the Plan Year during which the Participant terminates on account of becoming Disabled.]*

    (b)    **Definition of Disabled.** A Participant is treated as Disabled if such Participant satisfies the conditions in Section 1.37 of the Plan.

        To override this default definition, check below to select an alternative definition of Disabled to be used under the Plan.

        ☐ (1)    The definition of Disabled is the same as defined in the Employer's Disability Insurance Plan.

        ☑ (2)    The definition of Disabled is the same as defined under Section 223(d) of the Social Security Act for purposes of determining eligibility for Social Security benefits.

        ☐ (3)    Alternative definition of Disabled: _____

             *[**Note:** Any alternative definition described above will apply uniformly to all Participants under the Plan. In addition, any alternative definition of Disabled may not discriminate in favor of Highly Compensated Employees.]*

Case 2:20-cv-00893-PP    Filed 10/26/20    Page 158 of 177    Document 23-6
MTD Page 157

**9-5** **DETERMINATION OF BENEFICIARY.**

(a) **Default beneficiaries.** Unless elected otherwise under this subsection (a) or set forth otherwise under a governing Investment Arrangement, the default beneficiaries described under Section 8.08(c) of the Plan are the Participant's surviving Spouse, the Participant's surviving children, and the Participant's estate.

☐ If this subsection (a) is checked, the default beneficiaries under Section 8.08(c) of the Plan are modified as follows:

_____

(b) **One-year marriage rule.** For purposes of determining whether an individual is considered the surviving Spouse of the Participant, the determination is based on the marital status as of the date of the Participant's death, unless designated otherwise under this subsection (b).

☐ If this subsection (b) is checked, in order to be considered the surviving Spouse, the Participant and surviving Spouse must have been married for the entire one-year period ending on the date of the Participant's death. If the Participant and surviving Spouse are not married for at least one year as of the date of the Participant's death, the Spouse will not be treated as the surviving Spouse for purposes of applying the distribution provisions of the Plan.

(c) **Divorce of Spouse.** Unless elected otherwise under this subsection (c), if a Participant designates his/her Spouse as Beneficiary and subsequent to such Beneficiary designation, the Participant and Spouse are divorced, the designation of the Spouse as Beneficiary under the Plan is automatically rescinded as set forth under Section 8.08(c)(6) of the Plan.

☐ If this subsection (c) is checked, a Beneficiary designation will not be rescinded upon divorce of the Participant and Spouse.

*[Note: Section 8.08(c)(6) of the Plan and this subsection (c) will be subject to the provisions of a Beneficiary designation entered into by the Participant. Thus, if a Beneficiary designation specifically overrides the election under this subsection (c), the provisions of the Beneficiary designation will control. See Section 8.08(c)(6) of the Plan.]*

**9-6** **SPECIAL RULES.**

(a) **Availability of Involuntary Cash-Out Distributions.** A Participant who terminates employment with a vested Account Balance of $5,000 or less will receive an Involuntary Cash-Out Distribution, subject to the Automatic Rollover provisions under Section 8.06 of the Plan.

Alternatively, an Involuntary Cash-Out Distribution will be made to the following terminated Participants:

☐ (1) **No Involuntary Cash-Out Distributions.** The Plan does not provide for Involuntary Cash-Out Distributions. A terminated Participant must consent to any distribution from the Plan. (See Section 14.03(b) of the Plan for special rules upon Plan termination.)

☐ (2) **Lower Involuntary Cash-Out Distribution threshold.** A terminated Participant will receive an Involuntary Cash-Out Distribution only if the Participant's vested Account Balance is less than or equal to:

☐ (i) $1,000

☐ (ii) $____ *(must be less than $5,000)*

(b) **Application of Automatic Rollover rules.** The Automatic Rollover rules described in Section 8.06 of the Plan do not apply to any Involuntary Cash-Out Distribution below $1,000 (to the extent available under the Plan).

To override this default provision, check this subsection (b).

☐ The Automatic Rollover provisions under Section 8.06 of the Plan apply to all Involuntary Cash-Out Distributions (including those below $1,000).

(c) **Treatment of Rollover Contributions.** Unless elected otherwise under this subsection (c), Rollover Contributions will be excluded in determining whether a Participant's vested Account Balance exceeds the Involuntary Cash-Out threshold for purposes of applying the distribution rules under this AA §9 and Section 8.04(a) of the Plan. To include Rollover Contributions for purposes of applying the Plan's distribution rules, check below.

☑ In determining whether a Participant's vested Account Balance exceeds the Involuntary Cash-Out threshold, Rollover Contributions will be included.

(d) **Distribution upon attainment of stated age.** The Participant consent requirements under Section 8.04 of the Plan apply for distributions occurring prior to attainment of the Participant's required beginning date as defined in Code §401(a)(9).

To allow for involuntary distribution upon attainment of Normal Retirement Age (or age 62, if later), check below.

☐ Subject to the spousal consent requirements under Section 9.04 of the Plan, a distribution from the Plan may be made to a terminated Participant without the Participant's consent, regardless of the value of such Participant's vested Account Balance, upon attainment of Normal Retirement Age (or age 62, if later).

© *Copyright 2018*

## SECTION 10
## IN-SERVICE DISTRIBUTIONS

10-1 **AVAILABILITY OF IN-SERVICE DISTRIBUTIONS.** A Participant may withdraw all or any portion of his/her vested Account Balance, to the extent designated, upon the occurrence of any of the event(s) selected under this AA §10-1. If more than one option is selected for a particular contribution source under this AA §10-1, a Participant may take an in-service distribution upon the occurrence of any of the selected events, unless designated otherwise under this AA §10-1.

*[Note: In-service distributions must satisfy the distribution restrictions applicable to Custodial Accounts.]*

| Deferral | Match | ER | | |
|---|---|---|---|---|
| ☐ | ☐ | ☐ | (a) | No in-service distributions are permitted. |
| ☑ | ☑ | ☑ | (b) | Attainment of age <u>59½</u>. *[If age is earlier than 59½, such age is deemed to be age 59½ for Salary Deferrals and for amounts held in a Custodial Account.]* |
| ☑ | ☐ | ☐ | (c) | A Hardship (that satisfies the safe harbor rules under Section 8.09(e)(1) of the Plan. *[Note: Not applicable to amounts attributable to Matching Contributions and Employer Contributions held in a Custodial Account, or QNECs.]* |
| ☐ | ☐ | ☐ | (d) | A non-safe harbor Hardship described in Section 8.09(e)(2) of the Plan. *[Note: Not applicable to amounts attributable to Matching Contributions and Employer Contributions held in a Custodial Account, or QNECs.]* |
| ☐ | ☐ | ☐ | (e) | Attainment of Normal Retirement Age. *[If Normal Retirement Age is earlier than age 59½, such age is deemed to be age 59½ for Salary Deferrals and for amounts held in a Custodial Account.]* |
| ☐ | ☐ | ☐ | (f) | Attainment of Early Retirement Age. *[If Early Retirement Age is earlier than age 59½, such age is deemed to be age 59½ for Salary Deferrals and for amounts held in a Custodial Account.]* |
| ☐ | ☐ | ☐ | (g) | Upon a Participant becoming Disabled (as defined in AA §9-4(b)). |
| ☐ | N/A | N/A | (h) | As a Qualified Reservist Distribution as defined under Section 8.09(d) of the Plan. |
| N/A | ☐ | ☐ | (i) | Completion of ____ months of service. *[This election is not available with respect to amounts held in a Custodial Account.]* |
| ☐ | ☐ | ☐ | (j) | Describe: _____ |

*[Note: Unless designated otherwise under (j), any selection(s) in the Deferral column also apply to Roth Contributions and QNECs. Distributions from a Participant's Salary Deferral Account may not be made before the earliest of the time a Participant has a Severance from Employment, dies, has a Hardship, becomes Disabled or attains age 59 ½. Distributions from a Participant's Custodial Account may not be made before the earliest of the time a Participant has a Severance from Employment, dies, becomes Disabled or attains age 59 ½. Elections under the ER column also apply to Mandatory Contributions, unless otherwise provided in (j). Any event described in (j) may not violate the permissible distribution events under the Plan.]*

10-2 **APPLICATION TO OTHER CONTRIBUTION SOURCES.** If the Plan allows for Rollover Contributions under AA §C-2 or After-Tax Employee Contributions under AA §6D, unless elected otherwise under this AA §10-2, a Participant may take an in-service distribution from his/her Rollover Account and After-Tax Employee Contribution Account at any time. If the Plan provides for Safe Harbor Contributions under AA §6C, unless elected otherwise under this AA §10-2, a Participant may take an in-service distribution from his/her Safe Harbor Contribution Account at the same time as elected for Salary Deferrals under AA §10-1.

Alternatively, if this AA §10-2 is completed, the following in-service distribution provisions apply for Rollover Contributions, After-Tax Employee Contributions, and/or Safe Harbor Contributions:

| Rollover | After-Tax | SH | | |
|---|---|---|---|---|
| ☐ | ☐ | ☐ | (a) | No in-service distributions are permitted. |
| ☐ | ☐ | ☐ | (b) | Attainment of age ____. *[If age is earlier than 59½, such age is deemed to be age 59½ for Safe Harbor Contributions.]* |

© Copyright 2018

| Rollover | After-Tax | SH | | |
|:---:|:---:|:---:|:---|:---|
| ☐ | ☐ | N/A | (c) | A Hardship (that satisfies the safe harbor rules under Section 8.09(e)(1) of the Plan). |
| ☐ | ☐ | N/A | (d) | A non-safe harbor Hardship described in Section 8.09(e)(2) of the Plan. |
| ☐ | ☐ | ☐ | (e) | Attainment of Normal Retirement Age. [*If Normal Retirement Age is earlier than age 59½, such age is deemed to be age 59½ for Safe Harbor Contributions.*] |
| ☐ | ☐ | ☐ | (f) | Attainment of Early Retirement Age. [*If Early Retirement Age is earlier than age 59½, such age is deemed to be age 59½ for Safe Harbor Contributions.*] |
| ☐ | ☐ | ☐ | (g) | Upon a Participant becoming Disabled (as defined in AA §9-4(b)). |
| ☐ | ☐ | N/A | (h) | Completion of ____ months of service. |
| ☐ | ☐ | ☐ | (i) | Describe: _____ |

[***Note:*** *Any distribution event described in this AA §10-2 may not discriminate in favor of Highly Compensated Employees. No in-service distribution of Safe Harbor/QACA Safe Harbor Contributions is permitted prior to age 59½, except upon Participant's Disability.*]

10-3  **SPECIAL DISTRIBUTION RULES.** No special distribution rules apply, unless specifically provided under this AA §10-3.

☐ (a)  In-service distributions will only be permitted if the Participant is 100% vested in the source from which the withdrawal is taken.

☐ (b)  A Participant may take no more than ____ in-service distribution(s) in a Plan Year.

☐ (c)  A Participant may not take an in-service distribution of less than $____.

☐ (d)  A Participant may not take an in-service distribution of more than $____.

☑ (e)  Unless elected otherwise under this subsection, the hardship distribution provisions of the Plan are not expanded to cover primary beneficiaries as set forth in Section 8.09(e)(4) of the Plan. If this subsection is checked, the hardship provisions of the Plan will apply with respect to individuals named as primary beneficiaries under the Plan.

☐ (f)  In determining whether a Participant has an immediate and heavy financial need for purposes of applying the non-safe harbor Hardship provisions under Section 8.09(e)(2) of the Plan, the following modifications are made to the permissible events listed under Section 8.09(e)(1)(i) of the Plan: _____

[***Note:*** *This subsection may only be used to the extent a non-safe harbor Hardship distribution is authorized under AA §10-1 or AA §10-2.*]

☐ (g)  Other distribution rules: _____

[***Note:*** *Any other distribution rules described in this subsection may not discriminate in favor of Highly Compensated Employees. This subsection may be used to apply the limitations under this AA §10-3 only to specific in-service distribution options (e.g., hardship distributions).*]

## SECTION 11
## MISCELLANEOUS PROVISIONS

11-1  **PLAN VALUATION.** The Plan is valued **annually,** as of the last day of the Plan Year.

☑ (a)  **Additional valuation dates.** In addition, the Plan will be valued on the following dates:

| Deferral | Match | ER | | |
|:---:|:---:|:---:|:---|:---|
| ☑ | ☑ | ☑ | (1) | **Daily.** The Plan is valued at the end of each business day during which the New York Stock Exchange is open. |
| ☐ | ☐ | ☐ | (2) | **Monthly.** The Plan is valued at the end of each month of the Plan Year. |
| ☐ | ☐ | ☐ | (3) | **Quarterly.** The Plan is valued at the end of each Plan Year quarter. |

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 161 of 177   Document 23-6

MTD Page 160

| Deferral | Match | ER |
|:---:|:---:|:---:|
| ☐ | ☐ | ☐ |

    (4)  **Describe:** _____

*[Must be at least on an annual basis.]*

    *[**Note:** The Employer may elect operationally to perform interim valuations, provided such valuations do not result in discrimination in favor of Highly Compensated Employees.]*

☐ (b)  **Special rules.** The following special rules apply in determining the amount of income or loss allocated to Participants' Accounts: _____

    *[**Note:** This subsection may be used to describe special rules for different investment options. Any special rules may not violate the nondiscrimination rules under Code §401(a)(4).]*

**11-2**   **DEFINITION OF HIGHLY COMPENSATED EMPLOYEE.** In determining which Employees are Highly Compensated (as defined in Section 1.66 of the Plan), the Top-Paid Group Test does not apply, unless designated otherwise under this AA §11-2.

☑ (a)  The **Top-Paid Group Test** applies.

☐ (b)  The **Calendar Year Election** applies. *[**Note:** This subsection may be chosen only if the Plan Year is not the calendar year. If this subsection is not selected, the determination of Highly Compensated Employees is based on the Plan Year. See Section 1.66 of the Plan.]*

**11-3**   **SPECIAL RULES FOR APPLYING THE CODE §415 LIMITATION.** The provisions under Section 5.03 of the Plan apply for purposes of determining the Code §415 Limitation.

Complete this AA §11-3 to override the default provisions that apply in determining the Code §415 Limitation under Section 5.03 of the Plan.

☐ (a)  **Limitation Year.** Instead of the Plan Year, the Limitation Year is the 12-month period ending _____.

    *[**Note:** If the Plan has a short Plan Year for the first year of establishment, the Limitation Year is deemed to be the 12-month period ending on the last day of the short Plan Year.]*

☐ (b)  **Imputed compensation.** For purposes of applying the Code §415 Limitation, Includible Compensation includes imputed compensation for a Nonhighly Compensated Participant who terminates employment on account of becoming Disabled.

☐ (c)  **Special rules:** _____

    *[**Note:** Any special rules under this subsection must be consistent with the requirements of Code §415 and the regulations thereunder and must comply with the nondiscrimination requirements under Code §401(a)(4).]*

**11-4**   **SPECIAL RULES FOR MORE THAN ONE PLAN.** If the Employer maintains another plan in which any Participant is a participant, the rules set forth under Section 5.03(e) of the Plan apply.

To modify the default provisions under Section 5.03(e) of the Plan, designate how such rules will apply.

☐  Instead of applying the default rules under Section 5.03(e) of the Plan, the Employer will limit Annual Additions in the following manner: _____

**11-5**   **DELEGATION OF ADMINISTRATIVE FUNCTIONS:** Generally, the Employer, as Plan Administrator, has responsibility to administer the Plan. These responsibilities include compliance with Code §403(b) and other tax requirements. However, under AA Addendum A, the Employer may delegate such responsibilities to a third party, including a provider of an Annuity Contract or Custodial Account, provided such third party agrees to such delegation of responsibilities. An Employer may not allocate administrative responsibilities to Plan Participants.

**11-6**   **FAIL-SAFE COVERAGE PROVISION.** If the Plan fails the minimum coverage test under Code §410(b) due to the application of an allocation condition under AA §6-7 or AA §6B-7, the Employer must amend the Plan in accordance with the provisions of Section 14.02(a) of the Plan to correct the coverage violation.

Alternatively, the Employer may elect under this AA §11-6 to apply a Fail-Safe Coverage Provision that will allow the Plan to automatically correct the minimum coverage violation.

☐  The Fail-Safe Coverage Provision (as described under Section 14.02(b)(1) of the Plan) applies.

*[**Note:** If the Fail-Safe Coverage Provision applies, the Plan may not perform the average benefit test to demonstrate compliance with the coverage requirements under Code §410(b), except as provided in Section 14.02 of the Plan.]*

**11-7** **ELECTION NOT TO PARTICIPATE.** (See Section 2.08 of the Plan.) All Participants share in any allocation under this Plan and no Employee may waive out of Plan participation.

To allow Employees to make a one-time irrevocable waiver, check below.

☐   An Employee may make a one-time irrevocable election not to participate under the Plan at any time prior to the time the Employee first becomes eligible to participate under the Plan. [*Note: Use of this provision could result in a violation of the minimum coverage rules under Code §410(b).*]

**11-8** **SPECIAL RULES FOR MULTIPLE EMPLOYER PLANS.** If the Plan is a Multiple Employer Plan (as designated under AA §2-6), the rules applicable to Multiple Employer Plans under Section 16.07 of the Plan apply.

☐   The following special rules apply with respect to Multiple Employer Plans: _____

[*Note: Any special rules must satisfy the nondiscrimination requirements under Code §401(a)(4) and must satisfy the rules applicable to Multiple Employer Plans under Code §413(c).*]

**11-9** **CLAIMS PROCEDURES.** Section 11.10 of the Plan provides procedures for Participants to file a claim for benefits. Unless designated otherwise under this AA §11-9, the claims procedures under Section 11.10 of the Plan apply.

☐   The following special rules apply with respect to claims procedures under Section 11.10 of the Plan: _____

[*Note: Any special rules must satisfy the requirements under ERISA Reg. §2560.503-1 and any other applicable guidance.*]

**11-10** **SPECIAL RULES APPLICABLE TO PLAN MERGERS AND SPINOFFS:** _____

[*Note: Any special rule must satisfy the applicable requirements under Code §403(b), in particular the nondiscrimination requirements of Code §401(a)(4).*]

**11-11** **CONTRACT EXCHANGES AND PLAN-TO-PLAN TRANSFERS.** Unless otherwise indicated below and subject to the approval of the Plan Administrator and the terms of any governing Investment Arrangement, the Plan authorizes the Participant and Beneficiaries to make contract exchanges and plan-to-plan transfers.

☐ (a)   **Contract exchanges.** The Plan does not authorize contract exchanges as described in Section 14.05 of the Plan.

☐ (b)   **Plan-to-plan transfers.** The Plan does not authorize plan-to-plan transfers as described in Section 14.06 of the Plan.

☑ (c)   **Describe special rules applicable to contract exchanges and plan-to-plan transfers:** Contract exchanges are authorized between active vendors who are eligible to receive contributions under the Plan. The Plan authorizes plan-to-plan transfers into the Plan. The Plan does not authorize plan-to-plan transfers out of the Plan.

**11-12** **SPECIAL MILITARY SERVICE PROVISIONS -- BENEFIT ACCRUALS.** Unless otherwise indicated below, an individual who dies or becomes disabled in qualified military service will NOT be treated as reemployed for purposes of determining entitlement to benefits under the Plan. The benefit accrual provisions under Section 15.06 of the Plan do not apply. To apply the benefit accrual provisions under Section 15.06, check the box below.

☑   **Eligibility for Plan benefits.** Check this box if the Plan will provide the benefits described in Section 15.06 of the Plan. If this box is checked, an individual who dies or becomes disabled in qualified military service will be treated as reemployed for purposes of determining entitlement to benefits under the Plan.

**11-13** **SPECIAL RULES APPLICABLE TO THIS PLAN.** The following rules apply to this Plan: _____

[*Note: Any special rule must satisfy the requirements under Code §403(b) and the applicable regulations, including the nondiscrimination requirements under Code §401(a)(4).*]

## APPENDIX A
## SPECIAL EFFECTIVE DATES

☐ A-1    **Eligible Employees.** The definition of Eligible Employee under AA §3 is effective as follows:

☑ A-2    **Minimum age and service conditions.** The minimum age and service conditions and Entry Date provisions specified in AA §4 are effective as follows:

Effective 8-8-2018, service earned prior to a Nonvested Participant Break in Service will not be disregarded in applying the eligibility rules.

☐ A-3    **Compensation definitions.** The compensation definitions under AA §5 are effective as follows:

☐ A-4    **Employer Contributions.** The Employer Contribution provisions under AA §6 are effective as follows:

☐ A-5    **Salary Deferrals.** The provisions regarding Salary Deferrals under AA §6A are effective as follows:

☐ A-6    **Matching Contributions.** The Matching Contribution provisions under AA §6B are effective as follows:

☐ A-7    **Safe Harbor 403(b) Plan provisions.** The Safe Harbor 403(b) Plan provisions under AA §6C are effective as follows:

☐ A-8    **Special Contributions.** The Special Contribution provisions under AA §6D are effective as follows:

☐ A-9    **Retirement ages.** The retirement age provisions under AA §7 are effective as follows:

☑ A-10    **Vesting and forfeiture rules.** The rules regarding vesting and forfeitures under AA §8 are effective as follows:

(1) An Employee's vesting percentage increases to 100% if the Employee becomes Disabled; (2) Effective 8-8-2018, forfeitures may be used to pay Plan expenses.

☐ A-11    **Distribution provisions.** The distribution provisions under AA §9 are effective as follows:

☐ A-12    **In-service distributions.** The provisions regarding in-service distributions under AA §10 are effective as follows:

☐ A-13    **Miscellaneous provisions.** The provisions under AA §11 are effective as follows:

☑ A-14    **Special effective date provisions for merged plans.** If any qualified retirement plans have been merged into this Plan, the provisions of Section 14.04 of the Plan apply as follows:

(1) Effective 1-29-2010, St. Joseph's Community Hospital of West Bend, Inc. 403(b) Plan ("SJCH Plan") was merged into this Plan. Such merged assets are 100% vested. All distribution, withdrawal, and loan provisions that apply to the Plan apply to such merged assets, except that Safe Harbor Matching Contributions previously made under the SJCH Plan may not be withdrawn on account of safe harbor Hardship; (2) Effective 8-8-2018, the assets held in the Froedtert Memorial Lutheran Hospital/Froedtert Health 403(b) Thrift Plan's custodial accounts under the Lincoln Alliance program were merged into this Plan. Such merged assets are 100% vested. All distribution, withdrawal, and loan provisions that apply to the Plan apply to such merged assets.

☑ A-15    **Other special effective dates:**

Effective 8-8-2018, the Plan will not accept Rollover Contributions from former Employees unless they already maintain an Account Balance under the Plan.

☑ A-16 **Special effective dates for restated pre-approved plans:** The IRS allows the use of separate effective dates to memorialize plan operational changes that have occurred after the general effective date of the plan and the actual plan restatement adoption date. Adopting employers may use the above Special Effective Date options (A-1 through A-15) to memorialize these changes or they may use this A-16. If the adopting employer uses A-16, the changes will be part of the Plan, but will not be reflected in the SPD or plan summary:

Effective 9-1-2010, the Plan (previously known as CHCS of Menomonee Falls 403(b) Retirement Savings Plan) was amended to allow for automatic enrollment.

Effective 1-29-2010, the Plan was amended to add Employees of West Bend Clinic, Inc. and St. Joseph's Community Hospital of West Bend, Inc., who were granted certain predecessor service credit, and transition benefits were authorized for Employees of West Bend Clinic, Inc. as follows: For Plan Years beginning on 1-1-2010 and ending on 12-31-2014, certain discretionary "Transition Contributions" were authorized for Participants who were previously participating under the West Bend Clinic, Inc. 401(k) Plan, who began participating in this Plan. The Transition Contributions, if any, were credited to a Participant's Matching Contribution Account and/or Employer Contribution Account, as applicable, and were vested according to the Plan's vesting schedule for those sources.

Effective 1-29-2010, St. Joseph's Community Hospital of West Bend, Inc. 403(b) Plan ("SJCH Plan") was merged into this Plan.

Effective 9-3-2010, the Plan was amended to grant certain predecessor service for certain Employees of ProHealth Care, Inc., Medical Associates, Inc., and Medical Associates of Menomonee Falls, Ltd.

Effective 7-1-2011, the Plan was amended to grant certain predecessor service for certain Employees of Pyramid Healthcare Solutions and Medical College of Wisconsin.

Effective 7-1-2013, the Plan was amended to no longer authorize Participant loans.

Effective 8-1-2013, the Plan was amended to authorize Participant loans from 8-1-2013 through 12-31-2013.

Effective 8-1-2013, the Plan was amended to authorize Participant loans ongoing.

Effective 1-1-2013, the Plan was amended to eliminate the limitation on the number of partial lump sum payments.

Effective 12-1-2013, the Plan was amended to grant certain predecessor service for certain Employees of Greendale Medical Clinic, S.C.

Effective 12-13-2013, the Plan was amended to grant certain predecessor service for certain Employees of Clinical Ventures Group of Medical College of Wisconsin.

Effective 1-1-2014, the Plan was amended to rename the Plan as Froedtert Health, Inc. 403(b) Plan, in conjunction with the Employer's name changing to Froedtert Health, Inc.

Effective 1-1-2015, the Plan was restated in its entirety.

Effective 1-1-2015, the Plan was amended to grant certain predecessor service for certain Employees of Womencare, S.C. and MCW Occupational Health.

Effective 7-1-2015, the Plan was amended to grant certain predecessor service for certain Employees of United/Dynacare LLC (known as Wisconsin Diagnostic Laboratories, LLC as of 7-1-2015).

Effective 7-13-2015, the Plan was amended to grant certain predecessor service for certain Employees of Ownership Rewards division of FlagshipSalesRx.

© Copyright 2018

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 165 of 177   Document 23-6
MTD Page 164

Effective 8-10-2015, the Plan was amended to grant certain predecessor service for certain Employees of Lifetime OB/GYN, Ltd.

Effective 1-1-2016, the Plan was amended to grant certain predecessor service for certain, additional Employees of Lifetime OB/GYN, Ltd. and Medical College of Wisconsin and certain Employees of Wisconsin Diagnostic Laboratories, LLC and Waukesha Family Practice.

Effective 11-28-2016, the Plan was amended to grant certain predecessor service for certain Employees of Wheaton Franciscan Medical Group.

Effective 12-23-2016, the Plan was amended to grant certain predecessor service for certain, additional Employees of Wisconsin Diagnostic Laboratories, LLC.

Effective 1-1-2017, the Plan was amended to grant certain predecessor service for certain Employees of Lincoln Health Center MCW Physicians, Greenway, and Medical College of Wisconsin (Staff).

Effective 2-20-2017, the Plan was amended to grant certain predecessor service for certain Employees of Suson Eye Specialist Staff.

Effective 3-1-2017, the Plan was amended to grant certain predecessor service for certain Employees of Lake Country / Oconomowoc Private Practice Medical Staff.

Effective 3-20-2017, the Plan was amended to grant certain predecessor service for certain Employees of Medical College of Wisconsin (Analytics Staff).

Effective 1-1-2018, the Plan was amended to authorize an additional "true-up" Matching Contribution, as necessary, for each Plan Year beginning on and after 1-1-2018.

From 1-1-2010 through 8-7-2018, forfeitures were not able to be used to pay Plan expenses, Rollover Contributions were not accepted from any former Employees, and service earned prior to a Nonvested Participant Break in Service was disregarded in applying the eligibility rules.

## APPENDIX B
## LOAN POLICY

*Use this Appendix B to identify elections dealing with the administration of Participant loans. These elections may be changed without amending this Agreement by substituting an updated Appendix B with new elections. Any modifications to this Appendix B or any modifications to a separate loan policy describing the loan provisions selected under the Plan will not affect an Employer's reliance on the Favorable IRS Letter.*

B-1    Are **PARTICIPANT LOANS** permitted? (See Section 13 of the Plan.)

    ☒ (a)    Yes

    ☐ (b)    No

B-2    **LOAN PROCEDURES.** [*Note: Loan procedures and requirements are subject to the terms of any governing Investment Arrangement.*]

    ☐ (a)    Loans will be provided under the default loan procedures set forth in Section 13 of the Plan, unless modified under this Appendix B and subject to the terms of any governing Investment Arrangement.

    ☒ (b)    Loans will be provided under a separate written loan policy. [*If this subsection (b) is checked, do not complete the rest of this Appendix B.*]

B-3    **AVAILABILITY OF LOANS.** Subject to the terms of any Investment Arrangement, Participant loans are available to all Participants and Beneficiaries who are parties in interest. Participant loans are not available to a former Employee or Beneficiary (including an Alternate Payee under a QDRO) except in those limited situations where the former Employee or Beneficiary is also considered to be a "party in interest" as defined in ERISA §3(14). To override this default provision, complete this AA §B-3.

    ☐ (a)    A former Employee or Beneficiary (including an Alternate Payee) who has a vested Account Balance may request a loan from the Plan.

    ☐ (b)    An officer or director of the Employer, as defined for purposes of the Sarbanes-Oxley Act, may **not** request a loan from the Plan.

B-4    **LOAN LIMITS.** Subject to the terms of any Investment Arrangement, the default loan policy under Section 13.03 of the Plan allows Participants to take a loan provided all outstanding loans do not exceed 50% of the Participant's vested Account Balance. To override the default loan policy to allow loans up to $10,000, even if greater than 50% of the Participant's vested Account Balance, check this AA §B-4.

    ☐    A Participant may take a loan equal to the greater of $10,000 or 50% of the Participant's vested Account Balance.

    [*Note: If this AA §B-4 is checked, the Participant may be required to provide adequate security as required under Section 13.06 of the Plan.*]

B-5    **NUMBER OF LOANS.** Subject to the terms of any Investment Arrangement, the default loan policy under Section 13.04 of the Plan restricts Participants to one loan outstanding at any time. To override the default loan policy and permit Participants to have more than one loan outstanding at any time, complete (a) or (b) below.

    ☐ (a)    A Participant may have ____ loans outstanding at any time.

    ☐ (b)    There are no restrictions on the number of loans a Participant may have outstanding at any time.

B-6    **LOAN AMOUNT.** The default loan policy under Section 13.04 of the Plan provides that a Participant may not receive a loan of less than $1,000. To modify the minimum loan amount or to add a maximum loan amount, complete this AA §B-6.

    ☐ (a)    There is no minimum loan amount.

    ☐ (b)    The minimum loan amount is $____.

    ☐ (c)    The maximum loan amount is $____.

B-7    **INTEREST RATE.** The default loan policy under Section 13.05 of the Plan provides for an interest rate commensurate with the interest rates charged by local commercial banks for similar loans. To override the default loan policy and provide a specific interest rate to be charged on Participant loans, complete this AA §B-7.

    ☐ (a)    The prime interest rate

        ☐ (1)    plus ____ percentage point(s).

    ☐ (b)    Describe: _____

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 167 of 177   Document 23-6

MTD Page 166

[*Note: Any interest rate described in this AA §B-7 must be reasonable and must apply uniformly to all Participants.*]

B-8  **PURPOSE OF LOAN.** The default loan policy under Section 13.02 of the Plan provides that a Participant may receive a Participant loan for any purpose. To modify the default loan policy to restrict the availability of Participant loans to hardship events, check this AA §B-8.

☐ (a)  A Participant may only receive a Participant loan upon the demonstration of a hardship event, as described in Section 8.09(e)(1)(i) of the Plan.

☐ (b)  A Participant may only receive a Participant loan under the following circumstances: _____

B-9  **APPLICATION OF LOAN LIMITS.** If Participant loans are not available from all contribution sources, the limitations under Code §72(p) and the adequate security requirements of the Department of Labor regulations will be applied by taking into account the Participant's entire Account Balance. To override this provision, complete this AA §B-9.

☐  The loan limits and adequate security requirements will be applied by taking into account only those contribution Accounts which are available for Participant loans.

B-10  **CURE PERIOD.** The Plan provides that a Participant incurs a loan default if a Participant does not repay a missed payment by the end of the calendar quarter following the calendar quarter in which the missed payment was due. To override this default provision to apply a shorter cure period, complete this AA §B-10.

☐  The cure period for determining when a Participant loan is treated as in default will be ____ days (cannot exceed 90) following the end of the month in which the loan payment is missed.

B-11  **PERIODIC REPAYMENT – PRINCIPAL RESIDENCE.** If a Participant loan is for the purchase of a Participant's primary residence, the loan repayment period for the purchase of a principal residence may not exceed ten (10) years. To override this provision, complete this AA §B-11.

☐ (a)  The Plan does not permit loan payments to exceed five (5) years, even for the purchase of a principal residence.

☐ (b)  The loan repayment period for the purchase of a principal residence may not exceed ____ years (may not exceed 30).

☐ (c)  Loans for the purchase of a Participant's primary residence may be payable over any reasonable period commensurate with the period permitted by commercial lenders for similar loans.

B-12  **TERMINATION OF EMPLOYMENT.** Section 13.11 of the Plan provides that a Participant loan becomes due and payable in full upon the Participant's termination of employment. To override this default provision, complete this AA §B-12.

☐  A Participant loan will not become due and payable in full upon the Participant's termination of employment.

B-13  **DIRECT ROLLOVER OF A LOAN NOTE.** Section 13.11(b) of the Plan provides that upon termination of employment a Participant may request the Direct Rollover of a loan note. To override this default provision, complete this AA §B-13.

☐  A Participant may **not** request the Direct Rollover of the loan note upon termination of employment.

B-14  **LOAN RENEGOTIATION.** The default loan policy provides that a Participant may renegotiate a loan, provided the renegotiated loan separately satisfies the reasonable interest rate requirement, the adequate security requirement, the periodic repayment requirement and the loan limitations under the Plan. The Employer may restrict the availability of renegotiations to prescribed purposes provided the ability to renegotiate a Participant loan is available on a non-discriminatory basis. To override the default loan policy and restrict the ability of a Participant to renegotiate a loan, complete this AA §B-14.

☐ (a)  A Participant may **not** renegotiate the terms of a loan.

☐ (b)  The following special provisions apply with respect to renegotiated loans: _____

B-15  **SOURCE OF LOAN.** Participant loans may be made from all available contribution sources, to the extent vested, unless designated otherwise under this AA §B-15.

☐  Participant loans will not be available from the following contribution sources: _____

B-16  **MODIFICATIONS TO DEFAULT LOAN PROVISIONS.**

☐  The following special rules will apply with respect to Participant loans under the Plan: _____

[*Note: Any provision under this AA §B-16 must satisfy the requirements under Code §72(p) and the regulations thereunder and will control over any inconsistent provisions of the Plan dealing with the administration of Participant loans.*]

**APPENDIX C**
**ADMINISTRATIVE ELECTIONS**

*Use this Appendix C to identify certain elections dealing with the administration of the Plan. These elections may be changed without amending this Agreement by substituting an updated Appendix C with new elections. The provisions selected under this Appendix C do not create qualification issues and any changes to the provisions under this Appendix C will not affect the Employer's reliance on the IRS Favorable Letter.*

C-1    **DIRECTION OF INVESTMENTS.** Are Participants permitted to direct investments? (See Section 10.10 of the Plan.)

☐    No

☑    Yes

    ☑ (a)    Specify Accounts: <u>All Accounts</u>

    ☑ (b)    Check this selection if the Plan is intended to comply with ERISA §404(c).

    ☐ (c)    Describe any special rules that apply for purposes of direction of investments: _____

        **[Note:** *Any provisions added under subsection (c) will be subject to the nondiscrimination requirements under Code §401(a)(4).***]**

C-2    **ROLLOVER CONTRIBUTIONS.** Does the Plan accept Rollover Contributions? (See Section 4 of the Plan.)

☐    No

☑    Yes

    ☐ (a)    If this subsection (a) is checked, an Employee may not make a Rollover Contribution to the Plan prior to becoming a Participant in the Plan. (See Section 4 of the Plan.)

    ☐ (b)    Check this subsection (b) if the Plan will not accept Rollover Contributions from former Employees.

    ☑ (c)    Describe any special rules for accepting Rollover Contributions: <u>The Plan will not accept Rollover Contributions from former Employees unless they already maintain an Account Balance under the Plan</u>

        **[Note:** *The Employer may designate in subsection (c) or in separate written procedures the extent to which it will accept rollovers from designated plan types. For example, the Employer may decide not to accept rollovers from certain designated plans (e.g., 403(b) plans, §457 plans or IRAs). Any special rollover procedures will apply uniformly to all Participants under the Plan.***]**

C-3    **QDRO PROCEDURES.** Do the default QDRO procedures under Section 11.09 of the Plan apply?

☑    No

☐    Yes

    ☐    The provisions of Section 11.09 are modified as follows: _____

        **[Note:** *Any modification must satisfy the requirements of Code §414(p) and related IRS guidance.***]**

Case 2:20-cv-00893-PP   Filed 10/26/20   Page 169 of 177   Document 23-6
MTD Page 168

## EMPLOYER SIGNATURE PAGE

**PURPOSE OF EXECUTION.** This Signature Page is being executed to effect:

☐ (a)  The adoption of a new plan, effective _____ [*insert Effective Date of Plan*]. [*Note: Date can be no earlier than the first day of the Plan Year in which the Plan is adopted.*]

☑ (b)  An amendment or restatement of the Plan. If this Plan is being amended, a snap-on amendment may be used to designate the modifications to the Plan or the updated pages of the Adoption Agreement may be substituted for the original pages in the Adoption Agreement. All prior Employer Signature Pages should be retained as part of this Adoption Agreement.

    (1)  Effective Date(s) of amendment/restatement: <u>1-1-2010</u>

        [*Note: Generally, the Effective Date should not be earlier than January 1, 2010. However, in rare circumstances, the Effective Date may be as early as January 1, 2009.*]

    (2)  Name of plan being amended/restated: <u>Froedtert Health, Inc. 403(b) Plan</u>

    (3)  The original effective date of the plan being amended/restated: <u>2-1-2001</u>

    (4)  If Plan is being amended, identify Adoption Agreement sections being amended: _____

**VOLUME SUBMITTER SPONSOR INFORMATION.** The Volume Submitter Sponsor (or authorized representative) will inform the Employer of any amendments made to the Plan and will notify the Employer if it discontinues or abandons the Plan. To be eligible to receive such notification, the Employer agrees to notify the Volume Submitter Sponsor (or authorized representative) of any change in address. The Employer may direct inquiries regarding the Plan or the effect of the Favorable IRS Letter to the Volume Submitter Sponsor (or authorized representative) at the following location:

    Name of Volume Submitter Sponsor (or authorized representative): <u>Lincoln Financial Group</u>

    Address: <u>1300 South Clinton Street Ft. Wayne, IN 46802</u>

    Telephone number: <u>800-248-0838</u>

**IMPORTANT INFORMATION ABOUT THIS VOLUME SUBMITTER PLAN.** A failure to properly complete the elections in this Adoption Agreement or to operate the Plan in accordance with applicable law may result in disqualification of the Plan. The Employer may rely on the Favorable IRS Letter issued by the National Office of the Internal Revenue Service to the Volume Submitter Sponsor as evidence that the Plan is qualified under Code §403(b), provided that the Plan is word-for-word identical or substantially similar to the Volume Submitter Plan approved by the Internal Revenue Service.

By executing this Adoption Agreement, the Employer intends to adopt the provisions as set forth in this Adoption Agreement and the related Plan document. By signing this Adoption Agreement, the individual below represents that he/she has the authority to execute this Plan document on behalf of the Employer. This Adoption Agreement may only be used in conjunction with Basic Plan Document #08. The Employer understands that the Volume Submitter Sponsor has no responsibility or liability regarding the suitability of the Plan for the Employer's needs or the options elected under this Adoption Agreement. It is recommended that the Employer consult with legal counsel before executing this Adoption Agreement.

<u>Froedtert Health, Inc.</u>
*(Name of Employer)*

<u>Eric Humphrey</u>      *Senior Vice President, Chief Human Resources*
*(Name of authorized representative)*      *(Title)* Officer

                *8-8-18*

*(Signature)*                            *(Date)*

> **APPROVED AS TO FORM**
> **Office of General Counsel**
>
> <u>8-8-18</u>   CA/Q+B/LK
> **Date**      **Initials**

## ADDENDUM A
## ALLOCATION OF ADMINISTRATIVE FUNCTIONS

This Addendum A identifies any party to whom administrative functions have been allocated and the specific functions allocated to such persons, effective 8-8-2018.

Service agreements and other records or information pertaining to the administration of the Plan may be included or incorporated by reference in the Addendum. The Addendum may be modified from time to time. A modification of the Addendum is not an amendment of the Plan.

☑ Administrative functions are specified in a separate service agreement.

## ADDENDUM B
## VENDORS OF INVESTMENT ARRANGEMENTS

This Addendum B lists the Vendors of Investment Arrangements approved for use under the Plan, effective 8-8-2018.

The Addendum must include sufficient information to identify the approved Investment Arrangements. The terms governing each Investment Arrangement under the Plan, excluding those terms that are inconsistent with the Plan or Code §403(b), are hereby incorporated by reference in the Plan. The Addendum may be modified from time to time. A modification of the Addendum is not an amendment of the Plan.

| Name of Vendor | Type of Investment Arrangement (e.g., annuity contract, custodial account, etc.) | Active/Inactive |
|---|---|---|
| Lincoln Financial Group Trust Company | custodial account | Active |
| Lincoln National Life Insurance Company | annuity contract (Lincoln Alliance program) | Active |

## ADDENDUM C
## PREDECESSOR EMPLOYER SERVICE

This Addendum C lists the Predecessor Employer Service that applies under the Plan.

(1) The Employees of West Bend Clinic, Inc. ("WBC") and St. Joseph's Community Hospital of West Bend, Inc. ("SJCH") who were eligible to participate in the Plan effective 1-1-2010, were given past service credit based on their dates of hire with WBC and SJCH for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. In addition, Employees who transferred directly from either WBC or SJCH to Froedtert & Community Health, Inc. between 7-1- 2008 and 12-31-2009 were given past service credit based on their dates of hire with WBC and SJCH for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan.

(2) Effective as of 9-3-2010, individuals meeting the following criteria were given past service credit under the Plan (for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes) based on their dates of hire with ProHealth Care, Inc., Medical Associates, Inc., or Medical Associates of Menomonee Falls, Ltd.:

    (a) individuals who became Employees of an Employer as of 5:00 p.m. on 9-3-2010 ("Northern Tier Effective Date"), due to Froedtert & Community Health's purchase of the operations of certain ProHealth Care/Medical Associates ("PHC/MA") clinics on the Northern Tier Effective Date;

    (b) individuals who, after the Northern Tier Effective Date but on or before 12-31-2010, became Employees of an Employer in a position that directly supported the former PHC/MA clinics, and either:

        (1) were active Employees of ProHealth Care, Inc., or Medical Associates, Inc., until they became Employees of the Employer; or

        (2) were employed by Medical Associates of Menomonee Falls, Ltd., before 1-4-2008, and continued employment with ProHealth Care, Inc., or Medical Associates, Inc., on and after 1-4-2008, but whose employment by ProHealth Care, Inc., or Medical Associates, Inc., was terminated within the 12-month period ending on 9-3-2010, due to elimination of the Employees' ProHealth Care, Inc., or Medical Associates, Inc., position.

    (c) individuals who would otherwise have met the criteria of this section except that they did not become employed by an Employer on or before 12-31-2010, due to the inability to obtain necessary governmental certifications or licenses.

(3) Effective as of 9-3-2010, for purposes of applying the 1,000 Hours of Service requirement applicable for the 2010 Plan Year, the following groups of individuals were given credit for their employment with either ProHealth Care, Inc., or Medical Associates, Inc. during 2010:

    (a) individuals who became Employees of an Employer as of the Northern Tier Effective Date, due to Froedtert & Community Health's purchase of the operations of certain PHC/MA clinics on the Northern Tier Effective Date; and

    (b) individuals who, after the Northern Tier Effective Date but on or before 12-31-2010, became Employees of an Employer in a position that directly supported the former PHC/MA clinics, and were active Employees of ProHealth Care, Inc., or Medical Associates, Inc., until they became Employees of the Employer.

Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions for 2010 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with ProHealth Care, Inc., or Medical Associates, Inc. in 2010.

(4) Effective as of 7-1-2011, for purposes of applying the 1,000 Hours of Service requirement applicable for the 2011 Plan Year, all former Employees of Pyramid Healthcare Solutions ("Pyramid") who worked at a Froedtert Health location and left Pyramid to become Employees of Froedtert Health during the period from 7-1-2011 through 8-31-2011 ("Former Pyramid Employees") were given credit for their employment with Pyramid during 2011. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions for 2011 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with Pyramid in 2011. In addition, for purposes of calculating Years of Service for vesting, as applicable, the Former Pyramid Employees were given credit for their employment with Pyramid during 2011.

(5) Effective as of 7-1-2011, for purposes of applying the 1,000 Hours of Service requirement applicable for the 2011 Plan Year, all former Employees of Medical College of Wisconsin ("MCW") who became employed at Froedtert as part of the transition of

*Page **Addendum C-1***

the MCW academic medical center specialty clinics to Froedtert Memorial Lutheran Hospital during the period from 7-1-2011 through 8-31-2011 ("Former MCW Employees") were given credit for their employment with MCW during 2011. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions for 2011 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with MCW in 2011. In addition, for purposes of calculating Years of Service for vesting, as applicable, the Former MCW Employees were given credit for their employment with MCW during 2011.

(6) Effective as of 12-1-2013, all former Employees of Greendale Medical Clinic, S.C. ("Greendale Clinic") who became employed at Froedtert on 12-1-2013 ("Former Greendale Employees") were eligible to participate in the Plan and were given past service credit based on their date of hire with Greendale Clinic for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding the foregoing, for purposes of applying the 1,000 Hours of Service requirement applicable for the 2013 Plan Year, Former Greendale Employees were not given credit for their employment with Greendale Clinic during 2013.

(7) Effective as of 12-13-2013, all former Employees of the Clinical Ventures Group of Medical College of Wisconsin ("CVG") who became employed at Froedtert & Medical College of Wisconsin Community Physicians ("Community Physicians") on 12-13-2013 or who were on an approved leave of absence under the Family and Medical Leave Act on 12-13-2013 and became employed at Community Physicians immediately after the end of the approved leave of absence ("Former CVG Employees") were eligible to participate in the Plan and were given past service credit based on their dates of hire with Medical College of Wisconsin ("MCW") for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan.

(8) Effective as of 7-1-2015, all former Employees of United/Dynacare LLC (known as Wisconsin Diagnostic Laboratories, LLC as of 7-1-2015) ("Dynacare") who became employed at an Employer as of 7-1-2015 ("Former Dynacare Employees") were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with Dynacare for purposes of determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding the foregoing, for purposes of applying the 1,000 Hours of Service requirement applicable for the 2015 Plan Year, Former Dynacare Employees were given credit for their employment with Dynacare during 2015. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions for 2015 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with Dynacare in 2015. Notwithstanding any other provisions in the Plan to the contrary, if a Former Dynacare Employee is a Participant in the Plan, satisfies the requirements to receive an Employer Contribution and he or she is also a Participant in the Froedtert Hospital Retirement Plan for Certain Former Milwaukee County Employees, such Former Dynacare Employee will receive an Employer Contribution equal to 3% of such Participant's Compensation, regardless of his or her total Periods of Service.

(9) Effective as of 7-13-2015, all former Employees of the Ownership Rewards division of FlagshipSalesRx ("FlagshipSalesRx") who became employed at an Employer on either 7-13-2015 or 7-31-2015 ("Former Ownership Rewards Employees") were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with FlagshipSalesRx for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding the foregoing, for purposes of applying the 1,000 Hours of Service requirement applicable for the 2015 Plan Year, Former Ownership Rewards Employees were given credit for their employment with FlagshipSalesRx during 2015. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions for 2015 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with FlagshipSalesRx in 2015.

(10) Effective as of 10-5-2015, all former employees of Lifetime OB/GYN, Ltd. ("Lifetime") who became employed at an Employer on either 8-10-2015, 10-1-2015, or 10-5-2015 ("Former Lifetime Employees") were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with Lifetime for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding the foregoing, for purposes of applying the 1,000 Hours of Service requirement applicable for the 2015 Plan Year, Former Lifetime Employees were given credit for their employment with Lifetime during 2015. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions for 2015 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with Lifetime in 2015.

(11) Effective as of 8-6-2014, all former Employees of Womencare, S.C. ("Womencare") who became employed at an Employer during the period from 8-6-2014 through 9-8-2014 ("Former Womencare Employees") were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with Womencare for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Further, for purposes of applying the 1,000 Hours of Service requirement applicable for the 2014 Plan Year, Former Womencare Employees were given credit for their employment with Womencare during 2014. Notwithstanding the foregoing,

for the individuals described in this section, the amount of Matching Contributions and Employer Contributions for 2014 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with Womencare in 2014.

(12) Effective as of 12-29-2014, all former employees of MCW Occupational Health ("MCW Occ Health") who became employed at an Employer on 12-29-2014 ("Former MCW Occ Health Employees") were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with MCW OccHealth for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan.

(13) Effective as of 1-1-2015, all of the primary care providers and ob/gyn physicians employed by Medical College of Wisconsin ("MCW") who became employed at an Employer on 1-1-2015, were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with MCW for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan.

(14) Effective as of 11-1-2015, all former Employees of Medical College of Wisconsin ("MCW") who became employed at an Employer during the period from 11-1-2015 through 1-31-2016 at the direction or request of MCW or an Employer ("Former MCW Employees 2015/2016"), were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with MCW for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions for 2015 or 2016 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with MCW in 2015 or 2016, depending on when they became employed with an Employer.

(15)  Effective as of 1-11-2016, all former Employees of Wisconsin Diagnostic Laboratories, LLC ("WDL") who became employed at an Employer on 1-11-2016 ("Former WDL Employees") were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with WDL for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding the foregoing, for purposes of applying the 1,000 Hours of Service requirement applicable for the 2016 Plan Year, Former WDL Employees were given credit for their employment with WDL during 2016. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions for 2016 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with WDL in 2016. Notwithstanding any other provisions in the Plan to the contrary, if a Former WDL Employee is a Participant in the Plan, satisfies the requirements to receive an Employer Contribution and he or she is also a Participant in the Froedtert Hospital Retirement Plan for Certain Former Milwaukee County Employees, such Former WDL Employee will receive an Employer Contribution equal to 3% of such Participant's Compensation, regardless of his or her total Periods of Service.

(16) Effective 5-2-2016, all former Employees of Waukesha Family Practice ("Waukesha") who became employed at an Employer on 5-2-2016 ("Former Waukesha Employees") were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with Waukesha for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding the foregoing, for purposes of applying the 1,000 Hours of Service requirement applicable for the 2016 Plan Year, Former Waukesha Employees were given credit for their employment with Waukesha during 2016. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions for 2016 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with Waukesha in 2016.

(17) Effective as of 11-28-2016, all former Employees of Wheaton Franciscan Medical Group ("WFMG") who provided services to the Wisconsin Heart Group and became employed at an Employer on either 11-28-2016 or 1-1-2017 ("Former WFMG/WHG Employees") were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with WFMG for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions for 2016 were determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with WFMG.

(18) Effective as of 12-23-2016, all former Employees of Wisconsin Diagnostic Laboratories, LLC ("WDL") who became employed at an Employer on 12-23-2016 ("Former WDL Employees Dec. 2016") were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with WDL for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding any other provisions in the Plan to the contrary, if a Former WDL Employee Dec. 2016 is a Participant in the Plan, satisfies the requirements to receive an Employer Contribution and he or she is also a Participant in the Froedtert Hospital Retirement Plan for Certain Former Milwaukee County Employees, such Former WDL Employee Dec. 2016 will receive an Employer Contribution equal to 3% of such Participant's Compensation, regardless of his or her total Periods of Service.

(19) Effective as of 1-1-2017, all former Employees of Lincoln Health Center MCW Physicians ("Lincoln") who became employed at an Employer on or about 1-1-2017 ("Former Lincoln Employees") were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with Lincoln for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contribution for 2017 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with Lincoln.

(20) Effective as of 1-1-2017, all former Employees of Greenway ("Greenway") who became employed at an Employer on or about 1-1-2017 ("Former Greenway Employees") were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with Greenway for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions for 2017 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with Greenway.

(21) Effective as of 1-1-2017, all former Employees of Medical College of Wisconsin (Staff) ("MCW Staff") who became employed at an Employer on or about 1-1-2017 ("Former MCW Staff Employees") were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with MCW Staff for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions for 2017 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with MCW Staff.

(22) Effective as of 2-20-2017, all former Employees of Suson Eye Specialist Staff ("Suson") who became employed at an Employer on or about 2-20-2017 ("Former Suson Employees") were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with Suson for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions for 2017 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with Suson.

(23) Effective as of 3-1-2017, all former Employees of Lake Country / Oconomowoc Private Practice Medical Staff ("Lake Country") who became employed at an Employer on or about 3-1-2017 ("Former Lake Country Employees") were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with Lake Country for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions for 2017 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with Lake Country.

(24) Effective as of 3-20-2017, all former Employees of Medical College of Wisconsin (Analytics Staff) ("MCW Analytics Staff") who became employed at an Employer on or about 3-20-2017 or 4-3-2017 ("Former MCW Analytics Staff Employees") were eligible to participate in the Plan as of their dates of hire with an Employer and were given past service credit based on their dates of hire with MCW Analytics Staff for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions for 2017 was determined based only on the compensation they earned with an Employer and did not take into account any compensation earned with MCW Analytics.

(25) Effective for Acquisitions closing on or after 1-1-2018, all Employees who become employed at an Employer on or about the closing date of an acquisition of their previous employer (whether by stock purchase, asset purchase, merger or otherwise) (each such acquisition, an "Acquisition") (such Employees, "Acquired Employees") are eligible to participate in the Plan as of their dates of hire with an Employer and will be fully vested for purposes of Matching Contributions and Employer Contributions under the Plan. Acquired Employees shall not receive credit for periods of service before they were hired by an Employer for determining their periods of service for Employer Contribution purposes. Furthermore, the amount of Matching Contributions and Employer Contributions for Acquired Employees for the Plan Year in which the Acquisition closes will be determined based only on the Plan Compensation they earned with an Employer and will not take into account any compensation earned prior to employment with an Employer. In addition, in lieu of the 1,000 Hours of Service requirement for Employer Contribution allocation condition purposes, an Acquired Employee shall be deemed to have met such 1,000 Hours of Service requirement in the Plan Year the Acquisition closes if they are credited with Hours of Service for such Plan Year that equal or exceed: (A) 1,000 Hours of Service times (B) (i) the number of whole calendar months remaining in the Plan Year as of the date of closing of the Acquisition divided by (ii) 12.

(26) Effective as of 1-1-2018, former employees of the Medical College of Wisconsin ("MCW") who become employed at the Employer on or after 1-1-2018, as a result of a direct employment transfer to the Employer made at the direction of MCW ("Employer-Transferred MCW Employees"), are eligible to participate in the Plan as of their dates of hire with the Employer and will be given past service credit based on their dates of hire with MCW for determining their Periods of Service for Employer Contribution purposes and Years of Service for vesting purposes under the Plan. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions will be determined based only on the compensation they earn with the Employer and will not take into account any compensation earned with MCW.

(27) Effective as of 1-1-2018, former employees of Wisconsin Diagnostic Laboratories, LLC ("WDL") who become employed at the Employer on or after 1-1-2018 ("Former WDL Employees"), are eligible to participate in the Plan as of their dates of hire with the Employer and will be given past service credit based on their dates of employment with WDL for all Plan purposes. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions will be determined based only on the compensation they earn with the Employer and will not take into account any compensation earned with WDL.

(28) Effective as of 2-28-2018, former employees of Menomonee Falls Ambulatory Surgery Center ("MFASC") who become employed at the Employer on or after 2-28-2018 ("Former MFASC Employees"), are eligible to participate in the Plan as of their dates of hire with the Employer and will be given past service credit based on their dates of employment with MFASC for all Plan purposes. Notwithstanding the foregoing, for the individuals described in this section, the amount of Matching Contributions and Employer Contributions will be determined based only on the compensation they earn with the Employer and will not take into account any compensation earned with MFASC.

(29) Effective as of 1-1-2018, current employees of Wisconsin Diagnostic Laboratories, LLC ("WDL"), and as of 2-28-2018 current employees of Menomonee Falls Ambulatory Surgery Center ("MFASC"), who are also dually employed with the Employer, are eligible to participate in the Plan as of their dates of employment with the Employer and will be given past service credit based on their dates of employment with WDL or MFASC, as applicable, for vesting purposes under the Plan. The amount of Matching Contributions and Employer Contributions will be determined based only on the compensation they earn with the Employer, and any Hours of Service they perform as an Employee of the Employer, and will not take into account any compensation earned with, or any Hours of Service performed as an employee of, WDL or MFASC.