# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

---

NITISH S. BANGALORE, *et al.*,

        Plaintiff,

        v.

FROEDTERT HEALTH, INC., THE BOARD
OF DIRECTORS OF FROEDTERT HEALTH,
INC., and FROEDTERT HEALTH, INC.
BENEFIT PLAN COMMITTEE,

        Defendants.

Case No. 2:20-cv-00893

Hon. Pamela Pepper

---

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

---

747247416

# TABLE OF CONTENTS

**Pages**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 1

I. PLAINTIFF'S DUTY OF PRUDENCE CLAIMS FAIL................................. 1

    A. Plaintiff's Recordkeeping Claim Is Implausible..................................... 2

        1. Plaintiff's Competitive Bid Allegation Fails to Support His Claim .......... 2

        2. Plaintiff's Circumstantial Allegations About Reasonableness of the Plan's Fees Fail to Support His Claim ...................................................... 4

    B. Plaintiff's Investment Claim Is Implausible ......................................... 8

        1. Plaintiff Lacks Standing to Challenge Investments He Never Elected.................................................................................................... 8

        2. Plaintiff's Share Class Allegations Fail to State a Claim ....................... 10

        3. Plaintiff's "High-Cost" Actively Managed Investment Allegations Fail To State a Claim .............................................................................. 13

II. PLAINTIFF'S DISCLOSURE CLAIMS SHOULD BE DISMISSED.......................... 14

III. PLAINTIFF'S CLAIMS AGAINST FROEDTERT AND THE FROEDTERT DIRECTORS SHOULD BE DISMISSED....................................................... 15

CONCLUSION......................................................................................................... 15

Case 2:20-cv-00893-PP   Filed 04/29/22   Page 2 of 24   Document 49

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Agnew v. NCAA*,
683 F.3d 328 (7th Cir. 2012) ................................................................15

*Albert v. Oshkosh Corp.*,
2021 WL 3932029 (E.D. Wis. Sept. 2, 2021), appeal filed, No. 21-2789 (7th
Cir.) ................................................................................................10, 11, 14

*Am. Int'l Adjustment Co. v. Galvin*,
86 F.3d 1455 (7th. Cir. 1996) ................................................................5

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
464 F.3d 338 (2d Cir. 2006) ................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................1, 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................1, 2, 13

*Boley v. Universal Health Servs., Inc.*,
498 F. Supp. 3d 715 (E.D. Pa. 2020) ................................................................9

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ................................................................6, 11

*Brotherston v. Putnam Invs. LLC*,
907 F.3d 17 (1st Cir. 2018) ................................................................13

*Cunningham v. USI Ins. Servs., LLC*,
2022 WL 889164 (S.D.N.Y. Mar. 25, 2022) ................................................................6, 7

*Davis v. Magna Int'l of Am., Inc.*,
2021 WL 1212579 (E.D. Mich. Mar. 31, 2021) ................................................................6, 13

*Divane v. Nw. Univ.*,
953 F.3d 980 (7th Cir. 2020) ................................................................11

*Douglas v. Vill. of Palatine*,
2021 WL 979156 (N.D. Ill. Mar. 16, 2021) ................................................................12

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019) ................................................................4, 7

Case 2:20-cv-00893-PP   Filed 04/29/22   Page 3 of 24   Document 49

*Fifth Third Bancorp v. Dudenhoeffer,*
573 U.S. 409 (2014).................................................................................................1

*Garthwait v. Eversource Energy Co.,*
2021 WL 4441939, at *7 (D. Conn. Sept. 28, 2021) ........................................8

*George v. Kraft Foods Glob., Inc.,*
814 F. Supp. 2d 832 (N.D. Ill. 2011) ...............................................................13

*George v. Kraft Foods Global, Inc.,*
641 F.3d 786 (7th Cir. 2011) ..........................................................................3, 4

*Hay v. Gucci Am., Inc.,*
2018 WL 4815558 (D.N.J. Oct. 3, 2018)...........................................................9

*Hecker v. Deere & Co.,*
556 F.3d 575 (7th Cir. 2009) ...............................................................10, 11, 14

*Hughes v. Nw. Univ.,*
142 S. Ct. 737 (2022)............................................................................... *passim*

*Kendall v. Pharm. Prod. Dev., LLC,*
2021 WL 1231415 (E.D.N.C. Mar. 31, 2021) ..................................................13

*Kenseth v. Dean Health Plan, Inc.,*
610 F.3d 452 (7th Cir. 2010) ..............................................................................2

*Kurtz v. Vail Corp.,*
511 F. Supp. 3d 1185 (D. Colo. 2021)............................................................8, 9

*Laabs v. Faith Technologies, Inc.,*
No. 20-C-1534, at 13 (E.D. Wis. September 30, 2021).......................................4

*Lafreniere v. R.R. Donnelley & Sons, Inc.,*
No. 1:20-cv-07158 (N.D. Ill. Jan. 3, 2022), ECF No. 27................................6, 8

*Loomis v. Exelon Corp.,*
658 F.3d 667 (7th Cir. 2011) .......................................................................10, 11

*Marshall v. Northrop Grumman Corp.,*
2019 WL 4058583 (C.D. Cal. Aug. 14, 2019)....................................................4

*Martin v. Career Builder, LLC,*
2020 WL 3578022 (N.D. Ill. July 1, 2020).......................................................11

*Matney v. Barrick Gold of N. Am., Inc.*,
2022 WL 1186532 (D. Utah Apr. 21, 2022) ...................................................4, 11

*Mator v. Wesco Distrib., Inc.*,
2022 WL 1046439 (W.D. Pa. Apr. 7, 2022) ...................................................3, 7

*McGowan v. Barnabas Health, Inc.*,
2021 WL 1399870 (D.N.J. Apr. 13, 2021) ...........................................................9

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ...............................................................................7

*Miller v. AutoZone, Inc.*,
2020 WL 6479564 (W.D. Tenn. Sept. 18, 2020) ................................................13

*Neil v. Zell*,
677 F. Supp. 2d 1010 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010) ..................15

*Ortiz v. American Airlines, Inc.*,
2020 WL 4504385 (N.D. Tex. Aug. 5, 2020), *aff'd in part and rev'd in part
on other grounds*, 5 F.4th 622 (5th Cir. 2021) ...............................................9, 10

*Parmer v. Land O'Lakes, Inc.*,
518 F. Supp. 3d 1293 (D. Minn. 2021) ...........................................................9, 13

*Perkins v. United Surgical Partners Int'l Inc.*,
2022 WL 824839 (N.D. Tex. Mar. 18, 2022) .......................................................8

*Phillips v. Prudential Ins. Co. of Am.*,
714 F.3d 1017 (7th Cir. 2013) ..........................................................................6, 8

*Sacerdote v. New York Univ.*,
9 F.4th 95 (2d Cir. 2021) ...................................................................................13

*Seidner v. Kimberly-Clark Corp.*,
2022 WL 865890 (N.D. Tex. Mar. 23, 2022) ..................................................5, 12

*Shaw v. Quad/Graphics, Inc., et al.*,
No. 20-cv-1645 (E.D. Wis.), ECF No. 28 ............................................................1

*Smith v. CommonSpirit Health*,
2021 WL 4097052 (E.D. Ky. Sept. 8, 2021), appeal filed, No. 21-5964 (6th
Cir.) ....................................................................................................................13

# TABLE OF AUTHORITIES
(continued)

*Sprint Communications Co. v. APCC Services, Inc.*,
    554 U.S. 269 (2008)..................................................................................................9

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctr. Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)..................................................................................12

*Stockbridge-Munsee Cmty. v. Wisconsin*,
    2018 WL 708389 (W.D. Wis. Feb. 2, 2018)...........................................................5

*Sweda v. Univ. of Pa.*,
    923 F.3d 320 (3d Cir. 2019)..................................................................................13

*Thole v. U.S. Bank, N.A.*,
    140 S. Ct. 1615 (2020)............................................................................................9

*Tibble v. Edison Int'l*,
    575 U.S. 523 (2015)....................................................................................2, 3, 4, 11

*Tobias v. NVIDIA Corp.*,
    2021 WL 4148706 (N.D. Cal. Sept. 13, 2021) .......................................................4

*Vellali v. Yale Univ.*,
    308 F. Supp. 3d 673 (D. Conn. 2018)..................................................................4, 6

*Wehner v. Genentech, Inc.*,
    2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ............................................................6

*White v. Chevron Corp.* (*White I*),
    2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .....................................................15

*White v. Chevron Corp.* (*White II*),
    2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th
    Cir. 2018) ..........................................................................................................4, 11

*Yeftich v. Navistar, Inc.*,
    722 F.3d 911 (7th Cir. 2013) ..................................................................................6

## Other Authorities

Dep't of Treas., *2018: Instructions for Form 5500*,
    https://www.dol.gov/sites/dolgov/files/ebsa/employers-and-advisers/plan-
    administration-and-compliance/reporting-and-filing/form-5500/2018-
    instructions.pdf.......................................................................................................7

Case 2:20-cv-00893-PP   Filed 04/29/22   Page 6 of 24   Document 49

# TABLE OF AUTHORITIES
(continued)

Fed. R Civ. P. 12(b)(1).................................................................................................6

Fed. R. Civ. P. 12(b)(6)................................................................................3, 6, 7, 12

**INTRODUCTION**

Plaintiff bases most of his Opposition on a misguided contention that *Hughes* allows this lawsuit to move into discovery. He is wrong. *Hughes* held that the Seventh Circuit erred in focusing on investor choice and relying on a "categorical" rule that the prudence of some investments made up for deficiencies in others. *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 740, 742 (2022). This holding does not affect Defendants' argument for dismissal. Rather, *Hughes* reinforces the importance of pleading *plausible* claims, as required by *Iqbal* and *Twombly*, which Plaintiff has failed to do.

Moreover, the Court need not accept conclusory allegations, allegations contradicted by documents Plaintiff himself incorporates by reference, or allegations contradicted by other allegations within the complaint. In response to Defendants' demonstration that Plaintiff's allegations do not pass muster under these precepts, Plaintiff repeatedly and improperly accuses Defendants of raising "factual dispute[s]."[1] But applying fundamental, uncontroversial pleading standards is the antithesis of raising a "factual dispute"—it is the purpose of a motion to dismiss. The Supreme Court instructs courts reviewing ERISA fiduciary-breach lawsuits to scrutinize complaints to "weed[] out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). This mandate requires the dismissal of Plaintiff's challenge to the administration of the Froedtert's 403(b) Plan ("Plan") with prejudice.[2]

**ARGUMENT**

**I.     PLAINTIFF'S DUTY OF PRUDENCE CLAIMS FAIL**

To state a claim for fiduciary breach, Plaintiff must plausibly allege defects in the

---

[1] In fact, Plaintiff's counsel has used nearly verbatim arguments in an opposition for another ERISA matter pending before this Court. *See generally* Pl.'s Resp., *Shaw v. Quad/Graphics, Inc., et al.*, No. 20-cv-1645 (E.D. Wis.), ECF No. 28. Such a cookie-cutter approach further undermines plausibility of Plaintiff's claims as the arguments fail to distinguish, let alone address, the specific allegations relevant to *this* Amended Complaint.

[2] Plaintiff is no longer pursuing his duty of loyalty claims in Counts I and II of the Amended Complaint. Pl.'s Resp. at 2 n.1, ECF No. 47.

fiduciary's process or circumstantial facts that plausibly allow an inference that such defects exist.

*See Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010))*; see also Hughes*, 142 S. Ct. at 742 (emphasizing the need for a "context-specific" inquiry at the motion-to-dismiss stage). Contrary to Plaintiff's contention, Defendants are not asking the Court to second-guess his allegations, but to apply *Twombly* and other well-established pleading standards to them. A plaintiff's complaint must do more than allege a sheer possibility of misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rather, the complaint must plead facts that give rise to a reasonable inference of misconduct. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007).

A. **Plaintiff's Recordkeeping Claim Is Implausible**

Plaintiff's recordkeeping fees claim should be dismissed. Plaintiff's single direct allegation related to Defendants' process is insufficient as a matter of law, and his circumstantial allegations of purportedly "excessive" fees are contradicted by the documents on which he relies.

1. *Plaintiff's Competitive Bid Allegation Fails to Support His Claim*

As Defendants explained in their motion, the Amended Complaint is littered with conclusory allegations ostensibly related to Defendants' purportedly imprudent process for negotiating and monitoring the Plan's recordkeeping fees. Defs.' Mem. at 7–11, ECF No. 46. Plaintiff concedes that he "cannot possibly know the particulars of [Defendants'] processes," (Pl.'s Resp. at 7), and identifies a single direct allegation of imprudence: that, at some unspecified point during the class period, "Defendants failed to regularly solicit quotes and/or competitive bids from covered service providers." Am. Compl. ("FAC") ¶ 93, ECF No. 19. Yet, this allegation does not plausibly state a claim for breach.

*First*, contrary to Plaintiff's contention, neither *Hughes* nor *Tibble* held that failure to solicit competitive bids may amount to a breach of fiduciary duty. To begin, neither case even considered

the question of competitive bidding. *See generally Hughes*, 142 S. Ct. at 739–42; *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015). *Hughes* held that the Seventh Circuit erred in focusing on investor choice and relying on a "categorical" rule that the prudence of some investments made up for deficiencies in others. *Hughes*, 142 S. Ct. at 740, 742. This holding has no bearing on Plaintiff's allegations here. *See also Mator v. Wesco Distrib., Inc.*, 2022 WL 1046439, at *7 (W.D. Pa. Apr. 7, 2022) (finding that *Hughes* did not shift the pleading standard).

*Tibble* is just as irrelevant because that decision did not even address recordkeeping fees. And while the *Tibble* Court held that a fiduciary has to conduct a regular review of the plan's investment lineup, the Court did not specify what such review must entail, let alone prescribe that it must be in a form of soliciting quotes and/or competitive bids. *See Tibble*, 575 U.S. at 528, 530–31 ("We express no view on the scope of respondents' fiduciary duty in this case.").

*George v. Kraft Foods Global, Inc.*, 641 F.3d 786 (7th Cir. 2011) also did not hold otherwise. First, *George* did not consider a Rule 12(b)(6) challenge where, as here, a plaintiff sought to create an inference of imprudence by comparing a plan's fees to other plans. Instead, *George* was a summary judgment decision where the plaintiff had evidence that the Kraft plan at issue could have secured the same services with the same recordkeeper for less. *Id.* at 799–800. This included evidence from the defendants' own consultants who had encouraged the defendants to solicit bids and adopt a different pricing structure to save the plan money. *Id.* at 800. Contrary to Plaintiff's portrayal, the *George* court never suggested that "independent evaluation" has to be undertaken by "determin[ing] the true market price at a given time . . . [and] obtain[ing] competitive bids through some process." Pl.'s Resp. at 18.[3] Nor did *George* hold that a bare allegation of no competitive bidding for plan services can state a plausible claim of imprudence.

---

[3] Indeed, this quote does not even appear in *George*. It is unclear what authority Plaintiff is quoting here.

Indeed, such a "categorical rule" would conflict "with the context-specific inquiry that ERISA requires." *Hughes*, 142 S. Ct. at 740. Courts have thus recognized that ERISA "fiduciaries are under no obligation to regularly conduct competitive bidding for recordkeeping services," and nothing in *Hughes*, *Tibble*, or *George* upsets that conclusion. *Tobias v. NVIDIA Corp.*, 2021 WL 4148706, at \*15 (N.D. Cal. Sept. 13, 2021) (collecting cases); *see also Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at \*8 (S.D.N.Y. Sept. 18, 2019); *Matney v. Barrick Gold of N. Am., Inc.*, 2022 WL 1186532, at \*12 (D. Utah Apr. 21, 2022).

*Second*, even if such competitive bidding were required, Defendants' recordkeeper replacement during the class period undermines the lack of competitive bidding allegation. Defs.' Mem. at 8–9. Although Plaintiff glosses over this fact, Plaintiff's cited *Laabs v. Faith Technologies, Inc.* supports the contention that such a switch warrants the inference of prudence. No. 20-C-1534, at 13 (E.D. Wis. September 30, 2021), ECF No. 27 (Rep. & Recommendation at 13) (distinguishing *Marshall v. Northrop Grumman Corp.*, 2019 WL 4058583, at \*11 (C.D. Cal. Aug. 14, 2019) and finding that because there the defendants switched the recordkeeper, "no reasonable factfinder could find imprudence"). Thus, the lack of competitive bidding allegation remains factually unsupported and cannot give rise to a reasonable inference of imprudence.[4]

As such, Plaintiff cannot rest his breach claim on the lack of competitive bidding allegation.

### 2. *Plaintiff's Circumstantial Allegations About Reasonableness of the Plan's Fees Fail to Support His Claim*

Unable to plead any direct allegations about Defendants' allegedly imprudent process, Plaintiff pivots to circumstantial allegations that the Plan's fees were "excessive" compared to

---

[4] Plaintiff cannot rely on *Vellali v. Yale Univ.*, 308 F. Supp. 3d 673 (D. Conn. 2018) because, unlike there, Plaintiff here has offered no factual allegations showing how Defendants did not engage in a competitive bidding process. *Ferguson*, 2019 WL 4466714, at \*7. Further, because *Hughes* did not find that competitive bidding is required, Plaintiff is wrong that the reasoning of *White v. Chevron Corp.* (*White II*), 2017 WL 2352137, at \*11 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018) "has . . . been rejected by *Hughes*." Pl.'s Resp. at 18 n.14.

what other plans allegedly paid. FAC ¶ 104. These allegations also fail to support his claim because Plaintiff did not plausibly allege what fee the Plan pays and whether that fee was excessive in relation to what comparator plans paid for materially identical services.

*First*, Plaintiff's characterization of the Plan's fee is implausible. Plaintiff alleges that a reasonable recordkeeping fee is between $28 and $49, and that the Plan supposedly paid $77. FAC ¶ 102. As a preliminary matter, Plaintiff does not attempt to reconcile his contradictory assertions of what fee the Plan paid between his original Complaint—$36—and FAC—$77. Defs.' Mem. at 12. Although Plaintiff may assert contradictory factual statements in his amended pleading, he may do so only when "legitimately in doubt about the fact in question." *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th. Cir. 1996).[5] Plaintiff does not explain how he can be legitimately in doubt about what fee the Plan paid, especially since he alleged in both pleadings that the fee amount allegations were based on Defendants' Form 5500s. Common sense dictates that Plaintiff may not rest the survival of his claim upon a contradicting statement of fact.

What is more, Plaintiff refuses to explain how he arrived at $77, arguing that the Court may not scrutinize this inexplicable allegation because it is a motion to dismiss. Pl.'s Resp. at 21–22.[6] Last month, a district court rejected an almost identical argument raised by Plaintiff's counsel in a different but similar matter. *See Seidner v. Kimberly-Clark Corp.*, 2022 WL 865890, at *2 (N.D. Tex. Mar. 23, 2022) ("Plaintiffs' contention—that certain deficiencies may be resolved

---

[5] Contrary to Plaintiff's assertion, the Court is not precluded from examining Plaintiff's original Complaint. *See, e.g.*, *Stockbridge-Munsee Cmty. v. Wisconsin*, 2018 WL 708389, at *4 (W.D. Wis. Feb. 2, 2018) (denying motion for leave to amend the plaintiff's complaint because "[Fed. R. Civ. P. 8(d)] does not allow 'inconsistent factual allegations . . . made not because of uncertainty concerning the facts, but to avoid the legal effect of facts that were known from the beginning'" (citation omitted)).

[6] Plaintiff appears to have arrived at the comparator plans fees by dividing the direct compensation amount disclosed in respective Form 5500s, Sch. C, Part I, § 2(d) by the number of participants. For example, in 2018 the DHL Plan had 14,472 participants, (Defs.' Mem. Ex. 3 at 2), and the compensation amount to Fidelity was $483,191 (*id.* at 6), which results in a $33 fee. *See also* FAC ¶ 102. This formula confirms that the Plan's fee in 2018 was $36, but Plaintiff refuses to explain why the Plan is not entitled to the same formula as comparator plans.

through discovery and that such issues are, therefore, not appropriate for a motion to dismiss—is not a valid basis for defeating Defendants' Motion under Rules 12(b)(6) or 12(b)(1).").

Although the Court must take *well-pled* factual assertions as true, the Court need not accept unsupported, conclusory factual allegations. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *see also Hughes*, 142 S. Ct. at 740 ("context-specific" analysis of allegations required).[7] As recently as last month, courts have dismissed imprudence claims where plaintiffs failed to explain how they calculated alleged fees. *See, e.g.*, *Cunningham v. USI Ins. Servs., LLC*, 2022 WL 889164, at *5 (S.D.N.Y. Mar. 25, 2022) ("Plaintiff's allegations also crucially fail because there is no 'indication of how [she] calculated the per-participant fees for recordkeeping and administrative costs' for the Plan . . . ." (quoting *Wehner v. Genentech, Inc.*, 2021 WL 507599, at *6 (N.D. Cal. Feb. 9, 2021)).[8] This Court should follow suit.

And Plaintiff *is* required to establish that his allegations are not contradicted by the documents on which he relies and of which the court can take judicial notice. Plaintiff has not done so here. Plaintiff's claimed $77 in fees is contradicted by Defendants' 2018 Form 5500 on which Plaintiff purports to rely and which confirms that, based on the number of participants, the actual fee amount was $36. *See* Defs.' Mem. at 12. Thus, the Court need not accept the $77 fee amount as true. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (when conclusory allegations are contradicted by the documents incorporated by reference in the complaint, such documents trump the allegations). And Plaintiff cannot state a claim based on the

---

[7] Plaintiff cites *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 602 (8th Cir. 2009) for the proposition that he does not have to explain how he arrived at a $77 fee because the information necessary to "prove the merits of his claim is in Defendants' possession." Pl.'s Resp. at 21. But Plaintiff alleged that the Plan's fee is based on Defendants' Form 5500s already in his possession. FAC ¶ 102.

[8] Plaintiff's cited *Vellali*, 308 F. Supp. 3d at 673, *Lafreniere v. R.R. Donnelley & Sons, Inc.*, No. 1:20-cv-07158 (N.D. Ill. Jan. 3, 2022), ECF No. 27, and *Davis v. Magna Int'l of Am., Inc.*, 2021 WL 1212579 (E.D. Mich. Mar. 31, 2021) did not hold that Plaintiff does not have to explain his math in calculating a plan's fee, especially when the alleged amount is contradicted by the documents on which Plaintiff relies.

-6-

$36 fee amount because he admits that $36 is within a reasonable range. FAC ¶ 102.

*Second*, even if Plaintiff's calculations made any sense, he still fails to explain why this handful of cherry-picked comparator plans are properly compared. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) (affirming dismissal of the plaintiff's complaint because plaintiff failed to provide "a meaningful benchmark" to support an inference of imprudence). In response, Plaintiff only recites his conclusory allegations that the comparator plans' services were "the same," and even if they were not, the question raises a "factual dispute." Pl.'s Resp. at 23; FAC ¶ 111. Both arguments fail.

To begin, the services provided by the comparator plans and the Plan were not the same—a fact established by documents that Plaintiff himself incorporates into his Amended Complaint by reference. According to the 2018 Form 5500, Defendants' Plan participants received accounting (including auditing) and contract administrator services. Defs.' Mem. Ex. 1 at 77.[9] By contrast, neither the DHL Plan, the Edward-Elmhurst Plan, the Tax Sheltered Annuity Plan, the Vibra Plan, nor the Multicare Plan—which used the same recordkeeper as the Plan—provided accounting, auditing, or contract administrator services. *See* Defs.' Mem. Ex. 3 at 6, 30, 100, 163, 64.[10] The services thus were not the "same," and the Court should not credit Plaintiff's baseless comparisons. *See Cunningham*, 2022 WL 889164, at *4 (dismissing the imprudence claim under Rule 12(b)(6) where comparator plans did not in fact offer materially identical services); *Mator*, 2022 WL 1046439, at *7 (dismissing plaintiffs' excessive recordkeeping fees allegations under Rule

---

[9] Form 5500 Sch. C, Part I, § 2(b) lists the "Service Codes," which are translated using the Instructions for Form 5500. *See* Dep't of Treas., *2018: Instructions for Form 5500*, at 27, https://www.dol.gov/sites/dolgov/files/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/2018-instructions.pdf. All of the "Service Codes" listed in Defendants' 2018 Form 5500 are reflected here.

[10] Thus, Plaintiff's assertion that Transamerica has accepted "a much lower fee from another similar-sized Plan for the same bundles of services" is contradicted by the documents on which Plaintiff allegedly relies. Pl.'s Resp. at 17 n.13. Further, because Defendants showed Plaintiff's inability to plead a meaningful benchmark, *Ferguson* disposes of this claim by Plaintiff's own admission. *See id.* at 16 n.10.

12(b)(6) because the comparator plans failed to offer apples-to-apples comparison); *Perkins v. United Surgical Partners Int'l Inc.*, 2022 WL 824839, at \*6 (N.D. Tex. Mar. 18, 2022) (same). Further, Defendants pointing out the falsehoods in Plaintiff's pleading does not create a "factual dispute" because Plaintiff *must* establish that his allegations are not contradicted by the documents incorporated by reference. *See Phillips*, 714 F.3d at 1019–20.[11] Again, he has not done so here.

For these reasons, Plaintiff's recordkeeping allegations fail to state a claim for breach.

**B.**    **Plaintiff's Investment Claim Is Implausible**

*1.    Plaintiff Lacks Standing to Challenge Investments He Never Elected*

Plaintiff's arguments that he has standing to pursue claims related to investments he never elected are premised on an impermissibly expansive interpretation of what constitutes an injury-in-fact and a tortured interpretation of the Amended Complaint's allegations. To be sure, district courts are divided over whether plaintiffs, such as Plaintiff here, have standing to challenge investment options they never held. But the more persuasive decisions have accepted the intuitive proposition that a plaintiff who was not harmed by the inclusion of a particular investment option lacks standing to assert claims that its inclusion was imprudent.[12] *See*, *e.g.*, *Perkins*, 2022 WL 824839, at \*4; *Garthwait v. Eversource Energy Co.*, 2021 WL 4441939, at \*7 (D. Conn. Sept. 28, 2021).

To the extent that Plaintiff seeks to assert liability based on imprudent investments, Plaintiff's cited cases suggest that he only has standing to challenge the investments he never held if he alleges mismanagement of the *entire* Plan's investment lineup. *See Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1192 (D. Colo. 2021) (finding standing because plaintiff "assert[ed] that she

---

[11] The non-binding opinion, *Lafreniere*, No. 1:20-cv-07158, at 3, does not help Plaintiff because the defendants there did not show that comparator plans provided a different bundle of services.

[12] Plaintiff does not dispute that he held only eight investments out of the 31 he now challenges. *See generally* Pl.'s Resp. at 11–14; Defs.' Mem. at 16.

does not bring independent claims for each of the challenged funds but instead brings a single claim for mismanagement of the *entire* Plan" (emphasis added)); *Hay v. Gucci Am., Inc.*, 2018 WL 4815558, at *4 (D.N.J. Oct. 3, 2018) (finding standing because plaintiff alleged "an injury rooted in Defendants' conduct in managing *all* . . . [the] funds as a group" (emphasis added)).[13] Contrary to Plaintiff's assertion, he did not allege any "imprudence with regard to fiduciaries' overall decision-making process that impacted all Plan participants." Pl.'s Resp. at 13 (citing FAC ¶¶ 128– 168, 172–196). Although Plaintiff conclusorily recites that his claims "arise from fiduciary breaches as to the Plan in its entirety," (FAC ¶ 215), Plaintiff's investment claims affect Plan participants only to the extent that they invested in certain specific funds. *See* FAC ¶¶ 128–167 (share classes allegations are premised on purported imprudence in investing in share classes only of certain funds), ¶¶ 168–196 (high-cost and actively managed funds allegations are premised on purported imprudence in investing in specific investment options). Thus, *Kurtz* and *Hay* do not apply, and *Thole* controls.

In *Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615 (2020), the Supreme Court held that a plan participant may *not* sue only to represent the interests of other plan participants—he must show that he was *personally* injured.[14] Plaintiff insists that *Thole* applies only to defined-benefit plans, not defined-contribution plans. As a factual matter, *Thole* did arise in the defined-benefit context, but the Court's decision was not so limited and never says that a different legal standard applies in the defined-contribution context. Indeed, in *Ortiz v. American Airlines, Inc.*, the court dismissed a

---

[13] *See also McGowan v. Barnabas Health, Inc.*, 2021 WL 1399870, at *4 (D.N.J. Apr. 13, 2021) ("The Participants allege that the Fiduciaries mismanaged the Plans."); *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1301 (D. Minn. 2021) (allegations that plaintiffs "suffered overall injury from defendants' fiduciary breaches" supported standing); *Boley v. Universal Health Servs., Inc.*, 498 F. Supp. 3d 715, 720 (E.D. Pa. 2020) (standing may be satisfied by "an injury to a plan's assets unrelated to specific funds, if plan participants are all assessed a portion of the injury.").
[14] Plaintiff also invokes *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 287 (2008), which recognized the standing where the injured party contractually assigned plaintiff the right to sue. But *Thole* rejected the analogy of ERISA plan participants to *Sprint* assignees. *See Thole*, 140 S. Ct. at 1620.

claim premised on a defined-contribution plan's failure to offer an allegedly better-performing stable value fund for lack of standing because the plaintiff "chose not to invest in [the] fund when he had the option to do so." 2020 WL 4504385, at *13 (N.D. Tex. Aug. 5, 2020), *aff'd in part and rev'd in part on other grounds*, 5 F.4th 622 (5th Cir. 2021). Applying that same standard here, Plaintiff lacks standing to challenge funds in which he did not invest because any supposed underperformance of those funds caused him no individual injury.

### 2. *Plaintiff's Share Class Allegations Fail to State a Claim*

Under his novel "Net Investment Expense" theory, Plaintiff seeks to rest an inference of imprudence on the fact that the Plan's investment lineup did not include what he contends were the lowest-cost share classes for certain investments. This theory also fails because Plaintiff's allegations do not show that a reasonably prudent fiduciary would have necessarily included these "lowest-cost" share classes.

*First*, Plaintiff argues that "virtually every court to consider a plan's retention of a more expensive share classes has held that it gives rise to a plausible claim for breach of fiduciary duty." Pl.'s Resp. at 24. But Plaintiff does not fault Defendants for picking share classes that charged a higher expense ratio than the allegedly better alternatives. *See*, *e.g.*, *Hughes*, 142 S. Ct. at 741. Instead, he argues that Defendants should have picked more expensive funds because those funds engaged in *more* revenue sharing and, supposedly, participants would have received rebates in the full amount of the increased revenue sharing. *See* FAC ¶¶ 131–137. These novel allegations have been rejected by this Court. *See, e.g.*, *Albert v. Oshkosh Corp.*, 2021 WL 3932029, at *6 (E.D. Wis. Sept. 2, 2021) (Griesbach, J.), appeal filed, No. 21-2789 (7th Cir.) ("Plaintiff's preference for different share classes of certain investments is not enough to state a plausible claim for breach of fiduciary duty."); *see also Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) ("[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund

(which might, of course, be plagued by other problems)."); *Loomis v. Exelon Corp.*, 658 F.3d 667, 670 (7th Cir. 2011);[15] *White II*, 2017 WL 2352137, at *11, *aff'd*, 752 F. App'x 453 (9th Cir. 2018) ("[T]he allegations showed only that Chevron could have chosen different vehicles for investment that performed better during the relevant period . . . . None of the allegations made it more plausible than not that any breach of a fiduciary duty had occurred."); *Matney*, 2022 WL 1186532, at *16 ("[C]ourts have often held that '[a]lleging only the inclusion of more expensive share classes is not enough' to suggest imprudence." (citation omitted)).

   *Tibble*, 729 F.3d at 1110, and *Braden*, 588 F.3d at 585, did not consider Plaintiff's "Net Investment Expense" theory. Indeed, both cases found that cost-minimization is not a fiduciary's primary objective. *Tibble*, 729 F.3d at 1135 (noting that a fiduciary might choose funds with higher fees for many reasons, including potential for higher return, lower financial risk, more services offered, etc.); *Braden*, 588 F.3d 596 n.7 ("[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." (quoting *Hecker*, 556 F.3d at 586)).

   *Second*, the Court should reject this theory because it is based on implausible assumptions and speculations. Defs.' Mem. at 20. As explained in Defendants' motion, the theory rests on an assumption that the comparator "prudent" share classes are always the ones with the lowest "Net Investment Expense." The flaw of this assumption is demonstrated by Plaintiff's allegedly "prudent" American Beacon Large Cap Value Fund Class A share class. *Id.* The "Class A" share class Plaintiff prefers has a "Net Investment Expense" that is 0.03% lower than the "Investor" share class the Plan offered. But documents of which this Court may take judicial notice

---

[15] Plaintiff insists that *Hughes* not only vacated *Divane v. Nw. Univ.*, 953 F.3d 980, 983 (7th Cir. 2020), but also abrogated *Hecker* and *Loomis*, which rejected the argument that a plan participant can state a claim merely by alleging that the fiduciary could have selected cheaper alternative investments. According to his logic, this in turn also abrogates *Oshkosh Corp.*, 2021 WL 3932029, at *1 and *Martin v. Career Builder, LLC*, 2020 WL 3578022 (N.D. Ill. July 1, 2020). He is wrong. *Hughes* is limited to an error unrelated to this settled point. *See* Section I.A.1.

demonstrate that the Class A shares also include a sales charge of up to 5.75% and a "Distribution and/or Service (12b-1) Fee" of 0.25%. *See* FAC ¶¶ 136–137; Defs.' Mem. Ex. 4 at 7. By contrast, the "Investor" share class did not include those charges. Thus, Plaintiff's unsupported assertions that certain share classes have the lowest cost to participants overlook all of the relevant fees and cannot support an inference that Defendants acted imprudently by not choosing the share classes Plaintiff preferred. Plaintiff has no response other than to mislabel this as a "factual dispute." But allegations at odds with documents susceptible to judicial notice are appropriately and routinely rejected at this stage. *See Douglas v. Vill. of Palatine*, 2021 WL 979156, at *2–4 (N.D. Ill. Mar. 16, 2021). Plaintiff also offers no facts suggesting that adherence to his theory will necessarily result in "excess revenue being credited back" to participants, let alone that this rebate structure is economically superior. FAC ¶ 131.

    *Third*, this novel theory that no court has embraced, should be rejected because it does not plausibly allege a deviation from what a reasonable fiduciary would do under industry standards. *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718, 727 (2d Cir. 2013). Although Defendants points this out in their motion, Plaintiff still fails to allege that any court or fiduciary has ever adopted this standard. *See* Pl.'s Resp. at 23–26; *see also* FAC ¶¶ 128–167. This makes sense because the "categorical" rule on which this theory relies does not allow for potential tradeoffs and reasonable differences of opinion that *Hughes* instruct courts to respect. *Hughes*, 142 S. Ct. at 742.

    As a result, all Plaintiff can assert in response is that Defendants' challenges to this theory create a "factual dispute." *See generally* Pl.'s Resp. at 23–26. But contending that the Amended Complaint's deficiencies can be resolved through discovery "is not a valid basis for defeating Defendants' Motion under Rule 12(b)(6)." *See Seidner*, 2022 WL 865890, at *2. At bottom, the

Amended Complaint lacks sufficient allegations to reasonably infer that a prudent fiduciary would have necessarily included the share classes Plaintiff's novel rubric would have preferred.[16]

### 3. Plaintiff's "High-Cost" Actively Managed Investment Allegations Fail To State a Claim

Plaintiff claims Defendants failed to make "specific and informed finding" that higher-cost actively managed investments were warranted. FAC ¶ 179. Yet, Plaintiff concedes that he does not know Defendants' process for selecting and monitoring investments. Pl.'s Resp. at 7; FAC ¶ 185. The Court need not accept these conclusory allegations. *Twombly*, 550 U.S. at 555. Nor does Plaintiff explain how comparing 31 actively managed funds to index funds satisfies the meaningful benchmark requirement,[17] merely arguing instead that the Court must accept his conclusory allegations. But such allegations are not sufficient: courts have long recognized that passively managed funds and actively managed funds "have different aims, different risks, and different potential rewards that cater to different investors."[18] *See Davis*, 960 F.3d at 485. Thus, courts have found over and over that comparisons between passively and actively managed funds is a classic example of "comparing apples and oranges." *Id.*; *see also, e.g.*, *Parmer*, 518 F. Supp. 3d at 1306–07; *Kendall v. Pharm. Prod. Dev., LLC*, 2021 WL 1231415, at *9 (E.D.N.C. Mar. 31, 2021); *Smith v. CommonSpirit Health*, 2021 WL 4097052, at *6 (E.D. Ky. Sept. 8, 2021) (holding that *Davis*'s

---

[16] Plaintiff's reliance on *Sacerdote v. New York Univ.*, 9 F.4th 95 (2d Cir. 2021), *Davis*, 960 F.3d at 478, and *Sweda v. Univ. of Pa.*, 923 F.3d 320 (3d Cir. 2019) to support plausibility of his "Net Investment Expense" theory is unpersuasive because these cases did not consider this theory.

[17] Plaintiff's cases do not show that a comparison between actively and passively managed investments can state a claim, as they involve allegations not raised here or do not address the pleading standard. *See Miller v. AutoZone, Inc.*, 2020 WL 6479564, at *4 (W.D. Tenn. Sept. 18, 2020) (recordkeeper steered participants to higher-expense options that allegedly paid kickbacks to the recordkeeper); *Brotherston v. Putnam Invs. LLC*, 907 F.3d 17, 23–24 (1st Cir. 2018) (post-trial decision in a lawsuit challenging Putnam's decision to offer only its own proprietary funds); *George v. Kraft Foods Glob., Inc.*, 814 F. Supp. 2d 832, 853 (N.D. Ill. 2011) (summary judgment decision where the plaintiffs claimed that, because Kraft eliminated all actively managed domestic equity investments in its defined-benefit pension plan, it was imprudent to keep offering such investments in its 401(k) plan).

[18] Further, Plaintiff's benchmarking of the Plan's funds against various Vanguard funds is inappropriate. *See Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 345 (2d Cir. 2006) ("That a mutual fund has an expense ratio higher than Vanguard, a firm known for its emphasis on keeping costs low, raises little suspicion . . . .").

"reasoning on this point is persuasive"), appeal filed, No. 21-5964 (6th Cir.).

Even if it were proper to compare active and passive funds, Plaintiff's comparisons still do not show that Defendants' decisions were outside the range of reasonableness. Again, cost is not the only criterion when comparing investments, but Plaintiff provides no other basis for an inference of imprudence. Plaintiff does not allege, for example, that no other plan fiduciaries offered any of the actively managed funds he challenges or that the funds he challenges performed worse than the lower-cost alternatives, after accounting for fees. This all is fatal to Plaintiff's claim.

## II. PLAINTIFF'S DISCLOSURE CLAIMS SHOULD BE DISMISSED

As explained in Defendants' motion, Plaintiff's revenue sharing fee disclosure theory is foreclosed by the Seventh Circuit precedent. Defs.' Mem. at 25–26. Addressing claims that the defendants should have disclosed revenue sharing fees, the Seventh Circuit held that "[t]he total fee, not the internal, post-collection distribution of the fee, is the critical figure for someone interested in the cost." *Hecker*, 556 F.3d at 586; *see also Oshkosh Corp.*, 2021 WL 3932029, at *7. *Hecker* disposes of Plaintiff's fee disclosure claim here, and Plaintiff does not argue otherwise.

To the extent that Plaintiff is attempting to allege any impropriety with respect to Plan's services disclosure, Plaintiff's theory is unintelligible. Plaintiff claims that the services description must be "meaningful" or "clear enough" so that the participants could make informed investment decisions. Yet, he does not dispute that Defendants' 404a-5 Fee Disclosure satisfied the applicable regulations and concedes that service-by-service detail is not required. Pl.'s Resp. at 27–28. Plaintiff's theory of liability is thus unintelligible since he cannot articulate what sort of level of detail *is* required. Tellingly, Plaintiff does not cite a single case that supports this ill-defined theory. Pl.'s Resp. at 27–29. As such, Plaintiff cannot plausibly allege this claim.

Further, no matter if there was a breach, Plaintiff's response confirms that he has suffered no actual harm as a result. Again, lacking any authority, Plaintiff's only claim of harm is that he

allegedly "suffered objectively unreasonable and unnecessary monetary losses." Pl.'s Resp. at 28. This phrase only recites the legal element and does not offer any facts explaining how Plaintiff was harmed by the supposedly deficient disclosures. Thus, this allegation cannot constitute a requisite injury-in-fact for Article III standing.

## III. PLAINTIFF'S CLAIMS AGAINST FROEDTERT AND THE FROEDTERT DIRECTORS SHOULD BE DISMISSED

Along with the other deficiencies identified above, Plaintiff fails to allege a duty to monitor claim against Froedtert and its Board of Directors. To state a viable duty to monitor claim, Plaintiff must allege specific procedural defects pertaining to the process Defendants employed to monitor Defendants' appointees. *Neil v. Zell*, 677 F. Supp. 2d 1010, 1024 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010) (allegations "only in the most general terms that [the defendants] breached their duty to monitor" fail to state a claim); *White v. Chevron Corp.* (*White I*), 2016 WL 4502808, at *19 (N.D. Cal. Aug. 29, 2016) (plaintiff must allege "*facts* showing how the monitoring *process* was deficient" (emphasis added)). In response, Plaintiff argues that "at this stage of the litigation, [he] does not possess—and cannot be expected to plead—all of the details regarding the process by which Froedtert monitored its appointed fiduciaries." Pl.'s Resp. at 30. Although Plaintiff is not required to plead "all of the details," he must provide sufficient facts to support an inference of imprudence. Plaintiff has failed to do so, and his monitoring claim must be dismissed.

Nor does Plaintiff dispute that his monitoring claims are derivative of his underlying fiduciary breach claims, (Pl.'s Resp. at 30), which means these claims also fail.

## CONCLUSION

The Court should dismiss Plaintiff's entire Amended Complaint with prejudice, and in light of Plaintiffs multiple opportunities to state a viable claim, without leave to re-plead. *See*, *e.g.*, *Agnew v. NCAA*, 683 F.3d 328, 347 (7th Cir. 2012).

Dated: April 29, 2022                    Respectfully submitted,

                                         */s/ Nancy G. Ross*
                                         Nancy G. Ross
                                         Alex C. Lakatos
                                         Megan E. Troy
                                         Mayer Brown LLP
                                         71 South Wacker Drive
                                         Chicago, Illinois 60606
                                         (312) 782-0600
                                         nross@mayerbrown.com
                                         alakatos@mayerbrown.com
                                         mtroy@mayerbrown.com

                                         *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

/s/ Nancy G. Ross
Nancy G. Ross