UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

NITISH S. BANGALORE,

Plaintiff,

v.

Case No. 20-cv-893-pp

FROEDTERT HEALTH, INC.,
THE BOARD OF DIRECTORS OF FROEDTERT HEALTH, INC.
and FROEDTERT HEALTH, INC. BENEFIT PLAN COMMITTEE,

Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION TO REMOVE CONFIDENTIALITY DESIGNATIONS (DKT. NO. 104); GRANTING DEFENDANTS' MOTIONS TO RESTRICT (DKT. NOS. 106, 110, 118); GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE PROPOSED LIMITED SURREPLY (DKT. NO. 121); GRANTING IN PART DEFENDANTS' MOTION TO ENFORCE PROTECTIVE ORDER AND FOR SANCTIONS (DKT. NO. 107); GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE REPLY BRIEF (DKT. NO. 115); AND DENYING DEFENDANTS' MOTION TO REASSIGN RELATED CASE (DKT. NO. 111)**

---

The plaintiff filed this ERISA case on June 12, 2020. Dkt. No. 1. Some six years later, on June 15, 2026, the plaintiff filed a Rule 7(h) expedited non-dispositive motion to remove the confidentiality designations of certain documents. Dkt. No. 104. On August 7, 2026, the defendants filed a motion to restrict, dkt. no. 106, a motion to enforce the protective order and for sanctions, dkt. no. 107, and a notice of a recently filed related case, Dionne, *et al.* v. Froedtert Thedacare Health, Inc., *et al.*, Case No. 26-cv-1078-LA (E.D. Wis.) (the Dionne case), accompanied by a motion to reassign that case to this court, dkt. no. 111. The parties filed additional motions; the defendants filed a motion seeking leave to file a reply brief, dkt. no. 115, and another motion to

restrict, dkt. no. 118, and the plaintiff filed a motion for leave to file a sur-reply brief, dkt. no. 121.

It is remarkable that a dispute over a protective order could lead to eight motions, but that is exactly what has happened here. This order addresses the pending motions; the court will deny the plaintiff's motion challenging the confidentiality designations, grant the defendants' motion to enforce the protective order, impose sanctions and deny the defendants' motion to transfer the Dionne case to this court.

## I. Protective Order: Relevant Language

On April 15, 2026, the court entered the parties' stipulated protective order. Dkt. No. 103. The following provisions are relevant to the parties' dispute:

> **(A) DESIGNATION OF CONFIDENTIAL OR ATTORNEYS' EYES ONLY INFORMATION**. Designation of information under this order must be made by placing or affixing on the document or material, in a manner that will not interfere with its legibility, the words "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY."
>
> (1) One who produces information, documents, or other material may designate them as "CONFIDENTIAL" when the person in good faith believes they contain trade secrets or nonpublic confidential technical, commercial, financial, personal, or business information.
>
> . . .
>
> **(B) DISCLOSURE AND USE OF CONFIDENTIAL INFORMATION**. Information, documents, or other material designated as CONFIDENTIAL OR ATTORNEYS' EYES ONLY under this order must not be used or disclosed by the parties or counsel for the parties or any persons identified in subparagraphs (B)(1) and (2) below for any purposes whatsoever other than preparing for and conducting the litigation in which the information, documents, or other material were disclosed (including appeals).

Dkt. No. 103 at 1, 2.

> **(D) CHALLENGES TO CONFIDENTIALITY DESIGNATION.** A party may challenge the designation of confidentiality by motion. The movant must accompany such a motion with the statement required by Civil L. R. 37. The designating party bears the burden of proving that the information, documents, or other material at issue are properly designated as confidential. The court may award the party prevailing on any such motion actual attorney fees and costs attributable to the motion.

Id. at 5.

## II. Plaintiff's Rule 7(h) Expedited, Non-Dispositive Motion to Remove Confidentiality Desigations of Certain Documents (Dkt. No. 104)

### A. Parties' Arguments

The plaintiff has filed a Rule 7(h) expedited motion, arguing that the defendants have asserted the plaintiff's attorney cannot rely on documents marked CONFIDENTIAL in this litigation to file a separate lawsuit. Dkt. No. 104. The plaintiff seeks clarification as to whether categories of "participant facing and publicly available documents" are properly designated CONFIDENTIAL under the protective order. Id. The plaintiff says that none of the following documents contain trade secrets or are otherwise nonpublic confidential technical, commercial, financial, personal or business information:

- Plan Documents;
- Summary Plan Descriptions ("SPDs");
- Participant fee disclosures and other participant-facing disclosures;
- Form 5500 filings; and
- Audited financial statements attached to Form 5500 filings

Id. at 2. The plaintiff argues that the documents are either publicly available, distributed directly to participants and beneficiaries or obtainable through

ERISA's disclosure provisions. Id. at 3. The plaintiff clarifies that he is not seeking the removal of confidentiality designations on internal committee materials, internal communications, governance materials, board materials or other non-public documents. Id. The plaintiff asks for costs and attorney fees incurred in bringing the motion. Id. at 3.

Along with the motion, the plaintiff filed the declaration of his attorney, Paul M. Secunda, averring that on or about May 26, 2026, a dispute arose regarding whether certain documents designated CONIFDENTIAL by the defendants were subject to confidentiality protection under the protective order. Dkt. No. 104-1 at ¶3. Secunda says that the parties "exchanged correspondences" about the defendants' position. Id. at ¶5. Secunda avers that on June 15, 2026, he emailed the defendants' counsel and requested the defendants' position "regarding confidentiality designations applied to Plan documents, Summary Plan Descriptions, participant disclosures, Form 5500 filings, and related publicly available materials." Id. at ¶6. He avers that "as of the filing of [the] Motion," the defendants had not responded to the inquiry. Id. at ¶7. The plaintiff filed the motion on the same day that Secunda says he sent the email. Id.

The defendants oppose the motion for three reasons. Dkt. No. 105. First, they argue that the plaintiff's attorney failed to meaningfully confer; he filed the motion just hours after reaching out to ask the defendants for their position. Id. at 2. The defendants say that had the plaintiff's attorney waited, they would have agreed to de-designate the Form 5500 filings and the attached financial

statements that the defendants produced from their records. Id. Second, the defendants argue that the remaining disputed documents are properly designated as confidential because they contain confidential financial and business information concerning the administration of the Froedtert Health 403(b) plan. Id. They say that "[n]ot all employees are entitled to receive the documents at issue; rather, only employees who are plan participants, and even then, only under the narrow circumstances prescribed by ERISA, including ERISA § 104(b)(4)—which provides that a plan participant may make a written request for currently applicable plan documents and SPDs . . . ." Id. Third, the defendants argue that the motion is an "inappropriate post-hoc attempt to remedy Plaintiff's counsel's ongoing violations of the Protective Order." Id. The defendants emphasize that the plaintiff's attorney acknowledged that he was not aware of the claims in the Dionne case until he reviewed the discovery in this case. Id. at 3-4. The defendants argue that using discovery from one suit to file another violates the protective order. Id. (citing Scott v. Chuhak & Tecson, P.C., 725 F.3d 772, 778 (7th Cir. 2013)).

In his declaration, the defendants' attorney, Alex Lakatos, avers that on April 23, 2026, the plaintiff's attorney, Paul Secunda, sent defense counsel an email saying that, based on the discovery in this case, he wanted to discuss bringing an additional claim in an amended complaint or a separate case. Dkt. No. 105-1 at ¶2. Attorney Lakatos avers that Attorney Secunda admitted during a phone call on April 30, 2026 that he became aware of the potential claim only after reviewing the discovery materials in this case. Id. at ¶3.

Attorney Lakatos avers that on June 10, 2026, Attorney Secunda sent him an email with an advance copy of the proposed complaint, indicating that he intended to file it by June 15, 2026. Id. at ¶4. Attorney Lakatos avers that on June 12, 2026, he sent a letter to Attorney Secunda stating that the use of confidential materials in the proposed complaint violated the protective order and asking the plaintiff and his counsel to comply with the protective order and "refrain from using, disclosing, or otherwise relying on confidential information produced in this action outside of this action." Id. at ¶5. Attorney Lakatos attests that on June 15, 2026, Attorney Secunda sent defense counsel an email saying that he wanted to confer "regarding confidentiality designations applied to certain documents in this action," listing the categories of documents that the plaintiff believed were not properly designated and asking defense counsel whether the defendants maintained that the documents were properly designated (as well as asking for an explanation); Attorney Lakatos attests that without waiting for a response, Attorney Secunda filed the Rule 7(h) motion that very afternoon, "hours after sending his email." Id. at ¶6. Attorney Lakatos avers that the next day, Attorney Secunda filed a modified version of the proposed complaint in the Dionne case. Id. at ¶7.

B. Analysis

The protective order requires that when filing a motion challenging a confidentiality designation, the parties include the statement required by Civil Local Rule 37 (E.D. Wis.). Dkt. No. 103 at 5. A Rule 37 certification requires that the motion include "a written certification by the movant that, after the

movant in good faith has conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action, the parties are unable to reach an accord." Civil L.R. 37. The form of communication does not matter. "What matters is that 'a moving party must personally engage in two-way communication with the non-moving party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention.'" Vukadinovich v. Hanover Cmty. Sch. Corp., Case No. 13-cv-144, 2014 WL 667830, at *2 (N.D. Ind. Feb. 20, 2014). In deciding whether the movant has satisfied the requirement, the court considers the totality of the circumstances. Id.

Attorney Secunda avers that on June 15, 2026, he "emailed Defendants' counsel and specifically requested Defendants' position regarding the confidentiality designations" of the identified documents. Dkt. No. 104-1 at ¶6. According to Attorney Lakatos, just "hours later," dkt. no. 105-1 at ¶6, Attorney Secunda filed the instant motion and stated—under penalty of perjury—that the defendants had not responded to that request and that "despite Plaintiff's efforts to confer, the parties were unable to resolve the dispute without court intervention," dkt. no. 104-1 at ¶7. A single email sent a few hours before filing a motion, without waiting for a response or calling opposing counsel to determine whether he'd received the email, does not satisfy the Civil L.R. 37 certification requirement. See Gove v. Sargento Foods, Case No. 18-cv-1335, 2023 WL 2652627, at *3 (E.D. Wis. Mar. 27, 2023) ("The plaintiff appears to be under the misimpression that sending two emails to

defense counsel, offering to modify certain requests, constitutes a meet-and-confer; it does not.”) The Rule 37 certification requirement contemplates two-way communication; it is impossible to act in good faith without engaging in a meaningful dialogue. And the reason for the good faith meet-and-confer requirement—to allow the parties to resolve discovery disputes without court intervention—is illustrated by what happened when the plaintiff failed to follow that requirement in this case: it appears that had the plaintiff waited, the defendants voluntarily would have resolved two of the five challenged designations.

The court will deny the plaintiff's motion to remove confidentiality designations and deny his request for attorney fees.

## III. Defendants' Motions to Restrict Documents (Dkt. No. 106, 118); Defendant's Motion to Enforce Protective Order and for Sanctions (Dkt. No. 107); Plaintiff's Motion for Leave to File Proposed Limited Sur-reply (Dkt. No. 121)

Almost two months after the plaintiff filed his motion to remove the confidentiality designations of certain documents, the defendants filed a motion to restrict, dkt. no. 106, and a motion to enforce the protective order and for sanctions, dkt. no. 107. and a second motion to restrict when they filed their reply brief, dkt. no. 118.

### A. Defendants' Motions to Restrict (Dkt. Nos. 106, 118)

#### 1. *Parties' Arguments*

Citing General L.R. 79(d), the defendants ask the court to restrict access to their motion to enforce the protective order (Dkt. No. 107) and the accompanying exhibits (Dkt. Nos. 108, 109) as well as their reply brief (Dkt. No.

119); they allege that the documents contain confidential financial, business or internal-process information concerning the administration of the Froedtert Health, Inc. 403(b) Plan, sensitive commercial and/or nonpublic information designated as CONFIDENTIAL under the Stipulated Protective Order in this case (Dkt. No. 103), including information pertaining to Defendants' confidential internal processes. Dkt. Nos. 106 at 1; 118 at 1. The defendants filed redacted versions of their various filings, omitting only those portions that allegedly contain confidential financial and business information, sensitive commercial information and/or nonpublic information. Dkt. Nos. 107, 108, 109-5, 109-7, 109-9, 109-11, 109-14, 119.

The plaintiff filed a "limited response" to the defendants' motions to restrict, objecting only to restrictions based solely on a confidentiality designation or the existence of the protective order. Dkt. No. 114 at 1. The plaintiff asks the court to decline to limit access to the documents challenged in his then-pending motion to remove the confidentiality designations. Id. The plaintiff says that the parties dispute whether the designations are properly applied to plan documents, summary plan descriptions and participant-facing materials. Id. at 2. The plaintiff adds that the defendants stated they would agree to "de-designate" the Forms 5500 and attached financial statements because those documents are obtainable from a government database. Id. at 3.

The defendants reply that the motions and attachments identify "internal-process information" and that the redactions are "narrowly tailored" and apply only to materials that "identify financial, business, and internal

process information" that are subject to the protective order. Dkt. No. 117 at 1. They also argue that if the unredacted documents are made public, it would defeat their efforts to enforce the protective order. Id. at 2.

2. *Analysis*

General L.R. 79(d) governs motions to seal or restrict documents. It requires that a party seeking to restrict access to a document must accompany the document with a separate motion to restrict, which "must be publicly filed and must describe the general nature of the information withheld from the public record." General L.R. 79(d)(2). The rule states that "[t]o the extent possible, the movant should include with the public filing a version of the document or material that redacts only those portions of the document that are subject to the restriction/sealing request" and that the motion "must be supported by sufficient facts demonstrating good cause for withholding the document or material from the public record." General L.R. 79(d)(2), (3). The local rules mandate that "[a]bsent a sufficient factual basis demonstrating good cause sufficient to seal the documents or materials, the motion must be denied." General L.R. 79(d)(3).

Documents that "affect the disposition of federal litigation are presumptively open to public view." Goesel v. Boley Intern. (H.K.) Ltd., 738 F.3d 831, 833 (7th Cir. 2013). That presumption can be rebutted in certain cases, such as when there is a need "to conceal trade secrets, and, if there are compelling reasons of personal privacy, to litigate under a pseudonym." Id. (citations omitted). But the party seeking to seal or restrict the documents

must "analyze the applicable legal criteria or contend that any document contains a protectable trade secret or otherwise legitimately may be kept from public inspection despite its importance to the resolution of the litigation." Baxter Int'l, Inc. v. Abbott Labs, 297 F.3d 544, 546 (7th Cir. 2002); see also Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1266 (7th Cir. 1992) (a litigant must do more than just identify a type of information and demand secrecy).

It is insufficient simply to cite a confidential designation or rely on the protective order. "Secrecy in judicial proceedings is disfavored, as it makes it difficult for the public (including the bar) to understand why a case was brought (and fought) and what exactly was at stake in it and was the outcome proper." GEA Grp. AG v. Flex-N-Gate Corp., 740 F.3d 411, 419 (7th Cir. 2014).

That said, the court has reviewed the redacted and restricted versions of the defendants' filings. The defendants have taken steps to omit no more than necessary to protect confidential business information, internal processes and nonpublic information. The redacted versions appear on the docket and are accessible to the public. For that reason, the court will grant the defendants' motions to restrict.

B. Defendants' Motion to Enforce the Protective Order and for Sanctions (Dkt. No. 107)

1. *Defendants' Brief*

The defendants argue that the plaintiff violated the protective order by using and disclosing confidential information from the discovery in this case to file a new case (Dionne). Dkt. No. 108-1 at 6, 13. The defendants say the first

violation occurred when the plaintiff used that confidential information to draft a new complaint, even though the protective order states that confidential materials and information "must not be used" for any purpose other than the litigation in this case (Bangalore). Id. at 14. They argue that the second violation occurred when the plaintiff disclosed the confidential information through the allegations in the new, publicly filed complaint in Dionne. Id. at 18. They argue that the Dionne complaint publicly revealed the substance of the discovery even though the plaintiff deleted references to the Bangalore discovery that had appeared in an earlier draft disclosed to the defendants. Id. The defendants cite authority holding that revealing information known only through confidential discovery violates the terms of a protective order. Id. at 19 (citing Whitehead v. Gateway Chevrolet, Oldsmobile, Inc, Case No. 03 C 5684, 2004 WL 316413, at *4 (N.D. Ill. Feb. 2, 2004); Scott, 725 F.3d at 778; Am. Nat'l Bank & Trust Co. of Chi. v. AXA Client Solutions, LLC, Case No. 00 C 6786, 2002 WL 1067696, at *3-*4 (N.D. Ill. May 28, 2002)).[1]

The defendants ask that after the court considers the severity and the culpability of the violation, the court impose sanctions under Fed. R. Civ. P. 37(b). Id. at 20. The defendants argue that the plaintiff's actions were willful because the plaintiff's attorney filed the complaint despite being warned about the violations of the protective order. Id. The defendants also argue that the

[1] In a footnote, the defendants argue that the plaintiff committed another violation if the plaintiff's attorney shared the draft complaint with the Dionne plaintiffs. Id. at 19, n.2.

conduct was prejudicial because it converted discovery into a roadmap for separate litigation and forced the defendants to incur additional fees to enforce the protective order. Id. at 22. The defendants ask the court to order the plaintiff to withdraw or dismiss the Dionne case without prejudice subject to refiling only if the plaintiff can develop support for the lawsuit without the confidential information obtained through the discovery in this case. Id. (citing MPI Tech A/S v. IBM, Case No. 15cv4891, 2017 WL 11896263, at *14-*16 (S.D.N.Y. Apr. 18, 2017); Gonzales v. Charter Communs., LLC, Case Nos. 29-cv-08299; 21-cv-01212, 2022 WL 570003, at *5-*6 (C.D. Cal. Jan. 26, 2022); Hunter Eng'g Co. v. Hennesssy Indus., Inc., Case No. 08 CV 465, 2010 WL 1186454, at *5 (E.D. Mo. Mar. 29, 2010)). They argue that dismissal without prejudice is a proportional remedy because it does not foreclose all litigation, only litigation based on information obtained in breach of the protective order. Id. at 23.

Finally, the defendants ask for attorney fees, citing several rulings by district courts within the Seventh Circuit. Id. at 24. They cite Encap, LLC v. The Scott's Co., LLC, Case No. 11-C-685, 2014 WL 6386965, at *4 (E.D. Wis. Nov. 14, 2014), in which Judge Griesbach awarded attorney fees where a plaintiff used confidential information subject to a protective order in a separate patent prosecution. Id. The defendants also cite a decision from the Northern District of Illinois in which the court awarded attorney fees after the plaintiff incorporated confidential information in an amended complaint without first seeking to modify the protective order. Id. (citing Whitehead v.

Gateway Chevrolet, Oldsmobile, *et al.*, Case No. 03 C 5684, 2004 WL 1459478, at *3 (N.D. Ill. June 29, 2004)).

2. *Plaintiff's Response* (Dkt. No. 113)

The plaintiff argues that the defendants are making an extraordinary request that is not supported by the record. Dkt. No. 113 at 1. He does not deny that "Bangalore discovery prompted counsel to investigate whether a forfeiture claim existed." Id. He does not contend that "filing a confidentiality challenge automatically suspends a protective order or retroactively authorizes use of designated material." Id. Instead, he asks the court to focus on three things:

> (1) what role *Bangalore* discovery played in prompting and developing the investigation;
>
> (2) what information the complaint *actually filed* in *Dionne* disclosed and what sources supported its allegations; and
>
> (3) what counsel's contemporaneous conduct shows about culpability and remedy.

Id. at 1-2 (emphasis in original).

The plaintiff relies on the fact that one day before he filed the Dionne case, he filed a motion challenging the confidentiality designations in this case (Bangalore). Id. at 2. He argues that the governing plan documents and summary plan descriptions—furnished or made available to plan participants under ERISA—do not constitute the kind of nonpublic confidential business information covered by Paragraph A(1) of the protective order. Id. at 2 (citing 29 U.S.C. ¶1024(b)(1), (2), (4)). The plaintiff also says that, before filing Dionne, his "counsel independently obtained the 2020-2024 Forms 5500 and attached

audited financial statements from the Department of Labor's EFAST database; independently reviewed the public Schedule C showing compensation paid to Lincoln Financial; and possessed Dionne's and Knapp's[2] own account statements showing administrative-fee deductions." Id. at 2. The plaintiff states that he did not independently obtain or otherwise rely on 404a-405 disclosures, Froedtert recruiting materials or Froedtert public financial materials. Id. He points out that he removed the section referring to Bangalore, invoked Section D of the protective order after the defendants objected and filed a complaint "that expressly disclaimed actual knowledge of Froedtert's internal forfeiture processes." Id. at 3.

The plaintiff acknowledges that the draft complaint referenced the Bangalore discovery but argues that it never was intended to be a public filing, that he did not show it to Dionne or Knapp (the named plaintiffs in the new case) and that he sent the draft to the defendants' counsel "for the stated purpose of identifying and resolving Protective Order concerns before filing." Id. at 5. He contends that he removed the references to Bangalore discovery after receiving the defendants' June 12, 2026 objections. Id. He says that he asked the defendants to identify any other remaining allegations they believed violated the protective order, then filed with this court a motion challenging the designations. Id. He argues that the chronology of this case is materially inconsistent with a claim of deliberate concealment or willful evasion. Id.

---

[2] The plaintiffs in the Dionne complaint are James D. Dionne and Dawn Knapp. Dionne v. Froedtert ThedaCare Health, Inc., *et al.*, Case No. 26-cv-1078-LA (E.D. Wis.).

The plaintiff separately addresses the contested paragraphs of the Dionne complaint:

- Paragraph 77 alleges a failure to conduct an adequate investigation. Read with paragraph 10, it is a pleading-stage inference from an objective chain that includes: the forfeiture alternatives stated in the Plan and [Summary Plan Description] (whose designations are challenged at Dkt. 104); independently obtained public annual filings showing repeated use of forfeitures to reduce employer contributions; public Schedule C information concerning Lincoln's Plan compensation; and the named plaintiffs' own account statements showing administrative-fee deductions. Secunda Decl. ¶¶ 7-11, 21-23 & App. A. It does not purport to recite what any Bangalore committee record says.

- Paragraph 80 expressly says 'it is reasonable to infer' a flawed or absent decision-making process.
- Paragraph 81 says Plaintiffs are 'unaware of any facts' suggesting that offsets were necessary to maintain contribution levels.

- Paragraph 82 alleges generally that employer-contribution decisions were not driven by forfeiture balances and were instead associated with employee attraction and retention. Dionne Dkt. 1 ¶ 82. Counsel had no pre-filing Froedtert recruiting or benefits source for that proposition and does not now offer one. Secunda Decl. ¶ 24. The allegation was a general economic and pleading inference, not a report of a particular *Bangalore* communication. It identifies no committee record, speaker, meeting, date, communication, or internal analysis. *Id.*

- Paragraph 85 is expressly pleaded '[u]pon information and belief.' Dionne Dkt. 1 ¶¶ 80–81, 85. Those formulations do not disclose the contents of a confidential committee record. They identify the inferences Plaintiffs advance before discovery in *Dionne*.

Id. at 6-8.

Although the plaintiff admits that he attached the Adoption Agreement and Summary Plan Description that he received in Bangalore, he argues that

he challenged those designations and asserts that paragraph 10 makes clear that the Dionne plaintiffs "'do not have actual knowledge' of the specifics of Defendants' forfeiture decision-making and that they draw 'reasonable inferences' from the facts pleaded." Id. at 6 (citing Dionne, Dkt. No. 1 at ¶10).

The plaintiff maintains that the record separates the disputed plan/Summary Plan Description materials from independently obtained and plaintiff-specific materials. Id. at 7. He argues that the annual forfeiture-allocation facts are independently public and that he quoted or summarized public financial statements in the filed Dionne complaint. Id. He contends that the participant-fee predicate has an independent source: the Dionne plaintiffs, Dionne and Knapp, had account statements showing administrative fees deducted from their plan accounts. Id.

To the extent that the defendants characterize the plaintiff's motion to challenge the designations as "after the fact," the plaintiff reiterates that the initial draft of the Dionne complaint was intended to remain private and that he already had told the defendants that he did not intend to rely on confidential material. Id. at 9. He distinguishes Scott on the ground that neither any Bangalore confidential document nor the early draft of the complaint was transferred to the Dionne plaintiffs and that he filed a motion to challenge the confidential designations. Id. He argues there was no willfulness, bad faith or fault because he openly corresponded with the defendants, revised the complaint and sought court intervention. Id. at 10.

The plaintiff asserts that dismissal of the Dionne case is not warranted because the Dionne complaint rests on a "combination of disputed participant-facing Plan materials, independently obtained public and plaintiff-specific evidence, and pleading stage inferences." Id. He argues that sanctions must be tailored to the severity of the misconduct. Id. at 11. The plaintiff contends that the defendants' requested withdrawal of the complaint would affect the rights of the Dionne plaintiffs, who were not parties to the Bangalore case and never received a copy of the earlier draft complaint or confidential Bangalore documents. Id. at 12. The plaintiff asks that if the court finds a violation of the protective order, it tailor the remedy to the problem, for example by "prohibiting any future use of designated internal *Bangalore* material outside *Bangalore*, or requiring a targeted pleading correction." Id. Finally, the plaintiff opposes the award of attorney fees, arguing that his position was substantially justified and/or that other circumstances exist to make the award unjust. Id.

3. *Defendants' Reply* (Dkt. No. 119-1)

In their reply, the defendants focus on what the plaintiff admits: (1) the confidential Bangalore discovery prompted the plaintiff's counsel's investigation leading to the Dionne complaint; (2) the plaintiff's counsel expressly referenced the discovery in a June 10 draft that could not have been publicly filed under the Bangalore protective order; (3) the plaintiff's counsel disclosed confidential Bangalore discovery by attaching the Adoption Agreement and Summary Plan Description to the Dionne complaint; and (4) several allegations in the Dionne complaint have no independent source apart from the Bangalore discovery.

Dkt. No. 119-1 at 5.[3] The defendants argue that the fact the plaintiff later revised the complaint to eliminate references to Bangalore does not justify the decision to use the confidential information to draft the complaint. Id. To the extent that the plaintiff insists he eliminated references to Bangalore, the defendants point out that in Bangalore, documents attached to the complaint remain designated confidential. Id. As the defendants see it, the plaintiff knew the documents were confidential and knew the protective order governed their use, but decided to proceed with the *Dionne* complaint. Id. at 5-6.

The defendants argue that finding a use violation starts with the plaintiff's admission that he used the Bangalore discovery to investigate a potential new claim. Id. at 6. They say that the draft complaint leaves no question that the plaintiff used the Bangalore discovery because he cited to it. Id. at 6-7. They argue that revising the Dionne complaint does not change the fact that the plaintiff filed the Dionne case because of the use violation, drafted the complaint based on the discovery, relied on his previous analysis when revising the complaint and simply redacted references to Bangalore. Id. at 7-8.

According to the defendants, the fact that some information, like Form 5500 data, is publicly available does not cure the violation because the public information is *de minimis*—they say that the heart of the use violation comes from committee minutes and other materials regarding internal processes that are not publicly available. Id. at 8. The defendants say that the plaintiff

[3] The court refers to the page numbers assigned by the court's electronic case filing system, not the page numbers used by the defendants.

admitted the allegations in the Dionne case came from the Bangalore discovery, and that the plaintiff sought the publicly available information only after reviewing that discovery. Id.

The defendants contend that it is irrelevant that the plaintiff believed he might prevail on his motion to remove confidentiality designations. Id. at 9. They argue that the publicly available information "showing ***what*** Froedtert did with forfeitures" does not provide any basis "for allegations about ***how*** Froedtert made those decisions," whether it investigated alternatives or employed any process at all. Id. at 10 (emphasis in original). The defendants argue that simply deleting the citations to the Bangalore material in paragraphs 77 and 80 of the Dionne complaint does not change the substance of the allegations. Id. at 11. The defendants argue that the allegations in paragraphs 81, 82 and 85 address Froedtert's internal decision-making processes. Id. at 12. They emphasize that public Form 5500 data shows only the resulting forfeiture allocations and says nothing about what Froedtert considered, investigated or analyzed when it made its decision about those allocations. Id. at 12. The defendants argue that the plaintiff should not be able to rely on the "formulaic disclaimer" that the plaintiffs "do not have actual knowledge" of the specifics of the defendant's forfeiture decision-making because the plaintiff drafted the complaint using confidential documents. Id.

The defendants remind the court that on April 23, 2026, they advised the plaintiff that bringing a separate lawsuit would violate the protective order. Id. at 13. They argue that the plaintiff should have sought a judicial resolution

before filing the Dionne complaint. Id. at 14. They believe that the proper remedy is for the court to order the plaintiff to withdraw the Dionne complaint—without prejudice—to restore the parties to where they were before the breach; they say that the Dionne plaintiffs may re-file their claims if they are able to show they have a truly independent source for the allegations. Id. at 16-17. The defendants argue that even if the plaintiff prevails on his challenges to the designations, the violations already have occurred. Id. at 18. The defendants argue that a prospective use prohibition merely prevents future violations but does not address the past violation. Id.

Finally, regarding attorney fees, the defendants argue that the plaintiff has not met his burden of establishing that his counsel's conduct was "substantially justified" because the use violation occurred before the plaintiff took any "justifying" conduct." Id. at 19. The defendants assert that the plaintiff's proposed "alternative courses of action (amending, sealing, de-designating) demonstrate" that he understood he was violating the protective order. Id.

4. *Plaintiff's Motion for Leave to File Limited Sur-reply* (Dkt. No. 121); *Plaintiff's Sur-reply* (Dkt. No. 121-1)

The plaintiff filed a motion for leave to file a limited sur-reply to address three points characterized in the defendants' reply brief as "concessions or settled propositions." Dkt. No. 121 at 1. Because the defendants raised these points for the first time in their reply brief, the court will grant the motion and instruct the clerk to docket the proposed sur-reply brief at Dkt. No. 121-1.

First, the plaintiff addresses the defendants' assertion that the plaintiff has conceded a use violation. Dkt. No. 121-1 at 1. The plaintiff says that this overstates his position. Id. He says that he "candidly acknowledged" that his review of the Bangalore discovery prompted an investigation, but maintains that this "is not the same as conceding Defendants' legal conclusion that counsel violated the Protective Order." Id. Second, the plaintiff argues that the defendants' April 23, 2026 warning reference to the protective order is not "a judicial construction of that order." Id. Third, the plaintiff argues that the defendants' assertion that the allegations "originated in and could only originate from" confidential committee and governance materials is the defendants' inference, and that the plaintiff did not admit it. Id. The plaintiff argues that the Dionne complaint removed references to Bangalore that were contained in the draft complaint and expressly disclaimed actual knowledge of Froedtert's internal forfeiture process. Id. at 3. He urges the court to resolve the dispute on the merits—to look at the actual content, the identified source and the distinction between an inference and a disclosure of what the confidential committee record says. Id. at 4.

5. *Analysis*

The defendants seek sanctions under Rule 37 for the violation of a protective order. The court has broad discretion to impose sanctions for a party's failure to obey a discovery order. See Fed. R. Civ. P. 37(b)(2)(A); see also Ramirez v. T&H Lemont, Inc., 845 F.3d 772, 775-76 (7th Cir. 2016) (recognizing that the court has the inherent authority—apart from the

discovery rule—to manage judicial proceedings, regulate the conduct of those appearing before the court and impose appropriate sanctions to penalize and discourage misconduct). The court's authority under Rule 37 includes the ability to sanction a party for violation of a protective order entered by the court. See Greviskes v. Univs. Rsch. Ass'n, Inc., 417 F.3d 752, 759 (7th Cir. 2005) (stating in dicta that violation of a protective order could result in a Rule 37 violation).

Unless the violation was "substantially justified or other circumstances make an award of expenses unjust[,]" the court "must" order the disobedient party, its attorney, or both to pay for reasonable expenses caused by the noncompliance. Fed. R. Civ. P. 37(b)(2)(C). Rule 37(b)(2)(A)(v) authorizes a range of sanctions, including the dismissal of the case (in whole or in part), for a party's failure to comply with the court's orders. Sanctions imposed under the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process, otherwise conducted the litigation in bad faith, or engaged in misconduct. Ramirez, 845 F.3d at 776 (7th Cir. 2016); Tucker v. Williams, 682 F.3d 654, 662 (7th Cir. 2012). Courts have rejected the sanction of dismissal "where the underlying attorney misconduct was questionable, but not egregious, unduly dilatory, or contumacious." Kovilic Const. Co., Inc. v. Missbrenner, 106 F.3d 768, 773 (7th Cir.1997).

The court begins its analysis with the language of the protective order. The order prohibits the use and disclosure of documents designated confidential "for *any purposes whatsoever* other than preparing for and

conducting the litigation in which the information, documents, or other material were disclosed (including appeals).” Dkt. No. 103 at 2 (emphasis added). The language is unambiguous. Documents designated as confidential in the Bangalore case cannot be used for *any purposes* other than conducting the Bangalore litigation. The defendants designated certain documents confidential and the plaintiff reviewed those documents in discovery. If the plaintiff intended to challenge the designations, he needed to proceed under paragraph D of the protective order and file a motion with the court challenging the designations, then wait for the court to rule. The plaintiff did not follow that procedure.

The plaintiff’s attorney knew that filing another case using designated confidential documents from Bangalore would violate the Bangalore protective order. In the April 23, 2026 email he sent to the defendants’ attorneys, Attorney Secunda stated that “based on the documents produced, we have a substantial forfeiture claim against Froedtert now.” Dkt. No. 109-2 at 2. Attorney Secunda expressed his desire to set up a call to discuss how the plaintiff might bring an additional claim “either in an amended complaint in this case or as a separate case.” Id. One of these options—amending the complaint—would appear to be allowed under the protective order because the discovery would be used in “conducting the [Bangalore] litigation.” But the plaintiff did not select that option; he instead chose the option of filing a separate case. After the defendants’ counsel opined that filing a separate lawsuit would violate the protective order, dkt. no. 109 at ¶4, Attorney Secunda

said that he would file a new forfeiture action against Froedtert with new plaintiffs and that the new complaint would not "rely on, reference, or incorporate any properly designated confidential material produced in Bangalore," and he offered to provide the defendants' counsel with a courtesy copy of the draft complaint, dkt. no. 109-3 at 2.

A month later, on May 26, 2026 at 11:11 a.m., Attorney Secunda sent an email to defense counsel expressing his intent to proceed with filing the related complaint at the end of that week or the beginning of the next week, but stating his willingness to "confer in good faith to narrow or avoid motion practice." Dkt. No. 109-4 at 4. Attorney Lakatos sent an email at 1:03 p.m., refusing to withdraw the confidentiality designations and asking for the courtesy copy of the draft complaint. Dkt. No. 109-4 at 3. Attorney Secunda replied at 2:17 p.m., disagreeing with the defendants' position regarding the scope of the confidentiality designations but agreeing to provide a courtesy copy of the complaint for the "limited purpose of identifying any specific allegations that Defendants contend improperly disclose confidential material." Id. at 2. Attorney Secunda asked that "Defendants provide any comments within 498 [sic] hours so that this process does not further delay filing." Id. at 3

On June 10, 2026, Attorney Secunda sent the defendants' counsel a courtesy copy of the Dionne complaint. Dkt. No. 109-5 at 3-4. At that point, the plaintiff had not yet filed a motion challenging the confidentiality designations on any document in the Bangalore case. Notably, the draft complaint contained explicit references to documents produced in the Bangalore litigation:

> 52. Prior to filing this action, Plaintiffs' counsel conducted extensive discovery concerning the administration of the Froedtert 401(k) Plan in a separate ERISA action involving the same Plan, *Bangalore v. Froedtert Health, Inc.*, No. 20-cv-893 (E.D. Wis.).
>
> 53. The discovery produced in *Bangalore* revealed that the Plan permitted forfeitures of nonvested account balances to be used for multiple purposes, including reducing employer contributions only after first considering using forfeitures to pay Plan administrative expenses.
>
> 54. During discovery in the *Bangalore* litigation involving the same Plan, Defendants produced committee minutes, committee materials, and other governance documents spanning the Class Period. Plaintiffs' counsel reviewed those materials and identified no committee minutes, presentations, analyses, reports, consultant recommendations, or other documents reflecting consideration of whether Plan forfeitures should be used to pay Plan expenses or reduce employer contributions.

Dkt. No. 109-8 at 11.

On June 12, 2026, Attorney Lakatos responded, outlining the defendants' perceived violations of the protective order. Dkt. No. 108 at 11. Two days later, on June 14, 2026, Attorney Secunda sent defense counsel an email, along with a revised version of the Dionne complaint. Dkt. No. 109-11 at 2. Attorney Secunda stated in the email that the revised complaint relied on "publicly available and participant-facing materials, including the governing Plan documents, Summary Plan Descriptions, participant disclosures, Form 5500 filings, audited financial statements, and related materials." Id. The email stated that if the defendants "contend that the revised complaint violates the Protective Order, please identify the ***specific allegations*** at issue and the ***authority supporting your position***." Id. (emphasis in original). Attorney Secunda stated, "Plaintiffs presently intend to file the complaint on Monday,

June 15, 2026." Id. At 11:59 a.m. on June 15, 2026, Attorney Secunda sent the defendants' counsel an email, dkt. no. 109-13 at 2-3; at 4:06 p.m. that same day, the plaintiff filed his motion challenging the designations, dkt. no. 104. At 1:18 p.m. on June 16, 2026—the next day—the plaintiff filed the complaint in the Dionne case.

This review of the record shows that the plaintiff used confidential information for a purpose other than for preparing for and conducting the Bangalore litigation. He used the information contained in the confidential Bangalore documents to develop the claims he eventually included in the Dionne complaint and did so *after* the defendants told him that they would consider it a violation of the protective order to use that information to bring a separate case. He referenced the committee minutes, materials and other governance documents in the draft Dionne complaint, without having challenged the confidentiality designations on these documents or obtaining a court ruling on any such challenge. The plaintiff "revised" the Dionne complaint, but the revised complaint relies on a claim that the plaintiff developed after using the discovery in the Bangalore case *and* the plaintiff failed to file a motion seeking to restrict or seal the Dionne complaint or the attached (confidential) documents. Dionne, Case No. 26-cv-1078, Dkt. No. 1-1, 1-2. The plaintiff's eleventh-hour attempts to challenge the designations and revise the complaint do not make his actions any less a violation.

Sanctions are warranted. The plaintiff offers no justification for his conduct other than his *post hoc* attempts to scrub the record of any violations.

The court will award the defendants their reasonable attorney fees and costs associated with filing or responding to the motions addressed in this order. The court will impose that sanction on the plaintiff's attorney.

The court will not order the plaintiff to withdraw the Dionne complaint. The sanction must be commensurate with the nature and extent of the harm and a dismissal—even without prejudice—requires a finding of willfulness or bad faith. The plaintiff *did* (eventually) file a motion challenging the designations on the documents marked confidential; he simply did not wait for the court's ruling before filing the Dionne complaint. A comparison of the fifty-three-page draft Dionne complaint with the twenty-three-page publicly filed Dionne complaint suggests that the plaintiff tracked down information from the named plaintiffs and other publicly available sources. Although it would be disingenuous to say that the plaintiff did not rely on any of the Bangalore discovery when drafting the Dionne complaint, this does not appear to be a case where there is no factual foundation apart from the contents of the confidential documents. It is the court's understanding that the Dionne plaintiffs are plan participants who were able to request current iterations of the plan documents. The Dionne complaint alleges that the publicly available Froedtert 5500 forms state how the forfeitures were used. Dionne, Case No. 26-cv-1078, No. 1 at 11. And there is no evidence in the record establishing that the plaintiff's attorney shared the Bangalore discovery with the Dionne plaintiffs. Asking the court to extinguish the claims of the Dionne plaintiffs on a record where the plaintiff took steps to challenge the designation of the

documents under paragraph (D) of the protective order and attempted to secure the information from other sources is an extreme sanction.

The defendants rely on MPI Tech, 2017 WL 11896263, at *1, where a magistrate judge recommended that the district court make civil contempt findings and impose sanctions after the plaintiff's fifth attempt to use discovery material subject to a protective order as the basis for asserting new claims. Unlike in this case case, the plaintiff in MPI Tech had been told by the court that using the confidentially marked discovery to support newly asserted claims would be prohibited. Id. at *15. The defendants also rely on Gonzales, 2022 WL 570003, at *4, where the court found that the plaintiffs violated the protective order by using opt-in forms (developed from confidential lists) to solicit new clients and file additional lawsuits. The plaintiffs' attorneys argued that they did not solicit "new" clients because the clients became existing clients once they opted into the prior suit. Id. After rejecting that argument as "troubling" (and finding other violations), the district court in the Central District of California required the plaintiffs' counsel to pay the defendant's reasonable attorney's fees and costs in filing the motion for sanctions and in defending against a second case filed with the same court; the court dismissed that second case without prejudice to those plaintiffs filing their claims with separate, unaffiliated counsel. Id. at *6. The court declined to find the plaintiffs' attorney in civil contempt and declined to disqualify the plaintiffs' attorney from representing in any other case a plaintiff who had opted in. Id. The court did not impose sanctions on the individual plaintiff.

In this district, Judge Rudoph Randa held that filing a second suit did not violate a protective order where the second complaint did not divulge confidential information. Feed.ing BV v. Principle Sols., LLC, Case No. 14-C-1241, 2015 WL 136402, at *3 (E.D. Wis. Jan. 8, 2015). Judge Randa reasoned that the protective order was "designed to protect the privacy of information, not immunity from suit." Id. Similarly, in Crocs, Inc. v. Joybees, Inc., Case No. 21-cv-02859, 2023 WL 8851997, at *8 (D. Colo. Dec. 8, 2023), the court found that the complaint in a second lawsuit did not expose details or facts from confidential documents "other than certain benign data that does not divulge highly confidential information." The court held that the "weight of authority supports the conclusion that the protective order does not deprive Crocs of the right to file a separate lawsuit merely because the supporting information bears a confidential designation." Id. The court reasoned that the protective order was designed to protect commercially sensitive information without adversely impacting the parties' business and financial interests; not to surrender the receiving party's legal right to challenge newly revealed misconduct in court. Id.

The court is troubled by the attachments to the Dionne complaint (Froedtert Health's 403(b) Plan Adoption Agreement, Dkt. No. 1-1, and the summary plan description for that plan, Dkt. No. 1-2), and by the plaintiff's failure to restrict any of the filings in that case. It appears that the documents attached to the Dionne complaint are available to *plan participants* but otherwise are not publicly available. But even the defendants acknowledge that the plaintiff's proposed alternative courses of action (amending, sealing, de-

designating) might have complied with the protective order. Dkt. No. 119-1 at 19. Disclosing information under a protective order does not necessarily insulate the producing party from liability that may be uncovered in the production. The defendants acknowledge that Form 5500 and their attached financial statements are publicly available, dkt. no. 105 at 2, and plan participants can access the current iterations of plan documents and Summary Plan Descriptions, dkt. no. 108-1 at 10. The defendants do not dispute that the Dionne plaintiffs had access to their own statements.

The plaintiff's attorney made poor decisions. Opposing counsel warned him that relying on the designated confidential information would violate the protective order and that he had other options available. But the court will not penalize the Dionne plaintiffs for their attorney's poor judgment. That said, the court advises Attorney Secunda that future violations of the protective order or other similar conduct in this litigation will result in additional sanctions, up to and including dismissal.

## IV. Defendants' Motion Restrict Document (Dkt. No. 110), Defendant's Motion to Reassign Case (Dkt. No. 111), Defendant's Motion to File a Reply Brief (Dkt. No. 115)

### A. Defendants' Motion to Restrict Document (Dkt. No. 110)

On August 7, 2026, the defendants filed a motion to restrict their motion to reassign the Dionne case to this court. Dkt. No. 110. They make the same arguments that the court previously addressed—that the motion contains confidential financial and business information regarding the administration of the Froedtert Plan and sensitive commercial information and nonpublic

information, including information about the defendants' confidential internal processes. Id. The defendants filed a redacted version of their motion to reassign, limiting the restriction to only those portions containing confidential information. Dkt. No. 111.

The plaintiff's "limited response" (which the court addressed with regard to the motion to restrict at Dkt. No. 106), included the plaintiff's objections to the defendants' motion to restrict their motion to reassign the Dionne case. Dkt. No. 114. For the same reasons the court discussed above, the court finds that the defendants have satisfied their burden and narrowly tailored their restrictions. The court will grant the defendants' motion to restrict.

B. Defendants' Motion to File Reply Brief (Dkt. No. 115)

After the plaintiff responded to the defendants' motion to reassign the related case, and recognizing that Civil L.R. 3 does not contemplate a reply brief, the defendants filed a motion for leave to reply, saying that good cause exists to file a reply in order to clarify the nature and extent of the relationship between the Bangalore and Dionne cases. Dkt. No. 115 at 1. The plaintiff did not oppose the motion. Dkt. No. 116. After reviewing the reply, the court has determined that there is no need for limited further briefing from the plaintiff. The court will grant the defendant's motion and consider the reply when addressing below the motion to reassign case.

C. Defendants' Motion to Reassign Case

1. *Defendants' Arguments* (Dkt. No. 111)

The defendants ask the court to find that the Dionne case is related to the Bangalore case and order that the Dionne case be reassigned to this court for all further proceedings. Dkt. No. 111-1 at 1 (citing Civil L.R. 3(b)). The defendants assert that the cases meet the relatedness standard because they involve substantially the same parties, arise from the same transactions or events and would involve substantial duplication of effort or risk contradictory results. Id. at 5. Specifically, they argue that "the two cases involve the same retirement plan, the same family of defendants, overlapping claims alleging breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ('ERISA') brought by the same counsel on behalf of substantially overlapping classes, and common questions of fact and law." Id. at 2. They reiterate that Dionne arose out of the discovery obtained in Bangalore. Id.

The defendants say that the amended complaint in Bangalore asserts claims on behalf of the Froedtert Health 403(b) Plan and a putative class of Plan participants and beneficiaries during the period from June 12, 2014 to the present. Id. They say that the Bangalore complaint asserts breach of the fiduciary duties of prudence and loyalty and failure to monitor, specifically focusing on the fact that the plaintiff "imprudently authorized excessive recordkeeping and administration ('RK&A') fees and maintained high-cost investment options in the Plan." Id. at 2-3. The defendants say that the Dionne case includes claims on behalf of the Plan and a putative class of Plan

participants from June 16, 2020 to the present and alleges breach of fiduciary duties of loyalty and prudence and failure to monitor based on an alleged misallocation of Plan forfeitures (supposedly using them to offset employer matching contributions rather than to pay Plan administration expenses). Id. at 3.

The defendants argue that the court should reassign the Dionne case under Civil L.R. 3(b) because both cases are pending in the same district, this court has been handling Bangalore since 2020, the plaintiff's attorney used the information from Bangalore to file Dionne and this court is in a unique position to decide whether the Bangalore protective order was violated and what remedy is appropriate. Id. at 7-9.

2. *Plaintiff's Response* (Dkt. No. 112)

The plaintiff opposes the motion, arguing that it is premature because Civil L.R. 3(c)(2)(A) says that motions to reassign "should not generally be filed until after the answer or motions in lieu of an answer have been filed in each of the proceedings involved." Dkt. No. 112 at 1, 3. The plaintiff argues that the motion stretches this district's relatedness rule. Id. at 1. He argues that Bangalore is a "six-year-old action" challenging recordkeeping and administrative fees, whereas Dionne is a newly filed case challenging the allocation of Plan forfeitures beginning in 2020. Id. at 1. The plaintiff says that the resolution in Bangalore will turn on "recordkeeping pricing, benchmarking, competitive bidding fee monitoring, negotiations with Transamerica and Lincoln Financial and the reasonableness of RK&A fees," while the resolution in

Dionne will turn on "the Plan's forfeiture provisions, annual forfeiture allocations, participant-borne administrative expenses, the fiduciary character of the allocation decision, and the process and loyalty associated with those allocation decisions." Id. at 4.

The plaintiff emphasizes that the Dionne suit was brought by plaintiffs James Dionne and Dawn Knapp and names Froedtert ThedaCare Health, Inc., the Board of Directors of Froedtert ThedaCare Heath, Inc. and the Froedtert Health Retirement Plan Subcommittee. Id. Bangalore, brought by plaintiff Nitish Bangalore, names as defendants Froedtert Health, Inc., its Board and the Benefit Plan Committee. Id.

The plaintiff argues that the cases do not pose a meaningful risk of inconsistent merits determinations because whether Froedtert paid excessive fees in Bangalore says nothing about whether the fiduciaries acted prudently and loyally in allocating forfeitures from 2020 forward in Dionne. Id. at 5. He argues that the pending motion in Bangalore to remove confidentiality designations does not establish relatedness because Civil L.R. 3 focuses on the relationship between the actions—the transactions or events, parties or property and the risk of duplication—not the mere existence of a collateral motion filed after both actions were pending. Id. The plaintiff asserts that there is no inconsistency in this court deciding whether his counsel complied with the protective order while Judge Adelman (who is presiding over the Dionne case) decides whether the plaintiff states a claim in Dionne. Id.

Finally, the plaintiff contends that Bangalore has been pending since 2020 with active discovery and upcoming deadlines for expert disclosures, class certification and close of discovery, while Dionne is in the pleading stage. Id. at 6. The plaintiff cites Novin v. Johnson Controls, Case No. 24-cv-46, Dkt. No. 56 at 6-7 (E.D. Wis.), in which this court declined to reassign a case because of the different procedural postures. Id. The plaintiff argues that the "cleaner course" is to keep the two cases separate. Id. at 7.

3. *Defendants' Reply* (Dkt. No. 115-1)

The defendants reply that Dionne was "born directly from confidential *Bangalore* discovery." Dkt. No. 115-1 at 1. The defendants argue that to the extent the plaintiff alleges the motion to reassign is premature, Civil L.R. 3 is not mandatory and simply says that reassignment motions "should not *generally* be filed" until after responsive pleadings. Id. at 2 (emphasis in original). They say that the rule is designed to ensure that all parties have the chance to respond and Civil L.R. 3(b)(5) imposes a continuing duty to notify the court of related actions "as soon as [the parties] become aware of the relationship." Id. at 3. Finally, the defendants have filed a motion to dismiss in Dionne, which they say "moot[s] the prematurity point." Id.

The defendants accuse the plaintiff of narrowing the standard and ignoring the fact that Rule 3(b)(1) applies if ***any*** one of three criteria are satisfied: (1) substantially the same parties or property; (2) substantially the same transaction or events; or (3) a risk of substantial duplication or inconsistent results. Id. at 3 (emphasis in original).

The defendants argue that both cases name as defendants the same corporate entity and fiduciary governance bodies and were filed by the same counsel on behalf of overlapping putative classes of Plan participants and beneficiaries. Id. They say that the plaintiff's attorney "investigated, developed and drafted" the Dionne complaint after reviewing Bangalore discovery. Id. at 4. They argue that there is a risk of inconsistent results because this court's ruling on their motion to enforce the protective order in Bangalore "directly determines" whether Dionne can proceed. Id.

The defendants say the plaintiff's argument that the cases are in different procedural postures misreads facts and precedent. Id. at 5. They argue that it is better that Dionne is in an "early procedural posture" because nothing has happened in that case that would be disrupted by transferring it. Id. The defendants distinguish the plaintiff's reliance on Novin on the ground that the party requesting reassignment in Novin wanted "to allow for the coordination of discovery for both cases" after discovery already had closed in one of the cases, which would have resulted in further delay. Id. The defendants emphasize that they are not asking the court to delay Bangalore to allow Dionne to catch up. Id. at 6. They say that keeping the cases separate would require Judge Adelman to either address the Dionne complaint while this court decides whether it should be withdrawn or stay Dionne until "resolution of the Motion to Enforce." Id. They assert that reassignment would "places all interrelated questions" before one judge, promoting "efficiency, consistency and fairness." Id.

4. *Analysis*

Under this district's civil local rules, the court considers cases related when they "(i) arise from substantially the same transaction or events; (ii) involve substantially the same parties or property; (iii) involve the same patent, trademark or copyright; or (iv) for other reasons would entail substantial duplication of effort or risk inconsistent or contradictory results if heard by different judges." Civil L.R. 3(b)(1). When a judge finds cases to be related, the higher-numbered case may be reassigned to the judge presiding over the lower-numbered case if

> (A) both cases are pending in this District;
>
> (B) the handling of both cases by the same judge is likely to result in a substantial saving of judicial resources; and
>
> (C) neither case has progressed to the point where reassigning a case would be likely to substantially delay the proceedings in either case, or the Court finds that the assignment of the cases to the same judge would promote consistency in resolution of the cases or otherwise be in the interest of justice.

Id.

The Bangalore and Dionne cases do not arise from substantially the same transaction or events. Bangalore—filed six years before Dionne—involves a claim for breach of the duty of prudence based on excessive recordkeeping fees and a derivative failure to monitor claim dating back to June 12, 2014. Dkt. Nos. 78, 92. The plaintiffs in Dionne allege that the defendants used the Froedtert plan's forfeitures to benefit themselves rather than covering the plan's administrative expenses beginning in 2020. Dionne, Case No. 26-cv-1078, Dkt. No. 1. The plaintiffs in Bangalore and Dionne are different and the

defendants only partially overlap. The Bangalore and Dionne cases do not involve the same patent, trademark or copyright. And there are no other reasons that would entail substantial duplication of effort or risk contradictory results. The only potential risk of inconsistent results has been addressed by this court's ruling on the motion challenging the confidentiality designations in Bangalore. The court declines to order the plaintiff's attorney to withdraw the Dionne complaint; there is a separate pending motion to dismiss in Dionne based on the sufficiency of the allegations. Put another way, the violation of the court's protective order in this case does not make Dionne a related case that must be decided by this court. The court will deny the motion to transfer.

## V. Conclusion

The court **DENIES** the plaintiff's Rule 7(h) expedited non-dispositive motion to remove confidentiality designations of certain documents. Dkt. No. 104.

The court **GRANTS** the defendants' motions to restrict. Dkt. Nos. 106, 110, 118. The court **ORDERS** that the clerk's office must restrict access to Dkt. Nos. 108-1, 109-6, 109-8, 109-10, 109-12, 109-15, 111-1 and 119-1 until further order of the court.

The court **GRANTS** the plaintiff's motion for leave to file proposed limited sur-reply in opposition to defendants' motion to enforce protective order and for sanctions. Dkt. No. 121. The court **DIRECTS** the clerk's office to separately docket the proposed sur-reply filed at Dkt. No. 121-1.

The court **GRANTS IN PART** the defendants' motion to enforce the protective order and for sanctions. Dkt. No. 107. The court **GRANTS** the motion as to attorney fees and **AWARDS** the defendants attorney fees and costs. The plaintiff's attorney—not the named plaintiff—must pay the sanction. The court **ORDERS** that by the end of the day on **December 4, 2026**, the defendants must file an affidavit (not a motion) and supporting documents accounting for their reasonable fees and costs associated with filing and responding to each of the motions addressed in this order. The plaintiff's attorney may file a brief in opposition no later than **December 30, 2026**. The court **DENIES** the defendants' request to order the plaintiff to withdraw the Dionne complaint.

The court **GRANTS** the defendants' motion for leave to file a reply brief in support of motion to reassign related case. Dkt. No. 115. The court **DIRECTS** the clerk's office to separately docket the proposed reply filed at Dkt. No. 115-1.

The court **DENIES** the defendants' motion to reassign related case. Dkt. No. 111.

Dated in Milwaukee, Wisconsin this 4th day of November, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**